UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- x

KELTON DAVIS, WILLIAM TURNER, ALTAGRACIA
HERNANDEZ, EDWIN LARREGUI, ROMAN JACKSON,
KRISTIN JOHNSON, ELEANOR BRITT, ANTHONY
ANDERSON, LASHAUN SMITH, SHAWNE JONES,
HECTOR SUAREZ, ADAM COOPER, ANDREW
WASHINGTON, P.L. by his parent LISA PIGGOTT, DAVID
WILSON, and GENEVA WILSON, individually and on behalf
of a class of all others similarly situated,

                                        Plaintiffs,                      10 Civ. 699 (SAS)


                    -against-


THE CITY OF NEW YORK and NEW YORK CITY
HOUSING AUTHORITY,

                                        Defendants.

------------------------------------------------------------------------------- x

**DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFFS' CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND .................................................................................................................. 1

ARGUMENT

      POINT I

            DEFENDANT'S REVISED VERTICAL PATROL
            POLICY AND TRAINING MEETS OR
            EXCEEDS PLAINTIFFS' CONSTITUTIONAL
            DEMAND FOR DECLARATORY AND
            INJUNCTIVE RELIEF ............................................................ 7

      POINT II

            AN INJUNCTION IS NOT A CONDITION
            PRECEDENT FOR RELIEF, AND IN ANY
            EVENT WOULD BE IMPROPER UNDER THE
            FACTS OF THIS CASE ........................................................ 10

      POINT III

            THERE IS NO DANGER THAT DEFENDANT
            WILL ABANDON ITS CURRENT PATROL
            POLICY ................................................................................ 13

            A.   There Is No Reasonable Expectation That the
                 City Will Abandon Its Current Patrol Policy .................................... 13

            B.   Prudential Considerations Also Militate in
                 Favor of Dismissal of Plaintiffs' Claim for
                 Declaratory and Injunctive Relief .................................... 17

CONCLUSION ................................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Pages**

*Campbell v. Greisberger,*
    80 F.3d 703 (2d Cir. 1996).................................................................................... 14

*City of Canton v. Harris,*
    489 U.S. 378, 392 (1989)................................................................................... 12

*City of Mesquite v. Aladdin's Castle,*
    455 U.S. 283 (1982).................................................................................... 14, 17

*Cuevas v. City of New York,*
    2009 U.S. Dist. LEXIS 114984 (S.D.N.Y. 2009)............................................ 10

*DeFunis v. Odegaard,*
    416 U.S. 312 (1974).......................................................................................... 7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., (TOC), Inc.,*
    528 U.S. 167 (2000)................................................................................ 6, 11, 17

*Granite State Outdoor Advertising, Inc. v. Town of Orange,*
    303 F.3d 450 (2d Cir. 2002)................................................... 6, 8, 11, 13, 16

*Granite State Outdoor Advertising, Inc. v. Town of Orange,*
    38 Fed. Appx. 680 (2d Cir. 2002)................................................................... 10

*Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo,*
    981 F.2d 50 (2d Cir. 1992).......................................................................... 7, 15

*Irwin v. Dixion,*
    50 U.S. (9 How.) 10 (1850) ............................................................................12

*Lamar Advertising of Penn., LLC v. Town of Orchard Park,*
    356 F.3d 365 (2d Cir. 2004)....................................................... 6, 7, 10, 15, 17

*Lillbask ex rel. Mauclaire v. Connecticut Dep't of Educ.,*
    397 F.3d 77 (2d Cir. 2005)......................................................... 6, 7, 14, 15

*Monell v. Dep't of Social Servs.,*
    436 U.S. 658 (1978)...................................................................................... 1, 11

*Reynolds v. Giuliani,*
    506 F.3d 183 (2d Cir. 2007)........................................................................ 11, 12

*Rizzo v. Goode,*
    423 U.S. 362 (1976)......................................................................................... 12

**Cases**                                                                                                     **Pages**

*Sossamon v. Texas*,
   560 F.3d 316 (5th Cir. 2009),
   *cert. granted on other grounds*, 130 S. Ct. 3319 (2010).........................................................7, 14

*Stauber v. City of New York*,
   2004 U.S. Dist. LEXIS 13350 (S.D.N.Y. 2004)..............................................................14, 15

*United States v. Concentrated Phosphate Export Ass'n*,
   393 U.S. 199 (1968).........................................................................................................6

*United States v. New York City Transit Auth.*,
   97 F.3d 672 (2d Cir. 1996)..........................................................................................14, 16

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982)....................................................................................................11, 17

**Statutes and Rules**

N.Y. City Charter ch. 18-A.......................................................................................10

Fed. R. Civ. P. 56...........................................................................................................1

## PRELIMINARY STATEMENT

Defendant City of New York (the "City" or "Defendant") respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56 to dismiss plaintiffs' claim for declaratory and injunctive relief[1] against the City.

## BACKGROUND

In their Complaint, filed in late January 2010, plaintiffs allege that defendants have violated a variety of federal and state laws based on their contention that the City, acting through the New York City Police Department ("NYPD"), has implemented an unlawful "vertical patrol"[2] and trespass arrest policy that "has resulted in a pattern and practice of illegal stops, seizures, questioning, searches, and false arrests of residents of, and authorized visitors to, NYCHA residences." Complaint at 2 ¶ 2. Plaintiffs allege that the NYPD improperly utilized "checkpoints" on NYCHA property where officers "indiscriminately stop and question every person they observe, without objective individualized suspicion of a crime, and unlawfully arrest individuals for trespass without probable cause."[3] Id. at 2 ¶ 3. Plaintiffs also make the standard equal protection allegations that the City's law enforcement policies, practices and customs are the result of invidious racial discrimination. See id. at 3 ¶¶ 6-8.

---

[1]  To the extent plaintiffs are seeking a declaration that a *previous* City policy or custom was unconstitutional, *see* Complaint at 53 ¶ b, Defendant is not contending by this motion that such a claim is moot (though Defendant would argue that such policy and/or custom was not unconstitutional pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) and subsequent cases addressing municipal liability). Rather, Defendant's motion is directed to plaintiffs' equitable claims based on the City's current policy and what plaintiffs assert should be done by the City going forward.

[2]  According to the Complaint, "[a] vertical patrol is a top-to-bottom walk-through patrol or 'sweep' of hallways, stairwells, rooftops and landings, elevators, and other common areas of a NYCHA residence." Complaint at 2 ¶ 3.

[3]  Plaintiffs also allege that some trespass arrests are the result of less formal patrols. *See* Complaint at 2 ¶ 4.

The request for relief in the Complaint seeks declaratory and injunctive relief, as follows: (1) a request that the Court "[d]eclare that the Defendants' acts, practices, policies, and omissions *have* deprived Plaintiffs of their rights . . .", Complaint at 53 ¶ b (emphasis added); and (2) a request that the Court"[o]rder all appropriate injunctive relief as warranted, including but not limited to, ordering Defendants to cease immediately their violation of Plaintiffs' rights, and to remedy the invidious effects of their violations by patrolling NYCHA residences and effectuating trespass stops and arrests in a reasonable and non-discriminatory manner".[4] Complaint at 53 ¶ c.

Regarding the relevant background facts of this case, Defendant respectfully refers the Court to Defendant's Statement of Facts Pursuant to Local Rule 56.1 ("56.1"). Briefly stated, these facts are as follows.

The NYPD is responsible for patrolling NYCHA properties.   Primarily responsible for such patrols is the NYPD's Housing Bureau, though some precincts have housing teams that patrol NYCHA developments within the precinct.   Such patrols include the enforcement of NYCHA rules and regulations, as well as crime prevention and enforcement. Rule 56.1 ¶ 1. One such method of enforcement is a "vertical patrol", which is an inspection of the interior of a NYCHA building carried out pursuant to the NYPD's Patrol Guide. Rule 56.1 ¶ 5.

In 2009, NYCHA representatives and tenants expressed concerns to the NYPD about the conduct of the NYPD's patrols of NYCHA property.  As a result of these concerns, the NYPD recognized the benefit of providing additional guidance to police officers patrolling

---

[4]  With respect to the class the plaintiffs seek to represent, the plaintiffs seek only declaratory and injunctive relief.  This claim for relief appears to parallel the relief sought in the general request for relief quoted above. *See* Complaint at 4-5 ¶ 13.

NYCHA property.  *See* Rule 56.1 ¶¶ 13-17.  Commencing in June 2009, the NYPD met with NYCHA, including its new Chairman, John B. Rhea, to discuss a variety of issues, including the NYPD's patrols of NYCHA property, the enforcement of NYCHA rules and policies, and interaction with residents and guests.  It was agreed that further meetings, to include NYCHA residents, also should be held.  *See* Rule 56.1 ¶¶ 19-21.

On October 15, 2009, the NYPD and NYCHA met with the Citywide Council of Presidents (the "CCOP"), which is the duly elected NYCHA tenant association.  Rule 56.1 ¶ 22-23.  The meeting was productive, and a Safety and Security Task Force ("SSTF") was established to, *inter alia*, address the NYPD's patrol policy and possible alternatives thereto.  The SSTF, co-chaired by Chairman Rhea and the President of CCOP, met regularly to address NYPD and NYCHA resident relations, the improvement of safety and security in NYCHA developments, and the betterment of the quality of life for NYCHA residents.  *See* Rule 56.1 ¶¶ 24-25.

Since at least the summer of 2009, the NYPD had been discussing expanding the guidance provided by PG 212-60,[5] and active discussions regarding revisions to the Patrol Guide were taking place in October 2009.  Rule 56.1 ¶ 41.

The first SSTF meeting was held on December 10, 2009.  At this meeting, NYPD patrols of NYCHA property were discussed.  Also at this December 10, 2009 meeting, SSTF subcommittees (including NYPD's Policies and Relationships with Residents and NYCHA Rules and Regulations subcommittees) were established to address the patrolling of NYCHA property.  Rule 56.1 ¶¶ 26-30.

---

[5] While entitled "interior vertical patrol of housing authority buildings" this procedure also provides guidance regarding overall responsibilities throughout NYCHA property.  Rule 56.1 ¶ 8.

Over the course to the next several months, the NYPD Policies and Relationships with Residents subcommittee continued its discussions, including what was then a proposed interim order to revise PG 212-60. Rule 56.1 ¶¶ 31-36, 42-43.

On June 8, 2010, Interim Order 23 was issued by the NYPD. Interim Order 23 replaced PG 212-60, providing enhanced guidance on the NYPD's patrols of NYCHA property and NYCHA facilities. Interim Order 23 discusses in detail when "a uniformed member of the service may approach and question persons who may be violating Housing Authority rules and regulations, including potentially unauthorized persons found in Housing Authority buildings." However, over and above PG 212-60, Interim Order 23 emphasizes and expands upon matters relating to when an officer may stop suspected trespassers, the factors which may contribute to "reasonable suspicion", and other appropriate procedures when encountering persons who might be violating NYCHA rules and regulations or might not be authorized to be within NYCHA property, including "reasonable measures to verify such authority". Rule 56.1 ¶¶ 3-12.

The NYPD developed a training curriculum for Interim Order 23 and began such training (the "NYCHA Patrol Training") in the early fall of 2010. The training curriculum incorporated input from the NYPD Policies and Relationships with Residents subcommittee, including NYCHA resident members. As can be seen from the NYCHA Patrol Training, the following matters were covered in detail: (1) "the purpose and rationale for conducting interior vertical patrols within Housing Authority property", (2) "the importance of proper interactions between police officers and Housing Authority residents"; and (3) "the revision to Patrol Guide section 212-60, 'Interior Vertical Patrol of Housing Authority Buildings'". The level of detail in

the training is extensive, and the concepts are illustrated with numerous scenarios that officers likely would encounter.  Rule 56.1 ¶¶ 44-52.

The NYCHA Patrol Training has been and continues to be rolled out as follows: (1)  Phase I training includes all uniform members of the Housing Bureau of any rank, including executives, as well a members of the Patrol Services Bureau assigned to precinct housing teams (members of precinct housing teams patrol NYCHA developments on a regular basis); and (2) Phase II training for police officers, sergeants and lieutenants assigned to the Patrol Services Bureau and not within a precinct housing team.[6]  At present, approximately 90% of Phase I has been completed, with over 1800 officers trained.  This training has been conducted on overtime, with a projected cost of approximately $500,000.[7]  Phase II training should be complete within the next twelve months.   Additional, annual training also will be provided to police officers, sergeants, and lieutenants as part of their required annual training, so those officers trained during Phase I will be trained *again* as part of Phase II.  Other additional training measures also are planned.  Rule 56.1 ¶¶ 53-67.

All totaled, it is anticipated that Phase I and Phase II training of NYPD officers with respect to Interim Order 23 will cost the City approximately $2.7 million.  Rule 56.1 ¶ 68.

Despite the fact that the NYPD was already meeting with NYCHA representatives and tenant leaders since June and October 2009, respectively, and the process of revising the Patrol Guide was already well underway during the fall of 2009, by letter dated November 6, 2009, attorneys for plaintiffs in the present matter threatened litigation if the NYPD

---

[6] Interaction by officers to be trained in Phase II with individuals on NYCHA property is considerably less frequent than by officers in Phase I and therefore is not as critical as the Phase I training.  Rule 56.1 ¶ 58.
[7] It is anticipated that the remaining 10% (absences typically due to vacation, illness, etc.) will be trained over the next few months.  Rule 56.1 ¶ 56.

and NYCHA failed "to revise the vertical patrol and trespass policies and procedures immediately". Tellingly, shortly after this lawsuit was filed on or about January 28, 2010, the CCOP sent a letter to counsel for plaintiffs urging them to withdraw the lawsuit. CCOP Chairman Bowman expressed dismay at the filing of the lawsuit, noting the progress the NYPD, NYCHA and NYCHA tenants had been making. Specifically, Bowman stated that he was aware of the issues raised in plaintiffs letter and that CCOP, NYCHA and the NYPD "have been actively at work to address this matter" and that the SSTF was working "to come up with a set of specific recommendations", which represented a commitment to revise the vertical patrol and trespass policies "in a responsible manner". He also noted that the filing of the litigation was "premature and counterproductive to the goal of influencing the change in policy and practices that we all agree need to be changed." Rule 56.1 ¶¶ 67-75.

## ARGUMENT

A claim is moot based on defendant's voluntary cessation of a challenged practice "if subsequent events made it absolutely clear that the alleged wrongful behavior could not reasonably be expected to occur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). This requires the defendant to demonstrate that "interim . . . events have completely and irrevocably eradicated the effects of the alleged violation" and that "there is no reasonable expectation that the alleged violation will recur". *Granite State Outdoor Advertising, Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002) (hereinafter cited as "*Granite State II*"); *accord Lillbask ex rel. Mauclaire v. Connecticut Dep't of Educ.*, 397 F.3d 77, 88 (2d Cir. 2005); *Lamar Advertising of Penn., LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004). Although typically this test is "stringent" and defendant's burden of persuading the court is considered "heavy", *e.g., Friends of the Earth*, 528 U.S. at 189, a

governmental entity is not held to such a high standard.  As explained by the court in *Sossamon v. Texas*, 560 F.3d 316 (5th Cir. 2009), *cert. granted on other grounds*, 130 S. Ct. 3319 (2010):

> [C]ourts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity – a practice that is reconcilable with [*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, *supra*]. Although *Laidlaw* establishes that a defendant has a heavy burden to prove that the challenged conduct will not recur once the suit is dismissed as moot, government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties.  Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing.

560 F.3d at 325 (footnote citations omitted).  Such deference to governmental representations that its challenged conduct has been discontinued also applies in this circuit.  *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992) (citing *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974) (per curiam)); *accord Lillbask*, 397 F.3d at 89; *Lamar Advertising*, 356 F.3d at 376.

In accordance with the above, and for the reasons set forth below, plaintiff's request for declaratory and injunctive relief should be dismissed as moot.

## POINT I

### DEFENDANT'S REVISED VERTICAL PATROL POLICY AND TRAINING MEETS OR EXCEEDS PLAINTIFFS' CONSTITUTIONAL DEMAND FOR DECLARATORY AND INJUNCTIVE RELIEF

The first step in assessing whether a claim has been rendered moot based on voluntary cessation is whether the alleged conduct has in fact ceased.[8]  In the present case,

---

[8]  As previously noted, Defendant does not believe the constitutionality of its NYCHA property patrol policy as it existed before Interim Order 23 is currently before the Court in this motion.

Interim Order 23 and the NYCHA Patrol Training have entirely eliminated the basis for plaintiffs' *Monell* claim against the City. *Granite State II, supra,* 303 F.3d at 451.

As noted above, Interim Order 23 (issued by the NYPD on June 8, 2010) replaced PG 212-60 and provided enhanced guidance on the NYPD's patrols of NYCHA property and Housing Authority facilities. Specifically, Interim Order 23 emphasized and expanded upon what had been existing policies of the NYPD, including, among other things: that "an officer may not stop (temporarily detain) a suspected trespasser unless the officer <u>reasonably suspects</u> that the person is in the building without authority"; "[s]ome factors which may contribute to 'reasonable suspicion,' in addition to those factors set forth in PG 212-11, 'Stop and Frisk,' include contradictory assertions made to justify presence in the building and/or assertions lacking credibility made to justify presence in the building"; and that, upon encountering persons who might be violating NYCHA rules and regulations or might not be authorized to be within NYCHA property: (1) officers must approach such person(s) and ask if they live in the building, are visiting someone in the building, and/or have business within the building (with a special note that "[w]hen a person's authority to be present in the building is in question, take reasonable measures to verify such authority (e.g., asking for identification, a key to the building entrance doors, etc.)"); (2) officers must take appropriate police action, such as preparing a Field Report, when there is a Rules violation (PG 207-29) or criminal enforcement as appropriate; (3) in cases where "a person refuses to explain or is unable to explain his or her presence in the building, the officer may instruct the person that he or she must leave the building or be subject to arrest for trespass"; (4) officers may arrest such a person for trespass if he or she "refuses to

---

Nor does Defendant believe that such policy violated the legal standards applicable to municipal liability. *See* note 1, *supra.*

exit the building and does not promptly establish a right to be in the building"; (5) the officer may take appropriate police action pursuant to PG 212-11 (Stop and Frisk) "[i]f reasonable suspicion develops that a person has committed is committing or is about to commit a felony or Penal Law misdemeanor"; and (6) the officer should take appropriate action pursuant to PG 208-01 (Law of Arrest) "[i]f probable cause develops that a person has committed or is committing an offense or crime". Rule 56.1 ¶¶ 3-12.

Also as noted above, the NYCHA Patrol Training pursuant to Interim Order 23 has been and continues to be comprehensive, as well. This training covers in enhanced detail the purpose and rationale for conducting interior vertical patrols within Housing Authority property, the importance of proper interactions between police officers and NYCHA residents, and all of the revisions to Patrol Guide section 212-60 established by Interim Order 23. The NYCHA Patrol Training further includes numerous scenarios that officers likely would encounter, as well as what has turned out to be a lengthy question-and-answer period. Rule 56.1 ¶¶ 44-52.

In light of the above, Defendant submits that the first aspect of the mootness inquiry – namely, whether the alleged conduct (in this case, the NYPD's alleged improper policy and practice of conducting patrols of NYCHA property) no longer exists – has been satisfied . It cannot be emphasized enough that the key is whether plaintiffs' *legally cognizable claims* have been met. In this case, plaintiffs have assembled a rather extensive wish list of procedures and processes that they would like to see the NYPD implement. These items, which illustrate the extent to which plaintiffs would like to micromanage the NYPD, go far beyond what is constitutionally required. For example, plaintiffs seek: (1) "retention of a mutually agreed upon police practices expert consultant"; (2) "result- and outcome-based training on racial bias"; (3) "transition to a qualitative, performance-based evaluation system for officers and their

supervisors"; (4) and "employee performance tracking system or early warning system to track dispositions of individual trespass arrests and monitor issues or concerns that warrant corrective action";[9] (5) "more effective information-sharing systems with NYCHA to improve familiarity with residents and authorized visitors"; and (6) "a transparent and independent mechanism of accountability for measuring and/or evaluating the City's compliance with remedial measures".[10] Letter from Johanna Steinberg *et al.*, Counsel for Plaintiffs, to Hon. Shira Scheindlin (Oct. 6, 2010, at 2. None of these unpleaded claims rises to the level of a constitutional requirement and therefore should not be considered as touchstones for whether plaintiffs' claim for declaratory and injunctive relief should be dismissed as moot. *See Lamar Advertising of Penn., LLC v. Town of Orchard Park*, 356 F.3d 365, 377-78 (2d Cir. 2004); *Granite State Outdoor Advertising, Inc. v. Town of Orange*, 38 Fed. Appx. 680, 683 (2d Cir. 2002) (hereinafter cited as "*Granite State I*").

## POINT II

### AN INJUNCTION IS NOT A CONDITION PRECEDENT FOR RELIEF, AND IN ANY EVENT WOULD BE IMPROPER UNDER THE FACTS OF THIS CASE

As an initial matter, any claim by plaintiffs that an injunction or other "settlement agreement" (including a consent decree) is a mandatory prerequisite for relief in this case would be without merit.  Such an argument would be illogical on its face, as such a requirement

---

[9]  This amorphous request ignores the vast disciplinary and monitoring system the City has in place to address allegations of police misconduct. *See, e.g.*, N.Y. City Charter ch. 18-A. To the extent the plaintiffs are advancing a failure to discipline and/or monitor claim, defendant notes that this claim is grossly under-pleaded in their Complaint and should be dismissed for that reason.  *See, e.g., Cuevas v. City of New York*, 2009 U.S. Dist. LEXIS 114984, at 10-12 (S.D.N.Y. 2009).

[10]  Of course, this last item is nothing more than an inartful way of saying that plaintiffs' request for injunctive relief (or a consent decree) cannot be moot unless and until their request for such relief is granted.  Defendant addresses this fallacious reasoning in Point II, *infra*.

effectively would eviscerate the doctrine of mootness.  As emphasized by the court in *Granite State II, supra*, declaratory and injunctive relief is, in fact, *unavailable* where a case is moot:

> In order to establish that there is a likelihood of success on the merits, as required for an injunction against the Town to lie, the movant must establish that the case is not likely to be moot.  This is so because mootness divests a federal court of jurisdiction to adjudicate the merits of a claim, and hence would negate the litigant's chance of success on that claim.

303 F.3d at 451 (citations omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 193 (2000) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313, (1982): "a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law").

More importantly, the City believes that an injunction would constitute an inappropriate encroachment upon its executive functions under the circumstances of this case. As set forth in Defendant's Rule 56.1 and summarized in the Background section of this memorandum, the City has implemented an extensive and costly training program for its all officers assigned to the Housing Bureau and all precinct housing units.  *See* Rule 56.1 ¶¶ 53-67. Such training program meets or exceeds any and all *constitutional* requirements demanded by plaintiffs, and the City should be permitted to continue to train its officers pursuant to these standards without the continued superintendence of plaintiffs or the Court.

*Reynolds v. Giuliani*, 506 F.3d 183 (2d Cir. 2007) is instructive on this point.  In that case, the Second Circuit analyzed the State's obligation to supervise the City's compliance with certain federal and state public assistance requirements pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).  The District Court awarded plaintiffs permanent injunctive relief,

directing the City to comply with those requirements[11] and further directing the State defendants

to supervise the City's adherence to the injunction.   The District Court assigned specific

monitoring duties to the State, including periodic reviews of City performance and reporting to

the plaintiffs.  *Reynolds*, 506 F.3d at 186-89.  The Second Circuit initially concluded that the

State's measures to foster compliance by the City were constitutionally adequate pursuant to

*Monell* and its progeny.[12]  *See id.* at 195-97.  With respect to the scope of the injunctive relief

granted by the District Court, the court in *Reynolds* stated:

> The authority to issue an injunction is an extraordinary and
> powerful one that is to be used sparingly and cautiously and only
> in a "clear and plain" case. *Rizzo v. Goode*, 423 U.S. 362, 378, 96
> S. Ct. 598, 46 L. Ed. 2d 561 (1976); *Irwin v. Dixion*, 50 U.S. (9
> How.) 10, 33, 13 L. Ed. 25 (1850).  Even greater caution is
> appropriate where a federal court is asked to interfere by means of
> injunctive relief with a state's executive functions, a sphere in
> which states typically are afforded latitude.  *Rizzo*, 423 U.S. at
> 378-80 . . .
>
> *              *              *
>
> Such federalism concerns underlie the instant litigation.  Indeed,
> they are exacerbated by evidence of the state defendants' efforts to
> improve the City's compliance with federal law.  It is often more
> difficult to discern a defendant's culpability if he has acted to
> prevent harm than where he has failed to act at all.  Plaintiffs'
> claim that the state should have supervised more or differently put
> pressure on the district court to second guess the state's managerial
> decisions and priorities, a task for which courts are ill-suited.  *See
> City of Canton*, 489 U.S. at 392.

506 F.3d at 198.

Defendant submits that the same considerations that underlie the *Reynolds*

decision militate in favor of dismissal of plaintiff's request for declaratory and injunctive relief

---

[11]  The City did not appeal the District Court's ruling as it applied to its obligations under state
and federal public assistance laws.  *See Reynolds*, 506 F.3d at 186.
[12]  These measures were instituted *after* the litigation was commenced and *before* final judgment
was entered.  *See Reynolds*, 506 F.3d at 195-96.

(or, for that matter, a consent decree) that would dictate the manner in which the NYPD patrols NYCHA property and/or how it trains its officers regarding such patrols. Where, as in the present case, the City has met its constitutional obligations in this regard, *see* Point I, *supra*, the need for intrusive equitable relief does not exist.

## POINT III

### THERE IS NO DANGER THAT DEFENDANT WILL ABANDON ITS CURRENT PATROL POLICY

Defendant submits that the Court in any event should exercise its discretion and dismiss plaintiffs' claim for declaratory and injunctive relief as moot. Not only is there no danger that the City will abandon its current NYCHA patrol policy pursuant to Interim Order 23, but prudential concerns caution against injunctive relief that would disrupt the on-going cooperative process among the NYPD, NYCHA and NYCHA tenants to resolve issues relating to NYCHA property and tenants.

**A.**    **There Is No Reasonable Expectation That the City Will Abandon Its Previous Current Patrol Policy**

As previously established in Point I, *supra*, Interim Order 23 and the NYCHA Patrol Training have eliminated any arguable constitutional basis for plaintiffs request for declaratory and injunctive relief. Whether there is any reasonable expectation that the City would "repeal" Interim Order 23 and retrain its officers accordingly, *see, e.g., Granite State II, supra,* 303 F.3d at 451, should be answered in the negative.

In determining whether a claim should be considered moot based on voluntary cessation, the courts have looked at a variety of factors, none of which are dispositive. These factors include: (1) as discussed *supra*, whether the representations of a change in policy are being made by a governmental body, which is entitled to more deference than a private party

making similar representations, *e.g. Lillback ex rel. Mauclaire v. Connecticut Dep't of Educ.*, 397 F.3d 77, 89 (2d Cir. 2005); (2) whether the defendant has issued any written directive abandoning the alleged practice, *see Stauber v. City of New York*, 2004 U.S. Dist. LEXIS 13350, at 53 (S.D.N.Y. 2004) (noting that "[n]o written directive abandoning the [challenged] policy [had] been issued" by the NYPD); (3) the ease with which the defendant could re-establish its old policy after the claim is declared moot, *see City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982) (noting that the City could change its policy simply by re-enacting the challenged provision, as it had done in the past); (4) whether the circumstances of the case show that the defendant changed its policy merely to avoid judicial scrutiny of the challenged practice, *see Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996) (claim held moot where, *inter alia*, the defendant withdrew an allegedly improper bar application question prior to the commencement of the litigation challenging the question); and (5) whether the circumstances of the case show that defendant believes the change in policy is appropriate or otherwise expresses reservations about the effectiveness of the change. *See United States v. New York City Transit Auth.*, 97 F.3d 672, 676 (2d Cir. 1996). As discussed below, these factors weigh in favor of dismissal of plaintiffs claim for declaratory and injunctive relief.

First, governmental entities (the NYPD and NYCHA) have implemented Interim Order 23 and have done so in an open manner with the full input of the group most affected by the NYPD's patrols of NYCHA property – namely, the NYCHA tenants themselves. This is not a case where the party asserting a policy change is an unscrutinized, self-interested private entity. *See Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *cert. granted on other grounds*, 130 S. Ct. 3319 (2010). Rather, the current procedure for patrolling NYCHA property has been implemented by government officials, who are entitled to more deference with respect to their

14

policy announcements.  *See Lillbask*, 397 F.3d at 89; *Lamar Advertising of Penn., LLC v. Town of Orchard Park*, 356 F.3d 365, 376 (2d Cir. 2004); *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992).

Second, the current policy for patrolling NYCHA property has been incorporated into the Patrol Guide in the form of Interim Order 23.  Rule 56.1 ¶ 3.  Also reduced to writing is the NYCHA Patrol Training.  Rule 56.1 ¶ 44.  Accordingly, this factor also should weigh in favor of mootness.  *See Stauber*, 2004 U.S. Dist. LEXIS 13350, at 53.

A third factor weighing in favor of mootness in this case is the obstacles the City would encounter if it were to revert to its previous policy and training.  In conjunction with NYCHA and its tenants organization, the City invested a significant amount of time creating Interim Order 23.  Moreover, the cost to the City (both in dollars and lost police time) has been immense.  At present, over 1800 officers in Phase I (those assigned to patrol NYCHA property) have been trained at a projected cost of approximately $500,000.  Phase II training (police officers, sergeants and lieutenants assigned to the Patrol Services Bureau and not within a precinct housing team) should be trained within the next twelve months.[13]  All totaled, it is anticipated that Phase I and Phase II training of NYPD officers with respect to Interim Order 23 will cost the City approximately $2.7 million.  Rule 56.1 ¶¶ 53-68.  Accordingly, the possibility that the City would "repeal" Interim Order 23 and spend the equivalent time and money to untrain its officers is distantly remote, at best.[14]

---

[13]   Phase II training also will include LEAD training for sergeants and lieutenants, additional annual training (so those officers trained during Phase I will be trained again as part of Phase II), as well as training appropriate for higher-level supervisors as part of the NYPD's Executive Development program.  *See* Rule 56.1 ¶¶ 60-67.

[14]   Going hand-in-hand with the first factor is the *practical* impossibility of the City reverting to its policy, given the above-board nature of the City's work with NYCHA and CCOP to resolve

Fourth, the facts show that the process of revising the Patrol Guide was well underway approximately five months before plaintiffs threatened the present action and seven months before this action was filed. Rule 56.1 ¶¶ 13-41. Although this factor is not a "race to the courthouse", *see Granite State II, supra*, 303 F.3d at 451 (request for injunctive relief mooted even though the defendant town changed its unconstitutional regulation change after the filing of the lawsuit and "[s]hortly before the district court was to rule on [plaintiff's] motion for a preliminary injunction"), it nevertheless should weigh in favor of mootness, as the City and NYCHA showed independent, good faith efforts to address what became the subject of plaintiffs' request for declaratory and injunctive relief long before the commencement of this litigation.

Finally, it should be clear from the NYPD's and NYCHA's working relationship with CCOP that Defendant believes the change in policy is appropriate and has no reservations about the effectiveness of the change. *See New York City Transit Auth.*, 97 F.3d at 676. For example, Commissioner Kelly's letter to CCOP and NYCHA, Rule 56.1 ¶ 38, reflects the City's view that Interim Order 23 and NYCHA Patrol Training was a positive development both for the NYPD's law enforcement efforts and the quality of life of NYCHA tenants.

In sum, therefore, Defendant submits that "there is no reasonable expectation that the alleged violation will recur" in this case, *Granite State II, supra*, 303 F.3d at 451, and therefore that plaintiffs claim for declaratory and injunctive relief should be dismissed as moot.

---

NYCHA tenants' concerns about patrols of NYCHA property and the high profile nature of this case.

**B.** **Prudential Considerations Also Militate in Favor of Dismissal of Plaintiffs' Claim for Declaratory and Injunctive**

Defendant submits that prudential concerns further weigh heavily in favor of dismissal in this case. "A defendant's voluntary cessation of a challenged practice . . . is an important factor bearing on the question whether a court *should* exercise its power to enjoin the defendant from renewing the practice . . ." *City of Mesquite*, 455 U.S. at 289 (emphasis added). As previously noted, a federal judge "is not mechanically obligated to grant an injunction for every violation of law." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982); *accord Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 193 (2000). Even where a claim for declaratory and injunctive relief is dismissed as moot, the prospect of other relief – such a civil damages, *cf. Friends of the Earth,* 528 U.S. at 193, or even a future action for relief based on the new practice, *see Lamar Advertising of Penn.*, 356 F.3d at 378 – remain. Furthermore, as the Court in *Friends of the Earth* highlighted, "an injunction [can] be an excessively intrusive remedy, because it could entail continuing superintendence of the [defendant's] activities by a federal court – a process burdensome to court and [defendant] alike." 528 U.S. at 193 (citing *City of Mesquite*, 455 U.S. at 289).

In the present case, not only are plaintiffs' *constitutional* concerns fully addressed by Interim Order 23 and the NYCHA Patrol Training, but the NYPD and the NYCHA tenants are continuing to work together to ensure that the concerns of NYCHA residents on a variety of matters will be addressed. *See* Rule 56.1 ¶¶ 37-39. In such a situation, the City believes that continued superintendence of this matter by the Court and plaintiffs in the context of the present lawsuit would not be productive. Such continued superintendence in the form of an injunction or other similar relief risks discouraging the on-going cooperative and constructive relationship among the NYPD, NYCHA and NYCHA that has been built over the past year and a half.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment on Plaintiffs' Claim for Declaratory and Injunctive Relief should be granted in its entirety.

Dated:   New York, New York
         December 10, 2010

> MICHAEL A. CARDOZO
> Corporation Counsel of the
>   City of New York
> Attorney for Defendant City
>   of New York
> 100 Church Street, Room 3-152
> New York, New York 10007
> (212) 788-0891

By: _____
                    Judson Vickers

TO:   Jason Williamson, Esq.
      Paul, Weiss, Rifkind, Wharton & Garrison LLP
      1285 Avenue of the Americas
      New York, NY 10019

      Johanna B. Steinberg, Esq.
      NAACP Legal Defense & Educational Fund, Inc.
      99 Hudson, 16th Floor
      New York, NY 10013

      William Gibney, Esq.
      The Legal Aid Society
      199 Water Street
      New York, NY 10038

      *Attorneys for Plaintiffs*

      Steven Rappaport, Esq.
      New York City Housing Authority
      250 Broadway, 9th Floor
      New York, NY 10007

      *Attorney for the New York City Housing Authority*