UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- x

KELTON DAVIS, WILLIAM TURNER, ALTAGRACIA
HERNANDEZ, EDWIN LARREGUI, ROMAN JACKSON,
KRISTIN JOHNSON, ELEANOR BRITT, ANTHONY
ANDERSON, LASHAUN SMITH, SHAWNE JONES,
HECTOR SUAREZ, ADAM COOPER, ANDREW
WASHINGTON, P.L. by his parent LISA PIGGOTT, DAVID
WILSON, and GENEVA WILSON, individually and on behalf
of a class of all others similarly situated,

                                                   Plaintiffs,

                     -against-

THE CITY OF NEW YORK and NEW YORK CITY
HOUSING AUTHORITY,

                                      Defendants.

------------------------------------------------------------------------------- x

**DECLARATION OF
EDWARD DELATORRE**

10 Civ. 699 (SAS)

               **EDWARD DELATORRE,** for his declaration pursuant to 28 U.S.C. § 1746,

states:

               1.    I am an Assistant Chief in the New York City Police Department ("NYPD")

and have been with the NYPD since 1980. In addition to other positions I have held since that

time, including Commanding Officer of the Police Academy, I have been the Executive Officer

of the NYPD's Housing Bureau since August 2005. As such, I am familiar with the facts stated

herein. I submit this declaration in support of Defendant City of New York's Memorandum of

Law in Support of Its Motion for Summary Judgment on Plaintiffs' Claim for Declaratory and

Injunctive Relief.

               2.    The responsibilities of the NYPD Housing Bureau include the provision of

police services in public housing facilities operated by the New York City Housing Authority

("NYCHA"); the creation and maintenance of comprehensive police initiatives that are responsive to the needs of the residents of public housing and which reflect the police department's overall crime and quality of life strategies; the establishment and maintenance of working relationships between the NYPD Housing Bureau and NYCHA management and residents; and the evaluation of security needs and crime prevention in NYCHA developments with the goal of making public housing safer.

3.    As Executive Officer of the Housing Bureau, my duties include assisting the Chief of the Housing Bureau in the oversight of Housing Bureau operations, coordination of Housing Bureau issues with the Patrol Services Bureau, and acting as liaison with NYCHA and its residents, as detailed herein.

4.    Attached hereto as Exhibit A is a copy of Interim Order number 23, which was issued by the NYPD on June 8, 2010, and replaced Patrol Guide Section 212-60 ("Interim Order 23").[1]  Interim Order 23 addresses interior vertical patrols of NYCHA buildings "[t]o provide uniformed members of the service additional guidance concerning situations occurring within Housing Authority facilities [and] illustrates appropriate action to be taken with consideration afforded to the uniqueness and totality of the circumstances surrounding each encounter." Exh. A at 1.

5.    Along with other related sections of the Patrol Guide – such as PG 208-01 (Law of Arrest) and PG 212-11 (Stop and Frisk), *see* Exh. A at 3 – and directives – such as Operations Order 11 (Department Policy Regarding Racial Profiling), attached hereto as Exhibit

---

[1]  Though referred to as an "interim order", the order in fact is (and has been since June 8, 2010) a fully effective part of the NYPD's Patrol Guide and will be incorporated into that Patrol Guide when the next version is published.

B – Interim Order 23 represents the NYPD's policy and practice with respect to NYCHA property patrols.

6.     Interim Order 23 superseded PG 212-60 with respect to NYCHA interior vertical patrol of housing authority buildings. PG 212-60, issued January 1, 2000, is attached hereto as Exhibit C. While entitled "interior vertical patrol of housing authority buildings" this procedure also provides guidance regarding overall responsibilities throughout NYCHA property.

7.     The express purpose of Interim Order 23 is "[t]o assist the Housing Authority in enforcing its rules, limiting criminal activity, providing a safe and secure environment and ensuring the habitability of its residential buildings for Housing Authority residents and their guests by performing interior vertical patrols." Exh. A at 1.

8.     To this end, Interim Order 23 modified and added to PG 212-60 in aspects material to the present action. Such modifications and additions focus on the conduct of police officers when they approach individuals on NYCHA property. Interim Order 23 discusses in enhanced detail when "a uniformed member of the service may approach and question persons who may be violating Housing Authority rules and regulations, including potentially unauthorized persons found in Housing Authority buildings." Exh. A at 1. However, over and above PG 212-60, Interim Order 23 emphasizes and expands upon what have been existing policies of the NYPD, including, among other things:

a.     that "an officer may not stop (temporarily detain) a suspected trespasser unless the officer reasonably suspects that the person is in the building without authority", *id.* (emphasis in original);

- 3 -

b.    that "[s]ome factors which may contribute to 'reasonable suspicion,' in addition to those factors set forth in PG 212-11, 'Stop and Frisk,' include contradictory assertions made to justify presence in the building and/or assertions lacking credibility made to justify presence in the building", *id.*; and

c.    that, upon encountering persons who might be violating NYCHA rules and regulations or might not be authorized to be within NYCHA property: (1) officers must approach such person(s) and ask if they live in the building, are visiting someone in the building, and/or have business within the building (with a special note that "[w]hen a person's authority to be present in the building is in question, take reasonable measures to verify such authority (e.g., asking for identification, a key to the building entrance doors, etc.)"); (2) officers must take appropriate police action, such as preparing a Field Report, when there is a Rules violation (PG 207-29) or criminal enforcement as appropriate; (3) in cases where "a person refuses to explain or is unable to explain his or her presence in the building, the officer may instruct the person that he or she must leave the building or be subject to arrest for trespass"; (4) officers may arrest such a person for trespass if he or she "refuses to exit the building and does not promptly establish a right to be in the building"; (5) the officer may take appropriate police action pursuant to PG 212-11 (Stop and Frisk) "[i]f reasonable suspicion develops that a person has committed is committing or is about to commit a felony or Penal Law misdemeanor"; and (6) the officer should take appropriate action pursuant to PG 208-01 (Law of Arrest) "[i]f probable cause develops that a person has committed or is committing an offense or crime". *Id.* at 2.

9.    The process of revising the Patrol Guide with respect to NYCHA property patrols began in the summer of 2009. The process was, in part, a response to concerns raised by NYCHA residents about the way the NYPD was policing NYCHA property, including how it

-4-

was conducting vertical patrols. Those concerns were voiced by NYCHA representatives and tenant leaders in meetings with NYPD officials, and I am informed that the concerns were also raised before the CCRB. As a result of the concerns raised, the NYPD recognized the benefit of providing additional guidance to police officers patrolling NYCHA property. As noted, the Patrol Guide has been amended and, as detailed below, extensive training is being provided.

10. Commencing in June 2009, and throughout that summer, other members of the NYPD and I met with the new NYCHA Chairman John B. Rhea, and other members of his senior staff. We discussed a variety of issues of mutual concern to NYPD, NYCHA and its residents including patrolling NYCHA property, the enforcement of NYCHA rules and policies, and interaction with residents and guests.

11. As a result of these meetings, everyone agreed to have further meetings, and also agreed that NYCHA residents should be included in the discussions.

12. Subsequently, on October 15, 2009, the NYPD and NYCHA met with the Citywide Council of Presidents (the "CCOP"). CCOP is the duly elected tenant association tasked with the responsibility of representing the interests of public housing residents throughout the five Boroughs of New York City.  Excerpts of the minutes of this meeting are attached hereto as Exhibit D. These excerpts show:

a. a frank and open discussion among Chairman Rhea, the NYPD and CCOP members about tenant concerns about the NYPD's vertical patrol practices, *see* Exh. D at 38-54;

b. a proposal by Chairman Rhea to continue to hold quarterly meetings that would include NYPD, NYCHA and tenant representatives "to create a steppingstone to better security and safety, and also better public relations between the police department and

-5-

residents [and] to make sure our law enforcement resident relationship is a constructive one going forward", *see id.* at 67-69;

> c.  a discussion of additional NYPD training, *see id.* at 79-80; and

> d.  the establishment of a Safety and Security Task Force ("SSTF") to "get into the nitty-gritty" of the issues discussed, including the NYPD's stop and frisk policy and possible alternatives to such policy. *See id.* at 76-85.

13.  The SSTF, co-chaired by Chairman Rhea and Reginald Bowman, President of the Citywide Council of Presidents, was established in October 2009 and has met regularly to address issues of relations among NYCHA residents and NYPD, to improve safety and security in NYCHA developments, and to improve the quality of life for NYCHA residents.

14.  The first SSTF meeting was held on December 10, 2009.[2] At this meeting, NYPD patrols of NYCHA property were discussed. Also at this December 10, 2009 meeting, SSTF subcommittees were established. The subcommittees most pertinent to NYPD patrols of NYCHA property were the NYPD's Policies and Relationships with Residents and the NYCHA Rules and Regulations subcommittees. Together, these subcommittees addressed which NYCHA rules needed to be implemented and enforced.

15.  CCOP, NYCHA and NYPD continued to meet to address NYCHA property patrols, as well as other issues of concern to NYCHA residents. These meetings took the form SSTF meetings (as recommended by CCOP and unanimously approved at the October 15, 2009 meeting), which initially met every three weeks, and now, on an ongoing basis meets monthly. Additionally, in total, there are five subcommittees of the SSTF which each meet approximately

---

[2]  On November 30, 2009, CCOP's President Reginald Bowman met privately with NYPD Commissioner Raymond Kelly to discuss NYPD property patrols and tenant concerns regarding these patrols.

every two weeks, each addressing specific designated topics. These meetings represent a significant commitment of time and effort by all participants.

16.  I attended almost all of the SSTF meetings, as well as the meetings of the subcommittees identified above (and others).

17.  SSTF has committed to remain a permanent task force, to improve the safety, security and quality of life at NYCHA housing developments.

18.  The continued spirit of cooperation among the NYPD, NYCHA and CCOP is illustrated by the letter from Commissioner Kelly to CCOP and NYCHA, dated September 27, 2010, and CCOP and NYCHA's response thereto, dated November 16, 2010. These letters, attached hereto as Exhibits E and F, respectively, discuss additional work of the SSTF, including work regarding NYCHA "House Rules".

19.  After thorough review by the NYPD Policies and Relationships with Residents subcommittee, what was then proposed in Interim Order 23 was presented to the SSTF.  Since at least the summer of 2009, the NYPD was discussing expanding the guidance provided by PG 212-60, and active discussions regarding the revisions to the Patrol Guide were taking place in October 2009.

20.  At a meeting of the NYPD Policies and Relationships with Residents subcommittee on February 24, 2010, I shared with the subcommittee a chart that compared the items requested by the subcommittee (column one), the existing patrol guide (column two)  and the draft revised Patrol Guide (column three). This chart, attached hereto as Exhibit G,[3] shows

---

[3]  This chart is labeled as attorney work product.  Given the importance of the contents of the document to the ultimate resolution of the subcommittee's discussions, the NYPD decided to waive any privilege protection for that document.

that the NYPD, NYCHA and the NYCHA residents were engaged in an open dialogue regarding the development of Interim Order 23.

21.    After Interim Order 23 was issued, the NYPD developed a training curriculum for Interim Order 23. The curriculum incorporated input from the NYPD Policies and Relationships with Residents subcommittee, including the resident members. Attached hereto as Exhibit H is a copy of the NYPD lesson plan.

22.    As can be seen from these training materials, the following matters were covered in detail: (1) "the purpose and rationale for conducting interior vertical patrols within Housing Authority property", *see* Exh. H at 3; (2) "the importance of proper interactions between police officers and Housing Authority residents", *see id.* at 4; and (3) "the revision to Patrol Guide section 212-60, 'Interior Vertical Patrol of Housing Authority Buildings'", which included changes pursuant to Interim Order 23 underlined. *See id.* at 5-19. As can be seen in this last portion of the training materials, the level of detail is high and the concepts are illustrated with numerous scenarios that officers likely would encounter. *See id.* at 9-16.

23.    CCOP and the SSTF each expressed their satisfaction with the contents of Interim Order 23. With respect to the training, however, a critical concern of theirs (over and above the legal refinements established by Interim Order 23) was the emphasis on police professionalism when dealing with NYCHA tenants and visitors. As noted in ¶ 22(2) above, this concern was addressed.

24.    The lesson plan was designed to be presented in a 90-minute curriculum. *See* Exh. H at 1. In Phase I of the training, as described in more detail below, the NYPD allotted three hours for the lesson to ensure understanding of the material and to provide ample opportunity for question-and-answer sessions.

25.    The NYCHA property patrol training has been and continues to be rolled out as follows: (1) Phase I training includes all uniform members of the Housing Bureau of all rank, including executives, as well as members of the Patrol Services Bureau assigned to precinct housing teams (members of precinct housing teams patrol NYCHA developments on a regular basis); and (2) Phase II training for police officers, sergeants and lieutenants assigned to the Patrol Services Bureau and not within a precinct housing team.

26.    At present, approximately 90% of Phase I has been completed, with over 1800 officers trained.    This training has been conducted on overtime, with a projected cost of approximately $500,000.    It is anticipated that the remaining 10% (absences typically due to vacation, illness, etc.) will be trained over the next few months.

27.    Phase II training should be completed within the next twelve months. Interaction by officers to be trained in Phase II with individuals on NYCHA property is considerably less frequent than by officers in Phase I.   Indeed, Phase II officers typically do not engage in vertical patrols at all.   Nonetheless, the NYPD recognizes the importance of training these officers regarding the patrol of NYCHA developments.   These officers will be trained during their required annual training known as In-Tac.  This lesson is planned for the original 90 minute curriculum.

28.    Phase II sergeants and lieutenants will receive the substance of this training, modified for their supervisory role, also in the 90 minute curriculum, during their annual training known as LEAD training.

29.    It should also be noted that the training is part of police officers', sergeants', and lieutenants' required annual training, so those officers trained during Phase I will be trained again as part of Phase II.

30. The Department also intends to present the course, in modified form appropriate for higher-level supervisors, to captains and above, as part of its Executive Development program.

31. In addition, in order to reinforce the message of this training the NYPD is in the process of developing a video and training, also reflecting resident input, to be utilized in command level training, also known as roll call training. This training component is distributed to all officers in all Bureaus.

32. All totaled, it is projected that Phase I and Phase II training of NYPD officers with respect to Interim Order 23 will cost the City approximately $2.7 million.

33. By letter dated November 6, 2009 sent to the City's Law Department, the NYPD and NYCHA, attorneys for plaintiffs in the present matter threatened litigation if the NYPD and NYCHA failed "to revise the vertical patrol and trespass policies and procedures immediately". A copy of this letter is attached hereto as Exhibit I. As I have noted, the NYPD was already meeting with NYCHA representatives and tenant leaders, since June and October 2009, respectively. The process of revising the Patrol Guide was already well underway.

34. After the present lawsuit was filed on or about January 28, 2010, I received a copy of a letter the President of CCOP (Reginald Bowman) sent to counsel for plaintiffs urging them to withdraw the lawsuit. A copy of this letter is attached hereto as Exhibit J.

35. In that letter, Bowman expressed dismay at the filing of the lawsuit, noting the progress the NYPD, NYCHA and NYCHA tenants had been making. Specifically, Bowman stated that he was aware of the issues raised in plaintiffs letter and that CCOP, NYCHA and the NYPD "have been actively at work to address this matter". Exh. J at 1. Bowman further noted the creation of the SSTF "to work cooperatively to come up with a set of specific

- 10 -

recommendations", which represented a commitment to revise the vertical patrol and trespass policies "in a responsible manner", and that the filing of the litigation was "premature and counterproductive to the goal of influencing the change in policy and practices that we all agree need to be changed." *Id.* at 1-2.

36.    As noted above, and despite the threat of litigation and the subsequent filing of the lawsuit, NYCHA residents, NYCHA and the NYPD continue their commitment to meet and address safety, security and quality of life issues in NYCHA developments.    This commitment includes and goes well beyond the scope of issues addressed in this declaration.

I declare under penalty of perjury that the foregoing is true and correct. Executed in New York, New York, on December 10, 2010.

EDWARD DELATORRE

- 11 -