UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- x

KELTON DAVIS, WILLIAM TURNER, ALTAGRACIA HERNANDEZ, EDWIN LARREGUI, ROMAN JACKSON, KRISTIN JOHNSON, ELEANOR BRITT, ANTHONY ANDERSON, LASHAUN SMITH, SHAWNE JONES, HECTOR SUAREZ, ADAM COOPER, ANDREW WASHINGTON, P.L. by his parent LISA PIGGOTT, DAVID WILSON, and GENEVA WILSON, individually and on behalf of a class of all others similarly situated,

                              Plaintiffs,

-against-

THE CITY OF NEW YORK and NEW YORK CITY HOUSING AUTHORITY,

                              Defendants.

**DEFENDANT CITY OF NEW YORK'S STATEMENT OF FACTS PURSUANT TO LOCAL RULE 56.1**

10 Civ. 699 (SAS)

------------------------------------------------------------------------------- x

       Defendant City of New York respectfully submits this statement pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, to set forth material facts as to which it contends there are no genuine disputes to be tried for the purpose of its Motion for Summary Judgment on Plaintiffs' Claim for Declaratory and Injunctive Relief:

       1. The responsibilities of the NYPD Housing Bureau include the provision of police services in public housing facilities operated by the New York City Housing Authority ("NYCHA"); the creation and maintenance of comprehensive police initiatives that are responsive to the needs of the residents of public housing and which reflect the police department's overall crime and quality of life strategies; the establishment and maintenance of working relationships between the NYPD Housing Bureau and NYCHA management and

residents; and the evaluation of security needs and crime prevention in NYCHA developments with the goal of making public housing safer. Declaration of Edward Delatorre ("Delatorre Dec.") at ¶ 2.

2. Assistant Chief Edward Delatorre is an Executive Officer of the Housing Bureau whose duties include assisting the Chief of the Housing Bureau in the oversight of Housing Bureau operations, coordination of Housing Bureau issues with the Patrol Services Bureau, and acting as liaison with NYCHA and its residents. Delatorre Dec. at ¶ 3.

3. Interim Order number 23 was issued by the NYPD on June 8, 2010, and replaced Patrol Guide Section 212-60 ("Interim Order 23"). Delatorre Dec. at ¶ 4, Exh. "A".

4. Though referred to as an "interim order", the order is (and has been since June 8, 2010) a fully effective part of the NYPD's Patrol Guide and will be incorporated into that Patrol Guide when the next version is published. Delatorre Dec. at ¶ 4, Exh. "A".

5. Interim Order 23 addresses interior vertical patrols of NYCHA buildings "[t]o provide uniformed members of the service additional guidance concerning situations occurring within Housing Authority facilities [and] illustrates appropriate action to be taken with consideration afforded to the uniqueness and totality of the circumstances surrounding each encounter." Delatorre Dec. at ¶ 4, Exh. "A" at 1.

6. Along with other related sections of the Patrol Guide such as PG 208-01 (Law of Arrest) and PG 212-11 (Stop and Frisk), and directives such as Operations Order 11 (Department Policy Regarding Racial Profiling), Interim Order 23 represents the NYPD's policy and practice with respect to NYCHA property patrols. Delatorre Dec. at ¶ 5, Exh. "A" at 3 and Exh. "B".

7. Interim Order 23 superseded PG 212-60 with respect to NYCHA interior vertical patrol of housing authority buildings. Delatorre Dec. ¶ 6, Exh. "C".

8. While entitled "interior vertical patrol of housing authority buildings" Interim Order 23 also provides guidance regarding overall responsibilities throughout NYCHA property. Delatorre Dec. ¶ 6, Exh. "C".

9. The express purpose of Interim Order 23 is "[t]o assist the Housing Authority in enforcing its rules, limiting criminal activity, providing a safe and secure environment and ensuring the habitability of its residential buildings for Housing Authority residents and their guests by performing interior vertical patrols." Delatorre Dec. ¶ 7, Exh. A at 1.

10. Modifications and additions to Interim Order 23 focus on the conduct of police officers when they approach individuals on NYCHA property. Delatorre Dec. ¶ 8.

11. Interim Order 23 discusses when "a uniformed member of the service may approach and question persons who may be violating Housing Authority rules and regulations, including potentially unauthorized persons found in Housing Authority buildings." Delatorre Dec. ¶ 8, Exh. A at 1.

12. Interim Order 23 emphasizes and expands upon what have been existing policies of the NYPD, including, among other things:

    a. that "an officer may not stop (temporarily detain) a suspected trespasser unless the officer <u>reasonably suspects</u> that the person is in the building without authority" (Delatorre Dec. ¶ 8, Exh. A at 1);

    b. that "[s]ome factors which may contribute to 'reasonable suspicion,' in addition to those factors set forth in PG 212-11, 'Stop and Frisk,' include contradictory

assertions made to justify presence in the building and/or assertions lacking credibility made to justify presence in the building" (Delatorre Dec. ¶ 8, Exh. A at 1); and

   c. that, upon encountering persons who might be violating NYCHA rules and regulations or might not be authorized to be within NYCHA property: (1) officers must approach such person(s) and ask if they live in the building, are visiting someone in the building, and/or have business within the building (with a special note that "[w]hen a person's authority to be present in the building is in question, take reasonable measures to verify such authority (e.g., asking for identification, a key to the building entrance doors, etc.)"); (2) officers must take appropriate police action, such as preparing a Field Report, when there is a Rules violation (PG 207-29) or criminal enforcement as appropriate; (3) in cases where "a person refuses to explain or is unable to explain his or her presence in the building, the officer may instruct the person that he or she must leave the building or be subject to arrest for trespass"; (4) officers may arrest such a person for trespass if he or she "refuses to exit the building and does not promptly establish a right to be in the building"; (5) the officer may take appropriate police action pursuant to PG 212-11 (Stop and Frisk) "[i]f reasonable suspicion develops that a person has committed is committing or is about to commit a felony or Penal Law misdemeanor"; and (6) the officer should take appropriate action pursuant to PG 208-01 (Law of Arrest) "[i]f probable cause develops that a person has committed or is committing an offense or crime". Delatorre Dec. ¶ 8, Exh. A at 2.

  13. The process of revising the Patrol Guide with respect to NYCHA property patrols began in the summer of 2009. Delatorre Dec. ¶ 9.

14. The process was, in part, a response to concerns raised by NYCHA residents about the way the NYPD was policing NYCHA property, including how it was conducting vertical patrols. Delatorre Dec. ¶ 9.

15. Concerns were voiced by NYCHA representatives and tenant leaders in meetings with NYPD officials. Delatorre Dec. ¶ 9.

16. Concerns were also raised before the CCRB. Delatorre Dec. ¶ 9.

17. As a result of the concerns raised, the NYPD recognized the benefit of providing additional guidance to police officers patrolling NYCHA property. Delatorre Dec. ¶ 9.

18. The Patrol Guide has been amended and training is being provided. Delatorre Dec. ¶ 9.

19. Commencing in June 2009, and throughout that summer, other members of the NYPD and Assistant Chief Delatorre met with the new NYCHA Chairman John B. Rhea, and other members of his senior staff. Delatorre Dec. ¶ 10.

20. A variety of issues were discussed of mutual concern to NYPD, NYCHA and its residents including patrolling NYCHA property, the enforcement of NYCHA rules and policies, and interaction with residents and guests. Delatorre Dec. ¶ 10.

21. As a result of these meetings, those who attended the meetings agreed to have further meetings, and also agreed that NYCHA residents should be included in the discussions. Delatorre Dec. ¶ 11.

22. Subsequently, on October 15, 2009, the NYPD and NYCHA met with the Citywide Council of Presidents (the "CCOP"). Delatorre Dec. ¶ 12.

23. CCOP is the duly elected tenant association tasked with the responsibility of representing the interests of public housing residents throughout the five Boroughs of New York City. Delatorre Dec. ¶ 12, Exh. "D".

24. Excerpts of the minutes of the October 15, 2009 meeting show:

    a. a discussion among Chairman Rhea, the NYPD and CCOP members about tenant concerns about the NYPD's vertical patrol practices (Delatorre Dec. ¶ 12, Exh. D at 38-54);

    b. a proposal by Chairman Rhea to continue to hold quarterly meetings that would include NYPD, NYCHA and tenant representatives "to create a steppingstone to better security and safety, and also better public relations between the police department and residents [and] to make sure our law enforcement resident relationship is a constructive one going forward" (Delatorre Dec. ¶ 12, Exh. D at 67-69);

    c. a discussion of additional NYPD training (Delatorre Dec. ¶ 12, Exh. D at 79-80); and

    d. the establishment of a Safety and Security Task Force ("SSTF") to "get into the nitty-gritty" of the issues discussed, including the NYPD's stop and frisk policy and possible alternatives to such policy. (Delatorre Dec. ¶ 12, Exh. D at 76-85).

25. The SSTF, co-chaired by Chairman Rhea and Reginald Bowman, President of the Citywide Council of Presidents, was established in October 2009 and has met regularly to address issues of relations among NYCHA residents and NYPD, to improve safety and security in NYCHA developments, and to improve the quality of life for NYCHA residents. Delatorre Dec. ¶ 13.

26. The first SSTF meeting was held on December 10, 2009. Delatorre Dec. ¶ 14.

27. On November 30, 2009, CCOP's President Reginald Bowman met privately with NYPD Commissioner Raymond Kelly to discuss NYPD property patrols and tenant concerns regarding these patrols. Delatorre Dec. ¶ 14.

28. At this meeting, NYPD patrols of NYCHA property were discussed. Delatorre Dec. ¶ 14.

29. Also at this December 10, 2009 meeting, SSTF subcommittees were established. Delatorre Dec. ¶ 14.

30. The subcommittees most pertinent to NYPD patrols of NYCHA property were the NYPD's Policies and Relationships with Residents and the NYCHA Rules and Regulations subcommittees. Delatorre Dec. ¶ 14.

31. Together, these subcommittees addressed which NYCHA rules needed to be implemented and enforced. Delatorre Dec. ¶ 14.

32. CCOP, NYCHA and NYPD continued to meet to address NYCHA property patrols, as well as other issues of concern to NYCHA residents. Delatorre Dec. ¶ 15.

33. These meetings took the form SSTF meetings (as recommended by CCOP and unanimously approved at the October 15, 2009 meeting), which initially met every three weeks, and now, on an ongoing basis meets monthly. Delatorre Dec. ¶ 15.

34. Additionally, in total, there are five subcommittees of the SSTF which each meet approximately every two weeks, each addressing specific designated topics. Delatorre Dec. ¶ 15.

35. These meetings represent a significant commitment of time and effort by all participants. Delatorre Dec. ¶ 15.

36. Assistant Chief Delatorre attended almost all of the SSTF meetings, as well as the meetings of the subcommittees identified above (and others). Delatorre Dec. ¶ 16.

37. SSTF has committed to remain a permanent task force, to improve the safety, security and quality of life at NYCHA housing developments. Delatorre Dec. ¶ 17.

38. The continued spirit of cooperation among the NYPD, NYCHA and CCOP is illustrated by the letter from Commissioner Kelly to CCOP and NYCHA, dated September 27, 2010, and CCOP and NYCHA's response thereto, dated November 16, 2010. Delatorre Dec. ¶ 18, Exh. "E" and Exh. "F".

39. The September 27 and November 16, 2010 letters discuss additional work of the SSTF, including work regarding NYCHA "House Rules". Delatorre Dec. ¶ 18, Exh. "E" and Exh. "F".

40. After thorough review by the NYPD Policies and Relationships with Residents subcommittee, what was then proposed in Interim Order 23 was presented to the SSTF. Delatorre Dec. ¶ 19.

41. Since at least the summer of 2009, the NYPD was discussing expanding the guidance provided by PG 212-60, and active discussions regarding the revisions to the Patrol Guide were taking place in October 2009. Delatorre Dec. ¶ 19.

42. At a meeting of the NYPD Policies and Relationships with Residents subcommittee on February 24, 2010, Assistant Chief Delatorre shared with the subcommittee a chart that compared the items requested by the subcommittee (column one), the existing patrol

guide (column two) and the draft revised Patrol Guide (column three). Delatorre Dec. ¶ 20, Exh. "G".

43. The chart shows that the NYPD, NYCHA and the NYCHA residents were engaged in a dialogue regarding the development of Interim Order 23. Delatorre Dec. ¶ 20, Exh. "G".

44. After Interim Order 23 was issued, the NYPD developed a training curriculum for Interim Order 23. Delatorre Dec. ¶ 21, Exh. "H".

45. The curriculum incorporated input from the NYPD Policies and Relationships with Residents subcommittee, including the resident members. Delatorre Dec. ¶ 21, Exh. "H".

46. As can be seen from these training materials, the following matters were covered: (1) "the purpose and rationale for conducting interior vertical patrols within Housing Authority property"(Delatorre Dec. ¶ 22, Exh. H at 3); (2) "the importance of proper interactions between police officers and Housing Authority residents" (Delatorre Dec. ¶ 22 Exh. H at 4); and (3) "the revision to Patrol Guide section 212-60, 'Interior Vertical Patrol of Housing Authority Buildings'", which included changes pursuant to Interim Order 23 underlined. (Delatorre Dec. ¶ 22 Exh. H at 5-19).

47. As can be seen in this last portion of the training materials, concepts are illustrated with numerous scenarios that officers likely would encounter. Delatorre Dec. ¶ 22 Exh. H at 9-16.

48. CCOP and the SSTF each expressed their satisfaction with the contents of Interim Order 23. Delatorre Dec. ¶ 23.

49. With respect to the training, however, a critical concern of theirs (over and above the legal refinements established by Interim Order 23) was the emphasis on police professionalism when dealing with NYCHA tenants and visitors. Delatorre Dec. ¶ 23.

50. As noted in ¶ 46 (2) above, this concern was addressed. Delatorre Dec. ¶ 23.

51. The lesson plan was designed to be presented in a 90-minute curriculum. Delatorre Dec. ¶ 24, Exh. H at 1.

52. In Phase I of the training, the NYPD allotted three hours for the lesson to ensure understanding of the material and to provide ample opportunity for question-and-answer sessions. Delatorre Dec. ¶ 24.

53. The NYCHA property patrol training has been and continues to be rolled out as follows: (1) Phase I training includes all uniform members of the Housing Bureau of all rank, including executives, as well as members of the Patrol Services Bureau assigned to precinct housing teams (members of precinct housing teams patrol NYCHA developments on a regular basis); and (2) Phase II training for police officers, sergeants and lieutenants assigned to the Patrol Services Bureau and not within a precinct housing team. Delatorre Dec. ¶ 25.

54. At present, approximately 90% of Phase I has been completed, with over 1800 officers trained. Delatorre Dec. ¶ 26.

55. This training has been conducted on overtime, with a projected cost of approximately $500,000. Delatorre Dec. ¶ 26.

56. It is anticipated that the remaining 10% (absences typically due to vacation, illness, etc.) will be trained over the next few months. Delatorre Dec. ¶ 26.

57. Phase II training should be completed within the next twelve months. Delatorre Dec. ¶ 27.

58. Interaction by officers to be trained in Phase II with individuals on NYCHA property is considerably less frequent than by officers in Phase I. Delatorre Dec. ¶ 27.

59. Indeed, Phase II officers typically do not engage in vertical patrols at all. Delatorre Dec. ¶ 27.

60. Nonetheless, the NYPD recognizes the importance of training these officers regarding the patrol of NYCHA developments. Delatorre Dec. ¶ 27.

61. These officers will be trained during their required annual training known as In-Tac. Delatorre Dec. ¶ 27.

62. This lesson is planned for the original 90 minute curriculum. Delatorre Dec. ¶ 27.

63. Phase II sergeants and lieutenants will receive the substance of this training, modified for their supervisory role, also in the 90 minute curriculum, during their annual training known as LEAD training. Delatorre Dec. ¶ 28.

64. Training is part of police officers', sergeants', and lieutenants' required annual training, so those officers trained during Phase I will be trained again as part of Phase II. Delatorre Dec. ¶ 29.

65. The Department also intends to present the course, in modified form appropriate for higher-level supervisors, to captains and above, as part of its Executive Development program. Delatorre Dec. ¶ 30.

66. In addition, in order to reinforce the message of this training the NYPD is in the process of developing a video and training, also reflecting resident input, to be utilized in command level training, also known as roll call training. Delatorre Dec. ¶ 31.

67. This training component is distributed to all officers in all Bureaus. Delatorre Dec. ¶ 31.

68. All totaled, it is projected that Phase I and Phase II training of NYPD officers with respect to Interim Order 23 will cost the City approximately $2.7 million. Delatorre Dec. ¶ 32.

69. By letter dated November 6, 2009 sent to the City's Law Department, the NYPD and NYCHA, attorneys for plaintiffs in the present matter threatened litigation if the NYPD and NYCHA failed "to revise the vertical patrol and trespass policies and procedures immediately". Delatorre Dec. ¶ 33, Exh. "I".

70. The NYPD was already meeting with NYCHA representatives and tenant leaders, since June and October 2009, respectively and the process of revising the Patrol Guide was already underway. Delatorre Dec. ¶ 33.

71. After the present lawsuit was filed on or about January 28, 2010, Assistant Chief Delatorre received a copy of a letter the President of CCOP (Reginald Bowman) sent to counsel for plaintiffs urging them to withdraw the lawsuit. Delatorre Dec. ¶ 34, Exh. "J".

72. In that letter, Bowman expressed dismay at the filing of the lawsuit, noting the progress the NYPD, NYCHA and NYCHA tenants had been making. Delatorre Dec. ¶ 35, Exh. "J"

73. Specifically, Bowman stated that he was aware of the issues raised in plaintiffs letter and that CCOP, NYCHA and the NYPD "have been actively at work to address this matter". Delatorre Dec. ¶ 35, Exh. "J" at 1.

74. Bowman further noted the creation of the SSTF "to work cooperatively to come up with a set of specific recommendations", which represented a commitment to revise the vertical patrol and trespass policies "in a responsible manner", and that the filing of the litigation was "premature and counterproductive to the goal of influencing the change in policy and practices that we all agree need to be changed." Delatorre Dec. ¶ 35, Exh. "J" at 1-2.

75. Despite the threat of litigation and the subsequent filing of the lawsuit, NYCHA residents, NYCHA and the NYPD continue their commitment to meet and address safety, security and quality of life issues in NYCHA developments. Delatorre Dec. ¶ 36.

Dated: New York, New York
December 13, 2010

MICHAEL A. CARDOZO
Corporation Counsel of the
  City of New York
Attorney for Defendant City of New York
100 Church Street
New York, New York 10007
(212) 788-0792

By: _____
    Heidi Grossman