UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELTON DAVIS, WILLIAM TURNER, EDWIN LARREGUI, ROMAN JACKSON, KRISTIN JOHNSON, ELEANOR BRITT, ANTHONY ANDERSON, LASHAUN SMITH, SHAWNE JONES, HECTOR SUAREZ, ADAM COOPER, ANDREW WASHINGTON, P.L. by his parent LISA PIGGOTT, DAVID WILSON, and GENEVA WILSON, individually and on behalf of a class of all others similarly situated;<br><br>                    Plaintiffs,<br><br>          -against-<br><br>THE CITY OF NEW YORK and NEW YORK CITY HOUSING AUTHORITY;<br><br>                    Defendants. | 10 Civ. 699 (SAS) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CITY OF NEW YORK'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**

NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
99 Hudson Street, Suite 1600
New York, New York 10013-2897
(212) 965-2200

THE LEGAL AID SOCIETY
199 Water Street, 6th Fl.
New York, New York 10038
(212) 577-3300

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ............................................................................................2

I.      The Instant Litigation ......................................................................................2

II.     Events Following The Filing Of The Lawsuit ....................................................4

ARGUMENT ...............................................................................................................7

I.      Summary Judgment Is Improper Because Plaintiffs' Claims for Injunctive
        Relief Are Not Rendered Moot by the City's Alleged Voluntary Cessation ..........8

II.     The Motion for Summary Judgment Should Be Denied as Premature Due
        to an Inadequate Opportunity for Discovery ......................................................23

CONCLUSION ...........................................................................................................24

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ahrens* v. *Bowen,*
   952 F.2d 49 (2d Cir. 1988) ........................................................................ *passim*

*Allstate Ins. Co.* v. *Serio,*
   No. 97 Civ. 670(RCC), 2003 WL 21418198 (S.D.N.Y. May 7, 2003) ............... 22

*Amnesty Am.* v. *Town of W. Hartford,*
   361 F.3d 113 (2d Cir. 2004) ........................................................................ 12

*Armstrong* v. *Ward,*
   529 F.2d 1132 (2d Cir. 1976) ....................................................................... 22

*Brown* v. *Kelly,*
   609 F.3d 467 (2d Cir. 2010) ........................................................................ 20

*Brown* v. *Texas,*
   443 U.S. 47 (1979) ..................................................................................... 16

*Campbell* v. *Greisberger,*
   80 F.3d 703 (2d Cir. 1996) .......................................................................... 10

*Casale* v. *Kelly,*
   710 F. Supp. 2d 347 (S.D.N.Y. 2010) ............................................................ 20

*Celotex Corp.* v. *Catrett,*
   477 U.S. 317 (1986) ................................................................................... 23

*City of Mesquite* v. *Aladdin's Castle, Inc.,*
   455 U.S. 283 (1983) ..................................................................................... 8

*City News & Novelty, Inc.* v. *City of Waukesha,*
   531 U.S. 278 (2001) ..................................................................................... 8

*Clear Channel Outdoor, Inc.* v. *City of New York,*
   594 F.3d 94 (2d Cir. 2010) .......................................................................... 16

*Doe* v. *U.S. Civil Serv. Comm'n,*
   483 F. Supp. 539 (S.D.N.Y. 1980) ................................................................ 10

*Eng* v. *Smith,*
   849 F.2d 80 (2d Cir. 1988) .......................................................................... 21

**Page(s)**

*Fiacco* v. *City of Rensselaer*,
    783 F.2d 319 (2d Cir. 1986) ...................................................................... 12

*Fisher* v. *Koehler*,
    692 F. Supp. 1519 (S.D.N.Y. 1988) ........................................................... 18

*Florida* v. *Bostick*,
    501 U.S. 429 (1991) ..................................................................................... 16

*Friends of the Earth, Inc.* v. *Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167 (2000) .............................................................................. 8, 9, 23

*Galapo* v. *City of New York*,
    95 N.Y.2d 568 (N.Y. 2000) ........................................................................ 22

*Gluth* v. *Kangas*,
    951 F.2d 1504 (9th Cir. 1991) .................................................................... 11

*Harrison & Burrowes Bridge Constructors, Inc.* v. *Cuomo*,
    981 F.2d 50 (2d Cir. 1992) ................................................................. *passim*

*Hilton* v. *Wright*,
    235 F.R.D. 40 (N.D.N.Y. 2006) ......................................................... *passim*

*Humane Soc'y* v. *HVFG, LLC.*,
    No. 06 CV 6829(HB), 2010 WL 1837785 (S.D.N.Y. May 6, 2010) ........... 21

*Huntington Branch, NAACP* v. *Town of Huntington*,
    844 F.2d 926 (2d Cir. 1988) ....................................................................... 18

*Kidder, Peabody & Co., Inc.* v. *Maxus Energy Corp.*,
    925 F.2d 556 (2d Cir. 1991) ................................................................ 10, 21

*Lamar Advertising of Penn, LLC* v. *Town of Orchard Park*,
    356 F.3d 365 (2d Cir. 2004) .............................................................. *passim*

*Lucente* v. *IBM Corp.*,
    310 F.3d 243 (2d Cir. 2002) ......................................................................... 7

*Luten* v. *Daily News LP*,
    No. 97 CIV. 2462 RCC, 2000 WL 335731 (2d Cir. Mar. 30, 2000) ............. 7

*Maneely* v. *City of Newburgh*,
    208 F.R.D. 69 (S.D.N.Y. 2002) ......................................................... 10, 18, 21

*Marriott* v. *County of Montgomery*,
    426 F. Supp. 2d 1 (N.D.N.Y. 2006) ........................................................... 12

**Page(s)**

*Monell* v. *Dep't of Soc. Servs. of City of New York,*
　　436 U.S. 658 (1978)................................................................*passim*

*Monroe* v. *Bombardi,*
　　422 F. Supp. 211 (S.D.N.Y. 1976) .............................................. 10, 19

*Northeastern Florida Chapter of the Assoc. Gen. Contractors of Am.* v. *City of Jacksonville,*
　　508 U.S. 656 (1993)......................................................................9

*People* v. *Powell,*
　　691 N.Y.S.2d 263 (N.Y. Sup. Ct. 1999) ........................................3

*People* v. *Ventura,*
　　No. 2969/10, 2010 WL 5155983 (N.Y. Sup. Ct. Dec. 17, 2010) ......................3, 7

*Quinn* v. *Syracuse Model Neighborhood Corp.,*
　　613 F.2d 438 (2d Cir. 1980) ......................................................23

*Reynolds* v. *Giuliani,*
　　506 F.3d 183 (2d Cir. 2007) ......................................................11

*Salahuddin* v. *Coughlin,*
　　993 F.2d 306 (2d. Cir. 1993) ......................................................23

*Santiago* v. *Miles,*
　　774 F. Supp. 775 (W.D.N.Y. 1991) ........................................ 18, 23

*Soto-Lopez* v. *New York City Civil Serv. Comm'n,*
　　840 F.2d 162 (2d Cir. 1988) ........................................................9

*Tsombanidis* v. *W. Haven Fire Dep't,*
　　352 F.3d 565 (2d Cir. 2003) ......................................................22

*United States* v. *City of New York,*
　　No. 07-cv-2067 (NGG) (RLM), 2010 WL 4137536 (E.D.N.Y. Oct. 19, 2010) ...20

*United States* v. *New York City Transit Auth.,*
　　97 F.3d 672 (2d Cir. 1996) .................................................. 18, 21

*United States* v. *Oregon State Med. Soc'y,*
　　343 U.S. 326 (1952)....................................................................18

*Vergara* v. *Yonkers Pub. Sch.,*
　　386 F. Supp. 2d 377 (S.D.N.Y. 2005)..........................................8

**Page(s)**

## OTHER AUTHORITIES

Fed. R. Civ. P. 15(a)(2)..................................................................................25

Fed. R. Civ. P. 56(a).....................................................................................7

Fed. R. Civ. P. 56(d)........................................................................... 1, 23, 24

Local Rule Rule 56.1 .....................................................................................6

Plaintiffs respectfully submit this Memorandum of Law in Opposition to Defendant City of New York's Motion for Summary Judgment on Plaintiffs' Claims for Declaratory and Injunctive Relief, dated December 10, 2010.

## PRELIMINARY STATEMENT

Defendant City of New York (the "City" or "Defendant") has failed to meet the stringent burden of demonstrating mootness that is necessary to sustain its request for summary judgment on all of Plaintiff's claims for declaratory and injunctive relief in this litigation.  Neither the recently revised New York City Police Department ("NYPD") Patrol Guide ("Patrol Guide") nor the accompanying new training ("Training") obviates the need for Plaintiffs to proceed with discovery.  Thus, litigation of Plaintiffs' claims is merited.

The City's summary judgment motion fails for two fundamental reasons: (1) the City improperly conflates its internal written "policy" with its actual practices and customs, though both establish municipal liability under *Monell* v. *Department of Social Services of City of New York*, 436 U.S. 658 (1978); and (2) the preliminary stage of discovery on the revised Patrol Guide and Training renders it impossible for this Court to reach a judicial determination regarding the existence of material factual disputes.

Defendant City's bald assertion that modifying an internal protocol is equivalent to permanently eliminating the institutional practices that have resulted in the extensive and entrenched unconstitutional enforcement of trespass laws revealed in the Complaint is wholly without merit.  Furthermore, the City has failed to support its motion with any factual evidence demonstrating complete cessation of its unlawful practices and has failed to provide crucial discovery that may undermine its untested contentions.  *See* Rule 56(d) Declaration of Johnathan J. Smith in Support of Plaintiffs' Opposition to

Defendant City of New York's Motion for Partial Summary Judgment, dated December 23, 2010 ("Smith Decl.").  Even if the City had proffered evidence demonstrating voluntary cessation, Plaintiffs' claims cannot be moot because the City has not met its formidable burden of establishing that:  "(1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Lamar Advertising of Penn, LLC* v. *Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004) (citations omitted).

Granting summary judgment on Plaintiffs' claims for declaratory and injunctive relief would be a drastic measure at any point in this litigation.  To do so at this stage would be improper.  Accordingly, this Court should deny the City's motion for summary judgment and permit this litigation to proceed.

## STATEMENT OF FACTS

### I.     The Instant Litigation.

On January 28, 2010, Plaintiffs filed the Complaint in this action.[1] Although the Complaint cites the NYPD Patrol Guide, the crux of this case asserts deficiencies beyond the language of the Patrol Guide to allege a "pattern and practice" of unlawful stops, seizures and arrests for trespass in NYCHA buildings.  Compl. ¶¶ 126–

---

[1]   The City erroneously claims that the Citywide Council of Presidents ("CCOP") sent a letter to Plaintiffs' counsel requesting Plaintiffs withdraw the lawsuit.  Defendant City of New York's Memorandum of Law in Support of Its Motion for Summary Judgment on Plaintiffs' Claims for Declaratory and Injunctive Relief, dated December 10, 2010 ("Def.'s Br."), at 6.  The City was advised by both members of CCOP and Plaintiffs' counsel that the letter was not sent on behalf of CCOP and, in fact, had been sent on CCOP letterhead without the board members' permission or even notification.  Brooker Decl. Ex. A, at 104–07, 110.  Other CCOP board members explicitly opposed the contents of the letter, which was never approved or adopted by CCOP.

2

148. Plaintiffs' claims for injunctive relief aim to end unlawful "vertical patrol policy and trespass arrest practices" that have been "enforced, promoted, encouraged and sanctioned" by the City as "a policy, practice and/or custom." *See, e.g.*, Compl. ¶¶ 187–91.[2] The Complaint never equates the NYPD's written vertical patrol policy with the City's larger trespass enforcement and arrest practices. *See, e.g.*, Compl. ¶¶ 9, 11, 137, 141, 149, 154, 172, 177–82, 186–190, 194–95, 221–22, 224–25, 230–32 (identifying the City's "vertical patrol policy" and "trespass arrest practices" separately).

The Complaint also alleges that the City "failed to supervise and discipline NYPD officers who unlawfully stop, question, seize, search, and arrest individuals for trespass[,]" and that the City does not "monitor improper stops, seizures, and searches for trespass[,]" and has not "instituted any follow up procedure or disciplinary action when charges are dismissed or where it is otherwise established that an individual was arrested without probable cause." Compl. ¶ 147. These factual allegations provide additional support for Plaintiffs' claims for injunctive relief due to "(a) the failure to adequately and properly screen, train, and supervise NYPD officers; (b) the failure to properly and adequately monitor and discipline NYPD officers; and (c) the overt and tacit

---

[2]   During a vertical patrol, "officers stop all who are found, question them as to why they are in the building or on the grounds, and ask for identification showing they live in the building or for an apartment number to verify a legitimate visit." *People* v. *Powell*, 691 N.Y.S.2d 263, 265 (N.Y. Sup. Ct. 1999). While patrolling New York City Housing Authority ("NYCHA") buildings, the NYPD is also authorized by NYCHA to enforce NYCHA "house rules" ("NYCHA House Rules" or "House Rules"), including a recently re-issued rule against "lingering" in the halls. Brooker Decl. Ex. B, at 42–43. Officers often question anyone they encounter in NYCHA developments. *See People* v. *Ventura*, No. 2969/10, 2010 WL 5155983, at *1 (N.Y. Sup. Ct. Dec. 17, 2010). From this questioning, the burden is on the resident or visitor to prove to the officer that they are not trespassing. *Id.* The result is a pervasive and institutionalized practice of unlawful conduct.

encouragement and sanctioning of, and the failure to rectify, the NYPD's suspicionless stops, seizures, questions, searches and arrests for trespass." Compl. ¶ 191. The Complaint further alleges that the City targets communities of color for trespass enforcement and violates various housing laws. *See* Compl. ¶¶ 194–98, 203–07, 209–13. None of these claims for declaratory and injunctive relief is mooted by the City's simple revision to the Patrol Guide.

## II.     Events Following The Filing Of The Lawsuit.

### A.     NYPD Revised Patrol Guide and Training.

On June 8, 2010, the day before a scheduled settlement conference in this litigation, the NYPD issued Interim Order No. 23 (the "Interim Order"), a revision to one section of its Patrol Guide. *See* Declaration of Edward Delatorre ("Delatorre Decl.") Ex. A, at 1. Defendant subsequently created the Training on the Interim Order. *Id.* Ex. H, at 1. These revisions both fail to remedy the preexisting legal inadequacies and create additional violations.

The Interim Order directs officers on vertical patrol to "approach and question . . . potentially unauthorized persons." *Id.* Ex. A, at 1. Yet neither "approach" nor "potentially unauthorized person" is defined, and the Patrol Guide and Training provide inadequate guidance as to the observable characteristics of such persons. *Id.* Ex. H, at 6. Once "approached," a person's refusal to submit to questioning or to furnish evidence of visiting a resident is grounds for ejection, and subjects a person to arrest for criminal trespassing if he does not obey an officer's request to depart voluntarily. *Id.* Ex. A, at 2; Ex. H, at 7, 17. Authorized individuals are also subject to arrest if the NYCHA resident they are visiting is not home or does not answer when officers attempt to verify

4

authorization.  *Id.* Ex. H, at 7.  Even residents are subject to arrest if they violate NYCHA

rules by being present in "restricted" areas of their own building.  *Id.* Ex. H, at 13.

Notably, these revisions are being implemented in conjunction with

reissued and new NYCHA House Rules, which intend to facilitate vertical patrols.  *Id.*

Ex. F.  The NYCHA document, entitled "Highlights of House Rules, Lease Terms and

Policy," implements and provides notice to NYCHA tenants of twenty-eight selected

house rules.  *Id.* Ex. F, at 1.  Rule 21 expressly bans "lingering" in lobbies, corridors, and

stairwells.  *Id.* Ex. F, at 2.  Rule 18, entitled "Trespassing Prohibited," provides that "[a]ll

persons are expected to cooperate with inquiries from [NYCHA] and the police regarding

their presence or conduct in any building or on development grounds."  *Id.* Ex. F, at 2.

Under Rule 28, NYCHA reserves the right to commence a termination of tenancy

proceeding against a tenant or family member who "breaches NYCHA rules."  *Id.* Ex. F,

at 3.  All NYCHA residents over age 18 are required to sign a document that signifies

receipt and review of the House Rules.  *Id.* Ex. F, at 4.  Read together, the revisions to the

Interim Order and the reissued and new NYCHA House Rules authorize officers to

approach and question people who are "lingering" and require residents to cooperate with

this questioning, in effect establishing a "stop-and-identify" scheme specific to NYCHA

property, whose lawfulness is at best untested.

Even if the revised Patrol Guide and Training were adequate, the City

concedes that the implementation is incomplete.  There are "police officers, sergeants,

and lieutenants assigned to the Patrol Services Bureau and not within a precinct housing

team," who have not yet been trained on the revised Patrol Guide and it will take another

year for that to occur.  Def.'s Br. 5.  The City also plans to create a video "to be utilized

in command level training" and "modified" training programs for sergeants and lieutenants and "higher-level supervisors."  Defendant City of New York's Statement of Facts Pursuant to Local Rule 56.1, dated December 10, 2010 ("Def.'s Statement") ¶¶ 72–73.  Neither of these has been created, let alone implemented.  The City has admitted, therefore, that it has not taken all necessary steps to ensure that the violations alleged in the Complaint have ceased.

**B.    Continuing Unlawful Trespass Enforcement Practices.**

The City offers no admissible evidence, statistics, or reports demonstrating that the violations articulated in the Complaint have been resolved, either partially or completely.  In fact, the challenged practices continue.

During a New York City Council hearing on September 28, 2010, several council members expressed concern that illegal trespass arrests continue to plague NYCHA residents and their visitors.  Brooker Decl. Ex. C.  Council Member Rosie Mendez, Chair of the Public Housing Committee, expressed concerns about the "indiscriminate use of stop and frisk tactics in NYCHA development[s]" and stated that she and many NYCHA residents believe that the "[NYPD] is targeting people in public housing because of where they live and because of their demographic composition." *Id.* Ex. C, at 5–6.  Council Members Deborah Rose, Letitia James and Melissa Mark-Viverito also voiced their concerns.  *Id.* Ex. C, at 7–11, 53–55, 65–66.  Council Member Rose, Chair of the Civil Rights Committee, said that "only after litigation . . . have we been able to even crack the lid on this problem." *Id.* Ex. C, at 11.  A Civilian Complaint Review Board ("CCRB") representative called for a "larger study of police misconduct complaints stemming from these incidents." *Id.* Ex. C, at 19.

Moreover, in a November 2010 court hearing, an NYPD officer testified that officers have "more leeway in their interactions" in NYCHA buildings and can "question anyone they encounter to determine whether they are on the premises lawfully," thus evidencing by clear example that the City's efforts have failed to eradicate the violations. *Ventura*, 2010 WL 5155983, at *2. After considering the officer's testimony, the Court found that the evidence suggested that the NYPD's practice is to "routinely engage in random, unjustified questioning" on NYCHA properties, in "systemic violation" of New York law. *Id.* at *7.

A review of cases handled by the Legal Aid Society of New York ("Legal Aid") confirms the *Ventura* court's findings and reveals additional indicia of ongoing unlawful stops and arrests for trespass on NYCHA property. Between September and November of 2010, 15% of Legal Aid trespass cases resulted in outright dismissals or an adjournment in contemplation of dismissal. *See* Elitcher Decl. at ¶¶ 6–7.

## ARGUMENT

A motion for summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for these purposes if it "might affect the outcome of the suit under governing law." *Miner* v. *Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citation omitted). "In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of," the party opposing the motion. *Lucente* v. *IBM Corp.*, 310 F.3d 243, 253 (2d Cir. 2002).

In the context of civil rights cases, the Second Circuit has been less inclined to grant motions for summary judgment. *See, e.g., Luten* v. *Daily News LP*,

No. 97 CIV. 2462 RCC, 2000 WL 335731, at *4 (2d Cir. Mar. 30, 2000) (noting that the Second Circuit's "stringent standard" for dismissing civil rights claims required that summary judgment be denied). Courts "must be especially cautious in granting a summary judgment motion in a discrimination case" where, as here, intent is at issue. *Vergara* v. *Yonkers Pub. Sch.*, 386 F. Supp. 2d 377, 382 (S.D.N.Y. 2005) (citing *Belfi* v. *Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999)).

I. **Summary Judgment Is Improper Because Plaintiffs' Claims for Injunctive Relief Are Not Rendered Moot by the City's Alleged Voluntary Cessation.**

  The City has failed to present sufficient evidence of voluntary cessation of the unlawful conduct alleged in the Complaint.[3] Yet, even if the revised Patrol Guide and Training could address Plaintiffs' allegations, in part or in whole, the City cannot meet its formidable legal burden of establishing mootness of Plaintiffs' claims for injunctive relief as a result of this purported voluntary cessation. Accordingly, summary judgment is improper and should be denied.

  The "general rule [is] that voluntary cessation of a challenged practice rarely moots a federal case." *City News & Novelty, Inc.* v. *City of Waukesha*, 531 U.S. 278, 284 n.1 (2001); *see also Friends of the Earth, Inc.* v. *Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 174 (2000) (finding that mere voluntary cessation does not moot a case); *City of Mesquite* v. *Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1983) (noting that defendant's voluntary cessation ordinarily does not suffice to moot a case). Moreover, the City bears

---

3 As the City acknowledges, the "first step in assessing whether a claim has been rendered moot based on voluntary cessation is whether the alleged conduct has in fact ceased." Def's Br. 7–8. Thus, the Court need not even reach the City's mootness argument because, as discussed below, the City has failed to establish that the alleged violations have ceased.

a "heavy" burden to establish mootness. *Friends of the Earth*, 528 U.S. at 189 (citation omitted). A court may dismiss claims as moot due to voluntary cessation only where: (1) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation; and (2) there is no reasonable expectation that the alleged violation will recur. *Lamar Advertising*, 356 F.3d at 376 (citations omitted). This stringent test is necessary to ensure that a defendant is not "free to return to his old ways." *Friends of the Earth*, 528 U.S. at 189 (citation omitted).

It is "well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth*, 528 U.S. at 189 (citation omitted); *see also Northeastern Florida Chapter of the Assoc. Gen. Contractors of Am.* v. *City of Jacksonville*, 508 U.S. 656, 662 (1993) (quoting *City of Mesquite* for "well settled" rule that voluntary cessation does not deprive court of power to determine the legality of practice); *Soto-Lopez* v. *New York City Civil Serv. Comm'n*, 840 F.2d 162, 168 (2d Cir. 1988) (holding that "there can be no doubt that" the court's ability to grant injunctive relief survives cessation of violations). The decision to dismiss the injunctive claims as moot "lies within the sound discretion of the district court," *Harrison & Burrowes Bridge Constructors, Inc.* v. *Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992) (citation omitted), and is "a matter relating to the exercise rather than the existence of judicial power," *Ahrens* v. *Bowen*, 952 F.2d 49, 52 (2d Cir. 1988).

The two-prong test articulated in *Lamar Advertising* is not applied mechanically; instead courts weigh various factors when determining the mootness of claims for injunctive relief, including: (a) delay in conforming conduct to controlling

precedent, *see Maneely* v. *City of Newburgh,* 208 F.R.D. 69, 73 (S.D.N.Y. 2002);

(b) whether changes were made in response to the instant litigation, *see Hilton* v. *Wright*,

235 F.R.D. 40, 49 (N.D.N.Y. 2006); (c) the defendant's willingness to concede that the

challenged policy is or was unlawful, *see Doe* v. *U.S. Civil Service Comm'n*, 483

F. Supp. 539, 554 (S.D.N.Y. 1980); *Monroe* v. *Bombardi*, 422 F. Supp. 211, 215 & n.5

(S.D.N.Y. 1976); (d) selective "discontinuance" of the alleged violations, *see Harrison &*

*Burrowes Bridge Constructors*, 981 F.2d at 59; (e) a defendant's history of wrongful

behavior, *see Ahrens*, 852 F.2d at 53; and (f) enforceability, *see Kidder, Peabody & Co.,*

*Inc.* v. *Maxus Energy Corp.*, 925 F.2d 556, 563 (2d Cir. 1991).  Analyzing these

considerations makes clear that none support Defendant's assertion of mootness.

> ### A.    Interim Events Have Not Completely and Irrevocably Eradicated Effects of the Alleged Violations.

Summary judgment on mootness grounds is improper at this juncture

because the City cannot establish that the revised Patrol Guide and Training have

"completely and irrevocably eradicated the effects of the alleged violation[s]."

*Campbell* v. *Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996) (abrogated on other grounds)

(citation omitted).  The City's contrary assertion, Def.'s Br. 7–8, misrepresents both

Plaintiffs' claims and the scope of the alleged municipal liability under *Monell*.  Plaintiffs

have not merely presented a facial challenge to the language of the Patrol Guide, but also

challenge a policy and an entrenched institutional custom that is manifested through

"persistent and widespread" unlawful and discriminatory enforcement of trespass laws on

NYCHA property.  *Monell*, 365 U.S. at 691.[4]

---

[4]    If the City is suggesting that Plaintiffs' Section 1983 claims are based on *respondeat superior,* Def.'s Br. 10–11, it is incorrect.  To the contrary, the challenged conduct is

As an initial matter, Defendant has provided no evidence that unlawful trespass stops and arrests have been discontinued, let alone "completely and irrevocably eradicate[d]." *See Gluth* v. *Kangas*, 951 F.2d 1504, 1507 (9th Cir. 1991) (rejecting mootness claim, in part, because defendant "provided no *facts* to support" change in alleged violations from new policy) (emphasis in original).  Merely revising the Patrol Guide and implementing new training programs, without proffering corresponding evidence of a complete and irrevocable eradication of the alleged violations, is wholly insufficient for purposes of demonstrating mootness.  *See Lamar Advertising*, 356 F.3d at 378 ("[P]laintiff's claims will not be found moot where the defendant's amendments are merely superficial or the law, after amendment, suffers from similar infirmities as it did at the outset.").

Moreover, as explained below, even if the City had proffered evidence of the effects of the Patrol Guide and Training, it is impossible to establish that the City has "eradicated" its unlawful trespass enforcement practices merely from those revisions. These changes, flawed as they are, are not *irrevocable*—and the City has given no assurances that it will not revise the Patrol Guide again.  *See Hilton* v. *Wright*, 235 F.R.D. 40, 49–50 (N.D.N.Y. 2006) (policy implemented by official does not bind future officials under a different administration).  Indeed, by the City's own admission, it has not even finished training officers on the revised Patrol Guide.  Def.'s Statement ¶¶ 61, 63–64.

**1.     Revising Internal Written Guidelines Does Not Remedy Allegations of Unlawful Practices.**

---

directly attributable to the City's own "policy or custom."  *Reynolds* v. *Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) (citing *Monell*, 436 U.S. at 690).

The City mistakenly suggests that it may escape *Monell* liability by simply revising the Patrol Guide and implementing a corresponding Training, thereby (arguably) changing its internal guidelines with respect to vertical patrols on NYCHA property. Def.'s Br. 7,–8. Yet "municipal liability does not lie only where the official policy or ordinance is itself unconstitutional." *Amnesty America* v. *Town of West Hartford*, 361 F.3d 113, 125 (2d Cir. 2004) (citing *City of Canton* v. *Harris*, 489 U.S. 378, 387 (1989)); *see also Fiacco* v. *City of Rensselaer*, 783 F.2d 319, 326–27 (2d Cir. 1986) (constitutional policy that tolerates unconstitutional acts can form basis for municipal liability); *Marriott* v. *County of Montgomery,* 426 F. Supp. 2d 1, 9 (N.D.N.Y. 2006) ("Constitutional analysis of a procedure does not stop with analysis of the written policy."). To the contrary, the Second Circuit made plain in *Amnesty America* that the adoption of a formal rule or informal regulation does not insulate the City from liability where there is a contrary unwritten policy or custom. 361 F.3d at 125. Municipal liability, therefore, can be based on the conduct of subordinates or omissions of higher-ranking officials when "a policymaker ordered or ratified the subordinates' actions" or when " the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Id.* at 126. Once discovery concludes, Plaintiffs will meet that burden.

Moreover, notwithstanding the City's assertions about the revised Patrol Guide and Training, the City does not, and cannot, allege that it has ceased the unlawful conduct alleged in the Complaint. The City has failed to demonstrate that the NYPD's persistent and widespread practice of unlawful trespass stops and arrests has been resolved, either partially or completely. Leaving aside outstanding discovery, *see infra*,

available evidence confirms that these illegal practices remain a fact of life for putative class members.  *See* Elitcher Decl. ¶ 7.

Plaintiffs also assert claims premised on a failure to monitor, supervise, and discipline NYPD officers adequately.  Compl. ¶ 191.[5]  The City has failed to institute measures to address these deficiencies, and, strikingly, expressly rejects the possibility of doing so.  Def.'s Br. 10.[6]  The mere existence of *some* disciplinary and monitoring system is not equivalent to an *adequate* disciplinary and monitoring infrastructure.  The City's failure to assert, let alone establish, that it has remedied these inadequacies further supports denial of summary judgment.

### 2. The City Cannot Demonstrate the Effects, If Any, of Its New Training Program Because It Is Not Fully Implemented.

The City concedes that it has not completed Training on the revised Patrol Guide and, notably, estimates another year for completion.  Def.'s Br. 5.  Further, the City has made no assurances that incoming officers will be provided with the new Training.  In addition, the City is developing a video and "modified" version of the Training, neither of which been completed or presented to relevant NYPD personnel.  Def.'s Statement at ¶¶ 63, 65–66.  To the extent that the City considers the training,

---

[5]   The City does not argue cessation of the violations underlying Claims 2–8 and Claims 11-12 in the Complaint, including the targeted enforcement of trespass laws in communities of color and discrimination in the provision of police services to NYCHA residents—all which seek equitable relief.  Compl. ¶¶ 194, 203–07.  The City's failure to proffer undisputed facts to establish the mootness of those claims further supports denial of summary judgment.

[6]   The City asserts that such claims are insufficiently pled and should be dismissed.  Def.'s Br. 10.  To the extent this Court agrees, Plaintiffs seek leave to amend the Complaint.

video, and modified training necessary to address the violations alleged in this litigation, it has not even fulfilled those steps.

### 3.      The Adopted Revisions Fail to Remedy the Alleged Violations.

The revised Patrol Guide fails to remedy the overall problem of unlawful trespass enforcement at issue in the Complaint.  The Interim Order governs "vertical patrols" within NYCHA buildings and, thus, is limited to trespass enforcement during the course of those vertical patrols.  Because unlawful trespass stops and arrests result from both formal vertical patrols and informal or non-vertical patrol police activity, the revisions to the Patrol Guide do not address all unlawful trespass stops and arrests occurring on NYCHA property.

Furthermore, the Interim Order introduces terms such as "approach" and "potentially unauthorized person," which are not defined, and fails to provide adequate guidance to police officers patrolling NYCHA properties.  The Training states that officers may "approach" and question "potentially unauthorized person[s]" based on criteria insufficient to meet federal or state standards governing police interactions.  For example, the Training provides that officers may approach and question anyone who enters the building without using a key even where the officer knows the door lock is broken (such that all residents and visitors would be entering without a key).[7]  Delatorre

---

[7]      A New York Times article detailed the chronic disrepair of NYCHA locks and intercoms.  Ray Rivera, Al Baker and Janet Roberts, *A Few Blocks, 4 Years, 52,000 Police Stops*, N.Y. Times, July 11, 2010, at A1 (quoting one retired officer who described the NYPD practice of stopping anybody who walks in without a key but acknowledged that "once you ask them for an ID, 90 percent of the people live in the building.  That's why the arrest rate is so low.  They're not acting suspiciously, but like I said, they don't have a key to enter").

Decl. Ex. H, at 6–7.  The Training further provides that an "approach" to question somebody is justified simply because an officer is not familiar with the person.  *Id.* Ex. A, at 1–2.

       The revised Patrol Guide and Training also improperly puts the onus on the targeted resident or guest to establish affirmatively her lawful presence in the absence of probable cause.  The Training states that a "person's refusal to explain his or her presence in a building . . . will not by itself raise reasonable suspicion or probable cause," but then provides that officers are authorized to "arrest a person for trespass if the person does not promptly establish a right to be in the building and refuses to exit the building." Delatorre Decl. Ex. H, at 7.  This authorization applies equally to residents.  Authorized individuals are also subject to arrest if the NYCHA resident they are visiting is not home or does not answer when officers attempt to verify authorization.  *Id.* Ex. H, at 7.  And nothing prevents the arrest of NYCHA residents for being in a "restricted" area of their own buildings in lieu of simply being asked to leave.

       Read in tandem with the NYCHA House Rules, the Patrol Guide subjects NYCHA residents and their visitors to a more intrusive and aggressive brand of policing within the confines of their own homes than the average New York City resident can expect on a public street.  Defendant's use of the term "approach" conveys the misconception that officers' pointed questioning of suspected "lingerers" does not constitute a "stop" or "temporary seizure" subject to the reasonableness requirement of the Fourth Amendment.  "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions," but rather under circumstances where "a reasonable person would have believed that he was not free to leave."

*Florida* v. *Bostick*, 501 U.S. 429, 434 (1991) (citation omitted).  NYCHA has made clear to its residents, however, that they are not free to ignore the police, by promulgating a House Rule that requires them to "cooperate with inquiries from . . . the police regarding their presence or conduct in any building."  Delatorre Decl. Ex. F, at 2.  NYCHA residents are further required to sign an acknowledgment that they have read the House Rules at issue, which conclude with a warning that "breach of NYCHA rules" may result in "termination of tenancy."  *Id.* Ex. F at 3–4.  No resident who has read the House Rules and signed this acknowledgement would believe they are free to ignore an officer's questions and walk away.

In tandem, the revised Patrol Guide and NYCHA House Rules resemble a local "stop-and-identify" statute, authorizing officers to stop a person and demand his name, address, and explanation of his conduct based on suspicion of "lingering" (which is not forbidden by criminal statute).  Insofar as this scheme fails to meet constitutional requirements, *see Brown* v. *Texas*, 443 U.S. 47, 51 (1979), it cannot in any way qualify as the cessation of an unconstitutional practice.

### B.      There is More Than a Reasonable Expectation That the Alleged Violations Will Recur.

Even if the revised Patrol Guide could resolve the violations at issue in the Complaint—which Plaintiffs submit it does not—the City fails to demonstrate with undisputed facts that it is "absolutely clear" that it "cannot resume the allegedly offending conduct."  *Clear Channel Outdoor, Inc.* v. *City of New York*, 594 F.3d 94, 110 (2d Cir. 2010) (citation omitted).

The City has been on notice of the widespread violations for years, but did not take remedial action until earlier this year.  Media articles dating back to 2007 have

16

chronicled the violations alleged in the Complaint.[8]  On April 12, 2007, the National

Latino Officers Association and 100 Blacks in Law Enforcement Who Care issued a joint

press release alleging "widespread racial bias and unlawful application" of trespass laws

by the NYPD, and called for an immediate investigation.  Brooker Decl. Ex. D, at 1.  In

2008, New York Lawyers for the Public Interest ("NYPLI") sent a report to the City

documenting 2007 and 2008 survey results that showed "disturbing levels" of police

abuse of authority on NYCHA property, "particularly around the enforcement of trespass

laws."  *Id.* Ex. E, at 2.  In response to this "chronic problem," NYLPI recommended that

the NYPD meet with residents and explore alternative security methods.  *Id.*  The CCRB

reported meeting with the NYPD in April 2009 "to discuss the rise in allegations of

improper stops in and around NYCHA buildings."  *Id.* Ex. F.  New York courts, too, have

called for reform of the NYPD's "dreadful" trespass enforcement practices.  *People* v.

*Ruiz*, No. 056832C-2006, 2007 WL 1428689, at *4 (N.Y. Sup. Ct. 2007) ("One hopes the

New York City Police Department will better train its officers in the realm of Criminal

Trespass so that only true trespassers will be arrested, and innocents will be spared.").

The case law provides that these delays may be construed to undermine

representations that the City has ceased the violations and can be relied upon to maintain

---

[8]   *See, e.g.*, Barbara Ehrenreich, *Is It Now a Crime to Be Poor?*, N.Y. Times, Aug. 9,
2009, at WK9; Rocco Parascandola, *Victim Down On a Policy*, Newsday, Oct. 25,
2007, at A19; Rocco Parascandola, *Trespassing Charge Nixed*, Newsday, Aug. 4,
2007, at A11; Rocco Parascandola, *The Trouble With Trespassing Law*, Newsday,
July 30, 2007, at A6; Rocco Parascandola, *Questions Don't End as Teen Beats
Charges*, Newsday, June 25, 2007, at A12; Rocco Parascandola, *The Crime Column;
Stop-and-frisk Stats Suggest Flaws in NYPD Practices*, Newsday, Apr. 10, 2007, at
A4; Cara Tabachnick, *Trespass Laws Questioned; Stricter Rules Aimed at Curbing
Crime and Violence in Projects Often Catch Innocent Bystanders in Wake*, Newsday,
Apr. 10, 2007, at A4.

remedial changes.  *See Maneely*, 208 F.R.D. at 73–74 ("[A] police department's delay in conforming its behavior to controlling precedent increases the risk that the department will resume its old ways at the end of the pending litigation" and its representations "ring[] hollow, given how long it took them); *Santiago* v. *Miles*, 774 F. Supp. 775, 795 (W.D.N.Y. 1991) (finding claims not moot where changes to longtime discrimination occurred slowly).

The City's actions are notable because they occurred only after Plaintiffs threatened litigation.  The U.S. Supreme Court has repeatedly cautioned lower courts not to dismiss injunctive relief claims as moot when defendants make changes to the challenged conduct only after a lawsuit has been threatened.  Courts must "beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption."  *United States* v. *Oregon State Med. Soc'y*, 343 U.S. 326, 333 (1952); *see also United States* v. *New York City Transit Auth.*, 97 F.3d 672, 676 (2d Cir. 1996) (finding significant that changes were "instituted on the eve of the lawsuit"); *Huntington Branch, NAACP* v. *Town of Huntington*, 844 F.2d 926, 941 n.12 (2d Cir. 1988) (noting that proposed action are laudable but "entirely speculative and smacks of a mid-litigation effort to demonstrate . . . good faith"); *Santiago*, 774 F. Supp. at 793 (noting that changes occurred after commencement of lawsuit and "[t]here is no doubt" that some of the changes "were implemented solely because of" the litigation); *Fisher* v. *Koehler*, 692 F. Supp. 1519, 1565 (S.D.N.Y. 1988) (noting that, while "impressive in scope," reforms did not render claims moot because they were initiated in significant part by litigation).

The posture of this case, therefore, cautions a critical view of the City's summary judgment motion.

Furthermore, the City has not affirmatively acknowledged that its policies and practices are unlawful. Def.'s Br. 8 n.8. Changes made in response to litigation of the policy, and not from concessions that the policy was "inappropriate," militate against a mootness conclusion. *Hilton*, 235 F.R.D. at 47–48 (N.D.N.Y. 2006). "It is precisely [the] insistence on the validity of the challenged practice that makes it 'reasonable' to expect that the conduct will be repeated." *Ahrens*, 852 F.2d at 53. Thus, this Court should deny summary judgment where, as here, "defendants have not admitted that the challenged activity is illegal nor demonstrated conclusively that the wrong will not be repeated." *Monroe* v. *Bombard*, 422 F. Supp. 211, 215 n.5 (S.D.N.Y. 1976) (citations omitted).

In fact, even though the NYPD's vertical patrol policy and trespass enforcement practices are implemented in certain private Trespass Affidavit Program ("TAP")[9] buildings as well as NYCHA buildings, the City's revised Patrol Guide is inapplicable to patrols of non-NYCHA buildings. Thus, by all accounts, its pattern and practice of trespass enforcement has not changed on non-NYCHA property. Such selective "discontinuance" of the alleged violations is consistent with the City's refusal to acknowledge that the underlying practice—whether in private or NYCHA buildings— produces unlawful arrests, and further suggests that its corrective actions are only a

---

[9] TAP is a program that permits police officers to conduct vertical patrols in private buildings for purposes of, inter alia, identifying unauthorized individuals. *See* Trespass Affidavit Program, New York County District Attorney's Office, http://manhattanda.org/communityaffairs/commaffunit/ crime/tres_prog.shtml (last visited December 23, 2010).

response to this case, which is more than coincidentally limited to NYCHA buildings.

*Harrison & Burrowes Bridge Constructors*, 981 F.2d at 59 (noting that "'highly

selective' discontinuance of enforcement . . . support[s] the exercise of jurisdiction")

(citation omitted)).

   Furthermore, the City's "history of wrongful[] behavior" suggests that the

likelihood of violations recurring is "far from remote or unlikely." *Ahrens*, 852 F.2d at 53

(citation omitted).  Indeed, this Court cited the City's "obstinance and

uncooperativeness" where the NYPD failed to end the illegal enforcement of

unconstitutional loitering statutes, ultimately holding the City in civil contempt and

imposing fines:  "[T]he City has done little on its own initiative or with reasonable

conviction and speed to end the illegal enforcement." *Casale* v. *Kelly*, 710 F. Supp. 2d

347, 350 (S.D.N.Y. 2010) (Scheindlin, J.); *see also Brown* v. *Kelly*, 05 Civ. 5442, 2007

WL 1573957, at * 6 (S.D.N.Y. May 31, 2007) (City "demonstrated a flippant attitude

toward violations"; "engaged in months of stonewalling"; and its "long-standing apathy

towards [the] problem was offensive"); *aff'd, Brown* v. *Kelly*, 609 F.3d 467 (2d Cir.

2010).

   Sadly, *Casale* and *Brown* are not outliers.  As recently as October 19,

2010, when finding discrimination against African-American and Latino applicants in its

hiring of firefighters, the Court stated that the City maintained "shifting and

contradictory" and "contrived and fundamentally irreconcilable positions," posited

"hyperbolic—and ultimately baseless—claims regarding public safety," and ultimately

"jeopardized its own credibility in the areas where it matters most."  *United States* v. *City

of New York*, No. 07-cv-2067 (NGG) (RLM), 2010 WL 4137536, at *1 (E.D.N.Y.

Oct. 19, 2010).  The court was dismayed by the City's "apparent duplicity and lack of good faith," which was "simply the latest episode in the City's long campaign to avoid responsibility for discrimination . . . whatever the cost."  *Id.*

Considering Defendant's previous unlawful behavior—including the unlawful conduct at issue in this case—the Court cannot be absolutely clear that the alleged violations will not recur.  *See Eng* v. *Smith*, 849 F.2d 80, 83 (2d Cir. 1988) (finding that, although defendants claimed to have voluntarily implemented substantially all of the remedial relief, an injunction was necessary to prevent defendants from abandoning changes); *Maneely*, 208 F.R.D. at 74 ("Absent the imperative, imposed by an injunction, . . .  Defendants are free to reinstate the objectionable practice at any time." (citation omitted)).

This is not a case where the parties have entered into a settlement or where the defendant has "entered into a 'binding, judicially enforceable agreement.'"  *Kidder, Peabody & Co., Inc.,* 925 F.2d at 563 (citations omitted); *see also Humane Soc'y* v. *HVFG, LLC.*, No. 06 CV 6829(HB), 2010 WL 1837785, at *12–13 (S.D.N.Y. May 6, 2010) (citizen suit rendered moot where state enforcement action led to consent order assuring compliance).  To the contrary, Defendant has refused repeatedly to enter into a consent decree, and recently resisted this Court's suggestion to consider doing so.  This refusal to be bound to its own changes speaks volumes.  *See United States* v. *New York City Transit Auth.*, 97 F.3d 672, 675 (2d Cir. 1996) (claims not moot where defendant rejected consent decree to avoid "surrender[ing] its freedom of action" and being "precluded from again changing its policy").

Although "some deference" may be accorded to the City's representations, the "'determination of whether there is a 'reasonable expectation that the wrong will be repeated' is not foreclosed by expressions of [its] intention.'" *Hilton*, 235 F.R.D. at 48 n.6 (quotations and citations omitted); *see also Armstrong* v. *Ward*, 529 F.2d 1132, 1136 (2d Cir. 1976); *Allstate Ins. Co.* v. *Serio*, No. 97 Civ. 670(RCC), 2003 WL 21418198, at *6 (S.D.N.Y. May 7, 2003) (recognizing some deference but weighing all factors); *Harrison & Burrowes Bridge Constructors*, 981 F.2d at 59 (only "some deference" accorded to state representations). Moreover, as "an internal manual . . . not a body of law or regulation," the Patrol Guide does not carry the weight of statute or a regulation promulgated under due process by an administrative agency.[10] *Galapo* v. *City of New York*, 95 N.Y.2d 568, 574–75 (N.Y. 2000) (citation omitted). Because the NYPD has merely modified internal documents, it is quite conceivable that a new administration—or even this administration—could reverse the changes if it saw fit. *See Tsombanidis* v. *West Haven Fire Dep't*, 352 F.3d 565, 574 (2d Cir. 2003) (future administration might change interpretation of the code); *Hilton*, 235 F.R.D. at 50 (noting that policy implemented by administrative official does not bind future officials under a different administration).

Changing these internal documents alone, even if done perfectly, is woefully inadequate to ensure that no reasonable expectation remains that the alleged harm will recur. "Although some very positive steps have been taken[], that does not by

---

[10]   Case law distinguishes the broader deference afforded to a legislative or administrative body's decision to amend a statute or law, such as in *Lamar Advertising* and *Harrison & Burrowes*, from the more limited deference afforded to executive state actors acting outside the deliberative process in the absence of due process protections. *Hilton*, 235 F.R.D. at 48 n.6.

itself defeat the court's power to issue injunctive relief."  *Santiago*, 774 F. Supp. at 793.

Where, as here, the effect of the changes on the "prospect of future violations is a

disputed factual matter," summary judgment should be denied.  *Friends of the Earth*, 528

U.S. at 193.

## II.   The Motion for Summary Judgment Should Be Denied as Premature Due to an Inadequate Opportunity for Discovery .

To the extent the Court determines that it cannot decide the City's Motion

without resolving the parties' competing factual assertions (as opposed to denying the

Motion solely based on the City's failure to establish mootness), Plaintiffs seek additional

time for discovery pursuant to Federal Rule of Civil Procedure 56(d).[11]  Because a party

moving for summary judgment must demonstrate the absence of any issue of material

fact, a court should only grant summary judgment after the parties have been given an

adequate opportunity for discovery.  *See, e.g., Celotex Corp.* v. *Catrett*, 477 U.S. 317,

322 (1986) (summary judgment appropriate only "after adequate time for discovery");

*Liberty Lobby, Inc.*, 477 U.S. at 250 n.5, 277 (refusing summary judgment "where the

nonmoving party has not had the opportunity to discover information that is essential to

his opposition"); *Quinn* v. *Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d

Cir. 1980) ("At least when the party opposing the motion has not been dilatory in seeking

discovery, summary judgment should not be granted when he is denied reasonable access

to potentially favorable information."); *Salahuddin* v. *Coughlin*, 993 F.2d 306, 310 (2d.

Cir. 1993) (finding summary judgment inappropriate when adequate discovery had not

been conducted).

---

[11]   Plaintiffs submit a Rule 56(d) Declaration simultaneous with their opposition to the Motion.  *See* Smith Decl.

Under Rule 56(d), when a party opposing a summary judgment motion "cannot present facts essential to justify its opposition, the court may (1) defer considering the [summary judgment] motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. Proc. 56(d).  Should this Court determine that resolution of the City's Motion turns on factual, rather than legal, disputes, Plaintiffs seek time to obtain the necessary discovery.

## CONCLUSION

For the reasons set forth herein, this Court should deny Defendant City's Motion for Summary Judgment on Plaintiffs' Claim for Declaratory and Injunctive Relief in its entirety.[12]

---

[12]   In light of the implementation of the revised Patrol Guide and Training and the recent promulgation of the new NYCHA House Rules, among other things, Plaintiffs intend to seek leave to amend their Complaint, pursuant to Fed. R. Civ. P. 15(a)(2).

24

Dated:  December 23, 2010
New York, New York

By:   /s/ Johanna B. Steinberg
  Johanna B. Steinberg

NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
99 Hudson Street, Suite 1600
New York, NY 10013-2897
Tel.:  (212) 965-2200
Fax:  (212) 219-2052

John Payton
Debo P. Adegbile
Christina Swarns
Johanna B. Steinberg
Jin Hee Lee
Johnathan Smith
-of Counsel-

THE LEGAL AID SOCIETY
199 Water Street 6th Fl.
New York , NY 10038
Tel: (212) 577-3300
Fax: (212) 509-8141

Steven Banks
William Gibney
Steven Wasserman
Amanda Moretti
Nancy Rosenbloom
-of Counsel-

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Tel.: (212) 373-3000
Fax: (212) 757-3990

Jason D. Williamson
Katharine E. G. Brooker
Matthew J. Moses
-of Counsel-