UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELTON DAVIS, WILLIAM TURNER, EDWIN LARREGUI, ROMAN JACKSON, KRISTIN JOHNSON, ELEANOR BRITT, ANTHONY ANDERSON, LASHAUN SMITH, SHAWNE JONES, HECTOR SUAREZ, ADAM COOPER, ANDREW WASHINGTON, P.L. by his parent LISA PIGGOTT, DAVID WILSON, and GENEVA WILSON, individually and on behalf of a class of all others similarly situated;<br><br>              Plaintiffs,<br><br>-against-<br><br>THE CITY OF NEW YORK and NEW YORK CITY HOUSING AUTHORITY;<br><br>              Defendants. | 10 Civ. 699 (SAS) |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

## DECLARATION OF DANIEL BARBER

DANIEL BARBER declares, pursuant to 28 U.S.C. § 1746, as follows:

      1.    I am President of the Resident Association ("RA") for the Andrew Jackson Houses, located at 3080 Park Avenue, Bronx, New York 10451. I have lived in the Andrew Jackson Houses my entire life, and have been President of the RA for the past seven years. I am also an alternate member of the Resident Advisory Board ("RAB") and have attended RAB meetings for the last four years in this role. In addition, New York City Council Member Maria del Carmen Arroyo appointed me to serve as a Board Member on Community Planning Board 1, and I have served in this capacity for the last three years. I submit this Declaration in Support of

Plaintiffs' Opposition to Defendant City of New York's Motion for Summary Judgment on Plaintiffs' Claim for Declaratory and Injunctive Relief.

2. As President of the RA, I serve as the spokesperson and liaison for the residents of the Andrew Jackson Houses. I give residents information, voice their concerns to government officials, and try to ensure that their rights are secured. During my lifetime of living at the Andrew Jackson Houses and my seven years as President, I have seen many changes in the police presence in our community.

3. The Jackson Houses holds regular meetings to discuss issues of concern to the residents, including police relations. These meetings are open to all residents and give them an opportunity to tell me about whatever problems they are having. I also attend the Bronx South District meetings where all the RA Presidents get together and where I hear what is happening in other developments.

4. From approximately 2004 to 2009, I regularly attended the monthly NYPD Community Council Meetings. During that time, I heard many resident leaders complain to the NYPD about police interactions on NYCHA property, including Sylvia Sierra from Adams Houses, Pamela Smith from Mitchel Houses, and myself.

5. Things really began to change after the merger between the Housing Authority police and the NYPD. The sensitivity was lost. I have been told repeatedly by NYPD officers that there used to be more training before the merger and, especially, officers received more training on community relations and working in housing. Now officers who patrol NYCHA do not seem to receive anything extra or specific for policing in people's homes.

6. Another real difference I notice is that our buildings are patrolled almost entirely by rookies. It feels like they are using our homes as a training ground for making arrests.

2

7. Although the police interactions with NYCHA residents have generally gotten worse ever since the merger, the way officers enforce trespass laws has gotten especially bad in the last six years. That's when I started to notice more and more complaints from my residents about getting stopped, and sometimes arrested, for trespassing in our own development. I would also hear about visitors getting harassed.

8. I also heard people from other developments complaining about the same problems. For example, the Vice President of Mitchel Houses said her son received a summons for trespass last year when going from one building to another. A week later, officers gave him another summons for trespassing. He was just going to visit a friend in another building. I have been hearing these types of complaints for years.

9. Not only have residents told me about their many experiences, I have experienced the problem first-hand. I have personally been stopped repeatedly and asked for identification, whether I live in the building, and where I am going.

10. The problems continue. I was just stopped about two months ago after returning from a Democratic Club meeting with Council Member Arroyo. I went to a building to visit a family member at 785 Courtlandt Avenue in the Bronx. An officer asked me if I lived in the building, and I told him no. When he asked me for identification, I said no and asked him why he wanted it. I told him I was going to the 15th floor, gave him my name, explained that I am the RA President and could call Officer Angel Irizarry or Chief Joanne Jaffe if there was a problem.

11. I have never been arrested for trespass because most officers will leave me alone when they find out who I am and who I know. This does not prevent me from being stopped and harassed. It also does not help the vast majority of my residents who cannot say the same.

12. I have been very vocal about our problems with trespass enforcement, and have complained to people from the NYPD and NYCHA since this became more of a problem about six years ago. I made multiple complaints about trespass enforcement in person, by email, or by phone to: Bobby Podmore (when he was NYCHA Deputy General Manager); Gloria Finkelman, NYCHA Deputy General Manger; the Commanding Officer of PSA 7; and Community Affairs Bureau Officers Angel Irizarry, Sargeant Hogan, Sabrina Porter, Randy Brown, and Wilma Contreras. I have also heard many RA presidents complain open and freely for years about trespass enforcement at our NYCHA meetings and at NYPD Community Council meetings.

13. As a result of these complaints, I have been invited to speak to rookie officers during roll call. I have done this twice at the 40th Precinct and at least 3-4 times at PSA 7. I try to tell the officers that not everybody in public housing is a criminal.

14. About a year ago, we had a community-based officer from the 40th Precinct. We knew him as Officer Beal. He walked the streets and got to know people in the neighborhood – both good and bad. He knew the people who were committing crimes, and, because he had a positive relationship with law-abiding residents, people would give him information to try and catch offenders. People knew who he was and residents respected him because he respected the community.

15. I think the Safety and Security Task Force is a nice idea in theory, and they do have good intentions. I just do not think it is enough. I have seen lots of rules and rule changes over the years, but we need something to make sure officers follow the rules or else it is meaningless. I have repeatedly had experiences where the Inspector will tell me officers are not supposed to do something, but then officers patrolling tell me something different or they ignore the rule. That is why I think the lawsuit is so important – to make sure any changes are enforceable and that NYCHA and the NYPD can be held accountable for their promises. From

my conversations with residents in my building and the Presidents of the other Resident Associations in the Bronx South District, most people in our district support this lawsuit.

16. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 20, 2010.

_____
DANIEL BARBER