UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

KELTON DAVIS, WILLIAM TURNER, ALTAGRACIA
HERNANDEZ, EDWIN LARREGUI, ROMAN JACKSON,
KRISTIN JOHNSON, ELEANOR BRITT, ANTHONY
ANDERSON, LASHAUN SMITH, SHAWNE JONES,
HECTOR SUAREZ, ADAM COOPER, ANDREW
WASHINGTON, P.L. by his parent LISA PIGGOTT, DAVID
WILSON, and GENEVA WILSON, individually and on behalf
of a class of all others similarly situated,

                                      Plaintiffs,      10 Civ. 699 (SAS)

            -against-

THE CITY OF NEW YORK and NEW YORK CITY
HOUSING AUTHORITY,

                                      Defendants.

------------------------------------------------------------------------- x

**DEFENDANT CITY OF NEW YORK'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFFS' CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT AND BACKGROUND ............................................................... 1

ARGUMENT ...................................................................................................................................... 4

    POINT I

        PLAINTIFFS FAIL TO IDENTIFY CONSTITUTIONAL DEFICIENCIES IN IO 23 AND THE TRAINING ............................................................................................. 4

    POINT II

        APPLICATION OF THE RELEVANT FACTORS SHOW THAT THE CITY WILL NOT ABANDON CURRENT POLICY AND TRAINING ............................................... 8

    POINT III

        PLAINTIFFS CANNOT DEFEAT DEFENDANT'S MOTION BY RESTATING THE INSUFFICIENT COMPLAINT ALLEGATIONS AND CONSTRUCTING NEW CLAIMS ................................................................. 10

CONCLUSION ................................................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**   **Pages**

*Amnesty Am. v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004) — 9

*Cuevas v. City of New York*, 2009 U.S. Dist. LEXIS 114984 (S.D.N.Y. 2009) — 11

*Doe v. United States Civil Serv. Comm'n*, 483 F. Supp. 539 (S.D.N.Y. 1980) — 9

*Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50 (2d Cir. 1992) — 10

*In re Troy F.*, 138 A.D.2d 707, 526 N.Y.S.2d 521 (2d Dep't), *appeal denied*, 72 N.Y.2d 804 (1988) — 6

*Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556 (2d Cir. 1991) — 9

*Lamar Advertising of Penn., LLC v. Town of Orchard Park*, 356 F.3d 365 (2d Cir. 2004) — 8, 10

*Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372 (S.D.N.Y. 2005) — 12

*MacWade v. Kelly*, 460 F.3d 260 (2d Cir. 2006) — 6, 7

*Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1167 (10th Cir. 2003) — 11

*Martin v. Lakewood Police Dep't*, 266 Fed. Appx. 173 (3d Cir. 2008) — 12

*Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) — 4

*Monroe v. Bombard*, 422 F. Supp. 211 (S.D.N.Y. 1976) — 9

*Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997) — 3

*Reynolds v. Giuliani*, 506 F.3d 183 (2d Cir. 2007) — 4, 9

*People v. De Bour*, 40 N.Y.2d 210, 386 N.Y.S.2d 375 (1976) — 6

*People v. Hollman*, 79 N.Y.2d 181, 581 N.Y.S.2d 619 (1992) — 5

*People v. Hendricks*, 43 A.D.3d 361, 841 N.Y.S.2d 94 (1st Dep't 2007) — 6

*People v. Wigfall*, 2005 N.Y. Misc. LEXIS 3493 (Sup. Ct. Bronx County 2005) — 6

*People v. Bora*, 83 N.Y.2d 531, 611 N.Y.S.2d 796 (1994) — 6

*Pyke v. Cuomo*, 567 F.3d 74 (2d Cir.), *cert. denied*, 130 S.Ct. 741 (2009) — 11, 12

**Rules**

Fed. R. Civ. P. 26 — 11

Fed. R. Civ. P. 56 — 1

## PRELIMINARY STATEMENT AND BACKGROUND

Defendant City of New York (the "City" or "Defendant") respectfully submits this reply memorandum of law in further support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56 dismissing plaintiffs' claim for declaratory and injunctive relief. Defendant's Statement of Facts Pursuant to Local Rule 56.1 ("Deft's 56.1"), viewed with plaintiffs' responses thereto ("Pltfs' Reply 56.1"), show the central material facts are not in dispute. Interim Order 23 ("IO 23") was issued on June 8, 2010 and replaced Patrol Guide Section 212-60. Deft's 56.1 ¶¶ 3 & 7; Pltfs' Reply 56.1 ¶¶ 3 & 7. IO 23 addresses interior vertical patrols of NYCHA buildings, as well as patrols of NYCHA property generally, in conjunction with other related sections of the Patrol Guide, including the policy against racial profiling. Deft's 56.1 ¶¶ 5-6; Pltfs' Reply 56.1 ¶¶ 3, 5-6 & 11. The express purpose of IO 23, see Deft's 56.1 ¶ 9; Pltfs' Reply 56.1 ¶ 9, the modifications and additions to PG 212-60 (as provided by IO 23) focus on the conduct of police officers when they approach individuals on NYCHA property. Deft's 56.1 ¶ 10; Pltfs' Reply 56.1 ¶ 10. These provisions are not in dispute. Deft's 56.1 ¶ 12; Pltfs' Reply 56.1 ¶ 12; *see also* Delatorre Dec. Exh A.

The fact that the City subsequently developed training for NYCHA property patrols (the "Training"), *see* Deft's 56.1 ¶ 44; Pltfs' Reply 56.1 ¶ 44, and the contents of this training (e.g., a training session that included illustrative scenarios, also are not in dispute. Deft's 56.1 ¶ 46-47; Pltfs' Reply 56.1 ¶ 46-47; *see also* Delatorre Dec. Exh. H.

Regarding the manner in which IO 23 and the Training has been implemented, plaintiffs merely invoke a lack of sufficient discovery. Deft's 56.1 ¶¶ 53-59 & 61-68; Pltfs' Reply 56.1 ¶¶ 53-59 & 61-68. Plaintiffs' primary assertion is "that Defendant admits the training in not yet

1

complete".[1] Pltfs' Reply 56.1 ¶ 53. However, plaintiffs ignore the fact that Phase I training is the critical portion of the training because it includes those officers who are assigned to patrol NYCHA property and perform vertical patrols.[2] Officers to be trained in Phase II interact with individuals on NYCHA property considerably less frequently and do not typically perform vertical patrols. Deft's 56.1 ¶¶ 53-59. In any event, the Training *program* is in place. Plaintiffs' contention that the City might stop the program, repeal IO 23, refuse to continue Phase II of the program, and "untrain" all officers trained pursuant to Phase I, is highly unrealistic given the time, money and effort the City has invested in the Training. While the precise dollar figure is not important, even though Assistant Chief Delatorre's figures are accurate, the Training program clearly is significant. Deft's 56.1 ¶¶ 55 & 68. .

Though plaintiffs quibble with minor and irrelevant details, the undisputed facts surrounding the evolution of IO 23 and the subsequently implemented Training establish that the NYPD, NYCHA and CCOP began working together *before* the lawsuit was filed (or even threatened) to address concerns advanced by NYCHA and CCOP. Deft's 56.1 ¶¶ 22-25; Pltfs' Reply 56.1 ¶¶ 22-25. Furthermore, there is no dispute as to the subsequent establishment of the SSTF, which initially met on December 10, 2009, and subsequent meetings thereof every three weeks, as well as the creation of SSTF subcommittees at that meeting to, *inter alia*, address NYPD policies and relationships with NYCHA residents. See Deft's 56.1 ¶¶ 26, 29-31, 33, 34 & 39; Pltfs' Reply 56.1 ¶¶ 26, 29-31, 33, 34 & 39. As plaintiffs admit, "CCOP, NYCHA and

---

[1] Plaintiffs also question whether the Training is provided to new recruits at the Police Academy. As clarified in Delatorre Supp. Dec. ¶ 3, such training is provided to recruits.
[2] At the time of the Delatorre Dec., approximately 90% of the Phase I trainees (over 1800 officers) had been trained, with the remaining 10% (absences typically due to vacation, illness, etc.) to be trained over the next few months. In addition, these Phase I officers again will be trained in Phase II. See Deft's 56.1 ¶ 54, 56 & 64. (The current percentage is 95%. Supp. Delatorre Dec. ¶ 2.)

NYPD continued to meet to address NYCHA property patrols, as well as other issues of concern to NYCHA residents."[3] Deft's 56.1 ¶ 32; Pltfs' Reply 56.1 ¶ 32; see also Rappaport (NYCHA) Dec. ¶¶ 3-29.

Plaintiffs invoke their purported need for additional discovery in their reply Rule 56.1 statement. See Pltfs' Reply 56.1 ¶¶ 13, 14, 17, 19-21, 27-28, 34, 36, 40, 41, 45, 49, 52-59, 61-68, 70 & 75. However, as shown above, the material facts, regarding NYCHA property patrols and the development of IO 23 and subsequent Training, are not in dispute.[4]

Finally, in their Rule 56.1 Statement of Additional Material Facts in Opposition to Defendant City of New York's Motion for Summary Judgment ("Pltfs' Add'l 56.1"), plaintiffs rely on alleged incidents, second-hand statements and opinions of various officials that occurred or were made prior to IO 23 and the commencement of the Training.

Plaintiffs' statistical figures concerning Legal Aid-handled trespass arrests from September through November 2010 appear to show an 85% conviction rate, with the dismissals consisting of undefined "outright dismissals" and adjournments in contemplation of dismissal, which are not determinative of guilt or innocence and are not favorable terminations for a criminal defendant.[5] See Pltfs' Add'l 56.1 ¶¶ 1-3 & 41; see generally Murphy v. Lynn, 118 F.3d

---

[3] An example of the work of the SSTF's NYPD Policies and Relationships with Residents subcommittee is the February 24, 2010 meeting where Assistant Chief Delatorre shared with the subcommittee a chart that incorporated the items requested by the subcommittee. Plaintiffs do not dispute this. See Deft's 56.1 ¶ 42; Pltfs' Reply 56.1 ¶ 42.

[4] Plaintiffs fail to provide *any* evidence in their reply to contradict Defendant's 56.1 statement or the Delatorre Dec. other than a transcript excerpt showing that CCOP President Bowman's January 30, 2010 letter, see Delatorre Dec. Exh. J, represented the views of Mr. Bowman himself and not the CCOP as a whole. See Pltfs' Reply 56.1 ¶¶ 71-73. That Mr. Bowman did not speak for CCOP as whole –does not detract from the anti-lawsuit sentiment expressed in the letter. Nor can plaintiffs fairly dispute the larger point – namely, that NYCHA residents were part of the process that led to IO 23. In any event, the letter is not critical to the present motion.

[5] Plaintiffs also cite figures relating to trespass arrests from 2005-08, see Pltfs' Add'l 56.1 ¶ 4, which cannot relate to the 2010 policy and training that is the subject of this motion.

938, 948-49 (2d Cir. 1997). Plaintiffs' anecdotal "evidence" consists of trespass incidents that are second-hand accounts, are of indeterminate circumstances and/or occurred before the Training began. *See* Pltfs' Add'l 56.1 ¶¶ 8-12, 24-26 & 42-45. Similarly, plaintiffs offer inadmissible newspaper accounts for the truth of the matters asserted therein, which predate the Training. *See* Pltfs' Add'l 56.1 ¶ 18. The quoted statements of various officials are either vague generalizations or unsupported opinions, or also relate to matters in existence before IO 23 was adopted.[6] *See* Pltfs' Add'l 56.1 ¶¶ 13-17, 19-23 & 34-38.

## ARGUMENT

### POINT I
### PLAINTIFFS FAIL TO IDENTIFY CONSTITUTIONAL DEFICIENCIES IN IO 23 AND THE TRAINING

Plaintiffs' strained attempts to find *constitutional* flaws, in the City's NYCHA property patrol policy in their memorandum of law in opposition ("Pltfs' Memo") do not withstand scrutiny.

Plaintiffs' first apparent contention that the City has failed to show that the new policy will prevent any and all *future* improper trespass stops and/or arrests by individual officers is irrelevant where the defendant is a municipality and liability is premised on *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). In this context, the issue is the change in the City's policy, not the eradication of all future police officer misconduct.[7] *See Reynolds v. Giuliani*, 506 F.3d 183, 196 (2d Cir. 2007) ("the extent of [the supervising entity's] ultimate success in averting

---

[6] The remainder of plaintiffs' 56.1 statement, most of which is a selective mischaracterization of IO 23 and the Training materials, *see* Pltfs' Add'l 56.1 ¶¶ 27-33, constitutes a legal argument and is addressed below.

[7] Nevertheless, as discussed the Background section of this brief, plaintiffs' "evidence" relates to activity occurring before the implementation of IO 23.

4

injury cannot be the legal measure of its efforts to do so, as such a standard is tantamount to vicarious liability").

As to alleged flaws in the City's current NYCHA property patrol policy, plaintiffs selectively lift words and phrases out of the relevant documents and either ignore or misrepresent the context in which they appear. None of the various scenarios – confusingly set forth by plaintiffs, *see* Pltfs' Memo at 13-15 (some with and some without citations to the record) – violate applicable constitutional principles when IO 23 and the Training are viewed *in their entirety*.

For example, plaintiffs fault the City's policy for permitting officers to "approach"[8] a "potentially unauthorized person" in a NYCHA building and "fail[ing] to provide adequate guidance" to officers in this regard. Pltfs' Memo at 14. However, when IO 23[9], *see* IO 23 at 1 (¶¶ 3-4) & 2 (¶ 12(a)-(e)), is read in conjunction with its accompanying training, *see* Training[10] at III(B)(9), it becomes clear the encounter referred to by plaintiffs is a permissible "consensual" or "level one" encounter, *see, e.g., People v. Hollman*, 79 N.Y.2d 181, 184, 581 N.Y.S.2d 619, 620 (1992), that only rises to the level of a "stop" where there is reasonable suspicion that the person is in fact not authorized to be in the building. *See* Training at III(B)(9) (further noting "[i]t is important to note an officer should have, and be able to articulate, an objective credible reason for making this approach" and "[a]lthough an officer may ask [questions relating to whether a person is a resident or a visitor] the person's refusal to answer these questions alone,

---

[8] Plaintiffs' claim that IO 23 is flawed because it does not define "approach" is absurd and illustrates how far plaintiffs would like to go to micromanage the movements of police officers on a day-to-day basis. Dictionary.com defines "approach" as, not surprisingly, "to come near or nearer to". *See* http://dictionary.reference.com/browse/approach. An officer needs no more than a basic understanding of the English language to understand this term.

[9] IO 23 is attached as Exhibit A to the Delatorre Dec.

[10] The Training is attached as Exhibit H to the Delatorre Dec.

5

may not raise the level of suspicion"); *People v. De Bour*, 40 N.Y.2d 210, 222-23, 386 N.Y.S.2d 375, 384-85 (1976).

Similarly, plaintiffs contend that any and all approach-and-questions in effect automatically constitute a "stop" or "temporary seizure" because a person, who is lingering in the lobby (in violation of NYCHA House Rules[11]) and approached by a police officer, does not believe he or she is free to leave based on the NYCHA rule that requires them to "'cooperate with inquiries from . . . the police regarding their presence or conduct in any building'". Pltfs' Memo at 16. However, an officer is permitted to approach such a person under a variety of circumstances and ask whether he or she is lawfully on the premises. *See, e.g., People v. Hendricks*, 43 A.D.3d 361, 363, 841 N.Y.S.2d 94, 96 (1st Dep't 2007); *In re Troy F.*, 138 A.D.2d 707, 709, 526 N.Y.S.2d 521, 522-23 (2d Dep't), *appeal denied*, 72 N.Y.2d 804 (1988); *People v. Wigfall*, 2005 N.Y. Misc. LEXIS 3493, at 6-7 (Sup. Ct. Bronx County 2005). Whether the person feels "free to leave" depends on the conduct of the *officer* during the approach, *see People v. Bora*, 83 N.Y.2d 531, 535-36, 611 N.Y.S.2d 796, 798 (1994). Indeed, pursuant to NYCHA patrol policy, the officer is specifically instructed to tell a person who has been approached as a potentially unauthorized person, but who chooses not to answer the officer's questions, that the person must leave the premises. Far from being detained, the person is free to leave. It is only if the person wants to remain on NYCHA property that, as a condition of being allowed to remain, he cooperate with the police, as NYCHA rules require. *Cf. MacWade v. Kelly*, 460 F.3d 260, 273 (2d Cir. 2006). Plaintiffs recharacterize the City's NYCHA patrol policy as stating "that officers may approach and question anyone who enters the building without using a key even where the officer knows the door lock is broken". Pltfs' Memo at 14 (citing Training at

6-7). No such scenario is set forth on those two pages of the Training. If plaintiffs are referring to *page 11* of the training, *see* Training § IV(4), the Constitution simply does not prohibit an officer, in the process of reporting a broken lock and seeing someone entering without even trying to using a key, from ensuring that such person has a right to be in the building. In such a situation, the officer should be permitted to make inquiry, in accordance with the NYCHA patrol policy, to ensure the safety and security of the building. *See, e.g., MacWade*, 460 F.3d at 267-71.

Other alleged constitutional issues raised by plaintiffs simply do not exist. In one instance, plaintiffs contend the Training provides that an approach and question "is justified simply because an officer is not familiar with the person". Pltfs' Memo at 15 (incorrectly citing IO 23 at 1-2). What the training provides is that one of the many "*[a]dditional factors that may raise the level of suspicion include* . . . the officer has patrolled the building for a long period of time knows most of the building's residents and has never seen the person before . . ." Training § III(B)(9)(a) (emphasis in the original). Again, plaintiffs' characterization of the NYCHA patrol policy is disingenuous and not unconstitutional.

Other examples set forth by plaintiffs seem to mix and match constitutional concepts to create an illusion of unconstitutionality. Plaintiffs assert "[t]he revised Patrol Guide and Training also improperly puts the onus on the targeted resident or guest to establish affirmatively her lawful presence in the absence of probable cause". Pltfs' Memo at 15. Plaintiffs seem to say that an officer is required to have probable cause before s/he is permitted to ask a potential unauthorized person to establish his or her lawful presence in the building – yet probable cause is a prerequisite for arrest. The Training details the procedures an officer must follow when a person is suspected of not being lawfully in a NYCHA building. *See* Training § III(B)(9)(a)-(j)

---

[11] The rules (titled "Highlights of House Rules, Lease Terms and Policy") are attached as

7

(procedures). Plaintiffs also assert that the NYCHA patrol policy is flawed because a resident is subject to a trespass arrest for being on the roof landing, without proffered justification, in violation of conspicuously posted signs forbidding access to the roof landing. *Compare* Pltfs' Memo at 5 & 15 *with* Training § IV(A)(7). A posted restricted area, such as a roof landing, is not a common area of a building, and NYCHA and the NYPD need not treat it as such.

Insofar as plaintiffs fail to establish that IO 23 and the NYCHA Patrol Policy is constitutionally deficient mootness based on voluntary cessation has been satisfied. *See Lamar Advertising of Penn., LLC v. Town of Orchard Park*, 356 F.3d 365, 378 (2d Cir. 2004).

## POINT II
### APPLICATION OF THE RELEVANT FACTORS SHOW THAT THE CITY WILL NOT ABANDON CURRENT POLICY AND TRAINING

The parties essentially agree as to the factors the courts assess when determining whether mootness based on voluntary cessation is appropriate. The dispute here lies in the application of these factors to this case. In this regard, Defendant refers the court to Point III of its previously-submitted Memorandum of Law in Support of its Motion for Summary Judgment on Plaintiffs' Claim for Injunctive and Declaratory Relief ("Deft's Memo in Support"). *See* Deft's Memo in Support at 13-17. However, a few points on the law and facts need to be clarified and emphasized. In a case such as the present one, whether the conduct at issue has ceased relates to whether the *policy* in question has been sufficiently altered. *See, e.g., Lamar Advertising of Penn., LLC v. Town of Orchard Park*, 356 F.3d 365, 377-78 (2d Cir. 2004). Whether any and all improper *applications* of that policy will never occur is not material.[12]

---

Exhibit F to the Delatorre Dec.
[12] As discussed in the Background portion of Defendant's brief, plaintiffs rely on pre-IO 23 and Training incidents, opinions and second-hand accounts. To a large extent, plaintiffs rely on a recent case involving an arrest on NYCHA property, *People v Ventura*, 2010 N.Y. Misc. LEXIS 6124 (Sup. Ct. N.Y. County 2010). That case, however, is of little help to plaintiffs, as the arrest

8

Furthermore, the City's affirmative acknowledgement of past wrongdoing is not a prerequisite for mootness. Where mootness relates to prospective relief, one factor to be considered is whether the circumstances of the case show that defendant believes the change in policy is appropriate or otherwise expresses reservations about the effectiveness of the change. *See United States v. New York City Transit Auth.*, 97 F.3d 672, 676 (2d Cir. 1996). Admission of liability is not required.[13] The City's good faith in establishing its policy in an open manner with CCOP and NYCHA over the past year and a half, *see* Deft's 56.1 ¶¶ 13-43, speaks for itself.

Neither is "enforceability" a factor. As discussed in Point II of Deft's Memo in Support at 10-11, such a requirement would eviscerate the mootness doctrine.[14] In addition, an unsupported allegation of a "widespread practice" is insufficient to preclude mootness. Such a widespread practice or custom can exist only where a municipality acts with deliberate indifference by its *acquiescence* to such practice or custom. *See Reynolds v. Giuliani*, 506 F.3d 183, 195-97 (2d Cir. 2007); *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir.

---

in that case occurred approximately four months before IO 23 was issued. *See* Bradford Dec. Exh. B at 1. In addition, the arresting officer was a narcotics officer, not an officer assigned to routine NYCHA property patrol, Bradford Dec. Exh. C at 3, and as such will be trained in Phase II of the Training. *See* Delatorre Supp. Dec. ¶ 4.

[13] Plaintiffs cited cases are not to the contrary. *Doe v. United States Civil Serv. Comm'n*, 483 F. Supp. 539 (S.D.N.Y. 1980) involved claims based on *past* conduct where an admission of liability by the government was a necessary component of the relief sought. In *Monroe v. Bombard*, 422 F. Supp. 211 (S.D.N.Y. 1976), the policy change occurred "[s]hortly before the filing of [the court's] opinion". In circumstances not present here, the court rejected the last-second mootness request without an admission that the challenged activity was illegal or a conclusive demonstration that the wrong would not be repeated. *See* 422 F. Supp. at 215 n.5.

[14] Plaintiffs cited cases in this regard is similarly inapposite. In *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556 (2d Cir. 1991), the plaintiff sought a declaration that it was liable to defendant under the securities laws. The court in that case would not dismiss the declaratory action, in the absence of a settlement or other enforceable agreement, based simply on the defendant's promise that it would not bring the very lawsuit the declaratory action sought to ward off in the first place. The present case is not remotely similar.

9

2004). IO 23 and the Training establish that the City is not acquiescing to any alleged unconstitutional behavior.

As to the City's "history of wrongful[] behavior", see Pltfs' Memo at 20, plaintiffs cite no cases, where the City, as is the case here, has put as much time, effort and money into resolving an issue and in such a transparent manner. Moreover, the City has not shown "apathy" or "stonewalling", or any of the other negative qualities alleged by plaintiffs, that could overcome the presumption of good faith by the City.[15] *See, e.g., Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992).

## POINT III
### PLAINTIFFS CANNOT DEFEAT DEFENDANT'S MOTION BY RESTATING THE INSUFFICIENT COMPLAINT ALLEGATIONS AND CONSTRUCTING NEW CLAIMS

By announcing their intention to amend their complaint "[i]n light of the implementation of the revised Patrol Guide and Training and the recent promulgation of the new NYCHA House Rules, among other things . . .", *see* Pltfs' Memo at 12, plaintiffs seem to concede that the controversy before the court is now different. *See Lamar Advertising of Penn., LLC v. Town of Orchard Park*, 356 F.3d 365, 378 (2d Cir. 2004). Defendant agrees, and submits that this is why a finding of mootness is appropriate here.

Defendant would not concede, however, that this case can magically be transformed into a case that encompasses "the City's larger trespass enforcement and arrest practices", *see* Pltfs' Memo at 12, or the City's "Trespass Affidavit Program".[16] *See* Pltfs' Memo at 19-20. Plaintiffs

---

[15] Whether the Patrol Guide has the status as a regulation is irrelevant. Laws and regulations can be changed easily, as well. The point is the practical ability of the City, in light of its transparent (and expensive) efforts, to revert to a previous policy, not the form that such policy takes.

[16] Though plaintiffs assert that the City's new NYCHA patrol policy applies only to "vertical patrols", see Pltfs' Memo at 14, in their 56.1 statement they admit it applies to all NYCHA

10

have neither alleged facts nor identified individuals pursuant to Rule 26 of the Federal Rules of Civil Procedure as potential plaintiffs to make these claims.

In addition, plaintiffs have pursued this case as an attack on the City's policy and training with respect to NYCHA property patrols. In their pre-motion conference letter, plaintiffs did not raise issues with respect to improper discipline, monitoring and/or supervision. *See* Letter from Johanna Steinberg *et al.*, Counsel for Plaintiffs, to Hon. Shira Scheindlin (Oct. 6, 2010). Now plaintiffs seek to defeat the present motion based on their boilerplate allegations. As noted in defendant's moving brief, *see* Deft's Memo in Support at 10 n.9, these claims are insufficiently pleaded and should be dismissed. *See, e.g., Cuevas v. City of New York*, 2009 U.S. Dist. LEXIS 114984, at 10-12 (S.D.N.Y. 2009). Although this motion does not encompass any equal protection claim of "targeted enforcement [by the City] of trespass laws in communities of color", *see* Pltfs' Memo at 12 n.5, Defendant submits that the allegations relating to this claim are equally devoid of substance.[17] Such a claim would require plaintiffs in good faith to allege and ultimately prove, *inter alia*, that the City has deployed its forces to NYCHA property with discriminatory intent rather than with a law enforcement purpose. *See, e.g., Pyke v. Cuomo*, 567 F.3d 74, 77-79 (2d Cir.), *cert. denied*, 130 S.Ct. 741 (2009). As the court in *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1167 (10th Cir. 2003) aptly noted, such allegations run the risk of being counterproductive to the effective allocation of police resources and should not be lightly entertained. 345 F.3d at 1167.

---

property. *See* Deft's 56.1 ¶ 6; Pltfs' Reply 56.1 ¶¶ 6 & 11. In any event, it is clear that the Training explicitly applies to all police encounters on NYCHA Property. *See generally* Training at 1-2.

[17] Since the motion applies to plaintiffs' request for injunctive relief as it relates to the City's patrol of NYCHA property, it *does* encompass such request for relief with respect to plaintiffs' Federal Housing Act claims and any equal protection claims based on the manner in which

In addition, to the extent plaintiffs are asserting that the City has a policy of racial profiling on NYCHA property, Defendant draws the Court's attention to the NYPD's explicit policy to the contrary. *See* Delatorre Dec. Exh. B. Without evidence to the contrary, an official policy against racial profiling is sufficient to establish a lack of such discriminatory activity. *See Martin v. Lakewood Police Dep't*, 266 Fed. Appx. 173, 178 (3d Cir. 2008). A conclusory allegation by a plaintiff is insufficient.[18] *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 382 (S.D.N.Y. 2005).

Finally, to the extent plaintiffs believe they need additional discovery to preclude summary judgment on their claim for injunctive and declaratory relief, Defendant disagrees. The undisputed facts, as set forth in the Background section of this brief, are sufficient.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted in its entirety.

Dated:   New York, New York
         January 7, 2010

                        MICHAEL A. CARDOZO
                        Corporation Counsel of the
                          City of New York
                        Attorney for Defendant City
                          of New York
                        100 Church Street, Room 3-152
                        New York, New York 10007
                        (212) 788-0891

                    By: _____
                               Judson Vickers

---

NYCHA residents and visitors are approached by NYPD officers, as well as their individual Fourth Amendment Claims.

[18] Obviously, where there is a significant number of minorities in a particular high-crime area, any law enforcement efforts aimed at addressing the criminal activity is open to such a allegation (whether it's too little law enforcement or too much). *See Pyke*, 567 F.3d at 77-79.

TO:    Jason Williamson, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019

Johanna B. Steinberg, Esq.
NAACP Legal Defense & Educational Fund, Inc.
99 Hudson, 16th Floor
New York, NY 10013

William Gibney, Esq.
The Legal Aid Society
199 Water Street
New York, NY 10038

*Attorneys for Plaintiffs*

Steven Rappaport, Esq.
New York City Housing Authority
250 Broadway, 9th Floor
New York, NY 10007

*Attorney for the New York City Housing Authority*