UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELTON DAVIS, et al., individually and on behalf of a class of all others similarly situated;<br><br>                Plaintiffs,<br><br>                -against-<br><br>THE CITY OF NEW YORK and NEW YORK CITY HOUSING AUTHORITY;<br><br>                Defendants. | 10 Civ. 699 (SAS) |

**PLAINTIFFS' REPLY TO DECLARATION OF STEVEN J. RAPPAPORT
IN SUPPORT OF DEFENDANT CITY'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Pursuant to the Court's Order of January 18, 2011, Plaintiffs hereby submit the following reply to Defendant New York City Housing Authority's ("NYCHA") Declaration of Steven J. Rappaport in Support of Defendant City's Motion for Partial Summary Judgment, dated December 23, 2010 ("NYCHA Declaration.").

Defendant NYCHA has not moved for partial summary judgment or any other relief. The Declaration of NYCHA's counsel in support of the Defendant City of New York's (the "City") motion suggests, however, that if the City prevails, there will be no basis for Plaintiffs' claims for declaratory and injunctive relief against NYCHA. NYCHA Decl. at ¶ 2. The assertions of fact contained in the NYCHA Declaration do not alter the fact that the City has failed to meet the stringent burden of demonstrating mootness that is necessary to sustain its request for summary judgment on all of Plaintiffs' claims for declaratory and injunctive relief. *See Friends of the Earth, Inc.* v. *Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 174 (2000).

Critically, the NYCHA Declaration does not even contend that the City has discontinued the *practice* of unlawful trespass stops and arrests, let alone "completely and

irrevocably eradicated the effects of the alleged violation[s]." *Campbell* v. *Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996) (abrogated on other grounds) (citation omitted). Indeed, the City's contentions that training is "ongoing," extends to "new recruits," and that "all members of OCCB *will* be trained" is in fact evidence to the contrary, demonstrating that training is not even completed. *See* Supplemental Declaration of Edward Delatorre, dated January 7, 2011, at ¶¶ 2–4. The NYCHA Declaration, like the City's papers, makes no assertion that either the City or NYCHA plan to monitor the efficacy of the training, nor does it address how the City or NYCHA will hold police officers accountable for failure to comply. Most important, the NYCHA Declaration contains nothing to correct the City's utter lack of proof in support of its motion that the New York Police Department's longstanding pattern and practice of unlawful trespass arrests has stopped as a result of the promulgation of Patrol Guide Interim Order 23.

### 1.   Resident Representation, Participation, and Approval

NYCHA asserts that Resident Associations "give residents a *real voice* in the operation of the developments." NYCHA Decl. at ¶ 3 (emphasis added). As detailed in the NYCHA Declaration, these Resident Associations elect nine regional District Chairs who serve on the Citywide Council of Presidents ("CCOP"). *Id.* at ¶ 4. The nine members of CCOP are the only NYCHA residents participating in the Safety and Security Task Force ("Task Force"). NYCHA, however, mistakenly equates CCOP's participation and approval of the process as being the same as approval from the larger NYCHA resident community. *Id.* at ¶¶ 22–29.[1]

Evidence suggests the contrary. *See, e.g.,* Declaration of Erik Crawford in Support of Plaintiffs' Opposition to Defendant City of New York's Motion for Partial Summary

---

[1] Plaintiffs are not dismissive of the efforts and many of the recommendations espoused by the Task Force. To suggest, however, that the Task Force included residents, resident input, or resident approval is widely contested and misleading.

Judgment, dated December 20, 2010 ("Crawford Declaration"), at ¶¶ 6–8.  According to the findings of a recent report, "[t]he resident participation system leaves thousands of residents unrepresented and it contains undemocratic and non-participatory elements within its structure that prevent the adequate representation of hundreds of thousands of residents."  Community Voices Heard, *Democracy (In)Action:  How HUD NYCHA and Official Structures Undermine Resident Participation in New York City Public Housing* 3, 42 (2010), http://www.cvhaction.org/sites/default/files/Democracy%20(In)Action%20Full%20Report_0.pdf ("CVH Report").

In fact, one-third of NYCHA developments do not even have a Resident Association.  *Id*. at 3, 43.  Only 47% of residents are aware that Resident Associations sometimes exist and, due to various structure barriers, among other things, only 14% of residents actually voted in recent Resident Association elections.  *Id*. at 34, 36, 39–40.  Moreover, the absence of an effective communication system results in a dearth of communication to residents about critical information.  *Id*. at 47.  The lack of information-sharing limits residents' ability to participate in the process and provide input.  *Id*. at 37.  *See also* Crawford Decl. at ¶ 8.

As a result, CCOP members "represent a small exclusive base of resident leader voters instead of the general resident populations."  CVH Report at 47.  "Tenants outside the power structure have long complained that [CCOP] is too small and unaccountable."  Cassi Feldman, *Public Housing's Private Club*, City Limits, Jan. & Feb. 2005, available at http://www.citylimits.org/news/articles/3148/public-housing-s-private-club.  An alarming 83 % of residents have never even heard of CCOP and, for those who have, only 23% believe CCOP represents their interests as a public housing resident. CVH Report at 3.  Given these realities, any conclusion that the "real voice" of residents was considered by the Task Force process rings hollow.

2.    **Actions by Counsel**

Mr. Rappaport asserts that "defendants' counsel informed plaintiffs' counsel of the working of the Task Force and asked that they hold off on filing a lawsuit to give the Task Force a chance to do its job." NYCHA Decl. at ¶ 11. In meetings before the instant case was filed, counsel for Defendants informed Plaintiffs' counsel that the New York Police Department was looking into the problem. No information was shared regarding the Task Force. *See* Declaration of Johanna B. Steinberg, dated January 25, 2011 ("Steinberg Declaration") at ¶ 2.

NYCHA also refers, as the City has, to the January 30, 2010 letter from CCOP Chairman Reginald Bowman to Plaintiffs' counsel. Not only was this letter sent without the permission of CCOP members, counsel for Plaintiffs spoke to Mr. Bowman on January 29, 2010, before receiving the described letter. Mr. Bowman indicated that the invitation to Plaintiffs to "participate in the process" was contingent on Plaintiffs not pursuing this lawsuit. *See* Steinberg Declaration at ¶ 3.

The NYCHA Declaration fails to remedy the City's failure to meet the stringent burden of demonstrating mootness due to voluntary cession and, as a result, the City's Motion should be denied. *See Friends of the Earth, Inc.* v. *Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 174 (2000).

Dated:  January 26, 2011
New York, New York

By:   /s/ Johanna B. Steinberg
      Johanna B. Steinberg

NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
99 Hudson Street, Suite 1600
New York, NY 10013-2897
Tel.:  (212) 965-2200
Fax:  (212) 219-2052

John Payton
Debo P. Adegbile
Christina Swarns
Johanna B. Steinberg
Jin Hee Lee
Johnathan Smith

THE LEGAL AID SOCIETY
199 Water Street 6th Fl.
New York , NY 10038
Tel: (212) 577-3300
Fax: (212) 509-8141

Steven Banks
William Gibney
Steven Wasserman
Amanda Moretti
Nancy Rosenbloom

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Tel.: (212) 373-3000
Fax: (212) 757-3990

Michele Hirshman
Katharine E. G. Brooker

*Counsel for Plaintiffs*