UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

KELTON DAVIS, WILLIAM TURNER,
ALTAGRACIA HERNANDEZ, EDWIN
LARREGUI, ROMAN JACKSON,
KRISTIN JOHNSON, ELEANOR BRITT,
ANTHONY ANDERSON, LASHAUN
SMITH, SHAWNE JONES, HECTOR
SUAREZ, ADAM COOPER, ANDREW
WASHINGTON, P.L. BY HIS PARENT
LISA PIGGOTT, DAVID WILSON, AND
GENEVA WILSON, individually and on
behalf of a class of all others similarly
situated,

               **Plaintiffs,**

       - against -

THE CITY OF NEW YORK and NEW
YORK CITY HOUSING AUTHORITY,

              **Defendants.**
------------------------------------------------------------X

**OPINION AND ORDER**

**10 Civ. 0699 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

      Plaintiffs bring suit, on behalf of themselves and a class of similarly

situated individuals, against the City of New York (the "City") and the New York

City Housing Authority ("NYCHA") (collectively, "Defendants"), asserting a

continuing violation of their rights pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1981,

the Fourth and Fourteenth Amendments to the United States Constitution, Title VI

of the Civil Rights Act of 1964,[1] Title VIII of the Civil Rights Act of 1968 ("Fair Housing Act"),[2] the United States Housing Act,[3] the Constitution and laws of the State of New York, and the New York City Human Rights Law ("NYCHRL").[4]

Plaintiffs have sought the production of certain documents, which the City has refused to produce, asserting that those documents are protected by the deliberative process privilege.  For the reasons stated below, the City is ordered to produce some of the documents, and to submit a more detailed privilege log with respect to certain other documents.

## II.   BACKGROUND

Plaintiffs allege that defendants, "operating through and in conjunction with the New York City Police Department ("NYPD"), have implemented and continue to conduct, enforce and sanction an unlawful vertical patrol and trespass arrest policy which has resulted in a pattern and practice of illegal stops, seizures, questioning, searches, and false arrests of residents of, and authorized visitors to, NYCHA residences."[5]  At the time this suit was instituted,

---

[1]   42 U.S.C. § 2000(d).

[2]   *Id.* § 3601, *et seq.*

[3]   *Id.* § 1437, *et seq.*

[4]   N.Y.C. Admin. Code § 8-101, *et seq.*

[5]   Complaint ("Compl.") ¶ 2.

2

the NYPD policy at issue was reflected, in part, in section 212-60 of the NYPD Patrol Guide ("P.G. 212-60"), entitled "Interior Vertical Patrol of Housing Authority Buildings."[6]

        In response to complaints to the Civilian Complaint Review Board ("CCRB") about the legality of stops and arrests in NYCHA buildings and similar concerns raised by NYCHA representatives and tenant leaders, the NYPD leadership decided to "provid[e] additional guidance to police officers patrolling NYCHA properties."[7]  In the fall of 2009, NYPD Police Commissioner Raymond Kelly delegated to S. Andrew Schaffer, NYPD Deputy Commissioner for Legal Matters, the task of revising P.G. 212-60 in consultation with high-ranking NYPD personnel and attorneys from the New York City Corporation Counsel.[8]  On July 8, 2010, P.G. 212-60 was replaced by Interim Order number 23 ("I.O. 23").[9] Although I.O. 23 contains much of the same information as its predecessor, it

_____

[6]    *Id.* ¶ 3.  *See also* 3/15/11 Letter Brief by Tonya Jenerette, counsel to the City of New York ("City Letter") at 1; P.G. 212-60, dated 1/1/00, Ex. B to City Letter.

[7]    3/15/11 Declaration of S. Andrew Schaffer, NYPD Deputy Commissioner for Legal Matters ("Schaffer Decl."), attached to City Letter ¶ 4.

[8]    *See id.* ¶¶ 3, 5; City Letter at 1-2.

[9]    *See* Schaffer Decl. ¶¶ 3, 8; City Letter at 2; I.O. 23, dated 6/8/10, Ex. C to City Letter.

differs in that it "discusses in enhanced detail when 'a uniformed member of the service may approach and question persons who may be violating Housing Authority rules and regulations, including potentially unauthorized persons found in Housing Authority buildings.'"[10]

I.O. 23 was issued after the commencement of this suit, but plaintiffs assert that their claims "challenge[] generally Defendants' overall vertical patrol policies and trespass enforcement practices, including I.O. 23."[11]  Plaintiffs have accordingly demanded that the City produce, as part of its discovery obligations, "any drafts, correspondence or memoranda concerning the development and implementation of Interim Order 23" and "any drafts, correspondence or memoranda concerning the development and implementation of the corresponding training curriculum, as well as all revisions to the curriculum."[12]

The City has withheld four categories of documents, which it asserts

---

[10]    Schaeffer Decl. ¶ 11 (quoting I.O. 23 ¶ 3).

[11]    3/29/11 Letter Brief by plaintiffs ("Pl. Letter") at 7.  The City contests plaintiffs' position, arguing, "[a]s the Interim Order literally did not exist on the date the complaint was filed, it could not have been the subject of plaintiffs' claims."  City Letter at 6 n.3.  However, the City is splitting hairs.  Plaintiffs clearly mean that they seek to challenge defendants' overall vertical patrol policies and trespass enforcement practices.  Plaintiffs' position is that those policies have been and remain discriminatory, regardless of whether they are manifested in P.G. 212-60, I.O. 23, or any other policy document.

[12]    *See* City Letter at 1.

all relate to the revision of P.G. 212-60: "(1) legal memoranda and NYPD Legal Bureau analysis of vertical patrols in NYCHA developments; (2) correspondence and draft revisions to P[.]G[.] 212-60; (3) drafts of the training curriculum/training scenarios concerning revised P[.]G[.] 212-60; (4) and deliberations about substantiated CCRB complaints concerning the legality of stops and arrests on NYCHA properties."[13] The City claims that these documents are predecisional and deliberative and as such, their release would "inaccurately reflect the basis for final agency policy and chill the candor of NYPD officials in the future."[14] In support of its assertions of privilege, the City has submitted a declaration from S. Andrew Schaffer; two privilege logs, dated February 25, 2011 and April 7, 2011; P.G. 212-60; and I.O. 23.[15]

## III.   APPLICABLE LAW

The deliberative process privilege protects from disclosure

---

[13]     *Id.* at 3.

[14]     *Id.* at 1.  The City's privilege logs also reflect assertions of the attorney-client and attorney work product privileges.  The parties were not asked to brief whether those privileges have been properly asserted, thus the Court does not reach that issue.  However, in revising its privilege logs in accordance with this Opinion and Order, the City is also ordered to review its assertions of those two privileges and ensure that its assertions are proper.

[15]     *See* Schaffer Decl.; 2/25/11 City's Privilege Log ("2/25 Log"), Ex. A to City Letter; 4/7/11 City's Privilege Log ("4/7 Log"), attached to City's 4/7/11 letter in reply to plaintiffs' opposition ("City Reply"); P.G. 212-60; I.O. 23.

"'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"[16] The privilege is intended "'to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government.'"[17]

In order to qualify for the privilege, a document must be "predecisional" and "deliberative."[18] A document is predecisional if it was "'prepared in order to assist an agency decisionmaker in arriving at his decision.'"[19] The agency claiming privilege "must be able to demonstrate that . . . the document for which . . . privilege is claimed related to a specific decision facing the agency."[20] A document is deliberative if it is "'actually . . . related to the

_____

[16]    *National Council of La Raza v. Department of Justice* ("*NCLR*"), 411 F.3d 350, 356 (2d Cir. 2005) (quoting *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002)).

[17]    *Tigue*, 312 F.3d at 76 (quoting *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)).

[18]    *NCLR*, 411 F.3d at 356.

[19]    *Id.* at 356 (quoting *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999)). Such materials include "recommendations, draft documents, proposals, suggestions, and other subjective documents [that] reflect the personal opinions of the writer rather than the policy of the agency." *Grand Cent. P'ship*, 166 F.3d at 482.

[20]    *Tigue*, 312 F.3d at 80 (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975)).

process by which policies are formulated.'"[21]  Factors used to determine whether a

document is deliberative include "whether the document (i) formed an essential

link in a specified consultative process, (ii) reflects the personal opinions of the

writer rather than the policy of the agency, and (iii) if released, would inaccurately

reflect or prematurely disclose the views of the agency."[22]  The privilege does not

extend to "'purely factual' material"[23] or documents later adopted or incorporated

into a final agency opinion.[24]  "The privilege also does not extend to materials

related to the explanation, interpretation or application of an existing policy, as

opposed to the formulation of a new policy."[25]

     The deliberative process privilege is merely a qualified privilege; thus

"when the existence of [the] privilege is established, there is a need to balance the

public interest in nondisclosure against the need of the particular litigant for access

---

[21]   *NCLR*, 411 F.3d at 356 (quoting *Grand Cent. P'ship*, 166 F.3d at 482).

[22]   *Grand Cent. P'ship*, 166 F.3d at 482 (quotation marks and citation omitted). *Accord Tigue*, 312 F.3d at 80.

[23]   *Grand Cent. P'ship*, 166 F.3d at 482 (quoting *Hopkins v. U.S. Dep't of Housing & Urban Dev.*, 929 F.2d 81, 85 (2d Cir. 1991)).

[24]   *See NCLR*, 411 F.3d at 356 (citing *Sears*, 421 U.S. at 161); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

[25]   *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 641 (S.D.N.Y. 1991) (citing *Mobil Oil Corp. v. Department of Energy*, 102 F.R.D. 1, 5 (N.D.N.Y. 1983)).

to the privileged information."[26]  Factors favoring disclosure include:

> (1) the relevance of the requested materials to the [requesting party's] case, (2) the importance of the materials to the [requesting party's] case, including the availability of the information from alternative sources, (3) the strength of the [requesting party's] case . . . , and (4) the importance [of disclosure] to the public interest.[27]

Factors against disclosure include: (1) threats to public safety, (2) the invasion of

government officials' privacy, (3) the weakening of government programs, and (4)

the chilling of internal candor.[28]  "[T]he burden of persuasion rests on the party

seeking to prevent disclosure."[29]  That burden is a heavy one, in view of "the great

weight of the policy in favor of discovery in civil rights actions and the normal

presumption in favor of broad discovery."[30]

     "The claim of deliberative-process privilege must be lodged by the

head of the agency after personal consideration of the allegedly privileged

material" or by a "'subordinate with high authority'" pursuant to "guidelines on the

---

[26]    *MacNamara v. City of New York*, 249 F.R.D. 70, 79 (S.D.N.Y. 2008) (quotation marks and citation omitted).

[27]    *Id.* at 80 (citing *King v. Conde*, 121 F.R.D. 180, 191-93 (E.D.N.Y. 1988)).

[28]    *Cf. id.* (describing similar factors specifically applied to law enforcement (citing *King*, 121 F.R.D. at 191-93)).

[29]    *King*, 121 F.R.D. at 191.

[30]    *MacNamara*, 249 F.R.D. at 80.

use of the privilege" issued by the head of the agency.[31] "The assertion of the privilege by an attorney is therefore improper."[32] "Moreover, the agency claiming the privilege must provide precise and certain reasons for preserving the confidentiality of the information."[33]

## IV.   DISCUSSION

As a preliminary matter, I find that Deputy Commissioner Schaffer is a proper party to assert the deliberative process privilege on behalf of the NYPD. Although plaintiffs correctly point out that the City has failed to establish explicitly that Schaffer has been delegated the authority to assert the privilege in accordance with agency guidelines, it is evident from the City's submissions that Schaffer is a subordinate of high authority who was delegated the task of revising P.G. 212-60.[34] Thus Schaffer is in the best position to assess the NYPD's need for deliberative confidentiality surrounding the P.G. 212-60 revision, whether or not he was

---

[31]   *Resolution Trust Corp.*, 137 F.R.D. at 641(quoting *Mobil Oil Corp.*, 102 F.R.D. at 5). *Accord Morrissey v. City of New York*, 171 F.R.D. 85, 89 n.3 (S.D.N.Y. 1997) (collecting cases).

[32]   *Resolution Trust Corp.*, 137 F.R.D. at 641(citing, *inter alia*, *Mobil Oil*, 102 F.R.D. at 6).

[33]   *Id.* (quotation marks and citations omitted).

[34]   *See* Pl. Letter at 6 n.4; City Letter at 1-2; *see generally* Schaeffer Decl.

explicitly or formally delegated the authority to assert the privilege.[35]

## A.   Sufficiency of Privilege Logs

On the whole, the privilege logs submitted by the City are insufficiently detailed to allow the Court to assess the legitimacy and scope of its assertion of the deliberative process privilege.  The City's privilege logs include the headings "Start Bates," "End Bates," "Author," "Recipient," "Document Date," "Subject," and "Privilege."  There is nothing improper, in principle, with a privilege log that utilizes these categories, which are fairly standard.  However, there are two major deficiencies in the City's logs that renders them inadequate.

First, one or more columns is marked "N/A" for a significant number of entries.  Second, the City too often employs vague, confusing, or conclusory descriptions in the "Subject" column.  The use of "N/A" may in certain circumstances be appropriate.  I understand, for example, that the "Recipient" column might not apply where a document was distributed broadly, or not distributed at all; that it might not be possible to complete the "Author" column when the document was unattributed and unsigned; or that the "Document Date" column might be left blank when a document was left undated.  However, a

---

[35]   *Cf. Resolution Trust Corp.*, 137 F.R.D. at 641 (finding "that the decision to assert the privilege was made not by agency policymakers in consideration of the agency's interest in deliberative confidentiality, but by its outside counsel as a matter of litigation strategy").

missing date, recipient, and/or author, combined with a vague description of the subject matter of the document, leaves the Court unable to assess whether a given document is an inter- or intra-agency document, and whether it is deliberative and/or predecisional.  In a few instances, the City has even left the "Privilege" column blank, leaving the Court in the dark as to which, if any, privilege is being asserted.[36]

Given the volume of documents that the City is seeking to withhold, I will not specifically address each and every entry in the logs.  Instead, I mention a few illustrative examples, and instruct the City to apply the principles I set forth here in revising its logs.  The very first entry in the 2/25 Log lists a one-page document, authored by "NYPD Counsel," with no recipient, no document date, and the subject description "Comm Zoland Housing Verticals Patrols Folder - Deborah Zoland."[37]  While that form of shorthand may be comprehensible to NYPD personnel, I cannot decipher such language in order to determine whether the privilege applies.

Another series of documents, also lacking recipients or dates, are

---

[36]    *See* Priv001301-Priv001308 (which is dated 9/27/10 but has "N/A" for author, recipient, *and* subject, while privilege is left blank); Priv000135-Priv000138.

[37]    Priv_Paper_0000001.

described as "Third Endorsement - IDC # 064-299-0479,"[38] followed by "Second Endorsement - IDC # 064-299-0479,"[39] and "First Endorsement."[40]  Without any information as to what "IDC # 064-299-0479" is, the Court is left to speculate as to what exactly has been endorsed.  Yet another document lacks an author, a recipient, or a document date, and its subject matter is described in the vaguest of terms as "Patrol Guide - NYCHA Bldgs."[41]  That description in no way satisfies the City's burden to establish that the deliberative process privilege should apply.  Another document lacking an author or recipient, and dated September 15, 2010, after the issuance of I.O. 23, is described merely as "Five Changes."[42]  Based on that two-word description, I cannot evaluate whether the five changes were proposed or enacted, by whom, to what, or anything else that would help determine whether the document is predecisional or deliberative.  In view of opaque "descriptions" such as these, it is perhaps worth reminding the City that the purpose of a privilege log is to enable the opposing party and the Court to test the asserted privilege.  The paltry descriptions provided by the City prevent either

---

[38]   Priv_Paper_0000064.

[39]   Priv_Paper_0000065.

[40]   Priv_Paper_0000066.

[41]   Priv_Paper_0000540.

[42]   Priv_Paper_0000552.

12

plaintiffs or the Court from performing any such test.[43]

Furthermore, it is difficult for the Court to believe that every single one of the several hundred documents included in the City's two privilege logs are properly privileged in their entirety. The law is clear that the privilege does not protect "purely factual material."[44] Thus any factual recitations that can be disentangled from deliberative analyses must be released. It does not appear that the City has attempted to make any such distinction. The City is therefore ordered to release those portions of the requested documents that are factual and can be separated from the deliberative portions of the documents.

Certain entries in the log reflect a blatant abuse of the assertion of privilege. A prime example is a document authored by John B. Rhea, the Chairman of NYCHA, to Raymond Kelly, NYPD Chief, dated December 23, 2009.

---

[43]     To provide some additional guidance to the City, I will identify a few of the entries that I do consider sufficiently detailed and covered by the deliberative process privilege: Priv_Paper_0000554-0000557 ("Draft Interim Order - Revision of Patrol Guide 212-60 Interior Vertical Patrol of Housing Authority Buildings - Number Draft 1"); Priv_Paper_0000562-0000563 ("Latest Revision to P.G. 212-60 Interior Vertical Patrol of Housing Authority Buildings"); Priv_Paper_0000613 ("Proposed Language to Add to Patrol Guide Procedure No 212-60 (Interior Vertical Patrol of Housing Authority Buildings) under Additional Data").

[44]     *Grand Cent. P'ship*, 166 F.3d at 482. *Accord Jackson v. City of New York*, No. 05 Civ. 721, 2006 WL 2789990, at *4 (S.D.N.Y. Sept. 27, 2006) ("[s]egregable factual material is not covered by the privilege" (citation omitted)).

 The subject is described as "[Discussions are Essential to Further Mutual Goal of Providing for Safe and Comfortable Housing Environment for NYCHA Residents]." The City asserts that this document is protected from disclosure by the attorney-client and deliberative process privileges.[45] Based on this information alone, it is obvious that this document cannot be an attorney-client communication, as it does not involve communications between an attorney and his client, but rather between the heads of two City agencies. Additionally, the subject description fails to make clear whether and in what way the document is, in whole or in part, predecisional or deliberative. Thus while I do not rule here on the applicability of the attorney-client or attorney work product privileges as they have not been briefed, the City is cautioned to reassess its assertion of all privileges carefully prior to resubmitting the logs. If a random in camera review of a selected group of documents on the privilege logs reveals that the assertion of privilege was baseless, the Court will not hesitate to find that the City has waived any claim of privilege with regard to the remainder of the documents.

**B.    Category One and Category Two**

Any documents that properly fall into Category One – to the extent that such documents pertain to the revisions of P.G. 212-60 – or into Category Two

---

[45]     Priv_Paper_0000662.

14

are most likely privileged.  However, the City has failed to provide adequate

information about each document for the Court to ascertain whether the documents

so described properly fall within those categories.  Additionally, to the extent that

documents in Category One do not relate to the revisions of P.G. 212-60, but rather

constitute analysis of NYPD's *past* policy and practice of vertical patrols in

NYCHA developments, they cannot be considered predecisional.  Therefore the

City is ordered to revise its privilege logs with more detailed information about

what is actually contained in the documents subsumed under Category One and

Category Two so that plaintiffs and the Court can assess the propriety of the

assertions of privilege.  Not every entry must be revised; however, a significant

portion likely will, in accordance with the principles laid out above.

## C.    Category Three

In its letter brief, the City argues that all of the documents it seeks to

withhold are predecisional with respect to the development of the policy ultimately

crystallized in I.O. 23.[46]  However, that cannot be the case with the documents in

Category Three, characterized as "drafts of the training curriculum/training

scenarios concerning revised P.G. 212-60," or Category Four, characterized as

"deliberations about substantiated CCRB complaints concerning the legality of

---

[46]    City Letter at 1, 7.

stops and arrests on NYCHA properties."[47] The City apparently believes that by using the word "draft" or "deliberations," the privilege automatically attaches. The City is mistaken. A draft may be covered by the privilege, to the extent that it "reflects the personal opinions of the writer rather than the policy of the agency."[48] However, the fact that something is a draft does not eliminate the City's obligation to specify the particular policy or decision to which the document relates.[49] Furthermore, the City fails to include information about the draft documents "such as their 'function and significance in the agency's decisionmaking process,'"[50] which is necessary to justify the assertion of the deliberative process privilege.

To the extent that the City acknowledges that the documents in Category Three are "drafts of the training curriculum/training scenarios concerning revised P.G. 212-60,"[51] such drafts were necessarily developed after the completion of the P.G. 212-60 revision. It seems unlikely that the NYPD would

---

[47]     *Id.* at 3-4.

[48]     *Tigue*, 312 F.3d at 80.

[49]     *See New York Times Co. v. United States Dep't of Def.*, 499 F. Supp. 2d 501, 515 (S.D.N.Y. 2007) ("[t]he mere fact that a document is a draft is not a sufficient reason to automatically exempt it from disclosure") (quotation marks, ellipses, and citation omitted).

[50]     *Id.* (quoting *The Wilderness Soc'y v. United States Dep't of the Interior*, 344 F. Supp. 2d 1, 5 (D.D.C. 2004)).

[51]     City Letter at 3.

waste time developing a curriculum to train officers in a policy that had not yet been finalized.  Thus such documents were certainly not predecisional with respect to revisions of P.G. 212-60, and the City acknowledges as much in its reply. Rather, the City argues that the draft training curriculum are predecisional because "(1) they precede, in temporal sequence, the final training curriculum; and (2) they reflect proposals, suggestions and recommendations on how to 'provide [] additional guidance to police officers patrolling NYCHA properties.'"[52]

The City's arguments are premised on the idea that a training curriculum and other "guidance" documents constitute an agency policy or decision.  The law is clear that "[t]he privilege . . . does not extend to materials related to the explanation, interpretation or application of an existing policy."[53] However, whether training materials can be considered a policy or decision in the context of the deliberative process privilege is an issue of first impression.  Not every minor question that is contemplated by an agency or employee thereof, and the way that question is answered, can be considered an agency policy or decision. "'The [p]rivilege is properly limited to communications relating to policy formulation at the higher levels of government; it does not operate indiscriminately

---

[52]     City Reply at 5 (quoting unknown source).

[53]     *Resolution Trust Corp.*, 137 F.R.D. at 641(quoting *Mobil Oil Corp.*, 102 F.R.D. at 5).

17

to shield all decision-making by public officials.'"[54]

Documents written to train officers in the implementation of I.O. 23 do not constitute a policy, but rather are materials intended to explain an existing policy – I.O. 23.  While high-ranking NYPD officers were involved in designing the training curriculum, their involvement is not enough to transform their explanations of the policy into the equivalent of a policy or decision.[55]  Thus Category Three documents are not covered by the deliberative process privilege, as they are not predecisional to an agency policy.  It may be that certain of the documents are covered by the attorney-client privilege or constitute attorney work product.  If so, the City should designate them as such, providing sufficient detail to analyze the assertion of those privileges.[56]

---

[54]      *Velez v. City of N.Y.*, No. CV 2004-1775, 2010 WL 2265443 at *4 (E.D.N.Y. June 2, 2010) (quoting *Scott v. Board of Educ. of City of East Orange*, 219 F.R.D. 333, 337 (D.N.J. 2004)).  *Accord Grossman v. Schwartz*, 125 F.R.D. 376, 381 (S.D.N.Y. 1989); *Torres v. City Univ. of N.Y.*, No. 90 Civ. 2278, 1992 WL 380561, at *7 (S.D.N.Y. Dec. 3, 1992).

[55]      *See* Schaeffer Decl. ¶¶ 5, 6.

[56]      In view of footnote 2 in the City's Reply, which misconstrues plaintiffs' argument about attorney-client privilege as an argument about attorney work product, the City is reminded that attorney work product only pertains to documents prepared in anticipation for litigation, although the definition of attorney-client privilege is significantly broader.  *Compare New York Times Co.*, 499 F. Supp. 2d at 517 ("The attorney work product privilege protects the files and the mental impressions of an attorney . . . prepared in anticipation of litigation.") (quotation marks and citation omitted), *and In re County of Erie*, 473 F.3d 413,

### D.     Category Four

The documents that fall into Category Four – "deliberations about substantiated CCRB complaints concerning the legality of stops and arrests on NYCHA properties"[57] – are clearly not covered by the deliberative process privilege.  Again, the City believes that by using the word "deliberation," it has established the privilege.  However, courts have consistently held that "recommendations concerning disciplinary review of a discrete incident do not involve the policy formulations protected under the deliberative process privilege."[58]  Category Four documents, as described by the City, fall precisely into this area of non-privileged communications.

As noted in the discussion of Category Three above, it may be that certain of these documents are covered by the attorney-client privilege or the work product privilege.  The City is ordered to reevaluate the documents in Category Four with the Court's ruling in mind, to release those documents that do not fall under any of the privileges, and to redraft a privilege log to include those

---

418 (2d Cir. 2007) ("The attorney-client privilege protects most confidential communications between government counsel and their clients that are made for the purpose of obtaining or providing legal assistance.").

[57]     City Letter at 4.

[58]     *Velez*, 2010 WL 2265443 at *4.

19

documents that the City still considers privileged under the attorney-client or work product privileges.

## V.    CONCLUSION

In accordance with the Court's instructions above, the City is ordered to review its assertions of privilege; revise and resubmit its privilege logs by May 20, 2011; and release the requested documents that are not covered by the deliberative process privilege, or any other privilege, in view of the Court's rulings, whether in their entirety or in redacted form as appropriate.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            May 4, 2011

20

## Appearances

**For Plaintiffs:**

Johnathan Smith, Esq.
Johanna B. Steinberg, Esq.
NAACP Legal Defense & Educational Fund, Inc.
99 Hudson Street, 16th Floor
New York, New York 10013
(212) 965-2269

William Gibney, Esq.
Nancy Rosenbloom, Esq.
Legal Aid Society of New York
199 Water Street
New York, New York 10038
(212) 577-3419

Katharine E.G. Brooker, Esq.
Matthew J. Moses, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3139

**For Defendant City of New York:**

Tonya Jenerette
Morgan David Kunz
David M. Hazan
Bradford Collins Patrick
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007
(212) 788-0993

**For Defendant NYCHA:**

Steven Jay Rappaport, Esq.
New York City Housing Authority
250 Broadway, 9th Floor
New York, New York 10007
(212) 776-5152