UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

KELTON DAVIS, WILLIAM TURNER,
ALTAGRACIA HERNANDEZ, EDWIN
LARREGUI, ROMAN JACKSON,
KRISTIN JOHNSON, ELEANOR BRITT,
ANTHONY ANDERSON, LASHAUN
SMITH, SHAWNE JONES, HECTOR
SUAREZ, ADAM COOPER, ANDREW
WASHINGTON, P.L. BY HIS PARENT
LISA PIGGOTT, DAVID WILSON, AND
GENEVA WILSON, individually and on
behalf of a class of all others similarly
situated,

               **Plaintiffs,**

      - against -

THE CITY OF NEW YORK and NEW
YORK CITY HOUSING AUTHORITY,

              **Defendants.**

------------------------------------------------------X

**OPINION AND ORDER**

**10 Civ. 699 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7/5/11_

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

      Plaintiffs bring this putative class action against the City of New York

(the "City") and the New York City Housing Authority ("NYCHA") (collectively,

"Defendants"), alleging a pattern and practice of unlawful stops, seizures, and

arrests for trespass in NYCHA buildings in violation of sections 1983 and 1981 of

title forty-two of the United States Code, the Fourth and Fourteenth Amendments

to the United States Constitution, Title VI of the Civil Rights Act of 1964,[1] Title VIII of the Civil Rights Act of 1968 ("Fair Housing Act"),[2] the United States Housing Act,[3] the Constitution and laws of the State of New York, and the New York City Human Rights Law ("NYCHRL").[4]  Plaintiffs seek equitable relief in the form of (1) a declaration that Defendants' acts, practices, policies, and omissions in connection with patrol and arrest activities on NYCHA property are unlawful, and (2) an injunction against their continued application.[5]

The City now moves for summary judgment on all of Plaintiffs' claims for equitable relief, asserting that it has taken actions since the commencement of litigation to address Plaintiffs' allegations and that these actions have rendered Plaintiffs' claims moot.  For the reasons set forth below, the City's motion is denied in its entirety.

## II.    BACKGROUND

### A.    Plaintiffs' Allegations

The New York City Police Department ("NYPD") is responsible for

---

[1]    *See* 42 U.S.C. § 2000(d).

[2]    *See id.* § 3601, *et seq.*

[3]    *See id.* § 1437, *et seq.*

[4]    *See* N.Y.C. Admin. Code § 8-101, *et seq.*

[5]    *See* Complaint ("Compl.") ¶ 53.

patrolling public housing facilities operated by NYCHA, with the stated purpose of preventing crime and enforcing NYCHA rules and regulations.[6]  The inspection of the interior of a NYCHA building is referred to as a "vertical patrol."[7]  Plaintiffs commenced the instant action on January 28, 2010, alleging that Defendants, operating through and in conjunction with the NYPD, "have implemented and continue to conduct, enforce and sanction an unlawful vertical patrol and trespass arrest policy which has resulted in a pattern and practice of illegal stops, seizures, questioning, searches, and false arrests of residents of, and authorized visitors to, NYCHA residences."[8]

Plaintiffs contend that the NYPD improperly utilizes "checkpoints" on NYCHA property where "officers indiscriminately stop and question every person they observe, without objective individualized suspicion of a crime, and unlawfully arrest individuals for trespass without probable cause."[9]  Additionally, Plaintiffs assert that the City has "failed to supervise and discipline officers" who are

---

[6]    *See* Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Def. 56.1") ¶ 1; Plaintiffs' Reply Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Pl. 56.1") ¶ 1.

[7]    Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5.

[8]    Compl. ¶ 2.

[9]    *Id*. ¶ 3.

involved in these incidents, does not monitor these incidents, and has not "instituted any follow up procedure or disciplinary action when charges are dismissed or where it is otherwise established that an individual was arrested without probable cause."[10]

### B.   Developments Since the Commencement of the Action

### 1.   Changes to NYPD Policy

At the time this suit was instituted, the NYPD policy at issue was reflected, in part, in section 212-60 of the NYPD Patrol Guide ("P.G. 212-60"), entitled "Interior Vertical Patrol of Housing Authority Buildings."[11]  However, changes to the policy were already being contemplated: in the summer of 2009, against the backdrop of complaints by the Civilian Complaint Review Board ("CCRB"), NYCHA representatives, and tenant leaders concerning the legality of stops and arrests in NYCHA buildings, the NYPD leadership decided to revise P.G. 212-60 in order to "provid[e] additional guidance to police officers patrolling NYCHA properties."[12]

---

[10]   *Id.* ¶ 147.

[11]   *Id.* ¶ 3.  Despite its title, P.G. 212-60 is not restricted to vertical patrols and discusses overall NYPD responsibilities throughout NYCHA property. *See* Def. 56.1 ¶ 8; Pl. 56.1 ¶ 8.

[12]   Def. 56.1 ¶ 17; Pl. 56.1 ¶  17.

As part of the revision process, the NYPD held a meeting on October 15, 2009 with high-ranking NYCHA personnel, including NYCHA Chairman John B. Rhea, and the Citywide Council of Presidents ("CCOP"), NYCHA's elected tenant association.[13]  The attendees agreed to establish a permanent Safety and Security Task Force ("SSTF"), co-chaired by Chairman Rhea and the President of the CCOP, to address NYPD and NYCHA resident relations, security on NYCHA property, and other matters of community concern.[14]

The first SSTF meeting was held on December 10, 2009, with meetings occurring at least once a month thereafter.[15]  Additionally, at its first meeting, SSTF formed five subcommittees to address specific designated topics; these subcommittees each hold regular additional meetings of their own.[16]  The two subcommittees most pertinent to NYPD patrols of NYCHA property are the NYPD's Policies and Relationships with Residents and the NYCHA Rules and Regulations subcommittees — together, these subcommittees address which NYCHA rules need to be implemented and enforced.[17]  Through the

---

[13]     *See* Def. 56.1 ¶¶ 13-17; Pl. 56.1 ¶¶ 13-17.

[14]     *See* Def. 56.1 ¶¶ 24-25, 37; Pl. 56.1 ¶¶ 24-25, 37.

[15]     *See* Def. 56.1 ¶¶ 26, 33; Pl. 56.1 ¶¶ 26, 33.

[16]     *See* Def. 56.1 ¶¶ 29, 30, 34; Pl. 56.1 ¶¶ 29, 30, 34.

[17]     *See* Def. 56.1 ¶¶ 30, 31; Pl. 56.1 ¶¶ 30, 31.

subcommittees and SSTF, the NYPD, NYCHA, and NYCHA residents

discussed the proposed revisions to NYPD's vertical patrol policy and reviewed

the material that was ultimately incorporated into the final policy.[18]

On June 8, 2010, P.G. 212-60 was replaced by Interim Order Number

23 ("I.O. 23").[19]  The express purpose of I.O. 23 is "[t]o assist the Housing

Authority in enforcing its rules, limiting criminal activity, providing a safe and

secure environment and ensuring the habitability of its residential buildings for

Housing Authority residents and their guests by performing interior vertical

patrols."[20]  It seeks to "provide uniformed members of the service additional

guidance concerning situations occurring within Housing Authority facilities [and

to] illustrate[] appropriate action to be taken with consideration afforded to the

uniqueness and totality of the circumstances surrounding each encounter."[21]

Specifically, I.O. 23 discusses when "a uniformed member of the service may

approach and question persons who may be violating Housing Authority rules and

regulations, including potentially unauthorized persons found in Housing

---

[18]     *See* Def. 56.1 ¶¶ 40, 43; Pl. 56.1 ¶¶ 40, 43.

[19]     *See* Def. 56.1 ¶ 3; Pl. 56.1 ¶ 3.

[20]     Def. 56.1 ¶ 9; Pl. 56.1 ¶ 9.

[21]     Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5.

Authority buildings."[22]

The NYPD developed a ninety-minute training curriculum for I.O. 23 ("I.O. Training"), with input allegedly incorporated from the NYPD Policies and Relationships with Residents Subcommittee.[23]  The training covers: (1) "the purpose and rationale for conducting interior vertical patrols within Housing Authority property," (2) "the importance of proper interactions between police officer and Housing Authority residents," and (3) "the revision to Patrol Guide section 212-60, 'Interior Vertical Patrol of Housing Authority Buildings,'" with changes between P.G. 212-60 and its successor underlined.[24]

The I.O. Training was implemented in early fall 2010.[25]  According to Defendants, the training is to be rolled out in two stages:  Phase I training includes "all uniform members of the Housing Bureau of all rank, including executives, as well as members of the Patrol Services Bureau assigned to precinct housing teams;" while Phase II training includes "police officers, sergeants, and lieutenants

---

[22]     Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11.

[23]     *See* Def. 56.1 ¶¶ 45, 51; Pl. 56.1 ¶¶ 45, 51.

[24]     Def. 56.1 ¶ 46; Pl. 56.1 ¶ 46.

[25]     *See* Def. 56.1 ¶ 70; Pl. 56.1 ¶ 70.

assigned to the Patrol Services Bureau and not within a precinct housing team."[26]

Defendants report that about ninety percent of Phase I has been completed, with

over eighteen hundred officers trained, with the remaining ten percent to be trained

over the next few months.[27]  Phase II training has yet to begin, but Defendants

assert that it will be completed within the next twelve months and will occur at the

required annual training sessions for officers, sergeants and lieutenants.[28]  As a

result, those officers trained during Phase I are expected to be trained again as part

of Phase II.[29]  The NYPD intends to provide the training to recruits in the future, as

well as higher-level supervisors not currently captured in Phase I or Phase II.[30]

The total anticipated cost of the training is about $2.7 million dollars.[31]

## III.   LEGAL STANDARD

### A.   Summary Judgment

---

[26]      Def. 56.1 ¶ 53; Pl. 56.1 ¶ 53.  According to Defendants, officers in
Phase II interact far less frequently, if at all, with individuals on NYCHA property.
*See* Def. 56.1 ¶ 58.

[27]      *See* Def. 56.1 ¶ 53.  Plaintiffs assert that the relevant discovery has not
been provided, and they can neither admit nor deny statements pertaining to the
details of the I.O. Training.  *See* Pl. 56.1 ¶ 53.

[28]      *See* Def. 56.1 ¶¶ 57, 61, 63.

[29]      *See id*. ¶ 64.

[30]      *See id*. ¶ 65.

[31]      *See id*. ¶ 68.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[32]  "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'  A fact is material if it 'might affect the outcome of the suit under the governing law.'"[33]  "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[34]  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence . . . on an essential element of the nonmovant's claim."[35]  In turn, to defeat a motion for summary judgment, the non-moving party must raise a

---

[32]     Fed. R. Civ. P. 56(c).

[33]     *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[34]     *Miner v. Clinton County*, 541 F.3d 464, 471 (2d Cir. 2008).  *Accord Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

[35]     *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). *Accord In re September 11 Litig.*, 500 F. Supp. 2d 356, 361 (S.D.N.Y. 2007) ("Where the nonmoving party bears the burden of proof at trial, the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.") (quotation marks and citations omitted).

genuine issue of material fact.  To do so, the non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[36] and "'may not rely on conclusory allegations or unsubstantiated speculation.'"[37] However, "'all that is required [from the non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[38]

"In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party."[39] However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[40]  Summary judgment is therefore "appropriate only if there is no genuine issue of material fact and the

---

[36]     *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

[37]     *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[38]     *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson*, 477 U.S. at 248-49).

[39]     *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citing *Anderson*, 477 U.S. at 242, 255).

[40]     *Id.* (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).

moving party is entitled to judgment as a matter of law."[41]

## IV.   APPLICABLE LAW

"Mootness is a doctrinal restriction stemming from the Article III requirement that federal courts decide only live cases or controversies; a case is moot if the parties lack a legally cognizable interest in the outcome of the case."[42] As the Supreme Court has explained,

> [t]he underlying concern [of the mootness doctrine] is that, when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated, then it becomes impossible for the court to grant any effectual relief whatever to [the] prevailing party.  In that case, any opinion as to the legality of the challenged action would be advisory.[43]

Because mootness deprives a court of subject matter jurisdiction, it may be

---

[41]    *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).  *Accord Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009).

[42]    *In re Zarnel*, 619 F.3d 156, 163 (2d Cir. 2010) (quotation marks and citation omitted).  *Accord Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (quotation marks and citations omitted)).

[43]    *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quotation marks and citations omitted).

evaluated at all stages of the litigation.[44]

       "A case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur."[45]   However, "[i]t is well settled that "'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'"[46]   Otherwise, "the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'"[47]   Accordingly, the standard "for determining whether a case has been mooted by the defendant's voluntary conduct is stringent," and the party asserting mootness bears the "heavy burden of persua[ding]" the court that the challenged

---

[44]    *See Spencer v. Kemna,* 523 U.S. 1, 7 (1998) ("This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." (citation omitted)).

[45]    *Irish Lesbian and Gay Org. v. Giuliani,* 143 F.3d 638, 647 (2d Cir. 1998).  *Accord United States v. Concentrated Phosphate Export Assn.,* 393 U.S. 199, 203 (1968) ("A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.").

[46]    *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 (1982)).

[47]    *Id*. (quoting *City of Mesquite*, 455 U.S. at 289 n.10).

12

conduct cannot reasonably be expected to start up again."[48]  Ultimately, however, the decision to dismiss a case on mootness grounds "lies within the sound discretion of the district court, and a strong showing of abuse must be made to reverse it."[49]

## IV.   DISCUSSION

Defendants argue that "Interim Order 23 and the NYCHA Patrol Training have entirely eliminated the basis for [P]laintiffs' *Monell* claim against the City."[50]  Defendants assert that I.O. 23 and the I.O. Training constitute "comprehensive" reforms that exceed Plaintiffs' constitutional demands for declaratory and injunctive relief, even if they do not satisfy Plaintiffs' "rather extensive wish list of procedures and processes that they would like to see the NYPD implement."[51]  Moreover, Defendants argue that there is no reasonable expectation that the NYPD will resume its allegedly unlawful practices, given the

---

[48]      *Id*. (quotation marks and citation omitted).

[49]      *Harrison & Burrowes Bridge Constuctors, Inc. v. Cuomo* ("*Harrison*"), 981 F.2d 50, 59 (2d Cir. 1992) (quotation marks and citation omitted).

[50]      Defendants' Memorandum in Support of Its Motion for Summary Judgment on Plaintiffs' Claims for Declaratory and Injunctive Relief ("Def. Mem.") at 8.

[51]      *Id*.

resources it has committed to revising P.G. 212-60.  Accordingly, Defendants

contend that they have met their burden of establishing that "(1) there is no

reasonable expectation that the alleged violation will recur, and (2) interim relief or

events have completely and irrevocably eradicated the effects of the alleged

violation."[52]  I disagree.

### A.    Reasonable Expectation of Recurrence

In order for the development and implementation of I.O. 23 and the

I.O. Training to moot the case, these events must make it "absolutely clear" that the

NYPD's allegedly unlawful practices on NYCHA property could not reasonably be

expected to recur.[53]  Yet Plaintiffs assert that they cannot evaluate the status and

substance of I.O. 23 and the I.O. 23 Training, on the grounds that "the relevant

discovery has not been produced."[54]  It appears that Plaintiffs have not yet had

sufficient opportunity to corroborate Defendants' assertions that I.O. 23 and the

I.O. 23 Training are fully compliant with legal requirements.  To the extent that

Plaintiffs have had access to the new policy and training materials, Plaintiffs

identify various deficiencies that, in their view, "both fail to remedy the pre-

---

[52]      *Lamar Advertising of Penn. LLC v. Town of Orchard Park*, 356 F.3d
365, 375 (2d Cir. 2004).

[53]      *Concentrated Phosphate Export Assn.,* 393 U.S. at 203.

[54]      *See generally* Pl. 56.1.

14

existing inadequacies and create additional violations."[55]  Defendants' rebuttals

only highlight the existence of disputed issues of fact.  Accordingly,  the efficacy

of the new policy guide and training curriculum is, at this stage of the litigation,

either unknown or disputed.[56]  Under these circumstances, Defendants cannot meet

either the standard for mootness or summary judgment.

       As a threshold matter, the parties do not even agree that the

challenged conduct has in fact ceased.  Defendants argue that their representations

of voluntary cessation must be credited by virtue of their governmental status.  Yet

while "*[s]ome* deference must be accorded to a state's representations that certain

conduct has been discontinued,"[57]  Defendants are not entitled to a complete

exemption from their "formidable" burden of proof.[58]  As Plaintiffs point out,

---

[55]    Plaintiffs' Memorandum in Opposition to Defendants' Motion for
Summary Judgment on Their Claims for Declaratory and Injunctive Relief ("Pl.
Mem.") at 4.

[56]    *See Friends of the Earth*, 528 U.S. at 167 (holding that claims by
environmental groups for alleged violations by the holder of a pollutant discharge
permit were not mooted where defendant had previously achieved substantial
compliance with its permit requirements and defendant closed the offending
facility following plaintiffs' appellate victory, because the effect of these events
was a disputed fact question — particularly as defendant retained its permit and
could ostensibly reopen another offending facility).

[57]    *Harrison*, 981 F.2d at 59.

[58]    *Friends of the Earth*, 528 U.S. at 191.

Defendants have provided *no* "admissible evidence, statistics, or reports demonstrating that the violations articulated in the Complaint have been resolved," let alone completely and irrevocably eradicated.[59]  Indeed, Defendants concede that the implementation of the I.O. Training is incomplete, with ten percent of Phase I remaining and Phase II yet to begin.  By implication then, the practices associated with P.G. 212-60 are still, in some measure, extant within the NYPD.

Even assuming that the challenged conduct has ceased, Plaintiffs have no concrete assurances that Defendants will not resume their allegedly unlawful arrest and trespass enforcement practices.  As the Second Circuit has opined, the "determination of whether there is a reasonable expectation that the wrong will be repeated is not foreclosed by expressions of intention by [government] officials."[60]  This is particularly so where, as here, Defendants have a history of similar wrongful behavior;[61] have not admitted to any constitutional or statutory violation;

---

[59]    Pl. Mem. at 4.

[60]    *Armstrong v. Ward*, 529 F.2d 1132, 1136 (2d Cir. 1976).  *Accord Hilton v. Wright*, 235 F.R.D. 40, 48 n.6 (N.D.N.Y. 2006) (rejecting state official's argument that his change in policy and unconditional statement that he will not reinstitute the offending policy eliminates any reasonable expectation that the policy wll be reinstated).

[61]    *See Ahrens v. Bowen*, 852 F.2d 49, 53 (2d Cir. 1988) (rejecting a mootness claim by the Secretary of the Department of Health and Human Services where, *inter alia*, the underlying third-party conduct giving rise to the suit could reasonably be repeated and the Secretary could again attempt to preclude the suit

16

and have refused to enter into any kind of "binding, judicially enforceable agreement."[62]   While Defendants argue that it is highly improbable that they will resume any alleged unlawful behavior in light of the resources they have committed to the I.O. 23 transition, they have revealed only the *projected* $2.7 million cost of the training, rather than the amount spent to date.  In effect, the NYPD has modified certain internal documents that do not carry the weight of a regulation or statute, and which do not bind future officials under a different administration.  In other words, Defendants are "free to return to [their] old ways."[63]   Granting summary judgment at this stage of the litigation would foreclose any opportunity for judicial review precisely where it may be needed the most — in the context of alleged continuing constitutional violations by the entities entrusted with protecting the public interest.

---

by granting last-minute relief to plaintiffs).  *Accord Casale v. Kelly*, 710 F. Supp. 2d 347, 350 (S.D.N.Y. 2010) (holding the City in civil contempt for its "long history of . . . apathetic behavior" and  "lack [of] resolve to end the illegal enforcement [of unconstitutional loitering statutes] on its own," despite the City's implementation of numerous anti-enforcement provisions and statistics showing reduced enforcement, because "[n]early every measure that the City has undertaken has been at the direction of the Court, the prodding of plaintiffs, and/or under the threat of sanctions").

[62]       *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 563 (2d Cir. 1991) (quotation marks and citation omitted).

[63]       *City of Mesquite*, 455 U.S. at 289 n.10.

**B.      Revisions to the Patrol Guide Do Not Fully Address Plaintiffs' *Monell* Claims**

Perhaps most fatal to Defendants' mootness motion is the inescapable fact that allegations pertaining to NYPD policy constitute only one aspect of Plaintiffs' claim.  As Plaintiffs point out, "the Complaint never equates the NYPD's written vertical patrol policy with the City's larger trespass enforcement and arrest practices."[64]  For example, Plaintiffs allege that the City does not "monitor improper stops, seizures, and searches for trespass" and does not supervise, discipline, or otherwise follow-up with officers who do not comport with NYPD procedures.[65]  Any amendments to the NYPD's patrol guide or officer training would not address these issues.  As a result, the City's remedial measures do not fully respond to Plaintiffs' allegations of wrongdoing, and therefore cannot reasonably ensure either that the conduct at issue will not recur in the future or that its effects have been eradicated.

Notably, a *Monell* claim does not restrict municipal liability to official policies that were adopted and promulgated by City officials, but encompasses informal customs or "'practices . . . so permanent and well settled as to constitute a

---

[64]      Pl. Mem. at 3.

[65]      Compl. ¶ 147.

18

custom or usage with the force of law.'"[66]  As the Supreme Court explained in

*Monell*,

> Local governing bodies . . . can be sued directly under §
> 1983 for monetary, declaratory, or injunctive relief where
> . . . the action that is alleged to be unconstitutional
> implements or executes a policy statement, ordinance,
> regulation, or decision officially adopted and promulgated
> by that body's officers. . . .  [They can also be sued for]
> deprivations visited pursuant to governmental 'custom'
> even though such a custom has not received formal
> approval through the body's official decisionmaking
> channels.[67]

In other words, even granting that I.O. 23 and the I.O. Training represent

comprehensive and adequate reforms of NYPD *policy*, Defendants cannot establish

that there is no contrary *practice* or *custom* for which Plaintiffs may be entitled to

equitable relief.  The question of whether NYPD officers actually adhere to the

new policy articulated in I.O. 23 — and the extent to which the City may tacitly

---

[66]     *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691 (1978)
(quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)).  *Accord
Zherka v. DiFiore*, 412 Fed. Appx. 345, 348 (2d Cir. 2011) ("[M]unicipalities are
'persons' that may be held liable if a plaintiff proves the municipality violated a
federally protected right through (1) municipal policy, (2) municipal custom or
practice, or (3) the decision of a municipal policymaker with final policymaking
authority.") (quoting *Monell,* 436 U.S. at 694).  *Cf. Los Angeles County, Cal. v.
Humphries*, 131 S. Ct. 447, 451 (2010) ("We conclude that *Monell's* holding
applies to section 1983 claims against municipalities for prospective relief as well
as to claims for damages.").

[67]     *Monell*, 436 U.S. at 690-91.  *Accord Humphries*, 131 S. Ct. at 452.

endorse or turn a blind eye to widespread misconduct — is not answered by reference to NYPD policy as written.  Accordingly, revisions to the Patrol Guide, without proof of a change in *practice*, are insufficient to remedy the entrenched customs and practices underlying Plaintiffs' constitutional and statutory claims.

## V.    CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is denied in its entirety.  The Clerk of the Court is directed to close this motion [Docket No. 31].  A conference is scheduled for August 9, 2011 at 5 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 5, 2011

20

**– Appearances –**

**For Plaintiffs:**

Johnathan Smith, Esq.
Johanna B. Steinberg, Esq.
NAACP Legal Defense & Educational Fund, Inc.
99 Hudson Street, 16th Floor
New York, New York 10013
(212) 965-2269

William Gibney, Esq.
Nancy Rosenbloom, Esq.
Legal Aid Society of New York
199 Water Street
New York, New York 10038
(212) 577-3419

Katharine E.G. Brooker, Esq.
Matthew J. Moses, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3139

**For Defendant City of New York:**

Tonya Jenerette
Morgan David Kunz
David M. Hazan
Bradford Collins Patrick
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007
(212) 788-0993

**For Defendant NYCHA:**

Steven Jay Rappaport, Esq.
New York City Housing Authority
250 Broadway, 9th Floor
New York, New York 10007
(212) 776-5152