Index No.: 10 Civ. 0699 (SAS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELTON DAVIS, WILLIAM TURNER, ALTAGRACIA
HERNANDEZ, EDWIN LARREGUI, ROMAN JACKSON,
KRISTIN JOHNSON, ELEANOR BRITT, ANTHONY
ANDERSON, LASHAUN SMITH, SHAWNE JONES,
HECTOR SUAREZ, ADAM COOPER, ANDREW
WASHINGTON, P.L. BY HIS PARENT LISA PIGGOT,
DAVID WILSON, AND GENEVA WILSON, individually and
on behalf of a class of all others similarly situated;

                                                     Plaintiffs,

                        -against-

THE CITY OF NEW YORK and NEW YORK CITY
HOUSING AUTHORITY;

                                                     Defendants.

# DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street, Room 3-189*
*New York, N.Y.  10007*
*Of Counsel:  Morgan D. Kunz*
*Tel:  (212) 788-0422*
*NYCLIS No. 2010-004508*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................... 1

STATEMENT OF FACTS ........................................................................... 1

ARGUMENT ............................................................................................... 4

     POINT I .............................................................................................. 6

         Plaintiffs' Requested Hourly Rates....................................... 6

         A.  The Hourly Rates Should be Reduced Because of a Disconnect Between the Hourly Rates Sought and Experience of Each Attorney........................................... 7

         B.  The Hourly Rates Should Be Reduced Because of the Number of Billing Attorneys and the Top Heavy Structure of Plaintiff's Litigation Team .................................. 8

         C.  The Hourly Rates Should be Reduced Because the Settling Plaintiffs Did Not Obtain Class Certification or Injunctive Relief ........................................... 9

         D.  The Hourly Rate Should Be Reduced Because No Reasonable Paying Client Would Agree to the Rates As Billed ........................................................ 10

         E.  Conclusion of Defendant City of New York's Position on Attorney Rates ..................................... 13

     POINT II ............................................................................................ 14

         Reducing Number of Billed Hours ......................................... 14

         A.  Double Billing ................................................................ 15

         B.  Travel Time .................................................................... 15

         C.  Work Not Reasonably Expended On the Litigation........................................................................ 16

         D.  Conclusions on Hourly Deductions ................................. 21

POINT III ................................................................................................................... 22

    across the Board Deduction ...................................................................... 22

        A.   Vague and Block Billing ................................................................. 23

        B.   Limited Success ............................................................................. 24

        C.   Conclusion ..................................................................................... 25

POINT IV ................................................................................................................... 25

    Expert Fees are not Taxable ...................................................................... 25

CONCLUSION ............................................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182,
184 (2d Cir. 2007)..............................................................................................................5, 6, 7, 12

Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 523-25 (S.D.N.Y. 2002) .........6, 24

Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 151-152 (2d Cir. 2008)..................10

BD v. DeBuono, 177 F. Supp. 2d 201, 206 (S.D.N.Y. 2001)........................................................25

Blum v. Stenson, 465 U.S. 886, 895 (1984) ..................................................................................10

Carroll v. Blinken, 105 F.3d 79, 81 (2d Cir. 1997).......................................................................24

Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989) ..........4

Dailey v. Societe Generale, 915 F. Supp. 1315, 1328 (S.D.N.Y. 1996), aff'd in relevant
part, 108 F.3d 451 (2d Cir. 1997) .................................................................................................23

Fabbricante v. City of New York, 01 CV 5575 (CPS) (RML), 2006 U.S. Dist. LEXIS
62906 (E.D.N.Y. Sept. 5, 2006)....................................................................................................17

Gonzalez v. Bratton, 147 F. Supp. 2d 180, 213 (S.D.N.Y. 2001) .................................................23

Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) ............................6, 7, 9, 10

Kapoor v. Rosenthal, 269 F. Supp. 2d 408, 414 (S.D.N.Y. 2003)...................................................8

Kassim v. City of Schenectady, 415 F.3d 246, 255-56 (2d Cir. 2005)...........................................24

Lake v. Schoharie County Comm'r of Soc. Servs., 2006 U.S. Dist. LEXIS 49168 *38
(S.D.N.Y. 2006) ............................................................................................................................25

Local 32 B-32J, SEIUJ, SEIU  v. Port. Auth., 180 F.R.D. 251, 253 (S.D.N.Y. 1998).................23

LV v. New York City Dep't of Educ., 700 F. Supp. 2d 510, 519 (S.D.N.Y. 2010).................4, 11

Northon v. Rule, 494 F. Supp. 2d 1183, 1187 (D. Or. 2007) ..........................................................8

Pascuiti v. New York Yankees, 108 F. Supp. 2d 258, 266 (S.D.N.Y. 2000). ...............................11

Patrolmen's Benevolent Ass'n of New York, Inc. v. City of New York, 97 Civ. 7895
(SAS), 98 Civ. 8202 (SAS), 2003 U.S. Dist. LEXIS 13472, at *7 (S.D.N.Y. July 29,
2003) .........................................................................................................................................22, 23

Ragin v. Harry Macklowe Realty, 870 F. Supp. 510, 520 (S.D.N.Y. 1994) .................................23

Scott v. City of New York, 02 Civ. 9530 (SAS), 2009 U.S. Dist. LEXIS 78078 (S.D.N.Y. Aug. 25, 2009) ..............................................................................................5, 9, 14, 24

Society for Good Will, 574 F. Supp. 994, 998-999 (E.D.N.Y. 1983) ...........................................18

Tatum v. City of New York, 06-cv-4290 (PGG), 2010 U.S. Dist. LEXIS 7748 at *28 (S.D.N.Y. Jan. 28, 2010)..........................................................................................................15

## **Statutes**

42 U.S.C. §2000(d) ........................................................................................................................1

42 U.S.C. §3601 et seq. ("Fair Housing Act").............................................................................1

United States Housing Act, 42 U.S.C. §1437, et seq....................................................................1

42 U.S.C. §1997e(d) ....................................................................................................................13

42 U.S.C. §1988..........................................................................................................................25

42 U.S.C. §1988(c) ......................................................................................................................25

42 U.S.C. §1988(b) ......................................................................................................................25

Local Civil Rule 54.1(c)(3)..........................................................................................................26

Title VI of the Civil Rights Act of 1964 .......................................................................................1

Rule 68 ...........................................................................................................................................1

Title VIII of the Civil Rights Act of 1968 ....................................................................................1

## PRELIMINARY STATEMENT

Plaintiffs commenced this action against defendants City of New York and the New York City Housing Authority, alleging a violation of certain of their constitutional rights. Nine of the sixteen original plaintiffs accepted Rule 68 Offers of Judgment, and on July 8, 2011 these plaintiffs moved for an award of attorneys' fees and costs. Defendant City of New York submits this memorandum of law in opposition to that attorneys' fee motion.

## STATEMENT OF FACTS

Plaintiffs filed the instant lawsuit alleging violations of the Fourth and Fourteenth Amendments, Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000(d), Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §3601 et seq. ("Fair Housing Act"), the United States Housing Act, 42 U.S.C. §1437, et seq.; the Constitution and the laws of the State of New York; and the New York City Human Rights Law. (Complaint, Kunz Decl., Exhibit A, ¶1).[1]   The lawsuit alleges, *inter alia*, that the City of New York, through its employees, is engaged in a pattern and practice of "illegal stops, seizures, questioning, searches, and false arrests" of residents and visitors to housing developments maintained by the New York City Housing Authority ("NYCHA"). Plaintiffs complain in particular about the policies related to so-called "vertical patrols." As defined by plaintiffs, these patrols consist of a "roving pedestrian checkpoints in an around NYCHA residences, wherein [police officers] indiscriminately stop and question every person they observe, without objective individualized suspicion of a crime, and unlawfully arrest individuals for trespass without probable cause." (Complaint, Kunz Decl.,

---

[1] The plaintiffs filed an amended complaint in this matter on May 27, 2011. The nine plaintiffs who accepted Rule 68 offers, however, took judgment against the City of New York on February 7, 2011. (Judgments Pursuant to Rule 68, Kunz Decl., Exhibits B and C). Accordingly, the amended complaint is not relevant to the case brought by the settling plaintiffs.

Exhibit A, ¶3).   Plaintiffs further allege that the "[d]efendants implement and apply these policies, practices, and customs in an intentionally discriminatory and race-based manner … ." (Complaint, Kunz Decl., Exhibit A, ¶¶17, 198).   Plaintiffs allege that the policing decisions in NYCHA buildings are not related to crime levels in those buildings; rather they allege that policing decisions are based on the "race, ethnicity, and/or national origin" of the residents and visitors of the NYCHA buildings. (Complaint, Kunz Decl., Exhibit A, ¶¶8-9).   To remedy these constitutional violations, plaintiffs seek class certification "for the purpose of obtaining injunctive and declaratory relief only." (Complaint, Kunz Decl., Exhibit A, ¶16, 303). Individually, plaintiffs seek compensatory damages. (Complaint, Kunz Decl., Exhibit A, ¶306).

Nine of the original sixteen plaintiffs accepted Rule 68 offers in this case.   Four plaintiffs – William Turner, Edwin Larregui, David Wilson, and Anthony Anderson – accepted Rule 68 offers issued on September 20, 2010.   (Judgments Pursuant to Rule 68, Kunz Decl., Exhibits B).   Five additional plaintiffs – Adam Cooper, Kelton Davis, Shawne Jones, Geneva Wilson, and Hector Suarez – accepted Rule 68 offers issued on December 7, 2010.   (Judgments Pursuant to Rule 68, Kunz Decl., Exhibits C).   When the plaintiffs accepted the Rule 68 offers, they agreed to dismiss all claims, including compensatory damages and any other type of relief, in exchange for specified dollar amounts.[2]   (Judgments Pursuant to Rule 68, Kunz Decl., Exhibits B and C).   As such, the settling plaintiffs did not obtain class certification, injunctive relief, or declaratory relief.   (Judgments Pursuant to Rule 68, Kunz Decl., Exhibits B and C).   In addition, the Rule 68 Judgments filed on February 7, 2001, specifically state that they "shall not

---

[2] It is currently contested whether the Rule 68 Judgments acted to release NYCHA from the claims brought by the settling plaintiffs, or if the Judgments only covered the claims against the City of New York.  Nothing contained in this motion should be construed as an admission by the City of New York that the Rule 68 Judgments do not include NYCHA.

to be construed as an admission of liability by any defendant … ."  (Judgments Pursuant to Rule 68, Kunz Decl., Exhibits B and C).

Defendant City of New York attempted to reach an agreement with plaintiffs to settle the attorneys' fees and costs portion of the Rule 68 Judgments.  Those efforts were not successful for a number of reasons.  First, plaintiffs initially wanted to settle on a bifurcated basis.  The initial statement of services included only an unspecified fraction of the work performed, purportedly covering the work related to the individual claims of the Rule 68 Plaintiffs, and not including any work related to the class action claims.  Defendant could not agree to settle an unspecified portion of the fees without knowing anything about the fees that would be decided later.  In addition, such a scheme would push off a substantial portion of the fees owed to the Rule 68 Plaintiffs to an unspecified future dated.  Defendants also objected to the initial proposal because it did not include any bills for Paul, Weiss.  At a meet and confer defendants raised these issues and plaintiffs agreed to submit a statement of services with *all* of their hours.  Defendant stressed that it needed to see *all* of the hours, and plaintiffs' counsel indicated they would submit same.  Plaintiffs ultimately submitted a statement of services that included hours for the class action claims, but they refused to provide any information on the billing for Paul, Weiss.  Based on the second proposal, defendant attempted to engage with plaintiffs in discussions concerning the billing.  Defendant proposed that the parties agree to certain overarching principles that would guide this fee application.  Those agreements would cover issues such as: billing for media contacts, travel time, pre-retainer work, work on motions, and work on training; the prorating method to be applied; an across the board percentage reductions to account for vague, block and excessive billing; attorney rate reductions; and other issues.  Before engaging in such discussions, plaintiffs requested that defendant submit their

position in writing and make a counter-proposal.  After defendant submitted their position in writing and made a counter-proposal, plaintiff refused to engage in further discussions, opting instead to file the instant motion.

In their motion, plaintiffs submitted bills for seven attorneys.  They seek $300,474.33 dollars from the City of New York.  That amount consist of $151,109.63 for the NAACP Legal Defense Fund, $114,102.20 for the Legal Aid Society, and $35,262.50 in expert consulting fees.[3]  Defendant opposes the requested amounts.

## ARGUMENT

The instant motion requires the Court to determine the appropriate amount to constitute reasonable attorneys' fees, expense and costs, for the nine plaintiffs whom accepted Rule 68 Offers of Judgment.  Voluminous case law has been written on the question of attorneys fees in civil rights litigation, and defendants point to several principles of this jurisprudence that that are particularly salient to the issues presented in this matter.

First, defendant notes that it is "plaintiffs' burden to establish 'with satisfactory evidence – in addition to the attorney's own affidavits' – why their requested fee is appropriate." LV v. New York City Dep't of Educ., 700 F. Supp. 2d 510, 513 (S.D.N.Y. 2010) (citing Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989)). Indeed, the billing attorneys are to "exercise billing judgment with respect to hours worked." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)(citation omitted).  Accordingly, it is incumbent on the plaintiffs to justify the requested hourly rates and the number of hours billed.

---

[3] Defendant notes that during attempts to discuss settlement, plaintiffs never made a proposal less than the amount reflected in the bills originally submitted to defendant.  The original settlement proposal submitted by plaintiff represented an attempt to pro rate the bills based on the nine out of sixteen plaintiffs who accepted the Rule 68 offers of Judgment.

Second, a district courts "bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 184 (2d Cir. 2007). In doing so, the Court should keep in mind that the attorneys' fee jurisprudence prior to Arbor Hill had "come untethered from the free market it is meant to approximate." Id. The untethering partly stems from the fact that a plaintiff in civil rights cases have little incentive to negotiate a beneficial rate structure with his attorney prior to the litigation. Accordingly, the Court should keep in mind that it must ensure that an "attorney does not recoup fees that the market would not otherwise bear." Id. Thus, overarching the entire fee issue is the question of what a "reasonable, paying client would be willing to pay." Id.

Third, as a practical matter, in determining an appropriate fee in any particular case courts begin their analysis by looking to "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Webb v. County Board of Education, 471 U.S. 234, 242 (1985) (citing Hensley v. Eckerhart, 462 U.S. 424, 433 (1983)). The Second Circuit refers to this figure as the "presumptively reasonable fee." Arbor Hill, 522 F.3d at 183. Thus, in considering a fee dispute the Court must "discipline the market" both in terms of the hourly rate appropriate for each attorney and in terms of the number of hours billed by each attorney. The watchword of both questions is reasonableness.

Fourth, district courts have broad discretion in assessing the reasonableness of a fee request. Hensley, 461 U.S. at 437 (1983). Indeed, the court may exercise that discretion by applying an across-the-board percentage reduction to the number of hours billed as a practical means of trimming the fat from a fee application. Scott v. City of New York, 02 Civ. 9530 (SAS), 2009 U.S. Dist. LEXIS 78078 (S.D.N.Y. Aug. 25, 2009) (remanded for other reasons)

5

(applying an across the board 30% deduction for limited success); Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 523-25 (S.D.N.Y. 2002)(Chin, J.)(imposing a 60% across the board reduction in fees due to limited success where each plaintiff accepted a Rule 68 Offer of Judgment of $37,500, an amount that the court found "conspicuously lean").

With these overarching principles in mind, defendant City of New York opposes plaintiffs fee application because the requested hourly rates are excessive, because the number of hours billing is excessive, and because there should be an across the board deduction to account for vague and block billing as well as the limited success obtained by the settling plaintiffs. In addition, plaintiffs are not entitled to any cost shifting for the expert fees.

## POINT I

## PLAINTIFFS' REQUESTED HOURLY RATES

In determining the appropriate hourly rate, the Second Circuit has held that district courts should determine "the rate a paying client would be willing to pay." Arbor Hill, 522 F.3d at 190. In Arbor Hill, the Second Circuit instructed courts in this district, when assessing the appropriate hourly rate, to apply the twelve factors listed by the Fifth Circuit in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974);[4] Arbor Hill, 522 F.3d at 190. Courts are also to apply other "case-specific variables" which may be "relevant to the

---

[4] The twelve Johnson factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, 493 F.3d 117-118 (2d Cir. 2007)(citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974)).

reasonableness of attorney's fees." Arbor Hill, 522 F.3d at 190. The Second Circuit also instructed courts to "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

In this case, the attorneys listed in the statement of services seek an hourly rate between $280 to $425. Defendants seek reductions to the proposed hourly rates.

**A.     The Hourly Rates Should be Reduced Because of a Disconnect Between the Hourly Rates Sought and Experience of Each Attorney**

The Johnson factor of the "experience, reputation, and ability of the attorneys" weighs in favor of a reduction to the hourly rates. Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974). In this case, there is a disconnect between the hourly rate sought and the level of experience for each attorney. Defendants have assembled the following chart from the Gibney and Steinberg declarations to illustrate this point:

| Attorney | Hourly Rate | Year in Practice |
|---|---|---|
| William Gibney | $425 | 33 |
| Amanda Moretti | $425 | 20 |
| Steve Wasserman | $425 | 31 |
| Nancy Rosenbloom | $425 | 24 |
| Johanna Steinberg | $360 - $390 | 9 |
| Jonathan Smith | $280 | 4 |
| Jin Hee Lee | $400 | 11 |

For example, Mr. Gibney and Mr. Wasserman with 33 and 31 years of experience respectively, bill at the same rate as Ms. Rosenbloom and Ms. Moretti, who have 24 and 20 years of experience respectively. Similarly, Ms. Steinberg and Ms. Lee bill at about $400 per hour. This is about $25 per hour less than the top rate sought. Yet, Ms. Steinberg and Ms. Lee have 10 to 20 years less experience than these attorneys. A reasonable paying client would not pay an attorney with 10 years experience the same rate they would pay an attorney with 20 or 30 years experience. Accordingly, there must be an adjustment to the hourly rate structure to reflect the

fact that the seven billing attorneys have very different levels of experience and the work required on this case consists of different levels of difficulty and complexity.

**B.      The Hourly Rates Should Be Reduced Because of the Number of Billing Attorneys and the Top Heavy Structure of Plaintiff's Litigation Team**

        The <u>Johnson</u> factors of "the level of skill required to perform the legal service properly" and "the novelty and difficulty of the questions" weigh in favor of a reduction to the hourly rates.  <u>Johnson</u>, 488 F.2d at 717-19.  In this case, as explained above, six of the seven billing attorneys seek at or near the highest rate.  Yet, the type of worked billed runs the gambit from the complicated to the mundane.  No reasonable paying client would agree to a rate structure where almost all of the work in the case was completed by partner level attorneys billing at the highest rate.  <u>See</u>, <u>e.g.</u>, <u>Kapoor v. Rosenthal</u>, 269 F. Supp. 2d 408, 414 (S.D.N.Y. 2003) ("Multiple attorneys are allowed to recover fees on a case if they show that the work reflects the distinct contributions of each lawyer."); <u>Northon v. Rule</u>, 494 F. Supp. 2d 1183, 1187 (D. Or. 2007) (reducing fee award where, among other things, senior attorney failed to delegate relatively simple tasks to junior associates).

        In this case, plaintiffs seek a rate structure where 85% of the work is done by partner level attorneys, and only 15% is done by associate level attorneys.  As the Court is no doubt aware, a more common billing scheme, indeed one that a reasonable paying client might negotiate if given the chance, would consist of one senior attorney overseeing the litigation with a team of less experienced attorneys conducting the bulk of the work at much lower billing rates. For example, in <u>Wise v. Kelly</u>, a recent class action brought against the City of New York, the plaintiffs were represented by attorneys who employed such a billing method – one partner level litigator and two more junior attorneys.  <u>Wise</u>, 620 F. Supp. 2d 435, 443 (S.D.N.Y. 2008). Moreover, in the <u>Wise</u> case, The Bronx Defenders acted as co-counsel, and they billed for two

attorneys: one with 8 years experience seeking $325 per hour and one with 5 years experience seeking $250 per hour.  Id. This demonstrates a more common, and more reasonable, attorney staffing scheme for a class action lawsuits.  As another example, at least one of the firms in Scott v. City of New York, also billed with a similar rate structure – one partner level attorney and several associates.  Scott, 02 Civ. 9530 (SAS), 2009 U.S. Dist. LEXIS 78078 (S.D.N.Y. Aug. 25, 2009) (remanded for other reasons).  Indeed, this sort of tiered billing scheme is seen in many reported cases in which fees are considered.  In fact, even paying clients in large commercial litigation would be very unlikely to agree to a fee scheme where seven partners and one associate worked on their case.  Accordingly, there should be a reduction in the hourly rates.

**C.      The Hourly Rates Should be Reduced Because the Settling Plaintiffs Did Not Obtain Class Certification or Injunctive Relief**

The Johnson factors of "the amount involved in the case and the results obtained" and "the nature and length of the professional relationship with the client" weigh in favor of a reduction to the hourly rates.  Johnson, 488 F.2d at 717-19.  In filing this lawsuit in January 2010, plaintiffs sought class certification "for the purpose of obtaining injunctive and declaratory relief only."  (Complaint, Kunz Decl., Exhibit A, ¶¶16, 303).  Individually, the plaintiffs also sought compensatory damages.  (Complaint, Kunz Decl., Exhibit A, ¶¶16, 306).  In accepting the Rule 68 Offers, the settling plaintiffs obtained only monetary compensation.  These plaintiffs did not obtain class certification, they did not obtain a declaration that their rights were violated, and they did not obtain any injunctive relief.  One of plaintiffs' chief arguments in support of the high rates they seek is that the complexity of the case required experienced attorneys.  (Plaintiffs Attorney Fee Memorandum of Law, pg. 9).   The settling plaintiffs, however, accepted settlements in regard to their individual claims, and never obtained the class certification or injunctive relief that they sought.  As such, compared to what they initially sought in filing this

lawsuit, the settling plaintiffs achieved very limited success.  Moreover, these plaintiffs settled rather quickly.  The case was filed in January 2010.  Four of the settling plaintiffs accepted Rule 68 Offers issued nine months later, and the other five accepted Rule 68 Offers issued two months after that, a rather typical timeframe for a false arrest case seeking compensatory damages.

A reasonable playing client would not employ seven attorneys, six of whom are billing at or near the top rate, to achieve monetary compensation in a false arrest cases.  Indeed, it is common in the Southern District of New York for cases containing similar false arrest allegations to be staffed by far less attorneys than are staffed on this case—in many cases just one attorney.  Accordingly, there should be a reduction in the hourly rates.

**D.    The Hourly Rate Should Be Reduced Because No Reasonable Paying Client Would Agree to the Rates As Billed**

The <u>Johnson</u> factors of "awards in similar cases" and "the attorney's customary hourly rate" weigh in favor of a reduction to the hourly rates.  <u>Johnson</u>, 488 F.2d at 717-19.  First, defendants note that in setting a reasonable hourly rate, courts do consider the prevailing rates in the community for similar services by lawyers with comparable skill, experience, and reputation.  <u>See</u> <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984).  In this case, plaintiffs rely on awards in past cases as one of the chief factors in determining a reasonable rate in this matter.  The Second Circuit made clear, however, that awards in past cases is just one factor to be considered in setting a reasonable rate.  <u>Barfield v. N.Y. City Health & Hosps. Corp.</u>, 537 F.3d 132, 151-152 (2d Cir. 2008) ("Henceforth, we have advised district courts, in exercising their considerable  discretion . . . to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate to be used in calculating a presumptively reasonable fee.") (internal citation omitted).  Accordingly, there are a litany of factors to be considered, including those outlined in <u>Johnson</u>,

as well as other case specific variables.  Defendant asserts that when considering all of the factors in this case, it is clear that the requested rates are excessive.

There is another, perhaps more serious problem with using awards in past cases as the sole bases to establish the rate that a reasonable client would pay.  Namely, that the amount that a reasonable client would be willing to pay is generally established through citations to case law.  Plaintiffs did not provide affidavits from their clients, or other attorneys, which indicate that a reasonable client would pay the rates they seek.  The problem with relying on court decisions is that they do not reflect actual market rates.  In other areas of law, where fee shifting provisions do not apply and litigants have to pay their own way, the market acts to keep prices in check.  In the civil rights context, however, there are no market forces at play because plaintiff's typically sign with attorneys on a contingency basis.  Accordingly, plaintiffs are almost never asked to pay their attorneys hourly rates, as the attorney knows that she can recoup fees as part of a settlement agreement.  Instead, case law has developed as a means to approximate market rates. Defendant asserts, however, that the case law has not disciplined the market.

Under the case law of this district, attorneys' rates in civil rights cases have dramatically increased in the past 10 years.  In a decision from 10 years ago, this Honorable Court noted that $250 per hour was reasonable for a attorney with 29 years of experience in civil rights litigation.  Pascuiti v. New York Yankees, 108 F. Supp. 2d 258, 266 (S.D.N.Y. 2000). Today an attorney with the same level of experience could receive over twice that rate.  LV v. New York City Dep't of Educ., 700 F. Supp. 2d 510, 519 (S.D.N.Y. 2010) (awarding $600 per hour to an attorney with 33 years experience).  Accordingly, under the case law, the "market" rate for civil rights attorneys in the Southern District of New York has arguably increased more than 100% in the past ten years.  This staggering increase reflects how Court's have been unable

11

to adequately discipline the market.   Arbor Hill, 522 F.3d at 184 (attorneys' fee jurisprudence

has "come untethered from the free market it is meant to approximate.").

                According to the US Census Bureau, the average medium household income for

residents of New York State in 2000 was $40,744; in 2009, the average was $50,216.[5]  This is a

23% increase.  As such, while attorney rates in civil rights context have more than doubled, the

average New Yorker has seen a modest 23% increase in household income.  It defies market

forces, that in this decade of slow economic growth, attorney rates would increase over 100%.  If

market forces were brought to bear on attorney rates, there would likely be a precipitous decrease

in both the hourly rate and the number of hours billed.  Indeed, in an April 2, 2011 report, the

New York State Bar Association noted that the recent economic downturn and other societal

changes, such as the availability of information online and greater diversity of options to obtain

legal services, have combined to place significant pressure on traditional billing methods.  See

Report of the Task Force on the Future of the Legal Profession, NYSBA, April 2, 2011.  The

report notes that since 2008 the average number of billable hours has dropped by 12%, "and

attorneys reported increased pressure to reduce their fees."  Id. pg. 17.  Moreover, the dramatic

increase in §1983 litigation over the past decade is another reason why attorney rates should be

lowered.  With more attorneys practicing in the field, the cost of services should go down as

clients are able to select attorneys at more affordable rates.  As such, it seems clear that a

reasonable paying client would seek fees much lower than have been previously awarded.

                Defendant also notes that attorneys who work on the Criminal Justice Act panel

who practice in the Southern District of New York are currently reimbursed at a rate of $178 per

---

[5]   US Census, Median Household Income by State - Single-Year Estimates,
www.census.gov/hhes/www/income/data/statemedian/index.html, last visited on August 3, 2011.

hour in capital cases.[6]  Under the attorneys' fee case law of this district, those same attorneys could bring civil rights cases in the same courthouse, stemming from the same set of facts, and request hourly rates 300% greater.  Such a result defies common sense and market forces. Moreover, in the context of prisoner litigation, with the passage of the Prison Litigation Reform Act ("PLRA") Congress found that 150% of the CJA rates was a reasonable amount for attorney fees in civil rights cases.  See, generally, 42 U.S.C. §1997e(d).  As such, defendants believe that plaintiffs rates are high and that lower rates should be applied.

**E.      Conclusion of Defendant City of New York's Position on Attorney Rates**

For all of the reasons detailed above, defendants propose the following rates for the attorneys who submitted a statement of services.

| Attorney | Proposed Hourly Rate | Year in Practice |
|---|---|---|
| William Gibney | $400 | 33 |
| Amanda Moretti | $350 | 20 |
| Steve Wasserman | $400 | 31 |
| Nancy Rosenbloom | $350 | 24 |
| Johanna Steinberg | $300 | 9 |
| Johnatan Smith | $250 | 4 |
| Jin Hee Lee | $300 | 11 |

Defendants assert that these numbers more accurately reflect what a reasonable paying client would agree to pay were she to go into the marketplace and search for an attorney.  These numbers reflect the different levels of experience between the various attorney, the top heavy nature of the billing, the fact that these plaintiffs achieved only compensatory damages, and all of the other case specific variables mentioned above.

---

[6]  http://www.nysd.uscourts.gov/cases/show.php?db=notice_cja&id=21, last visited August 2, 2011.  It should also be noted that CJA rates vary by district to reflect differing costs of practice in different areas of the country.

## POINT II

## REDUCING NUMBER OF BILLED HOURS

       As a general matter, as plaintiffs acknowledge, plaintiffs are to exercise "billing judgment" in seeking fees from defendants.  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) (citation omitted).  Indeed, the Supreme Court has noted, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." Hensley, 461 U.S. at 434 (citation omitted) (emphasis in original).  Accordingly, in considering a fee application it is necessary to carefully review the statement of services submitted by the seven billing attorneys.  "If the court finds that the fee applicant's claim is excessive or insufficiently documented, or that time spent was wasteful or redundant, the court may decrease the award, either by eliminating compensation for unreasonable hours or by making across-the-board percentage cuts in the total hours for which reimbursement is sought."  Scott v. City of New York, 2009 U.S. Dist. LEXIS 78078 (S.D.N.Y. Aug. 25, 2009).

       In this case, plaintiffs statement of services includes billing that is excessive, unnecessary, redundant, and wasteful.  Indeed, defendant doubt that counsel would ever submit such a bill to a paying client in a civil rights case.  Plaintiffs argue that they exercised billing judgment because they did not include billing for Paul, Weiss or the administrative staffs of their offices, because they did not bill for work performed in 2007 and 2008, and because they have excluded entries for media contacts.[7]  Given that the billing from the LDF and LAS attorneys is already at a half a million dollars, had Paul, Weiss included the time its attorneys spent on this case, that figure would be excessively higher.  In regard to the other examples of billing

---

[7] Plaintiff also cite to their exclusion of costs, and the fact that they seek 50% compensation for travel time.  Those issues are addressed *supra*.

judgment by plaintiffs, defendants note that these reductions were only made after attorneys from the City of New York pointed out to plaintiffs' counsel that the inclusion of these sorts of bills was excessive and inappropriate.  As such, these reductions do not reflect billing judgment from plaintiffs; rather they demonstrate the unreasonableness of the original fee request.  In any event, defendant believes that plaintiffs' counsel should have exercised far greater billing judgment.

Under the terms of the Rule 68 offers, plaintiffs are entitled seek fees up to the date the Rule 68 offers were issued.  In this case, four plaintiffs are entitled to seek reasonable fees up to September 20, 2010.  In addition, five plaintiffs are entitled to seek reasonable fees up to December 7, 2010.  All post December 7, 2010 work is not compensable for purposes of this fee application.  Without making any deductions to the number of hours billed or any prorating, the total amount billed by plaintiffs is $483,273.83.  Defendants will propose deductions prior to any prorating.  There are numerous areas in which reductions to the billings is appropriate.

## A.     Double Billing

A number of entries on Mr. Wasserman's and Ms. Steinberg's statement of services appear to be billed twice.  (Double Billing Chart, Kunz Decl., Exhibit D).  Accordingly, there should be a $5,351.25 reduction (6 hours for Wasserman, and 21.5 for Steinberg).  (Chart of Reductions, Kunz Decl., Exhibit N).

## B.     Travel Time

Plaintiffs seek compensation for travel time at 50% of their normal rates.  While some courts have awarded 50% of travel time, other courts have held that reasonable paying clients generally "resist paying for travel time."  Tatum v. City of New York, 06-cv-4290 (PGG), 2010 U.S. Dist. LEXIS 7748 at *28 (S.D.N.Y. Jan. 28, 2010).  In this case, given the fact that attorneys from three different law firms are working on the case, and given the wide availability of electronic means of communication, defendant submits that a reasonable paying client would

not agree to pay for travel time.  This is especially true during these economic times, where paying clients commonly seek reductions to billable time.

In this regard, there are two areas in which a deduction is appropriate.  First, a number of entries specify they are for travel time, and as such we seek a deduction of an additional $4,887.50.  (Travel Time Chart 1, Kunz Decl., Exhibit E).  This is 4 hours less for Gibney and 8.25 hours less for Steinberg.  (Exhibit N)  Second, a number of entries contain hours for meetings held in outside offices, but do not contain separate entries for travel time.  (Travel Time Chart 2, Kunz Decl., Exhibit E).  The assumption is that travel time was included, but not billed separately.[8]  The total amount billed for these types of meetings is $20,958.25.  We propose a $7,000 deduction, approximately 33%, to cover the travel time for those meetings.

## C.   Work Not Reasonably Expended On the Litigation

One of the most basic tenants of attorneys fee jurisprudence is that the work billed must be "expended on the litigation itself."  Webb v. County Bd. of Educ., 471 U.S. 234, at 242 (1985).  Plaintiffs, however, have included billing that was not expended on the litigation.

**1.    Pre-Retainer Work.**  This case was commenced with the filing of the complaint on January 28, 2010.  (Complaint, Kunz Decl., Exhibit A).  In the second statement of services submitted by plaintiffs during negotiations, they included billing going back as far as November 29, 2007.  In the statement of services submitted with this motion, however, the

---

[8] This assumption is based on the billing records.  For example, on February 8, 2010, Ms. Stienberg and Mr. Gibney both attended a community meeting in the Bronx.  Mr. Gibney billed separately for the travel time to that meeting, 2 hours, and for the meeting itself, 1 hour.  Ms. Stienberg, however, did not bill separately for travel time and instead billed 2.5 hours for the meeting.  Accordingly, at least some of the billing attorneys grouped travel time in with the activities to which they traveled but did not indicate as much on the statement of services.

16

plaintiffs began their billing in 2009,[9] representing billing for 13 months prior to the filing of the complaint. Plaintiffs seek compensation for 252.69 hours, for a total of $100,210.41, for work conducted before the complaint was even filed. (Pre-Complaint Chart, Kunz Decl., Exhibit O).

 In Webb v. County Bd. of Educ., the Supreme Court noted that attorneys' fees could be awarded for services performed before the filing of the complaint if such services were performed "on the litigation," which includes drafting initial pleadings and developing the theory of the case. Webb, 471 U.S. at 242. The Supreme Court suggested in Webb that the standard to determine if pre-complaint work is compensable in a fee application is whether the work was "useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement." Webb, 471 U.S. at 243. The question, therefore, is how much of the work performed prior to the filing of the complaint was useful to advance the federal claims.

 In this case, defendants note that it is incumbent upon the plaintiffs "to identify the discrete portion" of the pre-complaint work that was useful toward the federal claims. Fabbricante v. City of New York, 01 CV 5575 (CPS) (RML), 2006 U.S. Dist. LEXIS 62906 (E.D.N.Y. Sept. 5, 2006). In this case plaintiffs have arbitrarily drawn the line at the beginning of 2009. Defendant, however, does not believe that this date makes sense for a starting point. According to a letter sent by plaintiffs' counsel, dated November 9, 2009, the plaintiffs had not yet decided that they would commence the litigation.[10] Since, as of November 9, 2009, the decision to commence this litigation had not yet been made, then the work that pre-dates that point was not expended on the litigation. Indeed, no reasonable paying client would pay for hours incurred before the decision to commence the litigation was made. According to the City's

---

[9] It should be noted that this change occurred after defendant City of New York objected to plaintiffs' inclusion of these bills in the earlier version of their statement of services.

calculations, from the beginning of 2009 until November 9, 2009, plaintiffs billed 126.43 hours, for a total of $49,520.42.  (Pre-Complaint Chart, Kunz Decl., Exhibit O).  This is 10.68 hours less for Gibney, 24.5 less for Wasserman, and 91.25 less for Steinberg.  (Rate Calculation Chart, Kunz Decl., Exhibit N).  As such, that amount should be deducted.[11]

        **2.      City Council, Press, Media, Community & Tenant Meetings.**  Time spent on media strategy and handling the press is not compensable.  See Society for Good Will, 574 F. Supp. 994, 998-999 (E.D.N.Y. 1983).  Likewise, time spent speaking with legislators and meeting with community members does not qualify as time "expended on litigation."  Webb, 471 U.S. at 242.  In this case, Plaintiffs billed a total of $13,182.00 for meetings with elected officials, communication with the press, and meetings with community groups and tenants. (Chart of Non-Litigation Meetings, Tenants, Kunz Decl., Exhibit F).  This work was not expended on the litigation itself and no reasonable client would pay his attorneys to conduct this work.  This is 8.59 hours less for Gibney, 7.25 less for Wasserman, 16.25 less for Steinberg, and 1 less for Lee.  (Rate Calculation Chart, Kunz Decl., Exhibit N).

        **3.      Expert Work.**  The statement of services included a total of $26,309.75 for time that the billing attorneys spent communicating and meeting with experts.  (Expert Chart, Kunz Decl., Exhibit G).  There are a number of problems with this billing.  First, time spent

---

[10] Defendant believes this is the "demand letter" that Mr. Gibney drafted on October 30, 2009.

[11] Alternatively, the Court could look to the type of work billed prior to the filing of the complaint and deduct a percentage of that total to account for work not reasonably expended on the litigation itself.  The descriptions of the activities include entries such as "conferred with potential plaintiff," "Review potential plaintiffs files," "Meeting re: potential plaintiffs at LAS," and "review potential plaintiff files, emails with LAS."  Time spent attempting to recruit plaintiffs should not be compensable in this fee application.  First, there is no indication if any of these plaintiffs actually joined the litigation.  Second, no reasonable client would pay his attorney for the time the attorney spent trying to recruit him to join the case.  If the Court chooses to apply this functional approach, defendant proposes a 60% deduction to the pre-complaint work.

communicating and meeting with the expert(s) was not useful, or of a type that advanced the settlement, to the nine plaintiffs who accepted the Rule 68 offers of judgment.  Defendant is not aware of even the most basic information concerning plaintiffs' expert(s).  Plaintiffs have not identified any expert, nor provided any expert report, that would allow defendants or the Court to assess whether the expert is qualified to testify in this matter, or whether the expert has aided in advancing this litigation.  In that same vein, without information on the number of experts, their qualifications, and the type of work the experts are conducting, we are unable to assess the reasonableness of the hours expended.  Further, if the experts were retained to assist plaintiffs with the injunctive and declaratory relief aspect of the case, given that the settlements involved only a monetary settlement, defendants submit that the expert work did not advance the settlement of the 9 plaintiffs.  It is plaintiffs' burden to show that hours were reasonably expended, and they have not carried that burden in regard to attorney time spent with experts.

No reasonable paying client would pay an attorney to spend time with an expert who had no impact on their settlement and whose testimony might not be admissible.  Accordingly, there should be a deduction of $26,309.75 for the time spent consulting with an expert.  This is 4.77 hours less for Gibney, 30.5 less for Wasserman, 17.5 less for Steinberg, and 12.5 less for Lee.  (Rate Calculation Chart, Kunz Decl., Exhibit N).

4.    **Summary Judgment Work**.  Plaintiffs' statement of services included 5.88 hours of work, pre-December 7, 2010,[12] for a total of $2,429 in fees, for work on their opposition to defendants partial summary judgment motion.  (Summary Judgment Chart, Kunz Decl., Exhibit H).  Defendants filed their partial summary judgment motion on December 17,

2010, ten days after the last set of Rule 68s were issued.  As the motion was not even filed when the work above was billed, it had no bearing on the settling plaintiffs' claims.  As such, there should be a $2,429 deduction.  This is 0.84 hours less for Gibney, 3.04 less for Moretti, and 2 less for Steinberg.  (Rate Calculation Chart, Kunz Decl., Exhibit N).

5.      **Training**.  Plaintiffs billed a total of 25.25 hours, or $ $10,611.25 for training.  (Training Chart, Kunz Decl., Exhibit I).  These entries include training of interns[13] to training on e-discovery.  This work is clearly not related to this litigation, and no reasonable paying client would pay to train interns.   Accordingly, there should be a deduction of $10,611.25.  This is 2.25 hours less for Gibney, 19 less for Wassernman, 2 less for Steinberg, and 2 less for Lee.  (Rate Calculation Chart, Kunz Decl., Exhibit N).

6.      **Potential Plaintiffs**.  Plaintiffs billed a total of 15 hours, or $6,050.00 for work with potential plaintiffs.  (Potential Plaintiff Chart, Kunz Decl., Exhibit J).  Time spent recruiting plaintiffs cannot be said to have been spent on the litigation itself or to have advanced settlement of the 9 plaintiffs..  Moreover, a reasonable paying client would not pay for the time an attorney spent deciding whether to take that plaintiff's case.  Accordingly, there should be $6,050.00 deduction.  This is 2 hours less for Moretti, 8 less for Wassernman, and 5 less for Steinberg.  (Rate Calculation Chart, Kunz Decl., Exhibit N).

7.      **Class Certification**.  Plaintiffs billed a total of 74 hours, or $28,180.00, on work related to class certification.  To date, however, the class certification motion has not been made.  Indeed, briefing on the class certification motion does not commence until this fall.

---

[12] It should also be noted that plaintiffs submitted significant billing for the work on the summary judgment motion conducted after December 7, 2010.  In addition to the reason set forth here, that work is not compensable because it was done after the issuance of the Rule 68 offer.

Moreover, the plaintiffs who accepted Rule 68 offers did so based solely on the specific facts of their case.  The settlement of these nine plaintiffs achieved no class-wide relief, only monetary relief.  Thus it cannot be said that the work related to the class certification advanced the settlement of the nine settling plaintiffs.  No reasonable paying client would pay his attorney to prepare a motion that was never made, and that had no bearing on the settlement of his claims.  As such, $28,180 should be deducted.  This is 26 hours less for Wasserman, 17.25 less for Smith, and 30.75 less for Lee.  (Rate Calculation Chart, Kunz Decl., Exhibit N)

8.     **Deduction for Withdrawn Plaintiff**.  As the Court may be aware, plaintiff Altagracia Hernandez withdrew from this case on September 23, 2010.  As such, all pre-September 23, 2010 work should be reduced by 1/16, or 6.25% to reflect that fact.  According to the City's calculations, the total up to that date is $349,251.90.  Accordingly, there should be a deduction of $21,828.24, reflecting that 1/16 of the time is not compensable.

9.     **Deduction for Post December 7, 2010 Work**.  Plaintiffs billed a total of 76.02 hours, or $68,792.33, for work their attorneys conducted following the issuance of the last set of Rule 68 Offers on December 7, 2010.  The Rule 68 Offers were clear in that fees were recoverable up to the date they were issued.  As such, none of the post December 7, 2010 work is compensable.  This is 4.17 hours less for Rosenbloom and 71.85 less for Steinberg.  (Rate Calculation Chart, Kunz Decl., Exhibit N).

D.     **Conclusions on Hourly Deductions**

In total, plaintiffs submitted a statement of services seeking $483,273.83 in attorneys fees.  The following is a summary of defendants deductions, but using plaintiffs' rates:

---

[13] While it is laudable that plaintiffs' counsel works with interns – as does the New York City Law Department and the Court – these are inappropriate items to include in a fee request.

| | | |
|---|---|---|
| Total Amount Billed  = | | $483,273.83 |
| Deduction for Double Billing – Point II(A) | | -$5,351.25 |
| Deduction for Travel Time – Point II(B) | | -$11,881.50 |
| Deduction for Pre-Retainer Work – Point II(C)(1) | | -$67,775.42 |
| Deduction for Media/Community – Point II(C)(2) | | -$13,182.00 |
| Deduction for Expert Work – Point II(C)(3) | | -$26,309.75 |
| Deduction for SJ Work – Point II(C)(4) | | -$2,429.00 |
| Deduction for Training – Point II(C)(5) | | -$10,611.25 |
| Deduction for Potential Plaintiffs – Point II(C)(6) | | -$6,050.00 |
| Deduction for Class Certification – Point II(C)(7) | | -$28,180.00 |
| Deduction for Hernandez – Point II(C)(8) | | -$21,828.24 |
| Deduction for Post-Rule 68 Work – Point II(C)(9) | | -$68,792.33 |
| Proposed, Non-Prorated Total | = | $220,883.09 |

Defendant refers the Court to Exhibit N, which details the number of hours that we propose to deduce from each billing attorney.  This exhibit also shows several different scenarios: plaintiffs' rates and hours; defendant's rates and hours; plaintiffs' rates and defendant's hours; and defendant's rates and plaintiffs' hours.

Plaintiffs propose to prorated by dividing in half.  This prorating method, however, is not a completely accurate reflection of how the Rule 68s were accepted.  In some respects this method benefits defendant, in that slightly over 50% of the original plaintiffs settled, and in other respects it benefits plaintiffs, in that it grants the plaintiffs who accepted the September Rule 68s fees for three extra months.  Notwithstanding, defendant is willing to accept plaintiffs proposed prorating method.  As such, the total amount would be $110,441.54.

## POINT III

### ACROSS THE BOARD DEDUCTION

As stated before, the district court has broad discretion in granting a fee award and assessing its reasonableness.  Hensley v. Ekerhart, 461 U.S. 424, 437 (1983).  Indeed, the court may exercise that discretion by applying an across-the-board percentage reduction to the number of hours billed as a practical means of trimming the fat from a fee application. Patrolmen's Benevolent Ass'n of New York, Inc. v. City of New York, 97 Civ. 7895 (SAS), 98

Civ. 8202 (SAS), 2003 U.S. Dist. LEXIS 13472, at *7 (S.D.N.Y. July 29, 2003).  In this case, defendant asserts that an across the board deduction of 60% is appropriate based on the volume of entries that are a vague, the inclusion of block billing, and the limited success obtained.

## A.      Vague and Block Billing

Courts typically impose substantial reductions to account for vague billing. Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 301-2 (S.D.N.Y. 2001) (35% across the board reduction where vague entries combined with excessive billing).  See also Ragin v. Harry Macklowe Realty, 870 F. Supp. 510, 520 (S.D.N.Y. 1994) (reducing lodestar by 30% due in part to vague entries); Gonzalez v. Bratton, 147 F. Supp. 2d 180, 213 (S.D.N.Y. 2001) (reducing fees 12%).

In this case, a large number of entries in the statement of services are so vague that defendants are not able to determine if the time is appropriately billed.  For example, plaintiffs bill 103.02 hours, for a total of $40,878.73, for entries with descriptions like "call with team regarding pending issues."  (Kunz Decl., Block Billing Chart, Exhibit M).  It is impossible to tell based on these entries if the time billed was reasonable, if the work performed was expended on the litigation itself, or if the work was excessive or duplicative.  See Dailey v. Societe Generale, 915 F. Supp. 1315, 1328 (S.D.N.Y. 1996), aff'd in relevant part, 108 F.3d 451 (2d Cir. 1997) ("entries listed simply as 'telephone call,' 'consultation,' and 'review of documents' are not sufficiently specific to as to enable the Court to determine whether the hours billed were duplicative or excessive."); Local 32B-32J, SEIU v. Port Auth., 180 F.R.D. 251, 253 (S.D.N.Y. 1998) ("entries for 'phone and meetings' do not indicate with whom such telephone calls and meetings took place nor do they adequately describe the nature of what was discussed.").  As another example, according to defendants calculations, there are nearly 88

hours, for a total of $35,420.83, of block billing entries – meaning entries where more than one item is billed in the same line.  (Kunz Decl., Block Billing Chart, Exhibit L).

It is plaintiffs' burden to justify their fee request, and these entries fail to provide sufficient detail to justify granting fees.  As such, there should be an across the board reduction.

**B.      Limited Success**

As this Court is aware, when a plaintiff obtains only limited success, an across the board deduction is appropriate.  Scott v. City of New York, 02 Civ. 9530 (SAS), 2009 U.S. Dist. LEXIS 78078 (S.D.N.Y. Aug. 25, 2009) (remanded for other reasons) (applying an across the board 30% deduction for limited success).  Carroll v. Blinken, 105 F.3d 79, 81 (2d Cir. 1997) ("Where the damage award is nominal or modest . . . and no substantial public interest is served, a substantial fee award cannot be justified."); Kassim v. City of Schenectady, 415 F.3d 246, 255-56 (2d Cir. 2005) (affirming the district court's authority to "reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiff's 'partial or limited success'"). See also Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 523-25 (S.D.N.Y. 2002)(Chin, J.)(imposing a 60% across the board reduction in fees due to limited success where each plaintiff accepted a Rule 68 Offer of Judgment of $37,500, an amount that the court found "conspicuously lean").

In this case, the plaintiffs who accepted the Rule 68 Offers achieved only a small part of the relief demanded in the complaint.  Plaintiffs sought to obtain class certification "for the purpose of obtaining injunctive and declaratory relief only."  (Complaint, Kunz Decl., Exhibit A, ¶¶16, 303).   Individually, the plaintiffs also sought compensatory damages. (Complaint, Kunz Decl., Exhibit A, ¶¶16, 306).  Plaintiffs did not obtain class certification, nor did they obtain injunctive relief.  In fact, these plaintiffs only recovered a monetary settlement. As such, there should be an across the board reduction.

**C.      Conclusion**

Accordingly, based on the large number of vague entries, the inclusion of block billing, and the very limited success obtained, there should be a 60% across the board deduction. Accordingly, we believe a more appropriate fee amount would be in the range of $44,176.61.

<u>POINT IV</u>

<u>EXPERT FEES ARE NOT TAXABLE</u>

Plaintiffs did not raise the issue of expert fees during negotiations over the Rule 68s.  In any event, these fees are not recoverable.  Pursuant to 42 U.S.C. §1988, expert fees are not taxable in §1983 actions.  <u>See</u> 42 U.S.C. §1988(c).  Similar to the attorney fee shifting provisions found in §1988(b), in 1991 Congress authorized Court's to award "expert fees" to prevailing parties in certain categories of cases.  42 U.S.C. §1988(c).  Unlike §1988(b), however, §1988(c) does not include §1983 cases.  42 U.S.C. §1988(c).  Congress' failure to include §1983 in the list of causes of action where expert fees are recoverable can only be read as a "conscious decision not to tax municipalities with the burden of paying expert fees in every § 1983 case." <u>BD v. DeBuono</u>, 177 F. Supp. 2d 201, 206 (S.D.N.Y. 2001); <u>see</u>, <u>also</u>, <u>Lake v. Schoharie County Comm'r of Soc. Servs.</u>, 2006 U.S. Dist. LEXIS 49168 *38 (S.D.N.Y. 2006) (declining award of expert fees to prisoner alleging excessive force under § 1983).

In this case, the bulk of plaintiffs claims are based on §1983.  Plaintiffs do, however, purport to bring claims under 42 U.S.C. §1981.  (Complaint, Kunz Decl., Exhibit A, ¶¶214-219).  In equal rights lawsuits, brought 42 U.S.C. §1981, expert fees are taxable.  42 U.S.C. §1988(c).  Nevertheless, expert fees should not be award to the settling plaintiffs in this case for several reason.  First, the expert work did not aid the settling plaintiffs in the litigation of

their claims.[14]  Plaintiffs have to this day refused to provide defendant with a copy of an expert

report, or even the name of the expert(s) with whom they are consulting.  As such, the expert

work had no impact on the Rule 68 offers.  Second, according the local rules of this court, "[f]ees

for expert witnesses are taxable only to the extent of fees for ordinary witnesses unless prior

court approval was obtained."  Local Civil Rule 54.1(c)(3).  Plaintiffs did not seek, or obtain,

prior approval to tax expert fees and for that reason their request now should be denied.


## CONCLUSION

For the foregoing reasons, plaintiff's motion for attorneys' fees and costs should

be reduced both as to rates and hours, and plaintiff should not be awarded more than $44,176.61

for the work of the seven billing attorneys.


Dated:          New York, New York
                August 3, 2011

                               MICHAEL A. CARDOZO
                               Corporation Counsel of the
                                 City of New York
                               *Attorney for Defendant City of New York*
                               100 Church Street, Room 3-189
                               New York, New York 10007
                               (212) 788-0422


                        By:    _____/s/_____
                               Morgan D. Kunz
                               Assistant Corporation Counsel
                               Special Federal Litigation Division

---

[14] Should the Court be inclined to grant plaintiffs expert fees, a percentage reduction should be
made to reflect the fact that expert fees are only taxable in regard to the since §1981 claim.  They
are not taxable for the overwhelming majority of plaintiffs claims.

To:     *Attorneys for Plaintiff* (By E.C.F.)
        Katharine Booker, Esq.
        Matthew Moses, Esq.
        Johanna Steinberg, Esq.
        Johnathan Smith, Esq.
        Nancy Rosenbloom
        William Gibney, Esq.

        *Attorneys for Co-Defendant* (By E.C.F.)
        Steven Rappaport, Esq.