UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

KELTON DAVIS, WILLIAM TURNER,
ALTAGRACIA HERNANDEZ, EDWIN
LARREGUI, ROMAN JACKSON,
KRISTIN JOHNSON, ELEANOR BRITT,
ANTHONY ANDERSON, LASHAUN
SMITH, SHAWNE JONES, HECTOR
SUAREZ, ADAM COOPER, ANDREW
WASHINGTON, P.L. BY HIS PARENT
LISA PIGGOTT, DAVID WILSON, and
GENEVA WILSON, individually and on
behalf of a class of all others similarly
situated,

                    Plaintiffs,

    - against -

THE CITY OF NEW YORK and NEW
YORK CITY HOUSING AUTHORITY,

              Defendants.
------------------------------------------------------X

**OPINION AND ORDER**

**10 Civ. 699 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _10/18/11_

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

          Plaintiffs brought this putative class action, on behalf of themselves

and a class of similarly situated persons, against the City of New York (the "City")

and the New York City Housing Authority ("NYCHA") to remedy the continuing

violation of various constitutional rights secured by 42 U.S.C. § 1983 ("section

1983"). Nine of the sixteen original plaintiffs, hereafter referred to as the "Settling

Plaintiffs," accepted offers of judgment pursuant to Federal Rule of Civil

Procedure 68 ("Rule 68")[1] and took Judgments Pursuant to Rule 68 ("Rule 68 Judgments") against the City on February 7, 2011.[2]  On July 8, 2011, the Settling Plaintiffs moved for an award of attorneys' fees and costs which the City opposed. For the following reasons, the Settling Plaintiffs' motion is granted but not in the amount sought.

---

[1]     Rule 68 states, in relevant part, as follows: "At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a).

[2]     The parties dispute whether the Rule 68 Judgments also release NYCHA from the claims brought by the Settling Plaintiffs.  The Rule 68 Judgments state that "this judgment shall act to release and discharge defendants The City of New York, their successors and/or assigns; and all past and present officials, employees, representatives, and agents of the City of New York, *or any agency thereof*, from any and all claims that were or could have been alleged by [the Settling Plaintiff.]" (emphasis added).   NYCHA is not an agency of the City of New York.  Rather, NYCHA "is 'a body corporate and politic' created by state law." *Romero v. Keeney*. 168 F.R.D. 483, 484 (S.D.N.Y. 1996) (quoting N.Y. Pub. Hous. Law § 401) ("[T]he New York City Housing Authority, although its members are appointed by the mayor, is not an agency of the City of New York."). *Accord McLaughlin v. Hernandez*, 782 N.Y.S.2d 589, 592 (Sup. Ct. N.Y. Co. 2004) ("NYCHA was created as a public housing authority by act of the State Legislature to address the widespread and growing need for adequate low-income housing in New York City.").  Although NYCHA is not an agency of the City of New York, it is the parties' intent that will control the scope of the Rule 68 Judgments.  I do not address this issue at this time.

## I.      BACKGROUND

Plaintiffs[3] filed the instant action on January 28, 2010, alleging

violations of the Fourth and Fourteenth Amendments of the United States

Constitution, Title VI of the Civil Rights Act of 1964,[4] Title VIII of the Civil

Rights Act of 1968,[5] the United States Housing Act,[6] the Constitution and laws of

the State of New York, and the New York City Human Rights Law.[7]  Plaintiffs

allege that defendants, operating through the New York City Police Department

("NYPD"), were engaged in a pattern and practice of "illegal stops, seizures,

questioning, searches, and false arrests" of residents and visitors to housing

developments maintained by the NYCHA.[8]  In particular, plaintiffs complain about

---

[3]      The original sixteen plaintiffs in this action include Kelton Davis, William Turner, Altagracia Hernandez, Edwin Larregui, Roman Jackson, Kristin Johnson, Eleanor Britt, Anthony Anderson, Lashaun Smith, Shawne Jones, Hector Suarez, Adam Cooper, Andrew Washington, P.L. by his parent Lisa Piggott, David Wilson and Geneva Wilson.  On September 23, 2010, Altagracia Hernandez voluntarily withdrew all of her claims against defendants.  *See* Docket Entry # 22.

[4]      42 U.S.C. § 2000(d) *et seq.*

[5]      *Id.* § 3601 *et seq.* (the "Fair Housing Act").

[6]      *Id.* § 1437 *et seq.*

[7]      *See* Complaint ¶ 1.

[8]      *See id.* ¶ 2.

the use of allegedly unlawful "vertical patrols."[9]  These vertical patrols consist of "roving pedestrian checkpoints in and around NYCHA residences, wherein [police officers] indiscriminately stop and question every person they observe, without objective individualized suspicion of a crime, and unlawfully arrest individuals for trespass without probable cause."[10]  Plaintiffs further allege that "[d]efendants implement and apply these policies, practices, and customs in an intentionally discriminatory and race-based manner . . . ."[11]  According to plaintiffs, defendants' policies are "not explained or justified by underlying crime levels in NYCHA residences" but instead are based on the "race, ethnicity, and/or national origin" of the residents and visitors of NYCHA buildings.[12]  To remedy these constitutional violations, plaintiffs seek class certification "for the purpose of obtaining injunctive and declaratory relief only."[13]  Plaintiffs also seek "compensatory damages for their individual claims[.]"[14]

---

[9]     *See id.*

[10]    *Id.* ¶ 3.

[11]    *Id.* ¶ 7.

[12]    *Id.* ¶¶ 8-9.

[13]    *Id.* ¶ 13.

[14]    *Id.*

Nine of the sixteen original plaintiffs accepted Rule 68 offers.  Four Settling Plaintiffs – Anthony Anderson, Edwin Larregui, William Turner and David Wilson – were extended Rule 68 offers on September 20, 2010, which they accepted on October 4, 2010.[15]  Five other Settling Plaintiffs – Adam Cooper, Kelton Davis, Shawne Jones, Hector Suarez and Geneva Wilson – were extended Rule 68 offers on December 7, 2010, which they accepted December 20, 2010.[16]  When the Settling Plaintiffs accepted the Rule 68 offers, they agreed to dismiss all claims in exchange for specified dollar amounts.  Thus, the Settling Plaintiffs did not obtain class certification, injunctive relief, or declaratory relief.

In their motion for attorneys' fees and costs, the Settling Plaintiffs submitted bills for seven attorneys, four from the Legal Aid Society ("LAS" or "Legal Aid") and three from the NAACP Legal Defense and Educational Fund, Inc. ("LDF" or the "Fund").  Initially, the Settling Plaintiffs sought a total award of $277,255.58, consisting of $114,102.20 in fees for Legal Aid, $151,109.63 in fees for LDF, and $12,043.75 in costs for LDF.  In their reply papers, the Settling Plaintiffs seek an additional $5,418.75 in attorneys' fees for Legal Aid and

---

[15]   *See* Judgment Pursuant to Rule 68, Ex. B to the Declaration of Morgan D. Kunz, Assistant Corporation Counsel, in Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs ("Kunz Decl.").

[16]   *See* Judgment Pursuant to Rule 68, Ex. C to the Kunz Decl.

$19,370.00 in attorneys' fees for LDF.[17]  When the other adjustments proposed by the Settling Plaintiffs are taken into account,[18] the revised amounts sought in attorneys' fees is $118,883.45 for Legal Aid and $138,450.88 for LDF, with the same costs of  $12,043.75 for LDF.[19]

## II.   LEGAL STANDARD

A "prevailing party" in a civil rights action is entitled to an award of attorneys' fees and costs.[20]  The Second Circuit has held that plaintiffs who accept Rule 68 offers of judgment qualify as "prevailing parties" entitled to attorneys' fees and costs.[21]  Furthermore, a prevailing party is also entitled to reimbursement

---

[17]    *See* Attorney Declaration of Nancy Rosenbloom in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Costs ("Rosenbloom Decl.") ¶ 4.

[18]    The Settling Plaintiffs propose the following reductions to the amount of fees sought: $637.50 (Legal Aid) and $3,071.25 (LDF) for duplicate entries; $26,422.50 (LDF) for post-Rule 68 work; and $2,535.00 (LDF) for block billing entries.  *See id.* ¶¶ 5, 6 and 7.

[19]    *See id.* ¶ 8.

[20]    *See* 42 U.S.C. § 1988(b) (stating that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in civil rights actions).  *See also Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001) ("Although a district court typically has wide discretion in choosing whether to deny attorneys' fees, . . . this discretion is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees unless special circumstances would render an award unjust.").

[21]    *See Lyte v. Sara Lee Corp.*, 950 F.2d 101, 103-04 (2d Cir. 1991) ("A plaintiff involved in litigation ultimately resolved by settlement may still be

for time reasonably expended in preparing its attorneys' fee application.[22]  Thus, "absent unreasonably dilatory conduct by the prevailing party in 'any portion' of the litigation, which would justify denying fees for that portion, a fee award presumptively encompasses all aspects of the civil action," including litigation over attorneys' fees.[23]  "The district court has broad authority to depart from this basic assumption" where, for example, "the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high."[24]

District courts are afforded considerable discretion in determining the amount of attorneys' fees in any given case.[25]  In calculating a reasonable fee award, the Second Circuit has adopted the "presumptively reasonable fee"

---

entitled to an award of attorneys' fees." (citing *Maher v. Gagne*, 448 U.S. 122, 129 (1980));  *Baird v. Boies, Schiller & Flexner LLP*, 219 F. Supp. 2d 510, 518 (S.D.N.Y. 2002) ("The Second Circuit has also found that a plaintiff who accepts a Rule 68 offer of judgment can qualify to be a 'prevailing party' entitled to attorneys' fees and costs.") (citing *Sara Lee*, 950 F.2d at 104).

[22]     *See Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) ("[A] reasonable fee should be awarded for time reasonably spent in preparing and defending an application for § 1988 fees.").

[23]     *Commissioner, INS v. Jean*, 496 U.S. 154, 161 (1990).

[24]     *Valley Disposal, Inc. v. Central Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1059, 1060 (2d Cir. 1995) (quotation marks and citation omitted).

[25]     *See Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008).

approach.[26]  "Although the term 'lodestar' is now disfavored by the Second Circuit,

the applicable approach still contemplates (1) a consideration of the number of

hours actually spent by counsel and other personnel that are deemed reasonably

necessary to a successful outcome for the client, and (2) the setting of reasonable

hourly rates for counsel . . . ."[27]  "The presumptively reasonable fee boils down to

what a reasonable, paying client would be willing to pay, given that such a party

wishes to spend the minimum necessary to litigate the case effectively."[28]

      "The reasonable hourly rate is the rate a paying client would be

willing to pay."[29]  In determining the reasonable hourly rates to be applied, courts

should look to the market rates "'prevailing in the community for similar services

---

[26]    *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).

[27]    *Imbeault v. Rick's Cabaret Int'l Inc.*, No. 08 Civ. 5458, 2009 WL 2482134, at *1 (S.D.N.Y. Aug. 13, 2009) ("In determining a 'reasonable' fee, the 'most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (ellipsis in original)); *Metrokane, Inc. v. Built NY, Inc.*, Nos. 06 Civ. 14447, 07 Civ. 2084, 2009 WL 637111, at *1 (S.D.N.Y. Mar. 6, 2009) (citation omitted).

[28]    *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotation marks and citation omitted).

[29]    *Arbor Hill*, 522 F.3d at 190.

by lawyers of reasonably comparable skill, experience, and reputation.'"[30] "The relevant community to which the court should look is the district in which the case was brought."[31]  To compensate for the delay in payment, the hourly rates to be used should be "'current rather than historic hourly rates.'"[32]

There is no rule requiring proportionality between the amount of fees requested and the damages recovered.  The Second Circuit has recently stated that

> [w]hile a court may, in exceptional circumstances, adjust the lodestar, it may not disregard it entirely.  Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery.  Thus, the district court abused its discretion when it ignored the lodestar and calculated the attorneys' fees as a proportion of the damages awarded.[33]

---

[30]     *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

[31]     *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)).

[32]     *Gierlinger*, 160 F.3d at 882 (quoting *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989)).

[33]     *Millea v. Metro-North R.R. Co.*, Nos. 10–409–cv, 10–564–cv, 2011 WL 3437513, at *10 (2d Cir. Aug. 8, 2011) (citation omitted, emphasis in original).  *Accord Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)

The Second Circuit has stated, however, "that 'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff."[34]  The "degree of success" inquiry "is not limited to inquiring whether a plaintiff prevailed on individual claims."[35]  "Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved."[36]  "'If a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount . . . even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith.'"[37]  Accordingly, "a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiff's

_____

("Reasoning that a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of low monetary value, we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation.").

[34]   *Barfield*, 537 F.3d at 152 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

[35]   *Id.* (citing *Kassim*, 415 F.3d at 254).

[36]   *Id.* (quotation marks and citation omitted).

[37]   *Id.* (quoting *Hensley*, 461 U.S. at 436).

'partial or limited success' is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory."[38]

"Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization."[39]   In furtherance of such parity, the Supreme Court offered the following guidance within the context of the federal civil rights fee-shifting statute:

> Cases may be overstaffed, and the skill and experience of lawyers vary widely.  Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, "billing judgment" is an important component in fee setting.  It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.[40]

---

[38]   *Kassim*, 415 F.3d at 256.

[39]   *Blum*, 465 U.S. at  894.

[40]   *Hensley,* 461 at 434 (quotation marks and citation omitted, emphasis in original).

Thus, "[i]n determining what fee is reasonable, the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'"[41]  In doing so, "the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties."[42]  Moreover, the "presumptively reasonable fee" is subject to further reduction due to plaintiffs' limited success.[43]  "In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming fat from a fee application.'"[44]

---

[41]    *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434).

[42]    *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985).

[43]    *See Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009) ("The Second Circuit has observed that district courts retain the authority to reduce a statutory fee award by reason of the plaintiff's 'partial or limited success.'") (quoting *Kassim*, 415 F.3d at 256).

[44]    *Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007) (quoting *In re Agent Orange*, 818 F.2d at 237).  *Accord Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) ("[I]n dealing with . . .  surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application[.]'") (quoting *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).

## III.   DISCUSSION

### A.   The February Proposal

On February 25, 2011, plaintiffs presented the City with a fee settlement proposal (the "February Proposal").  The February Proposal did not include any attorneys' fees or costs for work done by the Paul Weiss attorneys. The February Proposal was intended to only include fees for work through December 7, 2010, the date of the City's second round of Rule 68 offers.  The February Proposal states:

> Because these settlements are limited to individual damages and are for a subset of Plaintiffs, our present application is limited to fees that we attribute to work done on behalf of the Rule 68 Plaintiffs' individual damages only.  As such, this application does not seek fees for work done solely in furtherance of the *Monell* claims or injunctive relief. Moreover, where the work is attributable to all of the Plaintiffs, we have discounted the amount in half since this application is on behalf of approximately half of the Plaintiffs.[45]

The February Proposal sought $41,041.50 in attorneys' fees for the following attorneys: Amanda Moretti, Steve Wasserman, Nancy Rosenbloom, Johanna Steinberg, and Jih Hee Lee.[46]

---

[45]   2/25/11 Letter from Katharine E.G. Brooker, attorney at Paul Weiss, to Tonya Jenerette and Bradford C. Patrick of the Special Federal Litigation Division of the Office of the Corporation Counsel at 1.

[46]   *See id.*, Attorney Hours Summary.

Included in the declarations of attorneys William Gibney and Johanna B. Steinberg in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Costs is an identical Exhibit B which contains time entries associated with the Settling Plaintiffs' individual claims.[47]  Although the City apparently "absolutely refused to negotiate a bifurcated fee settlement,"[48] this Court finds that the fees associated with plaintiffs' pattern and practice claims should be deferred, pending the ultimate resolution of this action.  To allocate a portion of such fees to the Settling Plaintiffs at this stage of the litigation makes little sense given that the degree of plaintiffs' success with regard to their pattern and practice claims has not yet been determined.  The degree of plaintiffs' success is perhaps the most crucial factor to be considered when determining the amount of fees to be awarded.  Accordingly, this Court will confine the present fee request to the fees associated with the Settling Plaintiffs' individual claims for money damages.

In determining the appropriate amount of such fees, the supporting documentation found in Exhibit B – detailing each attorneys' time charges for the

_____

[47]     *See* Ex. B to Declaration of William Gibney in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Costs ("Gibney Decl."); Ex. B to Declaration of Johanna B. Steinberg in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Costs ("Steinberg Decl.").

[48]     Memorandum of Law in Support of Plaintiffs' Application for an Award of Attorneys' Fees and Costs ("Pl. Mem.") at 5.

Settling Plaintiffs' claims – will be relied upon and reviewed.   Because of a previous mathematical error in the amount of attorneys' fees originally included in Exhibit B, plaintiffs submitted a revised Exhibit B on October 3, 2011.  The amount of fees included in the revised Exhibit B is $38,032.50.

**B.    Hourly Rates**

The City argues that there is a "disconnect" between the hourly rates sought for the attorneys seeking fees and the level of experience for those attorneys.  The following chart summarizes the  information found  in Exhibit B.[49]

|  | Attorney | Hour | Rate | Total | Adjusted Total | Adj. Hrs |
|---|---|---|---|---|---|---|
| LAS | Moretti | 27.25 | $425 | $11,581.25 | $7,596.88 | 17.88 |
|  | Wasserman | 23.25 | $425 | $9,881.25 | $8,659.38 | 20.38 |
|  | Rosenbloom | 1.50 | $425 | $637.50 | $637.50 | 1.50 |
| LDF | Steinberg Pre 7/1/10 | 47.25 | $360 | $17,010.00 | $10,890.00 | 30.63 |
|  | Post 7/1/10 | 25.10 | $390 | $8,287.50 | $7,848.75 | 23.90 |
|  | Lee | 11.00 | $400 | $4,400.00 | $2,400.00 | 6.00 |
|  | Totals |  |  |  | $38,032.51 |  |

---

[49]    The last column, Adjusted Hours, is arrived at by dividing the Adjusted Total by the attorney's hourly rate.  For example, the Adjusted Total for Moretti is $7,596.88.  Dividing that amount by Moretti's hourly rate of $425 yields 17.88 in Adjusted Hours.  Finally, the "Adjusted Total" column differs from the "Total" column because, as stipulated to by the parties, the attorneys only billed fifty percent (50%) for those time entries applicable to all plaintiffs as opposed to one-hundred percent (100%) for those time entries specifically identifying one or more of the Settling Plaintiffs by name.

15

The hourly rates sought by the Settling Plaintiffs, the rates proposed by the City,  and the rates determined by this Court are summarized in below.

| Attorney | Years Experience | Hourly Rate Sought | Hourly Rate Proposed | Hourly Rate Set by Court |
|----------|------------------|--------------------|--------------------|--------------------------|
| Wasserman | 31 | $425 | $400 | $425 |
| Moretti | 20 | $425 | $350 | $400 |
| Rosenbloom | 24 | $425 | $350 | $400 |
| Steinberg - pre 7/1/10 | 9 | $360 | $300 | $350 |
| Steinberg - post 7/1/10 | 9 | $390 | $300 | $375 |
| Lee | 11 | $400 | $300 | $375 |

Wasserman has the most experience, thirty-one years, and is therefore entitled to the highest rate sought by the Settling Plaintiffs.  Moretti and Rosenbloom have considerably less experience than Wasserman, twenty and twenty-four years respectively, but the  Settling Plaintiffs seek the same hourly rate of $425 per hour for both attorneys.[50]  To account for the differences in experience, this Court finds that a small reduction, to  $400 per hour, is appropriate for these

---

[50]     In their reply papers, plaintiffs suggest that "[i]f the Court finds that different rates are appropriate, it would be more appropriate to raise the rates of the most senior attorneys rather than reduce the rates of the next most experienced." Reply Memorandum of Law in Support of Plaintiffs' Application for an Award of Attorneys' Fees and Costs ("Reply") at 3.  Because the most experienced attorney is being compensated at an appropriate level, this Court declines plaintiffs' suggestion.

attorneys.  Finally, Steinberg and Lee have roughly half of the experience of Moretti and Rosenbloom yet the Settling Plaintiffs seek rates of $360/$390 and $400 per hour for these attorneys.  Surely, a reasonable paying client would not pay an attorney with ten years experience the same hourly rate he would pay an attorney with twenty or thirty years experience.  Accordingly, the Court sets the rates for Steinberg and Lee at $350 per hour.  The rates established above are in accord with relevant case law.[51]

## C.    Pre-Complaint Work

The City objects to a number of time entries that pre-date the filing of the Complaint on the ground that the work billed must be expended on the litigation itself.[52]  In *Webb v. Board of Education of Dyer County, Tennessee*, the

---

[51]    *See, e.g., Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 246 (S.D.N.Y. 2010) (approving $400 per hour for seasoned civil rights attorneys admitted to the bar in the 1960s and 1970s) (citing *Simmonds v. New York City Dep't of Corr.*, No. 06 Civ. 5298, 2008 WL 4303474, at *5 (S.D.N.Y. Sept. 16, 2008) (where, in the context of a Title VII civil rights case, the court relied upon her "independent knowledge of the rates charged by attorneys for similar services and of recent awards in the district for complex civil rights matters" in compensating the two lead attorneys at $425 per hour)); *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06 Civ. 6198, 2008 WL 1899938, at *4 (S.D.N.Y. Apr. 29, 2008) (compensating an attorney with ten years experience at $350 per hour); *Heng Chan*, 2007 WL 1373118, at *4 (finding $400 per hour to be a reasonable rate for an attorney at the Urban Justice Center who had fifteen years of civil rights litigation experience).

[52]    *See* Defendant City of New York's Memorandum of Law in Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs ("Def. Mem.") at

Supreme Court noted that "[t]he time that is compensable under § 1988 is that 'reasonably expended *on the litigation*.'"[53]  The Supreme Court suggested that the standard to use to determine if pre-complaint work is compensable is whether the work "was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement."[54]  The question, then, is how much of the work performed prior to the filing of the complaint was useful to advance the federal claims subsequently asserted herein.

Wasserman's time charges begin on January 15, 2009 and end on December 10, 2009.[55]  Thus, for purposes of the instant fee award, all of Wasserman's time is pre-complaint.  Steinberg's time charges begin on May 27, 2009, and continue through January 22, 2010.[56]  According to the supporting documentation, the vast majority of Wasserman's time entries list the actual

---

16-17.

[53]     471 U.S. 234, 242 (1985) (emphasis in original).

[54]     *Id.* at 243.

[55]     *See* Attorney Time Detail – Steve Wasserman (LAS), Ex. B to the Gibney and Steinberg Decls.

[56]     *See* Attorney Time Detail –Johanna Steinberg (LDF), Ex. B to the Gibney and Steinberg Decls.

plaintiff with whom the work was associated.[57]  For those entries that do not

identify a particular plaintiff, the Settling Plaintiffs allocate half the amount as

compensable, in accordance with the parties's stipulation.[58]  Conversely, most of

Steinberg's pre-complaint time entries do not identify a particular plaintiff.[59]  As

with Wasserman, the Settling Plaintiffs include only fifty percent of Steinberg's

unidentifiable pre-complaint work in the instant fee request.

        This Court finds that most of Wasserman's and Steinberg's pre-

complaint work was relevant and related to the instant litigation and is thus

compensable.  However, for those time entries that relate to "potential plaintiffs,"

the following adjustments are needed:  Wasserman – 2.50 hours (8/24/09), 1.25

hours (8/26/09) (3.75 hours total reduction);  Steinberg – 2.50 hours (8/24/09),

1.25 hours (8/26/09), 0.50 hours (9/5/09) (4.25 hours total reduction, all pre

7/1/10).[60]

---

[57]    *See, e.g.,* 1/15/09 (Adam Cooper: conferred with Legal Aid Attorney);
4/18/09 (Anthony Anderson; wrote letter to Plaintiff); 5/27/09 (met with Edwin
Larregui).

[58]    *See* 8/24/09; 8/26/09; 10/14/09.

[59]    The time entries that do identify a particular plaintiff include 6/10/09;
11/23/09; 1/19/10; 1/22/10.  The remaining entries are described in terms more
general such as "plaintiffs," "potential plaintiffs," and "clients."

[60]    The fact that only minor adjustments were made to adjust for pre-
complaint work is not intended to bind this Court with respect to any future fee

**D.    Travel Time**

The City acknowledges that the Settling Plaintiffs seek compensation for travel time at fifty percent (50%) of their normal rates.  Nonetheless, the City argues that "given the wide availability of electronic means of communication, . . . a reasonable paying client would not agree to pay for travel time."[61]  The City has therefore identified two areas for possible deductions: (1) those time entries specifically designated as travel time only, for which a 100% reduction is suggested; and (2) those time entries that list meetings held in outside offices but do not contain separate entries for travel time, for which a 33% reduction is proposed.[62]

This Court rejects the City's proposal to eliminate, in their entirety, those time entries specifically designated as travel only, which were billed at fifty percent (50%) of the attorneys' normal rates.  Courts in this district typically allow

---

requests, where more substantial reductions may be necessary for work not reasonably expended on the litigation, pre-complaint and otherwise.  Furthermore, this Court does not intend for this Opinion and Order to have any res judicata/collateral estoppel effect or otherwise affect the objections, challenges, and/or defenses that could be raised by the defendants in the future.

[61]    Def. Mem. at 15-16.

[62]    *See id.* at 16.

for travel time at fifty percent.[63]  However, this Court agrees with the second category of adjustments but does not agree with the suggested discount rate of 33%.  Accordingly, the following adjustments, in hours, are needed to discount travel time: Moretti – 0.50 hours (5/24/10); 0.50 hours (9/24/10) (1 hour total reduction); Wasserman – 1.00 hours (4/18/09), 0.50 hours (5/27/09) (1.50 hours total reduction); Steingberg – 1.00 hours (11/5/09), 1.00 hours (11/23/09), 0.50 hours (8/17/10), 1.00 hours (9/23/10) (3.5 hours total reduction, 2 hours pre 7/1/10 and 1.5 hours post 7/1/10); Lee - 0.50 hours (5/25/10), 0.50 hours (8/17/09) (1 hour total reduction).

### E.    Class Certification

Attorney Jin Hee Lee charged one hour on October 26, 2010 for "Draft class cert declaration for S. Jones."   The Settling Plaintiffs, however, achieved no class-wide relief, only money damages for their individual claims. Thus, work related to class certification did not advance the settlement efforts of the Settling Plaintiff and is therefore non-compensable.  Accordingly, one hour of

---

[63]    *See, e.g., Colburn Family Found. v. Chabad's Children of Chernobyl*, No. 06 Civ. 2351, 2011 WL 1758639, at *5 (S.D.N.Y. Apr. 12, 2011); *In re Painewebber Ltd. P'ships Litig.*, No. 94 Civ. 8547, 2003 WL 21787410, at *4 (S.D.N.Y. Aug. 4, 2003) ("When determining attorneys' fees, courts in the Southern District of New York generally do not credit travel time at the attorney's full hourly rate and customarily reduce the amount awarded for travel to at least 50% of that rate.").

Lee's time will be deducted from the instant award.

**F.     Revised Summary of Charges**

In light of the adjustments made above, to both the hourly rates and the number of hours, the following chart summarizes the attorneys' fees that relate to the litigation of the Settling Plaintiffs' claims.[64]

| Attorney | Adjusted Hours | Adjusted Rates | Adjusted Fees |
|---|---|---|---|
| Amanda Moretti | 16.88 | $400 | $6,752.00 |
| Steve Wasserman | 15.13 | $425 | $6,430.25 |
| Nancy Rosenbloom | 1.5 | $400 | $600.00 |
| Johanna Steinberg - pre 7/1/10 | 24.38 | $350 | $8,533.00 |
| post 7/1/10 | 22.4 | $375 | $8,400.00 |
| Jin Hee Lee | 4 | $375 | $1,500.00 |
| Total | | | $32,215.25 |

The Settling Plaintiffs also seek attorneys' fees relating to the filing of the instant fee application. The hours requested, and the adjusted rates, are as follows: Lee - 7 hours at $375 per hour ; Rosenbloom - 12.75 hours at $400 per

---

[64]     Because this award encompasses only the fees relating to the individual damages claims, the City's suggestion of an across-the-board reduction due to plaintiffs' limited success and vague and block billing is unnecessary.

hour; Smith - 45.25 hours at $280 per hour;[65] Steinberg - 10.00 hours at $375 per hour.  The corresponding amounts are as follows: Lee - $2,625.00; Rosenbloom - $5,100.00; Smith - $12,670.00; Steinberg - $3,750.00, all of which total $24,145.00.

### G.   Expert Fees

Pursuant to section 1988, courts only have the discretion to tax expert fees as costs in actions brought under 42 U.S.C. §§ 1981 and 1981a, not section 1983.[66]  The Supreme Court has held that section 1988 does not authorize courts to shift expert fees to the losing party as part of a "reasonable attorney's fee" in a section 1983 case.[67]  "After *Casey*, Congress enacted the Civil Rights Act of 1991, which amended 42 U.S.C. § 1988 to give courts discretion to shift expert fees to the losing party in cases arising under 42 U.S.C. §§ 1981 and 1981(a).  As

---

[65]   Jonathan Smith has four years experience and, as such, his hourly rate of $280 per hour is appropriate.

[66]   *See* 42 U.S.C. § 1988(c) ("In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."); *Tatum v. City of New York*, No. 06 Civ. 4290, 2010 WL 334975, at *13 (S.D.N.Y. Jan. 28, 2010) ("Finally, the law is clear that counsel may not recover under Section 1988 for expert fees paid in connection with a Section 1983 action.") (citing *Wilder v. Bernstein*, 975 F. Supp. 276, 287 (S.D.N.Y. 1997)).

[67]   *See West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 102 (1991).

Congress explicitly limited the amendment to cases arising under § 1981, *Casey* still prohibits the award of expert fees in § 1983 cases."[68]  Consequently, plaintiffs cannot recover any amounts paid in expert witness fees.

## IV.   CONCLUSION

For the reasons stated above, the Settling Plaintiffs are awarded $56,360.25 in attorneys' fees ($32,215.25 in litigation fees and $24,145.00 in fees related to the fee application) and zero costs.[69]  The Clerk of the Court is directed to close the motion for attorneys' fees (Docket Entry # 80).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            October 17, 2011

---

[68]      *Wilder*, 975 F. Supp. at 287, n.12 (citation omitted).

[69]      Because all of plaintiffs' costs represent expert witness fees, *see* Ex. C to the Steinberg Decl., they are disallowed in their entirety.

24

**- Appearances -**

**For Plaintiffs:**

John Payton, Esq.
Johanna B. Steinberg, Esq.
Jonathan J. Smith, Esq.
Jin H. Lee, Esq.
NAACP Legal Defense & Educational
Fund, Inc.
99 Hudson Street, Suite 1600
New York, NY 10013
(212) 965-2200

Katherine E.G. Brooker, Esq.
Daniel J. Leffell, Esq.
David G. Clunie, Esq.
Andre D. Williams, Esq.
Jason D. Williamson, Esq.
Paul, Weiss, Rifkin, Wharton & Garrison, LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

William D. Gibney, Sr., Esq.
Amanda C. Moretti, Esq.
Nancy Rosenbloom, Esq.
The Legal Aid Society
199 Water Street, 6th Floor
New York, NY 10038
(212) 577-3300

**For Defendant City of New York:**

Morgan D. Kunz
Bradford C. Patrick
Brenda E. Cooke
Tonya Jenerette
Assistant Corporation Counsel
Corporation Counsel of the
 City of New York
100 Church Street, Room 3-189
New York, NY 10007
(212) 788-0422

**For Defendant NYCHA:**

Steven Jay Rappaport, Esq.
New York City Housing Authority
250 Broadway, 9th Floor
New York, NY 10007
(212) 776-5152