UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

KELTON DAVIS, *et al.*, individually and on
behalf of a class of all others similarly
situated,

     **Plaintiffs,**

   - against -

THE CITY OF NEW YORK and NEW
YORK CITY HOUSING AUTHORITY,

     **Defendants.**
-------------------------------------------------------X

**MEMORANDUM
OPINION AND ORDER**

**10 Civ. 0699 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/14/12

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

   After the close of fact discovery and as they are preparing their summary judgment briefs, the parties have presented the Court with the latest in a long line of discovery disputes.

   On May 11, 2012, plaintiffs asked the Court to order production of the NYPD Housing Bureau's Reports of Self-Initiated Cases ("Reports"), which are summaries of investigations conducted by Integrity Control Officers ("ICOs") into police misconduct.[1] They argued that these reports were crucial to determine "the scope of the City's supervision and disciplining of Housing Bureau officers

---

[1] *See* 5/11/12 Letter from Johnathan Smith (Plaintiffs' Counsel) to Court ("May 11 Letter").

1

conducting unlawful stops and arrests."[2]  The City of New York ("City")

responded by saying that "such documents do not exist . . . ICOs do not have

jurisdiction over review of trespass arrests; complaints regarding false arrests,

abuse of authority, discourtesy and offensive language are handled by [the

Civilian Complaint Review Board] and complaints regarding corruption are

handled by [the Internal Affairs Bureau]."[3]  The City cited the testimony of Chief

Delatorre to support its argument that the Reports "concern[] ICO oversight of

police officer conduct that has nothing to do with the claims asserted in this

lawsuit."[4]  It went on to explain that "when asked whether ICO self-initiated cases

were ever used to determine whether officers were conducting proper arrests Chief

Delatorre testified that he 'can't tell you that we have looked at that specifically.'"[5]

The City therefore objected to the production of the reports because it would be

"speculative and not reasonably calculated to lead to the discovery of admissible

evidence."[6]

---

[2]      *Id.* at 1.

[3]      5/14/12 Letter from Brenda Cooke (Counsel to City) to Court  ("May
14 Letter") at 1.

[4]      *Id.* at 2.

[5]      *Id.*

[6]      *Id.*

In order to resolve the dispute, I examined two of the Reports in camera. I marked the portions of Reports that related to the claims in this lawsuit and ordered the City to turn them over to plaintiffs, along with similar material from the other Reports.[7]

Previously, on December 21, 2011, I orally denied plaintiffs' request to depose an ICO because I determined that other depositions of NYPD officials had already provided plaintiffs with sufficient information about the ICOs' responsibilities and that "it is not entirely clear that the ICOs' functions. . . have to do with this lawsuit . . . . [T]hese people don't investigate unlawful stops or arrests because that goes to IAB and CCRB."[8] That decision was based on the City's statement that "most of the ICOs' functions have nothing to do with the issues in this lawsuit."[9]

Plaintiffs now seek reconsideration of my decision; a deposition of an ICO is merited, they argue, because "the newly-produced information in the redacted [Reports] contradicts the City's representations to the Court, and confirms Plaintiffs' understanding that ICOs play an important role in monitoring,

---

[7]     *See* 5/24/12 Email from Court to Parties.

[8]     12/21/11 Conference Tr. at 9:14-17.

[9]     12/19/11 Letter from Tonya Jenerette (Counsel to City) to Court.

investigating, and/or identifying possible problems with officers' enforcement activity."[10]  The City again objects, arguing, in sum, that "[a]mple additional discovery relevant to ICOs' actions regarding claims in this lawsuit and the supervision and discipline of Housing Bureau officers regarding the same has been provided to plaintiffs."[11]

It is indeed true that plaintiffs have obtained significant documentary and testimonial evidence regarding the ICOs.  Given that fact discovery was scheduled to end long ago, a case can be made that an additional deposition would be "unreasonably cumulative or duplicative" and that "the burden or expense of the proposed discovery outweighs its likely benefit."[12] But denying plaintiffs the deposition would reward the City when it in fact deserves admonishment.

According to the City, the Reports it produced after my in camera review contain information about 71 investigations, over a five year period, addressing complaints filed with the CCRB, the completion of UF-250 forms describing stops and frisks, the execution of vertical patrols, and officers' failure

---

[10]     6/8/12 Letter from Jin Hee Lee (Plaintiffs' Counsel) to Court ("June 8 Letter") at 1.

[11]     6/11/12 Letter from Brenda Cooke (Counsel to City) to Court (June 11 Letter") at 2.

[12]     Fed. R. Civ. P. 26(b)(2)(C).

to comply with enforcement activity performance standards.[13]  This information is

not merely "discoverable" – *i.e.*, "reasonably calculated to lead to the discovery of

admissible evidence" – but in fact goes to the very heart of plaintiffs' allegations.

These Reports should have been produced (in redacted form to

include only relevant information) at the beginning of discovery in 2010.  Had

they been produced, plaintiffs could have sought an ICO deposition long ago and,

if faced with the City's resistence, could have shown the Reports to the Court.

Instead, I denied plaintiffs' request for the deposition in part because neither they

nor I had complete information about the scope of the ICOs' role.[14]

The City's representations to the Court in its May 14 letter were false.

It is not true that Reports containing information regarding the supervision and

discipline of officers for unlawful stops and arrests "do not exist" or that the ICO

oversight relates only to "conduct that has nothing to do with the claims asserted

in this lawsuit."[15]  The selective and blatantly misleading quotation from Chief

---

[13]     *See* June 11 Letter at 1.

[14]     The City's December 19 statement that "most of the ICOs' functions
have nothing to do with the issues in this lawsuit" was technically correct.  But it
is now clear that a not-insignificant portion of the ICOs' functions are relevant to
plaintiffs' allegations.

[15]     May 14 Letter at 1-2.

Delatorre's deposition, documented in full on page two of plaintiffs' June 8 letter, is particularly flagrant: in contrast to the City's representation, Chief Delatorre stated that, "for sure," the ICOs *would* open an investigation "if there is an indication that the officer didn't understand the laws of arrest or anything along those lines."[16]

Because the Reports should have been produced long ago, because the City has been less than forthright with the Court about the content of these Reports and the role of ICOs, and because a deposition of an ICO is likely to lead to the discovery of admissible evidence, plaintiffs' request is granted. Defendants shall make available for deposition an ICO from one of the Police Service Areas that arrested one of the named plaintiffs; the deposition shall be limited to seven hours, not the one hour that the City suggests; and, given expert report deadlines, it shall take place by June 22. The deposition shall not be limited to the topics in the Reports – all of the ICOs' duties are appropriate subjects of investigation.[17] The deadlines for the production of expert reports and the submission of summary

---

[16]      Deposition of Chief Delatorre at 479.

[17]      Additionally, the City is ordered to provide plaintiffs with the total number of cases listed in each Report. Plaintiffs convincingly explain why this "denominator" information is relevant. If it is easier to do so, defendants may simply inform plaintiffs of these numbers without providing newly-redacted versions of the Reports.

judgment briefs will not be extended as a result of this Order.

SO ORDERED:

Dated:       New York, New York                   Shira A. Scheindlin
             June 13, 2012                         U.S.D.J.

## Appearances

**For Plaintiffs:**

Johnathan Smith, Esq.
Jin Hee Lee, Esq.
NAACP Legal Defense & Educational Fund, Inc.
99 Hudson Street, 16th Floor
New York, New York 10013
(212) 965-2200

Nancy Rosenbloom, Esq.
Legal Aid Society of New York
199 Water Street
New York, New York 10038
(212) 577-3300

Matthew Moses, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

**For Defendant City of New York:**

Brenda Cooke
Judson Vickers
Pernell Telfort
George Soterakis
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007
(212) 788-0993

**For Defendant NYCHA:**

Steven Jay Rappaport, Esq.
New York City Housing Authority
250 Broadway, 9th Floor
New York, New York 10007
(212) 776-5152