UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELTON DAVIS, *et al.*,,<br><br>Plaintiffs,<br><br>-against-<br><br>THE CITY OF NEW YORK and NEW YORK CITY HOUSING AUTHORITY,<br><br>Defendants. | 10 Civ. 699 (SAS)<br><br>**DECLARATION OF JEFFREY FAGAN** |

Jeffrey Fagan declares under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I have personal knowledge of the facts stated herein.

2. I am the Isidor and Seville Sulzbacher Professor of Law at Columbia University.

3. I am neither a party nor counsel for any party to this action.

4. I submit this declaration in support of Plaintiffs' papers in opposition to the motions for summary judgment by Defendants City of New York and the New York City Housing Authority ("NYCHA").

5. I have been retained as a testifying expert for Plaintiffs in this action.

6. As part of my expert witness work in this action, I prepared an expert report dated and provided to Defendants on June 29, 2012 ("June 29 Expert Report"). That report concluded, based on statistical evidence—including multivariate regression models—that the New York City Police Department ("NYPD") has engaged in an unconstitutional pattern of stops and arrests of NYCHA residents and visitors that are more likely to affect Blacks and Hispanics.

7. The general categories of data and information that were used to generate the statistical analyses in the June 29 Expert Report are: (a) NYPD stop, question, and frisk activity for both trespass and other suspected crimes in NYCHA properties and in the surrounding areas; (b) NYPD trespass arrests in NYCHA properties and in the surrounding areas; (c) socio-economic and demographic characteristics of the places where stops and arrests occurred that may contribute to stops, arrests, and other police activity independent of local crime conditions; (d) local crime conditions both in NYCHA sites and in the surrounding areas where stops took place; and (e) characteristics of policing including patrol strength and patrol activity.

8. In the June 29 Expert Report I found, among other things, that there are significantly more trespass stops and arrests in NYCHA public housing sites compared to the immediate surrounding areas. Likewise, there are significantly more total stops and arrests in NYCHA public housing sites compared to the immediate surrounding areas. These differences are evident and statistically significant after controlling for local crime conditions, policing activity, population size, and the socio-economic and demographic composition of NYCHA sites and surrounding areas.

9. The statistical analyses I conducted also revealed that there are sizeable racial disparities among stops conducted by the NYPD. Citywide, Blacks and Hispanics represent over 80% of all persons stopped, and over 90% of all persons stopped in NYCHA. I found similar racial disparities in the context of trespass stops and trespass arrests as well. Specifically, I found that race and ethnicity play a significant role in the rate of trespass stops and arrests in public housing, even after controlling for other policy-relevant factors, crime conditions, patrol strength, and socio-economic conditions.

10. The disparities in both trespass and total police enforcement increase with the magnitude of the difference in racial composition between NYCHA properties and the surrounding areas, after controlling for local crime conditions, policing activity, population size, and the socio-economic and demographic composition of NYCHA sites and surrounding areas.

11. As part of my analysis I also evaluated stop rates per crime complaint both in NYCHA developments and the surrounding areas. I found, among other things, large racial disparities in stops per crime, regardless of the metric of crime-specific stops (i.e., total stops, drug stops, weapons stops, trespass stops) or crime benchmarks (i.e., total crime, violent crime) that I used. I also found that the greater the African-American concentration within a NYCHA development, the greater the racial disparity in stops per crime complaint.

12. I also conducted analyses to evaluate the constitutional sufficiency of stops in the context of the jurisprudential demand that a suspect's behavior reach a threshold of reasonable and articulable suspicion to justify police intervention. I found, among other things, trespass stops stand out from other stops. They are least likely to be apparently legally justified (38.7%) compared to any other crime category, well below the average rate of 67.1% for all stops in public housing.

13. My analysis also revealed that *high crime area* is one of the two most common items checked off on the NYPD's UF-250 form for all stops in public housing, as well as for trespass stops. *High crime area* is checked off consistently between 60%-65% of stops across public housing developments, regardless of existing variations in actual crime rates. In the safest public housing sites and also in the most crime-ridden developments, police officers characterize public housing locales as *high crime areas*—and do so consistently. There appears to be weak

sensitivity to the actual crime rates in the area; this is true for all stops in public housing and trespass stops, in particular.

14. On the UF-250 forms, "other" stop circumstance was checked off in 55% of the citywide stops for suspected trespass, and even more often (65%) for trespass stops in public housing. A more detailed analysis of the "other" circumstances, used in nearly two thirds of all trespass stops in public housing, reveals that 8.3% are apparently legally unjustified, 50.3% are apparently legally justified, and 41.5% are apparently legally ungeneralizable.

15. Even after efforts to re-train NYPD officers on the lawful conduct of trespass enforcement, a significant portion of trespass and other stops in NYCHA sites still did not meet legal standards for reasonable and articulable suspicion.

Executed:   July 18, 2012
            New York, New York

                                          _____
                                          JEFFREY FAGAN

4