UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KELTON DAVIS, et al., individually and on behalf of a
class of all others similarly situated;

Plaintiffs,

- against -

THE CITY OF NEW YORK and NEW YORK CITY
HOUSING AUTHORITY;

Defendants.

10 Civ. 0699 (SAS)
ECF Case

**PLAINTIFFS' RESPONSES TO
DEFENDANT NEW YORK CITY HOUSING AUTHORITY'S
SUPPLEMENTAL LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS
AND
PLAINTIFFS' RULE 56.1 STATEMENT OF ADDITIONAL MATERIAL FACTS IN
OPPOSITION TO DEFENDANT NEW YORK CITY HOUSING AUTHORITY'S
<u>SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Rule 56.1 of the Local Civil Rules of this Court, Plaintiffs submit the following responses to Defendant New York City Housing Authority's ("NYCHA" or "Defendant") supplemental Local Rule 56.1 Statement of Undisputed Facts (the "Supplemental Statement"), filed October 26, 2012. In accordance with Local Civil Rule 56.1(b), Plaintiffs additionally include a Statement of Additional Material Facts as to which Plaintiffs contend there exists a genuine issue of fact in dispute.

## Plaintiffs' General Objections to NYCHA's Supplemental Rule 56.1 Statement of Undisputed Facts

Plaintiffs object to Defendant's Supplemental Statement to the extent it relies on mere conclusions, hearsay, or unsupported inferences. *See Giannullo* v. *City of New York*, 322 F.3d 139, 142–43 & n.5 (2d Cir. 2003) (vacating grant of summary judgment where statement of material fact in Rule 56.1 statement was unsupported by record); *Bridgeway Corp.* v. *Citibank*, 201 F.3d 134, 142 (2d Cir. 2000) ("Summary judgment cannot be granted on the basis of inadmissible evidence."); *Young* v. *Daughters of Jacob Nursing Home*, No. 09 CV 7475, 2011 WL 2714208, at *1 n.1 (S.D.N.Y. July 12, 2011) (noting that exhibits submitted in connection with summary judgment motion must be non-hearsay (citing *Major League Baseball Props., Inc.* v. *Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008)).

Plaintiffs object to Defendant's Supplemental Statement to the extent assertions are not "followed by citation to evidence which would be admissible." *See* Local Civ. R. 56.1(d); *see also Holtz* v. *Rockefeller & Co., Inc.*, 258 F.3d 62, 74 & n.1 (2d Cir. 2001) ("Where, as here, the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently."); *Am. Auto. Assoc.* v. *AAA Auto. Club of Queens, Inc.*, No. 97 CV 1180, 1999 WL 97918, at *3 (E.D.N.Y. Feb. 8, 1999) (refusing to

1

consider 56.1 statement to the extent it consisted of "bare assertions unsupported by any citations to evidence").

**Plaintiffs' Responses to NYCHA's**
**Supplemental Rule 56.1 Statement of Undisputed Facts**

Subject to and without waiver of these objections, Plaintiffs respond to the specific statements in Defendant's Supplemental Statement as follows:

1.      NYCHA is a public benefit corporation created by the New York State Public Housing Law for the purpose of providing "safe, decent, affordable housing for low-income residents within the five boroughs" of New York City.  <u>See</u> New York Pub. Hous. Law sec 2, 401.

**RESPONSE**:  Undisputed.

2.      NYCHA provides such housing for more than 400,000 authorized residents, more than 90% of whom are Black or Hispanic.  Declaration of Steven J. Rappaport in Support of NYCHA's Motion of Summary Judgment, dated June 15, 2012, Exhibit X [Special Tabulation of Resident Characteristics as of January 1, 2011].

**RESPONSE**:  Undisputed.

3.      NYCHA created the Highlights of House Rules, Lease Terms and Policy in 2010 and distributed it to residents in December, 2010 [Plaintiffs' counterstatement pursuant to Rule 56.1] paragraph 213; Declaration of Katharine E.G. Brooker in Opposition to Defendants' Motion, Exhibit 28].

**RESPONSE**:  Disputed.  NYCHA maintains that it mailed a copy of the Highlights of House Rules, Lease Terms and Policy ("House Rules") document to every NYCHA apartment.

2

(Brooker Ex. 10 (SSTF Report).)  NYCHA's citation does not establish the House Rules document was in fact received by all residents.[1]

Shawne Jones

4.      Shawne Jones resides in a NYCHA property located at 301 Sutter Avenue. Ms. Jones has been the tenant of record for Apt 6-D at 301 Sutter Avenue for seven or eight years. Exhibit A to Rappaport Declaration [Deposition of Shawne Jones] p. 20, 33, 53.

**RESPONSE**:  Undisputed.

5.      Ms. Jones has never been stopped or frisked by the NYPD in or outside 301 Sutton Avenue. Ms. Jones's children have never been stopped or frisked in or outside of 301 Sutton Avenue.  Exhibit A to Rappaport Declaration [Deposition of Shawne Jones] p. 68, 139.

**RESPONSE**:  Undisputed, with the clarification that NYCHA's citation does not support the statement in its entirety.

6.      Shawne Jones has intermittently been in a relationship with Rashaan Spann for ten years.  They have one child together, but do not live together. Exhibit A to Rappaport Declaration pp. 18-19.

**RESPONSE**:  Undisputed.

7.      Once during this ten-year period, Mr. Spann was stopped by the Police at the NYCHA property located at 301 Sutter while visiting Ms. Jones and their child.  There is no evidence that Mr. Spann was ever stopped at another NYCHA property.  Exhibit A to Rappaport Declaration [Deposition of Shawne Jones] pp. 20-23.

---

[1] Exhibit 28 to the Brooker Declaration, dated July 20, 2012, to which NYCHA cites is attached to the Brooker Declaration, dated November 14, 2012, as Exhibit 9.  Exhibit 29, the Safety and Security Task Force Report to which NYCHA presumably intended to cite, is appended as Exhibit 10.

**RESPONSE**: Undisputed, with the clarification that Ms. Jones testified only to matters within her personal knowledge.

8.      Mr. Spann was released when Ms. Jones explained that Mr. Spann was here to visit her and that they have a son together. Exhibit A to Rappaport Declaration [Deposition of Shawne Jones] p. 21.

**RESPONSE**: Undisputed.

9.      Mr. Spann has never been frisked by the Police at 301 Sutter.  There is no evidence that Mr. Spann has ever been frisked at another NYCHA property.  Exhibit A to Rappaport Declaration [Deposition of Shawne Jones] p. 22-23.

**RESPONSE**: Disputed to the extent the statement implies that Ms. Jones had personal knowledge of whether Mr. Spann has ever been frisked at 301 Sutter Avenue.  Ms. Jones testified that she was not aware whether Mr. Spann has ever been frisked by police at 301 Sutter Avenue.  (NYCHA Ex. A (Jones Tr.) 22:25-23:4.)[2]

10.      Mr. Spann has never been arrested by the Police at 301 Sutter.  There is no evidence that Mr. Spann has ever been arrested at another NYCHA property.  Exhibit A to Rappaport Declaration [Deposition of Shawne Jones] p. 22-23.

**RESPONSE**: Disputed to the extent the statement implies that Ms. Jones had personal knowledge of whether Mr. Spann has ever been arrested at 301 Sutter Avenue.  Ms. Jones testified that she was not aware whether Mr. Spann has ever been arrested by police at 301 Sutter Avenue.  (NYCHA Ex. A (Jones Tr.) 23:5-8.)

11.      Lashaun Smith is friends with Mr. Spann.  He is also godparent to the child that Ms. Jones and Mr. Spann have together.  Mr. Smith was arrested on May 11, 2009 while visiting

---

[2] "NYCHA Ex. __" refers to the exhibits attached to the Declaration of Steven J. Rappaport in Further Support of NYCHA's Motion for Summary Judgment, dated October 26, 2012.

Ms. Jones and her son.  Ms. Jones did not witness this arrest and does not know if it resulted

from a vertical patrol.  Exhibit A to Rappaport Declaration [Deposition of Shawne Jones] p. 22-

23, 127.

**RESPONSE**:  Undisputed, with the clarification that NYCHA's citation does not support

the statement in its entirety.

12.    Ms. Jones has one brother, who is legally blind and walks with a cane.  For a

period of time, he lived with Ms. Jones at 301 Sutter.  He no longer lives with Ms. Jones, but she

continues to take care of him.  Exhibit A to Rappaport Declaration [Deposition of Shawne Jones]

p. 26-27, 31.

**RESPONSE**:  Undisputed.

13.    Ms. Jones's brother has occasionally been stopped by the Police at 301 Sutter.

There is no evidence that Ms. Jones's brother has ever been stopped by the Police at any other

NYCHA property. Exhibit A to Rappaport Declaration [Deposition of Shawne Jones] p. 28-29.

**RESPONSE**:  Disputed.  Ms. Jones's testimony does not establish that her brother was

stopped only occasionally.  (NYCHA Ex. A (Jones Tr.) 28:17-29:14.)

14.    There is no evidence that Ms. Jones's brother was ever frisked at 301 Sutter or

any other NYCHA property.  Similarly, there is no evidence that Ms. Jones's brother was ever

arrested at 301 Sutter or any other NYCHA property. Exhibit A to Rappaport Declaration

[Deposition of Shawne Jones] p. 28-29.

**RESPONSE**:  Undisputed.

15.    Lashaun Smith is friends with Mr. Spann.  He is also godparent to the child that

Ms. Jones and Mr. Spann have together.  Mr. Smith was arrested on May 11, 2009 while visiting

Ms. Jones and her son. Ms. Jones did not witness this arrest and does not know if it resulted from

a vertical patrol. Exhibit A to Rappaport Declaration [Deposition of Shawne Jones] p. 22-23, 127.

**RESPONSE**:  Undisputed, with the clarification that NYCHA's citation does not support the statement in its entirety, and NYCHA's statement is a duplicate of ¶ 11.

16.     Since Smith's arrest Ms. Jones has continued to receive visitors and she has never told anyone not to visit her, although she tells her male cousins to call her first.  Exhibit A to Rappaport Declaration [Deposition of Shawne Jones] pp. 137, 138.

**RESPONSE**:  Undisputed, with the clarification that Ms. Jones warns her male cousins to call her before visiting so that she can meet them downstairs and escort them to her apartment in order "[t]o avoid the cops stopping them and taking them in for nothing." (NYCHA Ex. A (Jones Tr.) 138:4-20.).

17.     Since Smith's arrest, he hasn't spent the night at Jones's apartment and he does not stay long when he visits her.  Exhibit A to Rappaport Declaration [Deposition of Shawne Jones], 120-21.

**RESPONSE**:  Disputed to the extent the statement implies that Mr. Smith has visited Ms. Jones at 301 Sutter Avenue on more than one occasion since his arrest.  Mr. Smith has visited Ms. Jones and their child at their home once since his arrest and did not stay the night. (Brooker Ex. 1 (Jones Tr.) 120:24-121:23.).

18.     None of Ms. Jones's other visitors have ever been stopped by the NYPD at 301 Sutter Avenue.  Specifically, Ms. Jones indicated that her aunt has never been stopped while visiting her at 301 Sutter Avenue. Exhibit A to Rappaport Declaration [Deposition of Shawne Jones] p. 63, 81.

**RESPONSE**: Disputed.  Ms. Jones's boyfriend, Rashaan Spann, has been stopped by police officers at 301 Sutter Avenue.  (NYCHA Ex. A (Jones Tr.) 20:6-11.)  In addition, Ms. Jones's brother, Tarion Washington, has been stopped by police officers at 301 Sutter Avenue on multiple occasions.  (Brooker Ex. 1 (Jones Tr.) 28:17-29:14.)  NYCHA also overstates the nature of Ms. Jones's testimony by assuming she would necessarily have personal knowledge of every guest who has been stopped by the NYPD while visiting her at 301 Sutter Avenue.

19.    The last time Ms. Jones saw the Police stop someone in 301 Sutter prior to her deposition was four or five months prior, when "Donique" was stopped.  Ms. Jones does not remember seeing the Police stop anyone prior to "Donique" [*sic*] Exhibit A to Rappaport Declaration [Deposition of Shawne Jones] pp. 81-82.

**RESPONSE**: Disputed.  Ms. Jones testified that since she has been living in public housing, she has "seen officers stop guys for no reason."  (NYCHA Ex. A (Jones Tr.) 81:25-82:1.)  NYCHA's citation does not support the statement.

20.    Ms. Jones attends tenant association meeting [*sic*] every few months.  Ms. Jones has never heard complaints from other NYCHA residents about their visitors being stopped by the NYPD during tenant meetings.  Exhibit A to Rappaport Declaration [Deposition of Shawne Jones] pp. 72, 77.

**RESPONSE**: Undisputed.

21.    Ms. Jones never complained to NYCHA about police activity at her development.  Exhibit A to Rappaport Declaration [Deposition of Shawne Jones] p. 137.

**RESPONSE**: Disputed.  Ms. Jones filed this lawsuit challenging the legality of Mr. Smith's arrest and NYCHA's trespass enforcement policies.

22.     Ms. Jones blames NYCHA for Mr. Smith's arrest because she believes the police officers worked for the Housing Authority.  Exhibit A to Rappaport Declaration [Deposition of Shawne Jones] p. 140.

**RESPONSE**: Disputed.  Ms. Jones testified that she believed NYCHA was responsible for Mr. Smith's arrest because the officers were "affiliated" with NYCHA, not because they worked for the Housing Authority.  (NYCHA Ex. A (Jones Tr.) 140:7-24.)

Hector Suarez

23.     Hector Suarez resides in a NYCHA property located at 1211 Loring Avenue. Mr. Suarez has been the tenant of record in apartment 7A, 1211 Loring Avenue for eight years. Prior to becoming the tenant of record, he lived there with his mother. Exhibit B to Rappaport Declaration [Deposition of Hector Suarez] p. 11-13.

**RESPONSE**: Undisputed.

24.     Mr. Suarez is familiar with three (3) NYPD officers who patrol his building.  He has never seen any of these officers interact inappropriately with anyone in a NYCHA building. Mr. Suarez respects the police officers. Exhibit B to Rappaport Declaration [Deposition of Hector Suarez] p. 52, 127.

**RESPONSE**: Disputed.  Mr. Suarez was asked his "opinion of police officers" in general, not of these three officers in particular.  Though Mr. Suarez is familiar with three officers who patrol his building, he is only familiar with them by sight; he has never had a conversation with any of them.  (Brooker Ex. 2 (Suarez Tr.) 49:4-18.)

25.     Mr. Suarez would like to see a greater police presence at NYCHA and does not see police in his development often enough.  Specifically, Mr. Suarez would like to see more vertical patrols.  Exhibit B to Rappaport Declaration [Deposition of Hector Suarez] p. 27-28, 59.

**RESPONSE**:  Undisputed.

26.     Mr. Suarez has only been stopped by the NYPD three times.  None of these stops occurred within the last ten years. Exhibit B to Rappaport Declaration [Deposition of Hector Suarez] p. 38.

**RESPONSE**:  Undisputed, with the clarification that NYCHA's citation does not support the statement.

27.     Mr. Suarez's niece's boyfriend, Adam Cooper, was arrested in December, 2008 while visiting Mr. Suarez.  Mr. Suarez was not aware of any other instance when Mr. Cooper was stopped in a NYCHA development. Exhibit B to Rappaport Declaration [Deposition of Hector Suarez] p. 39, 100.

**RESPONSE**:  Undisputed.

28.     Other than Adam Cooper, none of Mr. Suarez's guests have ever been stopped inside of a public housing building.  Mr. Cooper's arrest did not impact the frequency with which Mr. Suarez's friends and family visit him or assist him. Exhibit B to Rappaport Declaration [Deposition of Hector Suarez] p. 46, 58, 117, 118.

**RESPONSE**:  Disputed.  NYCHA overstates the nature of Mr. Suarez's testimony by assuming he would necessarily have personal knowledge of every guest who has been stopped by the NYPD while visiting him at 1211 Loring Avenue.  (NYCHA Ex. B (Suarez Tr.) 58:22-25.)  Mr. Cooper does not visit Mr. Suarez as frequently as he did before his December 2008

arrest at 1211 Loring Avenue.  (NYCHA Ex. B (Suarez Tr.) 116:12-19.)  NYCHA's citation does not support the statement in its entirety.

29.     Mr. Cooper visited Mr. Suarez eight to twelve times between his arrest and his deposition, which was less frequently than previously.  Mr. Suarez speculated that the decrease in frequency was due to the fact that Mr. Cooper was working.  Asked specifically whether he thought the reduction in frequency in Mr. Cooper's visits were a result of his arrest, Mr. Suarez answered, "I can't say."  He provided no other explanation.  Exhibit B to Rappaport Declaration [Deposition of Hector Suarez] pp. 116, 7.

**RESPONSE**:  Undisputed.

30.     Mr. Suarez does not know of anyone other than Mr. Cooper who has been stopped in NYCHA developments.  Exhibit B to Rappaport Declaration [Deposition of Hector Suarez] p.136.

**RESPONSE**:  Disputed.  Mr. Suarez testified that he knew of multiple incidents where individuals had been stopped by police officers in NYCHA developments.  He does not know any of those individuals personally.  (Brooker Ex. 2 (Suarez Tr.) 136:12-137:1.)

31.     Mr. Suarez joined the lawsuit to support Mr. Cooper.  Exhibit B to Rappaport Declaration [Deposition of Hector Suarez] pp. 103, 129.

**RESPONSE**:  Undisputed.

32.     Mr. Suarez received $5001 from the City of New York to compensate him for his damages from the arrest of Adam Cooper, although he was not expecting anything.  Exhibit B to Rappaport Declaration [Deposition of Hector Suarez] p. 127.

**RESPONSE**:  Undisputed, with the clarification that NYCHA's citation does not support the statement in its entirety.

10

33.     Mr. Suarez wants the lawsuit to result in the Police Department having a better approach to people it stops.  Exhibit B to Rappaport Declaration [Deposition of Hector Suarez] p. 127.

**RESPONSE**:  Undisputed, with the clarification that NYCHA's citation does not support the statement.

**Plaintiffs' Local Rule 56.1 Counterstatement of Additional Material Facts**

Shawne Jones

Paragraphs below are reproduced in part from paragraphs 119-157 of Plaintiffs' Local Rule 56.1 Statement of Additional Material Facts in Opposition to Defendant City of New York's and Defendant New York City Housing Authority's Motions for Partial Summary Judgment, dated July 20, 2012 (Docket No. 193):

1.     Shawne Jones is African American.  Am. Compl. ¶ 28.

2.     Lashaun Smith is African American.  (Brooker Ex. 3).

3.     Mr. Smith is the godfather to Ms. Jones's son.  (Brooker Ex. 1 (Jones Tr.) 93:21-23.)

4.     Ms. Jones lives at 301 Sutter Avenue, Apartment 6D, Brooklyn, New York, which is part of a NYCHA development called Langston Hughes Houses.  She has lived there for approximately 35 years.  (Brooker Ex. 1 (Jones Tr.) 6:22-23, 30:19-20.)

5.     Ms. Jones has friends who live or stay in NYCHA's Langston Hughes Houses. (Brooker Ex. 1 (Jones Tr.) 71:5-72:9.)

6.     The lock on the front door of the building at 301 Sutter Avenue works "rarely. . . . [I]t is broken more often than it is working."  (Brooker Ex. 1 (Jones Tr.) 36:7-25.)

7.     "Half or more of the [NYCHA apartment] buildings at any given time" in NYPD Police Service Area 2, where the Langston Hughes Houses are located, can be opened without a key.  (Brooker Ex. 5 (Police Officer Mumper Tr.) 37:5-9.)

8.     Ms. Jones sees police officers patrolling in her building.  (Brooker Ex. 1 (Jones Tr.) 78:19-21, 90:8-10.)

9.    On May 10 and 11, 2009, Mr. Smith was visiting Ms. Jones at her home. (Brooker Ex. 4 (Smith Tr.) 48:19-24; Brooker Ex. 1 (Jones Tr.) 93:17-23, 95:1-5.)

10.    Mr. Smith spent the night at Ms. Jones's apartment.  (Brooker Ex. 4 (Smith Tr.) 50:1-12, 66:17-21.)

11.    As he was leaving Ms. Jones's building the following morning, Mr. Smith was stopped and arrested for criminal trespass. (Brooker Ex. 4 (Smith Tr.) 78:8-80:21, 88:5-13, 92:2-13.)

12.    In its Opinion and Order, dated October 9, 2012, the Court held that a reasonable juror could conclude that Mr. Smith's stop and arrest were unlawful. (Docket No. 212).

13.    Ms. Jones learned of Mr. Smith's arrest when he called her at home from the precinct.  (Brooker Ex. 1 (Jones Tr.) 99:8-17, 101:1-4.)

14.    Ms. Jones went to the precinct, showed the officers her identification indicating that she lived in apartment 6D, and verified that Mr. Smith was an authorized guest.  (Brooker Ex. 1 (Jones Tr.) 101:1-22, 103:9-18.)

15.    Prior to his arrest, Mr. Smith visited Ms. Jones at 301 Sutter Avenue "[a] lot," often staying overnight.  (Brooker Ex. 1 (Jones Tr.) 95:9-15.)

16.    Since his arrest, Mr. Smith has only visited Ms. Jones at her apartment once.  He did not spend the night.  (Brooker Ex. 1 (Jones Tr.) 121:16-23.)

17.    Now when Mr. Smith visits 301 Sutter Avenue, he does not stay long.  (Brooker Ex. 4 (Smith Tr.) 112:10–17.)

18.    Defendants' trespass enforcement and vertical patrol policies and practices have affected Ms. Jones's ability to accommodate guests.  (NYCHA Ex. A (Jones Tr.) 138:4-20.)

19.     Since Mr. Smith's arrest, Ms. Jones now tells her male cousins to call her before they visit her to "avoid the cops stopping them and taking them in for nothing." (NYCHA Ex. A (Jones Tr.) 138:4-20.)

20.     Ms. Jones believes that police officers who patrol her development sometimes stop and question people because they are black.  She believes that police officers will stop and question black males based solely on how they are dressed.  (Brooker Ex. 1 (Jones Tr.) 90:24-91:11.)

21.     Ms. Jones and Rashaan Spann have been in a relationship for approximately ten years.  They have one child together, but do not live together.  (NYCHA Ex. A (Jones Tr.) 18:2-19:22.)

22.     Mr. Spann was stopped by police officers at 301 Sutter Avenue while visiting Ms. Jones and their child. (NYCHA Ex. A (Jones Tr.) 20:6-22:20.)

23.     Mr. Spann was released only when Ms. Jones came downstairs and informed the police that Mr. Spann was coming to visit her and their child.  (NYCHA Ex. A (Jones Tr.) 21:2-10.)

24.     Ms. Jones's brother, Tarion Washington, has been stopped by police officers on multiple occasions at 301 Sutter Avenue while visiting Ms. Jones.  (NYCHA Exh. A (Jones Tr.) 28:17-29:14.)


Hector Suarez

Paragraphs below are reproduced in part from paragraphs 196-205 of Plaintiffs' Local Rule 56.1 Statement of Additional Material Facts in Opposition to Defendant City of New

14

York's and Defendant New York City Housing Authority's Motions for Partial Summary

Judgment, dated July 20, 2012 (Docket No. 193):

     25.     Hector Suarez is Latino.  (Brooker Ex. 2 (Suarez Tr.) 7:16-17.)

     26.     Mr. Suarez lives at 1211 Loring Avenue, Apartment 7A in Brooklyn, New York,

which is part of a NYCHA development called Louis H. Pink Houses.  He has lived there since

1991. (Brooker Ex. 2 (Suarez Tr.) 3:9-11; NYCHA Ex. B (Suarez Tr.) 11:24-25, 12:12-16.)

     27.     Mr. Suarez has friends who live or stay in NYCHA's Louis H. Pink Houses.

(Brooker Ex. 2 (Suarez Tr.) 25:20-26:6, 70:17-18.)

     28.     The lock to the back door of 1211 Loring Avenue is broken "on and off."

(Brooker Ex. 2 (Suarez Tr.) 14:12-18.)

     29.     Mr. Suarez sees police officers patrolling in his building. (Brooker Ex. 2 (Suarez

Tr.) 27:22-28:4, 28:16-19.)

     30.     Mr. Suarez has three herniated discs in his back.  (Brooker Ex. 2 (Suarez Tr.)

44:2-4, 64:17-20, 67:12-15.)

     31.     Mr. Suarez's herniated discs result in severe pain and limited mobility.  (Brooker

Ex. 2 (Suarez Tr.) 44:2-4, 64:17-20, 67:12-15.)

     32.     Mr. Suarez's family and friends will deliver food to his home when his back pain

is severe.  (Brooker Ex. 2 (Suarez Tr.) 66:6-22.)

     33.     It had been common for Mr. Cooper to deliver meals to Mr. Suarez at his home in

1211 Loring Avenue (Brooker Ex. 2 (Suarez Tr.) 66:6-12.)

     34.     On December 14, 2008, Adam Cooper, who is the father of Mr. Suarez's niece's

children, visited Mr. Suarez to bring him a meal because Mr. Suarez's back pain was severe that

day and restricted his movement.  (Brooker Ex. 2 (Suarez Tr.) 64:4-65:2, 65:11–66:3, 66:23–67:22, 137:2-4.)

35.   Mr. Cooper was stopped and arrested for criminal trespass by police officers as he left Mr. Suarez's building.  (Brooker Ex. 2 (Suarez Tr.) 100:12-101:6, 87:5-20.)

36.   The police never came to Mr. Suarez's apartment to verify that Mr. Cooper was an authorized guest, even after Mr. Cooper told the arresting officers that he was at 1211 Loring Avenue to visit Mr. Suarez.  (Brooker Ex. 2 (Suarez Tr.) 119:21-120:5, 138:5-139:2; NYCHA Ex. B (Suarez Tr.) 116:3-5.)

37.   Upon learning from a neighbor that Mr. Cooper had been arrested, Mr. Suarez went downstairs to talk to the police. (Brooker Ex. 2 (Suarez Tr.) 68:16-69:4, 70:4-16, 72:22-73:12, 78:11-79:9.)

38.   When Mr. Suarez asked a police officer if Mr. Cooper had been arrested, the officer told Mr. Suarez to "mind [his] business, to get the F[uck] back upstairs." (Brooker Ex. 2 (Suarez Tr.) 73:3-12, 78:25-79:12.) [3]

39.   When Mr. Suarez further inquired about the arrest of his guest, he was again told to "get the F[uck] back upstairs" and was asked if he too wanted to get arrested.  (Brooker Ex. 2 (Suarez Tr.) 73:3-12, 78:25-80:12.)

40.   Mr. Suarez went back upstairs as directed by the officer.  (Brooker Ex. 2 (Suarez Tr.) 73:3-15, 79:23–80:12.)

41.   Mr. Suarez felt that he had to leave the lobby of his own building in order to avoid arrest.  Mr. Suarez testified, "I had to go upstairs.  I didn't want to be arrested, and he didn't give me no answers."  (Brooker Ex. 2 (Suarez Tr.) 73:13-15.)

_____

[3] Mr. Suarez testified that the officer said "get the F back upstairs," however he later clarified that the officer used the full expletive.  (Brooker Ex. 2 (Suarez Tr.) 79:10-15.)

42.     Since Mr. Cooper's arrest, Mr. Cooper has not visited Mr. Suarez as frequently. (NYCHA Ex. B (Suarez Tr.) 116:12–19.)

43.     Mr. Suarez believes that his health problems motivate people other than Mr. Cooper to visit him despite Mr. Cooper's arrest.  (NYCHA Ex. B (Suarez Tr.) 117:17–118:7.)

44.     Mr. Suarez was angered and embarrassed both by the arrest of his guest, Mr. Cooper, and the manner in which the police officers treated Mr. Suarez.  (Brooker Ex. 2 (Suarez Tr.) 115:15-24.)


New York City Housing Authority

Paragraphs 59-71 below are reproduced verbatim from paragraphs 206-218 of Plaintiffs' Local Rule 56.1 Statement of Additional Material Facts in Opposition to Defendant City of New York's and Defendant New York City Housing Authority's Motions for Partial Summary Judgment, dated July 20, 2012 (Docket No. 193):

45.     Defendants City and NYCHA are parties to a "Memorandum of Understanding Between the New York City Housing Authority and The City of New York on Merger of the New York City Housing Authority Police Department and the New York City Police Department" ("MOU"), dated September 16, 1994.  (Brooker Ex. 6.)

46.     Pursuant to the MOU, the City agrees to conduct vertical patrols and other "above baseline services" inside NYCHA buildings.  (Brooker Ex. 6 ¶ 10(a).)

47.     Pursuant to the MOU, NYCHA agrees to pay to the City an operating subsidy and a capital subsidy.  (Brooker Ex. 6  ¶¶ 13(a), 14; Brooker Ex. 7 (Serrano Tr.) 149:18-24.)

48.     The operating subsidy is equal to a portion of the annual funding NYCHA receives from the U.S. Department of Housing and Urban Development ("HUD") under the "performance funding system."  (Brooker Ex. 6 ¶ 13(a).)

49.     The capital subsidy is no less than 1.5% of the annual funding NYCHA receives from HUD under the "Comp Grant Program."  (Brooker Ex. 6 ¶ 14; Brooker Ex. 7 (Serrano Tr.) 200:20-201:19, 218:18-219:8.)

50.     NYCHA's Resident Lease Agreement includes a term requiring the resident "[t]o comply with and obey all rules and regulations prescribed from time to time by the Landlord concerning the use and care of the Leased Premises or any common or community spaces or other places in the Development."  (Brooker Ex. 8 (NYCHA Lease).)

51.     NYCHA's Resident Lease Agreement does not include a term providing for the reasonable accommodation of guests.  (Brooker Ex. 8 (NYCHA Lease).)

52.     In 2010, NYCHA created a document titled Highlights of House Rules, Lease Terms and Policy ("House Rules").  (Brooker Ex. 9 (NYCHA House Rules).)

53.     NYCHA maintains that it mailed a copy of the House Rules to every NYCHA apartment. (Brooker Ex. 10 (SSTF Report).)

54.     NYCHA planned to have every NYCHA family receive an updated copy of the House Rules with their annual recertification papers.  (Brooker Ex. 10 (SSTF Report).)

55.     The House Rules state that "NYCHA requires that the tenants and all authorized household members age 18 and older sign below to indicate that they have received and reviewed these highlights of NYCHA's House Rules, Lease Terms and Policy."  (Brooker Ex. 9 (NYCHA House Rules).)

56.     The House Rules provide that "[a]ll persons are expected to cooperate with inquiries from NYCHA management, contract security hired by NYCHA, Resident Watch, and the police regarding their presence or conduct in any building or on development grounds." (Brooker Ex. 9 (NYCHA House Rules).)

57.     The House Rules provide that "lingering" is "prohibited in the lobby, corridors, and stairwell."  The word "lingering" is not defined.  (Brooker Ex. 9 (NYCHA House Rules).)

Dated:   New York, New York
         November 14, 2012

                             PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

                             By: _____

                                 Katharine E.G. Brooker
                                 Matthew J. Moses
                                 1285 Avenue of the Americas
                                 New York, New York 10019
                                 Tel:  212.373.3000
                                 Fax:  212.492.0139
                                 kbrooker@paulweiss.com

                             NAACP LEGAL DEFENSE AND EDUCATIONAL
                             FUND, INC.
                                 Debo P. Adegbile
                                 Christina Swarns
                                 Johanna B. Steinberg
                                 Jin Hee Lee
                                 Johnathan J. Smith
                                 Ria A. Tabacco
                                 99 Hudson Street, Suite 1600
                                 New York, New York 10013-2897
                                 Tel: 212.965.2200
                                 Fax: 212.219.2052
                                 jsteinberg@naacpldf.org

                             THE LEGAL AID SOCIETY
                                 Steven Banks
                                 William D. Gibney

Steven Wasserman
Nancy Rosenbloom
Marlen S. Bodden
199 Water Street, 6th Floor
New York, New York 10038
Tel: 212.577.3300
Fax: 212.509.8141
nrosenbloom@legal-aid.org

*Attorneys for Plaintiffs*