UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELTON DAVIS, *et al.*, individually and on behalf of a class of all others similarly situated;

Plaintiffs,

- against -

THE CITY OF NEW YORK and NEW YORK CITY HOUSING AUTHORITY;

Defendants.

10 Civ. 0699 (SAS)
ECF Case

**MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Roman Jackson, Kristin Johnson, Rikia Evans, Raymond Osorio, Lashaun Smith, Patrick Littlejohn, Andrew Washington, Vaughn Frederick, Shawne Jones, Hector Suarez, and Eleanor Britt (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' motion for partial summary judgment against Defendant City of New York (the "City") pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

By virtue of living in—or visiting a friend or family member who lives in—a New York City Housing Authority ("NYCHA") residence, the plaintiffs in this putative class action are subjected to violations of their Fourth Amendment rights by the same New York City Police Department ("NYPD") officers who are sworn to protect them. These constitutional injuries stem directly from the City's official policy, as stated, in part, in Interim Order 23 ("I.O. 23") and related instructional materials. That policy requires NYCHA residents and guests, who are by definition under the policy not suspected of criminal activity, to either: (1) affirmatively establish their right to be in a NYCHA building or (2) leave the premises upon request by an NYPD officer. The refusal to meet these two demands can result in an arrest for criminal trespass, even where there is *no independent evidence* giving rise to reasonable suspicion—let alone probable cause—that the person was trespassing. This policy is in blatant violation of the Fourth Amendment.

An individual who is not suspected of engaging in criminal conduct has the right to refuse to answer a police officer's questions, provide identification, or explain his or her business without fear of criminal arrest. *See Brown* v. *Texas*, 443 U.S. 47, 53 (1979). That is true anywhere in New York City—whether it be in a NYCHA or private residence, or on the street. The City, however, treats public housing differently. According to the City's own policy, which

is not in dispute, residents of, and visitors to, NYCHA apartments cannot simply go about their business and ignore an NYPD officer's inquiries, even in situations where they are not suspected of any criminal activity. In essence, NYCHA residents and visitors are forced to surrender their Fourth Amendment rights—or risk arrest—for simply being in public housing.

## RELEVANT FACTS

The New York State criminal trespass laws provide that:

> A person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in a building or upon real property . . .
>
> (e) where the building is used as a public housing project in violation of conspicuously posted rules or regulations governing entry and use thereof; or
>
> (f) where a building is used as a public housing project *in violation of a personally communicated request to leave the premises from a housing police officer* or other person in charge thereof . . .

N.Y. Penal Law § 140.10(e)-(f) (McKinney 2012) (emphasis added).

Pursuant to a 1994 Memorandum of Understanding ("MOU") between Defendants City and NYCHA, the City agreed to provide NYCHA with services over and above routine police services, including vertical patrols, in consideration for a substantial annual payment. Pls. 56.1 ¶ 1. In addition to enforcing criminal laws, such as criminal trespass, NYPD officers also are "empowered to enforce such NYCHA rules and regulations and perform such other duties as shall be determined . . . by the City and NYCHA." Pls. 56.1 ¶ 2. Consistent with the MOU, the NYPD purports to have inherited "custodial authority for NYCHA property." Pls. 56.1 ¶ 17.

The City's trespass enforcement policy in NYCHA developments is set forth and incorporated in NYPD Patrol Guide Section 212-60 ("PG 212-60"), as revised, and related instructional materials. *See Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (explaining

that a municipal policy includes any "policy statement[s], ordinance[s], regulation[s], or decision[s] officially adopted and promulgated by that body's officers").

Before the instant litigation was filed, PG 212-60 merely directed officers to "[b]e alert for persons loitering within the buildings, or suspicious conditions." Pls. 56.1 ¶ 4. In June 2010—after the filing of this lawsuit—the City revised PG 212-60 with I.O. 23, which added two protocols relevant to this motion: (1) an approach-and-question protocol for officers who encounter individuals, including "potentially unauthorized person[s]," who may be violating the House Rules; and (2) a protocol for arresting individuals who refuse to leave the premises when asked to do so by NYPD officers. Pls. 56.1 ¶5, 11 and 13.

Pursuant to I.O. 23, NYPD officers policing NYCHA developments are directed to "be alert for persons who may be violating Housing Authority rules and regulations, including potentially unauthorized persons within NYCHA Property." Pls. 56.1 ¶ 10. Upon encountering such persons, the City's trespass enforcement policy directs officers to approach the person and ask three questions:

(1) If he or she lives in the building

(2) If he or she is visiting someone in the building

(3) If he or she has business in the building.

Pls. 56.1 ¶ 11.

I.O. 23 does not require an officer to have reasonable suspicion before "approaching" and engaging in this questioning protocol. Pls. 56.1 ¶ 22. Moreover, I.O. 23 and the related instructional materials state that a person's silence or refusal to explain his or her presence in the building, alone, cannot be used to escalate the encounter or establish reasonable suspicion or probable cause. Pls. 56.1 ¶ 19; *Davis*, 2012 WL 4813837, at *14.

According to I.O. 23, "[i]f a person refuse[s] to explain or is unable to explain his or her presence in the building, the officer may instruct the person that he or she must leave the building or be subject to arrest for trespass." Pls. 56.1 ¶ 13. I.O. 23 authorizes an arrest if the "person refuses to exit the building and does not promptly establish a right to be in the building." *Id.* Officers are not required to have reasonable suspicion or probable cause of criminal trespass before asking that person to leave NYCHA premises. (I.O. 23, Training, Sweet/Anderson.) The basis for arresting someone refusing to leave a NYCHA residence is the "violation of a personally communicated request to leave the premises" by the NYPD officer pursuant to N.Y. Penal Law § 140.10(f); *accord* Pls. 56.1 ¶ 26.)

The City prepared instructional materials for NYPD officers who patrol NYCHA residences (the "Lesson"). This Lesson, which is contained both in an internal Lesson Plan as well as a PowerPoint presentation, presents the following hypothetical scenario as consistent with the City's policy:

> An officer on vertical patrol in a NYCHA building is filling out a *Field Report* indicating a broken front door lock when she observes a person enter the building through the unlocked door. The officer approaches the person and asks if he is a resident of the building. The person says he lives in Apartment 6C. The officer asks the person if he has identification or a key to the front door. He says that he left both in his Apartment. The officer then asks the man if he would mind coming with her to 6C. The man refuses. The officer advises the man he must establish a right to be in the building or leave the location.[1] . . . . [T]he man refuses to leave the building, tells the officer he is going nowhere, and remains in the lobby. The officer arrests the man for criminal trespass . . . [W]hen the officer returns to the stationhouse she notices that the man's identification shows that he was in fact a resident of the building. The officer should follow appropriate police procedures to void the arrest . . . .

[1] Up until this point, the Lesson states that there is no reasonable suspicion or probable cause that a crime has been or is being committed during the encounter.

Pls. 56.1 ¶ 21, 23 and 25. Thus, I.O. 23 expressly authorizes NYPD officers to ask an individual, who may be a resident, to leave a NYCHA apartment building when there is no evidence of criminality, and to arrest that potential NYCHA resident for refusing to do so.

## ARGUMENT

The power of NYPD officers—whether they are acting on behalf of NYCHA, pursuant to their independent mandate to enforce criminal laws, or both—is subject to the limitations of the Fourth Amendment to the United States Constitution. Yet, the City is circumventing the Fourth Amendment by instructing NYPD officers via I.O. 23 that they can arrest people for trespass without independent probable cause that they are trespassing or committing any other crime. The scheme constructed by I.O. 23 operates as follows: without reasonable suspicion or probable cause, NYPD officers can command people to affirmatively establish their right to be in a NYCHA residence or leave the premises, and then arrest those who refuse to comply. As the Supreme Court has recognized, such a policy "is an unjustified impairment of liberty." *See City of Chicago* v. *Morales*, 527 U.S. 41, 59 (1999).

The City's policy authorizes an end-run around the guarantees of the Fourth Amendment by impermissibly shifting the burden onto the NYCHA resident or guest to affirmatively *disprove* trespass, or risk arrest, without any indicia of criminality. In addition, NYPD officers rely on their purported custodial authority to act outside the boundaries of the Fourth Amendment, resulting in unfettered discretion to request that individuals leave the premises, or risk arrest, despite the absence of reasonable suspicion or probable cause.

The constitutional flaws in the City's policy are evident not only in the language of I.O. 23 itself, but also in the Lesson, including the hypothetical described above. As the City's own

Lesson makes abundantly clear, it is City policy that NYCHA residents who elect not to answer an NYPD officer's inquiries, or whose answers fail to satisfy the officer, can be expelled from their own buildings—or, worse, arrested—in the complete absence of reasonable suspicion or probable cause that they are trespassing. The City's policy proposes a solution to such unlawful arrests: voiding the arrest once the individual's residence has been established at the stationhouse. That is unacceptable. A voided arrest denies the magnitude of the Fourth Amendment violation sustained by an innocent NYCHA resident or guest, who has suffered the indignity and injury of being unlawfully stopped and questioned, arrested without probable cause, and taken into custody by law enforcement officers.

The City contends that the arrest of a person who refuses to leave a NYCHA residence is permissible pursuant to its "custodial authority" for NYCHA property and the powers imbued under N.Y. Penal Law § 140.10(f), which makes it a crime to remain in a public housing building in "violation of a personally communicated request to leave the premises" by an NYPD officer. (Pls. 56.1 ¶ 26.) But Section 140.10(f) or the City's policy, either separately or in combination, cannot pass constitutional muster where it does not require the officer to have *any* indicia of criminality, let alone indicia of trespassing, to make the request to leave.

This raises a concern implicated by the City's policy: the unconstitutional burden on the NYCHA resident or guest to affirmatively *disprove* trespass, or risk arrest, without any indicia of criminality. The City acknowledges, in both I.O. 23 and the Lesson, that citizens have a right not to respond to police inquiries, and that refusal will not provide an officer reasonable suspicion to effect a stop, let alone probable cause to arrest. See *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (holding that refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or a seizure); *Florida* v. *Royer*, 460 U.S. 491, 497-

98 (1983) (where officer approaches individual without reasonable suspicion or probable cause, individual has the right to ignore the police and go about his business); Pls. 56.1 ¶ 19. And as this Court recognized in its ruling on the City's and NYCHA's most recent motions for summary judgment, "[t]here is no probable cause to arrest a person if the only facts known to the police are that the person says she does not live in the building and refuses to say more about her license or privilege to be there." *Davis* v. *City of New York*, No. 10 Civ. 0699, 2012 WL 4813837, at *15 (S.D.N.Y. Oct. 9, 2012). "[I]t is the state's burden to prove that an invitee does not have privilege or license to remain on the premises." *Id.* at *13. Nevertheless, the City's policy improperly shifts the burden to the person being questioned by the police to affirmatively justify his or her license to be on the premises.

The City's policy also empowers NYPD officers, as purported custodians of NYCHA property, to approach anyone they believe "may be violating Housing Authority rules and regulations, including potentially unauthorized persons," and expel on pain of arrest not just those who refuse to justify their presence, but also those who fail to justify it to the satisfacation of the officer. Pls. 56.1 ¶ 10. Courts have struck down statutes in similar circumstances where a citizen was required to "identify himself" or "give a reasonably credible account of his conduct and purposes," holding that they invite arbitrary enforcement because the "enforcement of [such a policy] depends entirely upon whether the arresting officer is satisfied that a suspect has given an acceptable account of his presence." *People v. Bright*, 71 N.Y.2d 376, 385 (1988) (citations and internal quotation marks omitted). Here, where there are also "no standard[s] for determining what a suspect has to do in order to satisfy the requirement," the City's policy impermissibly vests "virtually complete discretion in the hands of the police." *Id.* (citations and internally quotation marks omitted). *See United States v. Buenaventura-Ariza*, 615 F.2d 29, 31

(2d Cir. 1980) ("[T]here must be a line separating investigatory stops supported by 'specific, objective facts' from those stops occurring essentially at the 'unfeterred discretion of officers in the field" (quoting *Brown*, 443 U.S. at 51)).

That an NYPD officer purports to act as NYCHA's custodian or agent when issuing a dispersal order does not vitiate the Fourth Amendment's protections against an officer's unfettered discretion. *See United States* v. *Santiago*, 950 F.Supp. 590, 596 (S.D.N.Y. 1996) (policy for conducting safety checks involving livery taxi impermissible where it "results in an end run around the Fourth Amendment"). The NYPD officers patrolling public housing residences are not akin to doormen or other custodians in private buildings: Unlike private individuals or security guards, officers must comply with the Fourth Amendment and cannot circumvent constitutional constraints merely because they are acting on behalf of NYCHA. The City's policy, if left in place, will affect hundreds of thousands of law-abiding New Yorkers who call NYCHA home, as well as their family and friends, by subjecting them to constitutional violations for merely living in or visiting public housing.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for partial summary judgment against the City on Plaintiffs' Fourth Amendment claim.

Dated: New York, New York
December 14, 2012

NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.

By: s/ Johanna B. Steinberg

Debo P. Adegbile
Christina Swarns
Johanna B. Steinberg
Jin Hee Lee
Johnathan J. Smith
Ria A. Tabacco
99 Hudson Street, Suite 1600
New York, New York 10013
Tel: 212.965.2200
Fax: 212.219.2052
jsteinberg@naacpldf.org

THE LEGAL AID SOCIETY
Steven Banks
William Gibney
Steven Wasserman
Nancy Rosenbloom
Marlen S. Bodden
199 Water Street, 6th Floor
New York, New York 10038
Tel: 212.577.3300
Fax: 212.509.8141
nrosenbloom@legal-aid.org

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Katharine E.G. Brooker
Matthew Moses
1285 Avenue of the Americas
New York, New York 10019
(212) 373.3000

*Attorneys for Plaintiffs*