UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELTON DAVIS, *et al.*, individually and on behalf of a class of all others similarly situated;

Plaintiffs,

- against -

THE CITY OF NEW YORK and NEW YORK CITY HOUSING AUTHORITY;

Defendants.

10 Civ. 0699 (SAS)
ECF Case

**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

Pursuant to Rule 56.1 of the Local Civil Rules of this Court, Plaintiffs Roman Jackson, Kristin Johnson, Rikia Evans, Raymond Osorio, Lashaun Smith, Patrick Littlejohn, Andrew Washington, Vaughn Frederick, Shawne Jones, Hector Suarez, and Eleanor Britt submit that the following facts are undisputed:

1. Defendants City of New York ("City") and New York City Housing Authority ("NYCHA") are parties to a Memorandum of Understanding Between the New York City Housing Authority and the City of New York on Merger of the New York City Housing Authority Police Department and the New York City Police Department ("MOU"), dated September 16, 1994. (Cooke I, Ex. A (MOU).)[1]

2. Pursuant to the MOU, the City, "through its police officers . . . is empowered to enforce such NYCHA rules and regulations and perform such other duties as shall be determined . . . by the City and NYCHA." (*Id.* ¶ 11.)

3. Pursuant to the MOU, the City agrees to conduct vertical patrols and other "above baseline services" inside NYCHA buildings. (*Id.* ¶ 10(a).)

4. In 2000, the New York City Police Department ("NYPD") Patrol Guide 212-60, "Interior Vertical Patrols of Housing Authority Buildings," provided that officers should "be alert for persons loitering within the buildings, or suspicious conditions." (Cooke I, Ex. C (PG 212-60).)

5. On June 8, 2010, the NYPD issued Interim Order 23 ("I.O. 23"), which revised Patrol Guide 212-60. (Cooke II, Ex. O (I.O. 23).)[2]

[1] "Cooke I" refers to the Declaration of Brenda E. Cooke, dated June 15, 2012, and attached exhibits. (ECF Docket No. 176.)

[2] "Cooke II" refers to the Declaration of Brenda E. Cooke, dated December 4, 2012, and attached exhibits. (ECF Docket No. 229.)

6. I.O. 23 constitutes part of the City's written policy concerning the NYPD's enforcement of the criminal trespass laws on NYCHA property. (*Id.*)

7. In a letter to John B. Rhea, NYCHA Chairman, and Reginald H. Bowman, President of the Citywide Council of Presidents ("CCOP"), dated September 27, 2010, NYPD Commissioner Raymond W. Kelly stated that I.O. 23 "confirms that police officers assigned to patrol public housing developments are responsible," in part, "for assisting NYCHA in inspection of NYCHA property and the enforcement of its rules." (Steinberg Ex. 1 (Kelly Ltr.).)[3]

8. Commissioner Kelly also stated that I.O. 23 "outlines in detail the way in which police officers are expected to interact with individuals who may be violating House Rules." (*Id.*)

9. In a letter to Commissioner Kelly, dated November 16, 2010, NYCHA Chairman Rhea and CCOP President Bowman discussed the completion of the House Rules and "a sign to be posted in the lobby of each NYCHA building outlining the behavior expected of each person who enters the building," copies of which were enclosed with the letter. (Steinberg Ex. 2 (Rhea & Bowman Ltr.).)

10. I.O. 23 provides that NYPD officers should to "[b]e alert for persons who may be violating Housing Authority rules and regulations, including potentially unauthorized persons within NYCHA property." (Cooke II, Ex. O (I.O. 23) at 2.)

11. I.O. 23 provides that, upon encountering "potentially unauthorized persons," an NYPD officer should "[a]pproach the person(s) and ask: (1) If he or she lives in the building[;]

[3] "Steinberg" refers to the Declaration of Johanna B. Steinberg, dated December 14, 2012, and attached exhibits, filed contemporaneously with this Local Rule 56.1 Statement of Undisputed Facts.

(2) If he or she is visiting someone in the building[; and] (3) If he or she has business in the building." (*Id*; Steinberg Ex. 1 (Kelly Ltr.).)

12. I.O. 23 states: "When a person's authority to be present in the building is in question," an NYPD officer should "take reasonable measures to verify such authority (e.g., asking for identification, a key to the building entrance doors, etc.)." (Cooke II, Ex. O (I.O. 23) at 2; Steinberg Ex. 1 (Kelly Ltr.).)

13. Pursuant to I.O. 23, "[i]f a person refused to explain or is unable to explain his or her presence in the building, the officer may instruct the person that he or she must leave the building or be subject to arrest for trespass. The officer may then arrest the person for trespass if . . . [t]he person refuses to exit the building and does not promptly establish a right to be in the building." (Cooke II, Ex. O (I.O. 23) at 2; Steinberg Ex. 1 (Kelly Ltr.).)

14. The NYPD developed a lesson plan to train NYPD officers about I.O. 23 ("Lesson Plan"). (Steinberg Ex. 3 (Lesson Plan); Steinberg Ex. 4 (Anderson Tr.) at 153:18-25, 259:16-260:4.)

15. The NYPD also developed a PowerPoint presentation to use when delivering the Lesson Plan to NYPD officers ("PowerPoint"). (Steinberg Ex. 5 (PowerPoint); Steinberg Ex. 4 (Anderson Tr.) at 260:9-22.)

16. The Lesson Plan and the accompanying PowerPoint are part of the City's policy concerning the NYPD's enforcement of the criminal trespass laws on NYCHA property. (Steinberg Ex. 3 (Lesson Plan), Ex. 5 (PowerPoint).)

17. The Lesson Plan states: "The NYC Police Department inherited custodial authority for NYCHA property from the Housing Authority police. Although NYC Police Department Members of the Service are not employees of NYCHA, they act on behalf of

NYCHA in providing security for NYCHA buildings and grounds." (Steinberg Ex. 3 (Lesson Plan) at 3.)

18. The Lesson Plan states: "In performing vertical patrols, the New York City Police Department's primary role" includes "enforcing NYCHA rules." (Steinberg Ex. 3 (Lesson Plan) at 3, Ex. 5 (PowerPoint) at NYCE00016550.)

19. The Lesson Plan states: "A person's refusal to explain his or her presence in a building . . . will not by itself raise reasonable suspicion or probable cause." (Steinberg Ex. 3 (Lesson Plan) at 7, Ex. 5 (PowerPoint) at NYCE00016559.)

20. Appendix A to the Lesson Plan defines the following "Levels of Suspicion":

- **Level 1—Request for Information**

  Need Objective Credible Reason

- **Level 2—Common Law Right of Inquiry**

  Need Founded Suspicion that Criminality is afoot

- **Level 3—Reasonable Suspicion**

  Need Reasonable Suspicion that any felony or a Penal Law Misdemeanor is being committed

- **Level 4—Probable Cause**

  Need Reasonable Cause to Believe that a crime or offense has been or is being committed

(Steinberg Ex. 3 (Lesson Plan) at Appx. A, Ex. 5 (PowerPoint) at NYCE00016573.)

21. The Lesson Plan describes the following encounter:

> An officer on vertical patrol in a NYCHA building is filling out a *Field Report* indicating a broken front door lock when she observes a person enter the building through the unlocked door. The officer approaches the person and asks if he is a resident of the building. The person says he lives in Apartment 6C. The officer asks the person if he has identification or a key to the front door.

> He says that he left both in his Apartment. The officer then asks the man if he would mind coming with her to 6C. The man refuses. The officer advises the man he must establish a right to be in the building or leave the location. The man complies by leaving the location. A *Field Report* was prepared, an *Activity Log* entry was made, and no further action was needed."

(Steinberg Ex. 3 (Lesson Plan) at 11, Ex. 5 (PowerPoint) at NYCE00016583.)

22. According to the Lesson Plan, the encounter described in Paragraph 21 above is a "Level 1: Request for Information." (Steinberg Ex. 3 (Lesson Plan) at 11, Ex. 5 (PowerPoint) at NYCE00016585.) There is no reasonable suspicion or probable cause that a crime has been or is being committed during this encounter. (Steinberg Ex. 3 (Lesson Plan) at 11, Ex. 5 (PowerPoint) at NYCE00016585.)

23. The Lesson Plan provides a situation with the same facts as Paragraph 21 above, "except the man refuses to leave the building, tells the officer he is going nowhere, and remains in the lobby. The officer arrests the man for criminal trespass and prepares all required paperwork." (Steinberg Ex. 3 (Lesson Plan) at 11, Ex. 5 (PowerPoint) at NYCE00016586.)

24. According to the Lesson Plan, the arrest described in Paragraph 23 above is appropriate because "[w]hen the man did not promptly establish a right to be in the building or leave the location[,] the officer had **Probable Cause** to arrest for criminal trespass." (Steinberg Ex. 3 (Lesson Plan) at 11, Ex. 5 (PowerPoint) at NYCE00016588.)

25. The Lesson Plan describes an encounter with the same facts as Paragraph 23 above, "except when the officer returns to the stationhouse[,] she notices that the man's identification shows that he was in fact a resident of the building. The officer should follow appropriate police procedures to void the arrest pursuant to P.G. 210-13 ("Release of Prisoners")." (Steinberg Ex. 3 (Lesson Plan) at 11, Ex. 5 (PowerPoint) at NYCE00016589-90.)

26. Pursuant to NYPD policy, a person is subject to arrest for trespassing if he or she refuses to establish a right to be in the NYCHA building and refuses to leave the NYCHA building as requested by an NYPD officer, even if there was no reasonable suspicion or probable cause that the person was trespassing when he or she was asked to leave. The basis for the arrest is "failure to comply with an order communicated by a Housing Bureau police officer to leave the building, which is a section of the Penal Law which permits [the NYPD] to act as an agent of the Housing Authority to instruct individuals to leave the property." (Steinberg Ex. 4 (Anderson Tr.) at 310:8-311:22.)

Dated: New York, New York
December 14, 2012

NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.

By: s/ Johanna Steinberg

Debo P. Adegbile
Christina Swarns
Johanna B. Steinberg
Jin Hee Lee
Johnathan J. Smith
Ria A. Tabacco
99 Hudson Street, Suite 1600
New York, New York 10013-2897
Tel: 212.965.2200
Fax: 212.219.2052
jsteinberg@naacpldf.org

THE LEGAL AID SOCIETY
Steven Banks
William Gibney
Steven Wasserman
Nancy Rosenbloom
Marlen S. Bodden
199 Water Street, 6th Floor
New York, New York 10038
Tel: 212.577.3300
Fax: 212.509.8141
nrosenbloom@legal-aid.org

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Katharine E.G. Brooker
Matthew Moses
1285 Avenue of the Americas
New York, New York 10019
Tel: 212.373.3000
Fax: 212.492.0139
kbrooker@paulweiss.com

*Attorneys for Plaintiffs*