UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
KELTON DAVIS, WILLIAM TURNER,
EDWIN LARREGUI, ANTHONY
ANDERSON, SHAWNE JONES, HECTOR
SUAREZ, ADAM COOPER, DAVID
WILSON, GENEVA WILSON, ELEANOR
BRITT, ROMAN JACKSON, KRISTIN
JOHNSON, LASHAUN SMITH, ANDREW
WASHINGTON, PATRICK LITTLEJOHN,
RAYMOND OSORIO, VAUGHN
FREDERICK, and R.E., by her parent D.E.,
individually and on behalf of a class of all
others similarly situated,

**OPINION & ORDER**

**10 Civ. 0699 (SAS)**

Plaintiffs,

- against -

THE CITY OF NEW YORK and NEW
YORK CITY HOUSING AUTHORITY,

Defendants.
-------------------------------------------------------X



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

On March 28, 2013, this Court issued the second part of its ruling on

the parties' motions for summary judgment.[1]  The March 28 Opinion noted that

---

[1]     *See Davis v. City of New York*, No. 10 Civ. 0699, 2013 WL 1288176
(S.D.N.Y. Mar. 28, 2013).  The procedural background and facts of the case have
been laid out in previous opinions, and familiarity with them is assumed.  *See, e.g.*,
*id.* at *1–4.

1

plaintiffs had offered "[a] sample of decline to prosecute forms ['DP forms'] from various District Attorney's offices" in support of "the conclusion that the City has a persistent and widespread practice of performing unconstitutional trespass stops and arrests in NYCHA buildings."[2]  Defendant the City of New York argued in a reply brief that the DP forms are inadmissible hearsay.[3]  I invited further briefing, which has now been submitted.[4]

In *Ligon v. City of New York*, another case related to the NYPD's stop and frisk practices, I allowed the admission of DP forms describing stops outside TAP buildings as evidence of the NYPD's stop practices.  Unlike in this case, however, the City had conceded the admissibility of the records for that limited purpose.[5]

I have already ruled in this case that DP forms are admissible for the

---

[2]     *Id.* at *12.

[3]     *See id.*

[4]     *See* 4/17/13 Letter from Johnathan J. Smith, Counsel for Plaintiffs, to the Court ("Pl. Letter"); 4/24/13 Letter from Judson Vickers, Counsel for Defendant City of New York, to the Court ("City Letter").

[5]     *See Davis*, 2013 WL 1288176, at *12 (citing *Ligon v. City of New York*, — F. Supp. 2d —, No. 12 Civ. 2274, 2013 WL 628534, at *7–8 (S.D.N.Y. Feb. 14, 2013)).

purpose of showing notice to the City of allegedly unconstitutional practices.[6]  At issue now is plaintiffs' request to use the DP forms as evidence in support of their class certification motion.[7]  Plaintiffs have also indicated that they might attempt to use the DP forms as evidence of the City's stop and arrest practices at trial.[8]  In both instances, plaintiffs seek to use the narratives in the DP forms for the truth of the matters asserted — that is, as evidence that the stops and arrests described on the forms took place as the forms state.  Plaintiffs have not provided a precise count of the number of DP forms they might seek to admit, but the number may be as high as seventy-six.[9]

For the reasons set forth below, the DP forms are admissible subject to the limitations described below.

---

[6]      *See* Transcript of 4/5/13 Conference ("4/5/13 Tr.") at 13.  (All subsequent references to transcripts in this case will follow a similar format.)  Indeed, the City has emphasized that the "NYPD takes decline to prosecutes very seriously.  They track it, they retrain officers as a result of it."  2/17/12 Tr. at 32.  Specifically, the City tracks prosecution declinations through a system called "OLPA."  *See* 1/7/13 Declaration of Katharine E.G. Brooker, Counsel for Plaintiffs ("Brooker Decl.") ¶ 2.

[7]      *See* 4/5/13 Tr. at 12, 14.

[8]      *See* City Letter at 4 (citing 2/17/12 Tr. at 44; 11/2/11 Tr. at 29).

[9]      *See* Brooker Decl. ¶¶ 9–14, 16–18, 20–21.  There may be some overlap between the DP forms summarized in these paragraphs, in which case the total count of DP forms that plaintiffs seek to admit would be lower.

3

## II.    BACKGROUND

Plaintiffs served the District Attorneys' Offices ("DAOs") of Bronx, Queens, Kings (Brooklyn), New York (Manhattan), and Richmond (Staten Island) Counties with subpoenas requesting information concerning trespass arrests charged under New York Penal Law §§ 140.05, 140.10(a), (e), or (f), and 140.15, that the DAOs declined to prosecute.[10]   Pursuant to this Court's orders, the DAOs of Bronx, Kings, New York, and Queens Counties produced a sample of 1,177 DP forms from selected months in the years 2008 to 2012.[11]   Plaintiffs have stated that three hundred and six (or twenty-six percent) of these DP forms reflect arrests for trespass on property owned and operated by NYCHA, as indicated by the DAOs.[12] This total does not include any DP forms from the Queens DAO, which has a database that cannot distinguish between NYCHA and non-NYCHA trespass arrests.[13]   I have also ruled that only forms reflecting pre-arraignment dismissals

---

[10]    *See* Brooker Decl. ¶ 5.  For a discussion of some of these trespass laws in relation to this case, see *Davis*, 2013 WL 1288176, at *8 n.85, *10 n.104.

[11]    *See* Pl. Letter at 1–2; Brooker Decl. ¶ 5 & n.1.  Richmond County was excluded from the sample because it apparently does not record declined prosecutions on forms that could feasibly be produced.  *See* Pl. Letter at 1 n.1; City Letter at 1 n.1.

[12]    *See* Brooker Decl. ¶ 6.

[13]    *See id.* ¶¶ 6 (306 total), 8 (64 from New York County), 15 (42 from Kings County), 19 (200 from Bronx County); 11/2/11 Tr. at 37.

4

are relevant, due to the difficulty of categorizing post-arraignment dismissals.[14]

The record contains descriptions of how DP forms are prepared in each of the remaining three counties (Bronx, Kings, and New York). In general, it appears that the process begins in the hours or days after the arrest when an Assistant District Attorney ("ADA") interviews the arresting officer and learns of the basis for the arrest.[15] If the ADA decides to decline prosecution prior to the docketing of the case, either the ADA or another trained DAO employee will prepare a DP form.[16] Each DAO uses a different DP form,[17] but all of the forms

---

[14]    *See* 2/17/12 Tr. at 6–7; City Letter at 1 n.1.

[15]    *See, e.g.*, 2/7/12 Tr. at 33 (statement by City that DP forms contain "the district attorney's characterization of the conversation with the arresting officer"). A representative of the Bronx DAO stated that a common reason for pre-arraignment prosecution declinations is that "the police officer failed to appear." 10/13/11 Tr. at 6. Each of the sample DP forms submitted by plaintiffs, however, begins with a statement of what the arresting officer observed. *See* Exs. A–G to Brooker Decl. One of the DP forms also refers to information contained in a Criminal Trespass Fact Sheet. *See* Ex. F to Brooker Decl.

[16]    The practice appears to vary by county and by the type of case. New York County ADA Sarah Hines stated that the majority of cases in Manhattan are screened before arraignment by ADAs, although there is also an "expedited affidavit program" in which "a certain number" of cases are screened by paralegals or other non-attorneys. 8/1/11 Tr. at 21. As part of the New York County DAO's arguments against extensive discovery of DP forms, ADA Hines later described the preparation of DP forms as follows:

> The people who input the reasons are not attorneys. They are people who in one case sit in the arraignment part, listen to what happens, obtain a copy of the handwritten annotated court

feature a narrative describing the basic facts of the arrest and why the DAO chose to decline prosecution.[18]  Plaintiffs state that every DP form at issue in this case has been reviewed and approved by a supervising ADA.[19]

Plaintiffs provided seven sample DP forms as exhibits in support of plaintiffs' opposition to the City's and NYCHA's partial summary judgment motions.[20]  The narratives in the forms read as follows:

calendar after the end of arraignments, and input reasons on that basis to the best of their interpretation.  If there is more than one reason for the dismissal, they may cite only one.  Once in a while they may cite a reason that is not an accurate reason or an incomplete reason.

11/2/11 Tr. at 4.  Kings County ADA Phyllis Mintz stated that in Brooklyn, the DAO reviews cases that involve desk appearance tickets, although in some other cases, "the entire evaluation is done by the police on an expedited basis."  7/20/11 Tr. at 33.  Bronx County ADA Mary Jo L. Blanchard stated that in Bronx County, the ADA prepares the DP form.  See 7/20/11 Tr. at 17.  The City represents, however, based on the ongoing discovery in *Ligon v. City of New York*, No. 12 Civ. 2274 (S.D.N.Y.), that in the Bronx prior to mid-2012, if a police officer submitted a supporting declaration, an aide or paralegal would review the paperwork before bringing the matter to the attention of an ADA, who often would not speak with the officer.  See City Letter at 5 n.6.

[17]     *See* Brooker Decl. ¶ 7.

[18]     *See, e.g.*, Exs. A (New York County DP form), E (Kings County DP form), G (Bronx County DP form) to Brooker Decl.

[19]     *See* Pl. Letter at 5 (citing, as examples, Exs. A–G to Brooker Decl.); *id.* at 7.

[20]     *See* Exs. A–G to Brooker Decl.

A. From the New York County DAO: "[redacted] This individual was observed entering and exiting a New York City Housing Authority building. Based on this information, the individual was stopped and questioned. [redacted], the Manhattan District Attorney's Office declines to prosecute this case."

B. From the New York County DAO: "In this case, the arresting officer observed [redacted], a building tenant, and several separately-charged defendants on the roof of a New York City Housing Authority building and arrested [redacted] for Criminal Trespass. However, [redacted] was an invited guest of said tenant, and there are no signs posted before the roof that say that invited guests, tenants and others cannot be on the roof. Accordingly, [redacted] did not have prior notice that being on the roof was unlawful, the People decline to prosecute this case."

C. From the New York County DAO: "In this case, [redacted] was observed inside the lobby of a New York Housing Authority building, a dwelling where people reside. When the arresting officer stopped [redacted] and asked him why he was inside said building, [redacted] responded in substance, 'I was there to see [redacted].' Afterwards, the arresting officer did not further question [redacted] or make any further investigations as to whether [redacted] was an invited guest of a tenant or a tenant of said building, and [redacted] did not make any statements indicating thereof. [redacted]"

D. From the New York County DAO: "[redacted] The defendant in this case was observed entering a New York City Housing Authority Building and attempting to exit the building a short time later. Based on these observations, the arresting officer questioned the defendant. The defendant informed the arresting officer that he went to apartment 4F to see if his girlfriend was inside that apartment and that a guy named Frank lives in 4F. The

7

arresting officer went to apartment 4F and spoke to Frank, who informed the officer that he knew the defendant and that the defendant had just been at his apartment looking for a videotape. Based on the inconsistency between Frank and the defendant's story, the defendant was placed under arrest for trespass. [redacted], the People decline to prosecute this case."

E.   From the Kings County DAO: "AO OBSERVED DEF SEATED IN THE STAIRWELL OF THE ABOVE LOCATION. DEF STATED HE WAS VISITING [redacted]. AO ARRESTED DEF[.] AO NEVER CHECKED IF [redacted] LIVED AT THE LOCATION."

F.   From the Kings County DAO: "SGT. CAMPBELL OBSERVED DEFENDANT IN THE ABOVE LOCATION, A NEW YORK CITY HOUSING AUTHORITY BUILDING. DEFENDANT DID NOT RESPOND WHEN ASKED IF DEFENDANT LIVES IN THE BUILDING AND WHETHER DEFENDANT WAS VISITING SOMEONE IN THE LOCATION (SEE CRIMINAL TRESPASS FACT SHEET)."

G.   From the Bronx County DAO: "Arresting Officer observed the defendant enter and exit the lobby of 1720 WATSON AVENUE. Arresting Officer asked defendant what was his purpose inside of said building to which defendant stated in sum and substance HE WAS HERE TO VISIT [redacted] IN [redacted]. Arresting Officer arrested defendant and defendant was charged with the criminal offense of Criminal Trespass. However, Arresting Officer failed to ask defendant [redacted] what are you doing in the building or what is your purpose in the building; do you know anyone in the building; if so what is the person's name and apartment number. [redacted] Arresting Officer failed to verify with a superintendent or review the tenant roster to ensure that no one by the name provided lives in said apartment. [redacted] the People are dismissing the

8

charges."

## III.   APPLICABLE LAW

"Under the Federal Rules of Evidence, relevant evidence — that is, evidence that has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable' is 'generally admissible.'"[21]  This presumption of admissibility, however, "is subject to many exceptions."[22]  One exception is for hearsay:

> The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.' Fed. R. Evid. 801(c). Hearsay is admissible only if it falls within an enumerated exception. *Id.* 802. However, '[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.' *Id.* 801(c) advisory committee's note. Thus, a statement offered to show its effect on the listener is not hearsay.[23]

Under Rule 801(d)(2)(A), an opposing party's statement is not hearsay if the statement is offered against the party and falls under any of five enumerated categories, including statements "made by the party in an individual or representative capacity."  In addition, under Rule 805, "[h]earsay within hearsay is

---

[21]     *Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010) (quoting Fed. R. Evid. 401, 402).

[22]     *Id.*

[23]     *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013).

not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."

In general, "[t]he rules on hearsay should be read to exclude unreliable hearsay but to admit reliable hearsay.  Such reliable hearsay has, of course, the effect of promoting the truth-seeking function of a . . . trial and, therefore, ought to be presented to the finders of facts."[24]  Two enumerated exceptions to the rule against hearsay are particularly relevant in this case.  *First*, under Rule 803(6), which is sometimes referred to as the "business records hearsay exception,"[25] a record of a regularly conducted activity is not excluded by the rule against hearsay if:

> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

---

[24]   *United States v. Carneglia*, 256 F.R.D. 384, 392 (E.D.N.Y. 2009) (Weinstein, J.) (citing *In re Drake*, 786 F. Supp. 229, 234–35 (E.D.N.Y. 1992)) (quotations and alterations omitted).

[25]   *Id.* at 391.

"Rule 803(6) favors the admission of evidence rather than its exclusion if it has

any probative value at all."[26]

> *Second*, under Rule 803(8), the "public records exception," a record or

statement of a public office is not excluded by the rule against hearsay if:

> (A) it sets out:
>> (i) the office's activities;
>> (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
>> (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>
> (B) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Beyond the formal requirements in Rules 803(6) and 803(8)(A)(iii), courts have

interpreted the regularly kept records exception and the public records exception as

addressing different types of documents.  On the one hand, the standard example of

a public record containing factual findings from a legally authorized investigation

under Rule 803(8)(A)(iii) is an in-depth investigative report.[27]  On the other hand,

---

[26]   *Id.* (citing *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (upholding district court's admission of cash advance receipt) (quotation marks omitted)).

[27]   *See generally* 5 JOSEPH M. MCLAUGHLIN, WEINSTEIN'S FEDERAL EVIDENCE § 803.10 (2d ed. 2012) (collecting cases regarding Rule 803(8)); *id.* § 803.10[1] n.5 (citing, as examples of admissible factual findings from a legally authorized investigation, *Davignon v. Hodgson*, 524 F.3d 91, 112–13 (1st Cir. 2008) (state labor commission's decision regarding alleged labor violations by

the standard example of a record of a regularly conducted activity under Rule

803(6) is a brief record of regularly recorded information, such as a note in a memo

book or ledger, or data in an inventory.[28]

In addition, "[s]hould the court find that a hearsay statement is

admissible under an exception, it must still perform the balancing test applicable to

all relevant evidence under Rule 403.  '[E]vidence may be excluded if its probative

value is substantially outweighed by the danger of unfair prejudice, confusion of

the issues, or misleading the jury, or by considerations of undue delay, waste of

time, or needless presentation of cumulative evidence.'"[29]

---

sheriff); *Goodman v. Pennsylvania Turnpike Comm'n*, 293 F.3d 655, 669 n.10 (3d
Cir. 2002) (legislative budget and finance committee report); *Hill v. Marshall*, 962
F.2d 1209, 1215 n.2 (6th Cir. 1992) (report by prison inspection committee);
*Gilbrook v. City of Westminster*, 177 F.3d 839, 858–59 (9th Cir. 1999) (finance
review committee report with recommendations)).  By contrast, the Fourth Circuit
held raw interview transcripts to be inadmissible under the public records
exception, "since they are not findings resulting from any type of evaluative
process whatsoever."  *United States v. D'Anjou*, 16 F.3d 604, 610 (4th Cir. 1994).

[28]     *See generally* 5 WEINSTEIN'S FEDERAL EVIDENCE § 803.08 (collecting
cases regarding Rule 803(6)); *id.* § 803.08[2] n.5 (citing *United States v. Loney*,
959 F.2d 1332, 1340–41 (5th Cir. 1992) (airline account data); *Radloff v. City of
Oelwein, Iowa*, 380 F.3d 344, 349 (8th Cir. 2004) (police activity log); *United
States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) (ledgers containing entries by
drug organization); *United States v. Huber*, 772 F.2d 585, 591 n.4 (9th Cir. 1985)
(inventory of stolen firearms)); *id.* § 803.08[5] n.28 (citing *Malek v. Federal Ins.
Co.*, 994 F.2d 49, 53 (2d Cir. 1993) (social worker's case notes); *United States v.
Console*, 13 F.3d 641, 656–58 (3d Cir. 1993) (accident book)).

[29]     *Carneglia*, 256 F.R.D. at 392 (quoting Fed. R. Evid. 403).

Finally, neither expert nor lay witnesses may "'present testimony in the form of legal conclusions.'"[30]  The risk of such testimony is twofold.[31]  On the one hand, if the testimony contains a legal conclusion related to the outcome of the case, the testimony may usurp the role of the jury:  "Such testimony 'undertakes to tell the jury what result to reach, and thus attempts to substitute the [witness's] judgment for the jury's.'"[32]  On the other hand, if the testimony contains a statement of what the law is, the testimony may usurp the role of the judge:  "Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury."[33]  The Federal Rules of Evidence do not explicitly require the exclusion of testimony expressing legal conclusions.  Rather, the general need for exclusion is

---

[30]     *Cameron*, 598 F.3d at 62 & n.5 (quoting *United States v. Articles of Banned Hazardous Substances Consisting of an Undetermined Number of Cans of Rainbow Foam Paint*, 34 F.3d 91, 96 (2d Cir. 1994)).  "The cases laying out this rule have focused on *expert* witnesses.  But the impropriety of allowing a lay witness to testify in the form of a legal conclusion is all the clearer."  *Id.* at 62 n.5.  In addition, "'a [lay] witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge.'"  *Id.* (quoting Fed. R. Evid. 701 Advisory Committee Note (2000)).

[31]     *See Hygh v. Jacobs*, 961 F.2d 359, 363–64 (2d Cir. 1992).

[32]     *Cameron*, 598 F.3d at 62 (quoting *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005)).

[33]     *Hygh*, 961 F.2d at 364.

13

implied by Rule 701, which defines the appropriate scope of opinion testimony by lay witnesses; Rule 702, which does the same for expert testimony; the advisory committee's note to Rule 704, which clarifies Rule 704's abolition of the common law exclusion of testimony embracing "an ultimate issue to be decided by the trier of fact"; and the general balancing test under Rule 403.[34]

## IV.    DISCUSSION

### A.    Levels of Hearsay

Whether the DP forms at issue in this Opinion constitute inadmissible hearsay depends on the details of each form's preparation, the contents of its narrative, and the purposes for which plaintiffs intend to use it.  In light of the parties' submissions, including the sample DP forms submitted by plaintiffs,[35] I make the following findings.  *First*, DP forms are prepared either by the ADA herself or by a DAO employee, based on the ADA's stated explanation for declining to prosecute, including a brief summary of the arrest.  *Second*, the ADA's decision to decline prosecution is based on information provided by the arresting officer, typically through an interview, and sometimes through documents.  *Third*,

---

[34]    *See id.* at 363–64.

[35]    *See* Exs. A–G to Brooker Decl.

supervising ADAs have reviewed and endorsed the contents of each DP form.[36]

Thus, at least some of the DP forms that plaintiffs wish to introduce contain triple hearsay: an out-of-court written statement by one declarant (the DAO employee) summarizing out-of-court statements by another declarant (the ADA) summarizing out-of-court statements by a third declarant (the arresting officer). In order for the DP forms to be admissible as evidence that trespass stops and arrests took place as described in the narratives, the DAO employee's writing, the ADA's summary, and the arresting officer's statements must each conform with an exception to the rule against hearsay.[37]

## B. Arresting Officer's Statements

---

[36]   For a summary of the ways in which DP forms are prepared, see *supra* Part II.

[37]   *See* Fed. R. Evid. 805. Although plaintiffs make no explicit statement on this issue, I assume that plaintiffs do not seek to introduce for the truth of the matter asserted any statements *within* the arrest narratives made by arrestees or witnesses. For example, one narrative includes the following: "When the arresting officer stopped [the suspect] and asked him why he was inside said building, [the suspect] responded in substance, 'I was there to see [redacted].'" *See* Ex. C to Brooker Decl. It is irrelevant to plaintiffs' claim whether the arrestee in this narrative was *in fact* there to see the named person: only what the officer knew or should have known at the time is relevant to the inquiry into probable cause. Thus, I assume that plaintiffs offer statements such as the arrestee's statement here solely for their effect on the arresting officer. Because "a statement offered to show its effect on the listener is not hearsay," *Dupree*, 706 F.3d at 136 (citing Fed. R. Evid. 801(c) Advisory Committee Note), statements by arrestees and witnesses in the DP form narratives are not hearsay, and are admissible.

15

With regard to the arresting officer's statements to the ADA, Rule 801(d)(2) provides an exception to the rule against hearsay for statements made by an opposing party and offered against that party. Because plaintiffs offer the DP forms against the City, and the arresting officers providing information to the ADAs are acting within the scope of their employment by the City, the arresting officers' statements are admissible as party-opponent admissions under Rule 801(d)(2).

### C.   DAO Employee's Writing and ADA's Summary

If a DP form has been prepared not by the ADA who made the declination decision but by another DAO employee, then the DAO employee's written record of the ADA's statements is double hearsay, because both the DAO employee and the ADA are out-of-court declarants. Yet even in that scenario, the double hearsay is admissible under a single rule — Rule 803(6), which provides an exception to the rule against hearsay for records of a regularly conducted activity.[38]

---

[38]   Plaintiffs argue for the admissibility of the DP forms based on the public records exception under Rule 803(8)(A)(iii), the residual hearsay exception under Rule 807, or, in the alternative, the regularly kept records exception under Rule 803(6). *See* Pl. Letter at 3, 6, 7 n.7. This Opinion analyzes the admissibility of the arrest narratives on the DP forms based on Rule 803(6) rather than Rule 803(8)(A)(iii), because the latter exception is more appropriate for lengthier reports based on more thorough investigations. For examples of such reports, see the note above collecting cases from 5 WEINSTEIN'S FEDERAL EVIDENCE § 803.10[1] n.5. By contrast, the arrest narratives on the DP forms are very brief and almost purely factual, like many of the other brief records commonly admitted under Rule

*First*, the DAO employee's writing is a record of an event: the ADA's interview with the arresting officer. The record was made shortly after the interview "from information transmitted by" the ADA, who is "someone with knowledge" of the interview.[39] *Second*, the ADA's interview with the arresting officer is part of the regularly conducted DAO procedure for determining whether to proceed with a prosecution. *Third*, the DAO employee's preparation of a written record of the ADA's decision to decline prosecution is also a regular part of that procedure. *Fourth*, these conditions were shown by representations made to the Court by several ADAs, as described earlier.[40]

---

803(6). *See generally* 5 WEINSTEIN'S FEDERAL EVIDENCE § 803.08 (collecting cases).

[39]     Fed. R. Evid. 803(6)(A).

[40]     Rule 803(6)(D) requires "the *testimony* of the custodian or another qualified witness." (Emphasis added.) Plaintiffs have offered to provide "testimony from a qualified witness at the DAOs that the DP Forms: (1) were 'made at or near the time by — or from information transmitted by — someone with knowledge,' (ii) were 'kept in the course of a regularly conducted activity,' and (iii) it was, and continues to be, the regular practice of the DAOs to create DP Forms." Pl. Letter at 7 n.7 (quoting Fed. R. Evid. 803(6)). However, for the purpose of plaintiffs' class certification motion, these propositions have been adequately established by the statements of ADAs to this Court, as summarized in Part II. *See* 5 WEINSTEIN'S FEDERAL EVIDENCE § 803.08[8][c] (collecting cases holding that non-testimonial forms of evidence, such as affidavits and party admissions, can lay the foundation required by Rule 803(6)(D)). I assume that prior to the admission of the DP forms at trial, one or both parties will offer sworn testimony from qualified DAO witnesses regarding how DP forms are prepared, in order to establish or contest the credibility of the forms and the weight to be given

17

*Fifth*, and most importantly, neither the source of the arrest narratives in the DP forms, nor the method or circumstances of those narratives' preparation, indicate a lack of trustworthiness.  While ADA Hines stated that the New York County DAO employees who input the DP form narratives "[o]nce in a while . . . may cite a reason that is not an accurate reason or an incomplete reason,"[41] this statement was offered in the context of the New York County DAO's arguments against further discovery of DP forms.  There is no intrinsic evidence of significant inaccuracy in any of the sample DP forms provided by plaintiffs.  Uncorroborated speculation regarding the possibility of occasional errors is not a sufficient ground for excluding the DAO employees' writings in their entirety.

The trustworthiness of the ADAs' summaries of the information provided by arresting officers is supported by several, mutually reinforcing considerations.  ADAs have expertise in interviewing arresting officers and distilling the most relevant aspects of an arrest narrative.  In addition, ADAs are public officers.  The Federal Rules of Evidence recognize, through Rule 803(8), that records by public officers bear special circumstantial guarantees of trustworthiness.  Rule 803(8) "'is based upon the assumption that public officers

---

to them.

[41]     11/2/11 Tr. at 4.

will perform their duties, that they lack motive to falsify, and that public inspection to which many such records are subject will disclose inaccuracies.'"[42]  While DP forms are not generally available for *public* inspection, they are communicated to the police department, which would have a strong incentive to expose and correct any regularly occurring errors.  It can be assumed that an arresting officer articulates to an ADA the strongest basis for an arrest, and an ADA includes this information in the summary of the arrest.

   In addition, the assumption that ADAs will perform their duties competently and with integrity is especially strong.  The legitimacy and efficient functioning of the criminal justice system depends on the assumption that DAO personnel, and particularly ADAs, display diligence and honesty even in aspects of their work that are protected from public scrutiny.  In light of the central importance of trustworthiness and reliability to the admissibility of hearsay evidence, it is worth emphasizing that DP forms are produced solely by prosecutors' offices, relying on information from police officers.  The forms are the sole record of a weighty decision, whether the prosecutor's office "acting on behalf of all the people" will bring to bear what Chief Justice John Roberts recently referred to as "the sword of justice," used to vindicate the rights of the people

---

[42]    *Bridgeway Corp.*, 201 F.3d at 143 (quoting 31 MICHAEL H. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 6759, at 663–64 (Interim ed. 1992)).

against those who violate the criminal laws.[43]  If the City's argument is not only

that the DAO employee preparing the DP form may occasionally make an error,

but that the ADA's summaries of officer statements are themselves not reliable,

such an argument would imply a challenge to the reliability of the DAOs'

procedures.  I am not persuaded that such a challenge has merit.  In terms of the

four classic hearsay risks,[44] there is no basis for concluding that ADAs are

insincere in expressing their factual findings.  Given the brief interval between an

ADA receiving information from an officer and expressing her factual findings, the

risk of faulty memory is likewise negligible.  ADAs' professional expertise in

summarizing the statements of police officers similarly mitigates any risk of faulty

perception or narration.

　　　　　Notably, even the City acknowledges that the narratives on the DP

---

[43]　　　*See Robertson v. U.S. ex rel. Watson*, 560 U.S. 272, 130 (2010)
(Roberts, J., dissenting).

[44]　　　*See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 232–33 (2d Cir.
1999) (Sotomayor, J.) (listing classic hearsay risks of "(1) insincerity, (2) faulty
perception, (3) faulty memory and (4) faulty narration"); *id.* at 231 (citing *Headley
v. Tilghman*, 53 F.3d 472, 477 (2d Cir. 1995) (referring to classic hearsay "risks of
insincerity, distorted perception, imperfect memory, and ambiguity of utterance");
Edmund M. Morgan, *Hearsay Dangers and Application of the Hearsay Concept*,
62 HARV. L. REV. 177, 185 (1948) (identifying these classic hearsay risks)).

forms "merely summarize information at hand,"[45] rather than offering complicated

analysis or evaluation that might increase the likelihood of errors.  There is also no

evidence that ADAs engage in credibility determinations regarding officers'

statements.  A review of the sample DP forms submitted by plaintiffs suggests, to

the contrary, that the ADAs accept the officers' representations without

reservation, and base the declination decision on those representations.

Finally, the Second Circuit has deemed analogous documents to be

admissible in the past.  In *Malek v. Federal Insurance Company*, the Second

Circuit ruled that a district court abused its discretion in not admitting a social

worker's case notes under the regularly kept records exception.[46]  Just as the DAOs

regularly prepare DP forms in the course of their work, the case notes in *Malek*

---

[45]    City Letter at 2.  One of plaintiffs' sample DP forms contains a
statement that goes beyond a mere summary of the information provided by the
officer.  *See* Ex. B to Brooker Decl. ("Accordingly, . . . did not have prior notice
that being on the roof was unlawful . . . .").  But presumably the social worker's
case notes in *Malek*, 994 F.2d at 53, discussed below, contained similarly
evaluative statements.  Because the Second Circuit ruled in *Malek* that the district
court should have admitted the social worker's case notes under the regularly kept
records exception, the ADAs' evaluative statements in the DP forms are admissible
as well.  I also note that even if these statements were not admissible under the
regularly kept records exception, they would likely fulfill the five requirements for
admissibility under the residual hearsay exception.  *See Schering Corp.*, 189 F.3d
at 231.

[46]    *See Malek*, 994 F.2d at 53, 55.

were "records kept by [a public entity] in the regular course of business."[47]  Just as

the DP forms are created shortly after the ADA's interview of the arresting officer,

the case notes "were made close to the time of the events they recorded."[48]  Based

on the Second Circuit's description of the social worker's case notes, the only

relevant difference between the notes and DP forms is that the former were

prepared singlehandedly by the social worker, while the latter are typed by a DAO

employee based on an ADA's findings and then approved by a supervising ADA.[49]

However, numerous cases have concluded, in line with the language of Rule

803(6)(A), that "the person making the [business record] need not have first-hand

knowledge if the information has been transmitted by someone with knowledge."[50]

### D.    ADA's Decision to Decline Prosecution

Apart from any hearsay concerns, the City argues that the DP forms

must be excluded because "an ADA's assessment of probable cause and[/]or

reasonable suspicion is an inadmissible legal conclusion pursuant to *Cameron v.*

---

[47]    *Id.*

[48]    *Id.*

[49]    *See id.*

[50]    5 WEINSTEIN'S FEDERAL EVIDENCE § 803.08[4] & n.25 (collecting cases).

*City of New York.*"[51]  In *Cameron*, mother and daughter arrestees brought state law and section 1983 claims against two arresting officers based on false arrest and malicious prosecution, as well as claims against the City based on *respondeat superior* liability and supervisory liability under *Monell.*[52]  After a week-long trial, a jury found for the arresting officers and the City on all counts.  The Second Circuit vacated the jury verdict and remanded for a new trial:

> [The] verdict cannot stand . . . because the jury was exposed to a significant amount of erroneously admitted and highly prejudicial testimony.  Two Assistant District Attorneys ("ADAs") and a police lieutenant were allowed to give their opinions . . . on whether probable cause existed to arrest or charge [the arrestees] . . . .  The admission of these statements violated bedrock principles of evidence law that prohibit witnesses . . . from testifying in the form of legal conclusions . . . .[53]

As noted earlier, "witnesses may not 'present testimony in the form of legal conclusions.'"[54]  "Such testimony 'undertakes to tell the jury what result to reach, and thus attempts to substitute the [witness's] judgment for the jury's.'"[55] "'[T]he issue of whether or not probable cause to arrest exists is a legal

---

[51]     City Letter at 3 (citing *Cameron*, 598 F.3d at 67).

[52]     *See Cameron*, 598 F.3d at 54 (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978)).

[53]     *Id.*

[54]     *Id.* at 62 (quoting *Rainbow Foam Paint*, 34 F.3d at 96).

[55]     *Id.* (quoting *Nimely*, 414 F.3d at 397).

determination that is not properly the subject of expert opinion testimony.'"[56] After rejecting the defendants' novel theory that the prosecutors' opinions as to probable cause were admissible to address plaintiffs' malicious prosecution claims, the Second Circuit concluded in *Cameron* that "prosecutors' opinions as to probable cause . . . are irrelevant in virtually all cases involving claims of malicious prosecution."[57]   In addition, the Second Circuit noted that prosecutors' testimony is "subject to the general balancing rule of Rule 403, which provides that 'evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .'"[58]

In this case, while the DAOs have identified as work product and redacted the portions of the DP forms stating the specific reasons for the declinations,[59] it is clear that plaintiffs intend to introduce the forms not only for their factual arrest narratives, but also for the fact that the DAOs chose not to prosecute the arrests described on the forms.[60]   Based on my review of the sample

---

[56]     *Id.* (quoting *Rizzo v. Edison Inc.*, 419 F. Supp. 2d 338, 348 (W.D.N.Y. 2005), *aff'd*, 172 F. App'x 391 (2d Cir. 2006) (summary order)).

[57]     *Id.* at 65.

[58]     *Id.* at 62.

[59]     *See* Exs. A–G to Brooker Decl.; 2/17/12 Tr. at 40 (work product).

[60]     *See* 11/2/11 Tr. at 28–29; 2/17/12 Tr. at 44.

forms, a likely inference to be drawn from many of the forms is that the DAO declined to prosecute because of insufficient evidence.[61]  Thus, the DP forms at the very least *imply* legal conclusions.

On the other hand, the jury will decide what those legal conclusions are.  Unlike in *Cameron*, none of the seven forms submitted to the Court state that an ADA found a lack of probable cause for an arrest.[62]  To the extent that the decision to decline prosecution is not a legal conclusion at all, but rather a procedural act that can be taken on the basis of any number of legal conclusions and non-legal considerations, appropriately admitted DP forms will not necessarily "'tell the jury what result to reach,'" or substitute an ADA's judgment for the jury's.[63]  Because the jury will be free to draw its own inferences based on the

---

[61]     *Cf.* 2/17/12 Tr. at 40–41 (noting based on review of unredacted forms that, in fact, "insufficient evidence" is a common reason for declination).

[62]     *See* Exs. A–G to Brooker Decl.  If other DP forms that plaintiffs wish to introduce state conclusions regarding reasonable suspicion or probable cause — despite the DAOs' redactions of their work product — this language must be redacted before the form will be admissible.

[63]     *Cameron*, 598 F.3d at 54 (quoting *Nimely*, 414 F.3d at 397); *Quinn v. City of New York*, No. 99 Civ. 7068, 2003 WL 1090205, at *4 (E.D.N.Y. Mar. 12, 2003) (Weinstein, J.) ("A prosecutor's declination provides no indication that plaintiff's arrest was without probable cause.").  In addition, there is no risk that admission of the DP forms will usurp the role of the judge in instructing the jury, because the DP forms neither state nor imply a statement of a legal standard.  *Cf. Hygh*, 961 F.2d at 363–64 (noting that expert testimony that expresses a legal conclusion must be excluded in part because it communicates a legal standard to

25

narratives contained in the DP forms and the fact that prosecution was declined, the risk of prejudice, confusion, or misleading the jury is less than in *Cameron*. Nevertheless, because the legal inference to be drawn from the DAO's decision to decline prosecution is often fairly obvious based on the information on the DP forms, I will address the City's objection as though the forms contained an ADA's legal conclusions.

If plaintiffs in this case were seeking to introduce a DP form resulting from the arrest of a named plaintiff in order to show that the arrest lacked probable cause, the DP form would be inadmissible. The same would hold true for a DP form related to any other stop or arrest for which plaintiffs offered the testimony of individual arrestees, witnesses, or officers. But plaintiffs do not seek to use the DP forms to buttress testimony concerning the justification for a stop or arrest. Rather, plaintiffs seek to use the DP forms as a *substitute* for testimony, where offering testimony as to every class member, or even as to every stop described in a DP form,[64] is simply not feasible.

the jury).

[64]   As noted above in Part II, plaintiffs have selected, out of the three hundred and six forms reflecting NYCHA trespass arrests, several dozen forms that are particularly relevant to their claims. I note that plaintiffs' selective use of the forms is unproblematic because plaintiffs do not seek to introduce these forms as a random or representative sample of all the declined prosecutions based on NYCHA trespass arrests. Rather, plaintiffs presumably seek only to establish that the arrests

Unlike *Cameron*, this case is a putative class action, and one of the central issues in the case will be whether the NYPD has an unconstitutional practice of making unjustified NYCHA trespass stops and arrests.  There may be few reliable sources of information regarding this issue.[65]  For example, if, hypothetically, the NYPD conducts numerous unconstitutional trespass stops and arrests in and around NYCHA buildings, as plaintiffs allege; and if — again, hypothetically — the NYPD does not have reliable internal procedures for identifying and tracking unjustified stops and arrests; then the DP forms selected by plaintiffs might be among the only admissible evidence concerning the frequency or pattern of constitutional violations.  To exclude the DP forms, in this hypothetical scenario, might reward the City for being indifferent to the tracking of constitutional violations, and could contribute to a widespread practice of constitutional violations being effectively immunized from judicial review.

No investigator attempting to determine the frequency of unjustified

---

described in the forms took place as described.  In addition, to the extent that plaintiffs' selected forms are admissible, the City is welcome to introduce its own selection of DP forms, provided that doing so would satisfy the requirements of Rules 401 and 403.

[65]     The Second Circuit has recognized the importance of considering whether substitute evidence is available.  *See, e.g.*, *United States v. Durrani*, 835 F.2d 410, 424–26 (2d Cir. 1987) (noting that exclusion of excerpts from report into Iran-Contra affair "was perhaps ill-advised, given the extremely sparse evidence otherwise available to defendant").

stops and arrests would ignore the product of an existing, highly trustworthy system whose purpose is in part to identify unjustified stops and arrests. The DAOs' declination procedures are such a system. To entirely exclude the system's results — rather than admitting those results and subjecting them to vigorous challenge and rebuttal — would be to make the perfect the enemy of the good, contravening the principle that "'[w]hen the choice is between evidence which is less than best and no evidence at all, only clear folly would dictate an across-the-board policy of doing without.'"[66] Such an outcome would hinder rather than help "'the truth-seeking function of the trial process,'"[67] and run contrary to the evidentiary policies and principles embodied in Rules 403, 701, 702, and the advisory committee's note to Rule 704.[68]

Based on the significant differences between the evidentiary circumstances in *Cameron* and in this case, the probative value and lack of practical substitutes for the evidence contained in the DP forms outweighs the risk

---

[66]   *Morgan v. Foretich*, 846 F.2d 941, 943 (4th Cir. 1988) (quoting Fed. R. Evid. art. VIII Advisory Committee Note).

[67]    *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)).

[68]   *See Hygh*, 961 F.2d at 363–64 (citing these sources as basis for the exclusion of testimony expressing legal conclusions).

of prejudice, confusion, or misleading the jury.[69]  The DP forms are admissible as evidence of the NYPD's trespass enforcement practices in and around NYCHA buildings.  Both parties, of course, may subpoena and question the ADAs and other DAO personnel involved in the creation of the DP forms.  Either party may present evidence at trial concerning the strengths and weaknesses of the DP forms, including from ADAs and other DAO personnel involved in the creation of the forms.  The City may attempt, through documentary and testimonial evidence, to rebut the accuracy of any DP form introduced by plaintiffs.  Plaintiffs, on the other hand, must choose between introducing a DP form as evidence of an arrest and offering testimony about that arrest.[70]

## V.    CONCLUSION

For the foregoing reasons, the DP forms are admissible as evidence of the NYPD's trespass enforcement practices in and around NYCHA buildings.  Pursuant to the City's request, plaintiffs are ordered to identify the specific DP forms summarized in plaintiffs' submission.[71]

---

[69]    *See* Fed. R. Evid. 403.

[70]    Wherever plaintiffs offer testimony about an arrest, the admission of the DP form loses its justification.

[71]    *See* City Letter at 2 n.2 (citing Fed. R. Evid. 1006 and related cases).

29

SO ORDERED:

Dated:    New York, New York      SHIRA A. SCHEINDLIN
           May 24, 2013          U.S.D.J.

**Appearances**

**For Plaintiffs:**

Katharine E.G. Brooker, Esq.
Matthew J. Moses, Esq.
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

Debo P. Adegbile, Esq.
Christina Swarns, Esq.
Johanna B. Steinberg, Esq.
Jin Hee Lee, Esq.
Johnathan Smith, Esq.
Ria Tabacco, Esq.
NAACP Legal Defense &
Educational Fund, Inc.
99 Hudson Street, 16th Floor
New York, New York 10013
(212) 965-2200

Steven Banks, Esq.
William D. Gibney, Esq.
Steven Wasserman, Esq.
Nancy Rosenbloom, Esq.
Marlen S. Bodden, Esq.
Legal Aid Society of New York
199 Water Street
New York, New York 10038
(212) 577-3419

**For Defendant City of New York:**

Brenda E. Cooke
Judson Vickers
Wesley Bauman
Lisa Richardson
George Soterakis
Pernell Telfort
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007
(212) 788-0993

**For Defendant NYCHA:**

Steven Jay Rappaport, Esq.
New York City Housing Authority
250 Broadway, 9th Floor
New York, New York 10007
(212) 776-5152

31