UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

KELTON DAVIS, WILLIAM TURNER,
EDWIN LARREGUI, ANTHONY
ANDERSON, SHAWNE JONES, HECTOR
SUAREZ, ADAM COOPER, DAVID
WILSON, GENEVA WILSON, ELEANOR
BRITT, ROMAN JACKSON, KRISTIN
JOHNSON, LASHAUN SMITH, ANDREW
WASHINGTON, PATRICK LITTLEJOHN,
RAYMOND OSORIO, VAUGHN
FREDERICK, and R.E., by her parent D.E.,
individually and on behalf of a class of all
others similarly situated,

**OPINION AND ORDER**

10 Civ. 0699 (SAS)

Plaintiffs,

- against -

THE CITY OF NEW YORK and NEW
YORK CITY HOUSING AUTHORITY,

Defendants.



------------------------------------------------------X

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.   INTRODUCTION

Plaintiffs allege that the New York City Police Department ("NYPD")

uses unlawful stops, searches, and arrests to enforce the prohibition against

trespassing in New York City Housing Authority ("NYCHA") buildings.[1]  This

---

[1]      *See Davis v. City of New York* ("*Davis II*"), No. 10 Civ. 0699, 2013
WL 1288176, at *1 (S.D.N.Y. Mar. 28, 2013).  This case is one of three putative or

Court has granted in part and denied in part the parties' motions for summary

judgment.[2]  Plaintiffs now move for certification of the following class and

subclass:

> *Class:* All African-American and Latino NYCHA residents and/or
> family members, authorized guests or visitors of NYCHA
> residents, who, since January 28, 2007, have been or will be
> unlawfully stopped, seized, questioned, frisked, searched, and/or
> arrested for trespass by New York City Police Department
> ("NYPD") officers in or around NYCHA residences, including on
> the basis of race and/or ethnicity.

> *Resident Subclass:* All members of the class who are authorized
> NYCHA residents.[3]

Because plaintiffs satisfy the legal standard for class certification,

their motion is granted, subject to amendment of the class definition as described

---

certified class actions challenging aspects of the NYPD's "stop and frisk"
practices. *Compare Davis II*, 2013 WL 1288176, at *1, *with Floyd v. City of New
York* ("*Floyd Liability Opin.*"), No. 08 Civ. 1034, 2013 WL 4046209 (S.D.N.Y.
Aug. 12, 2013), *and Ligon v. City of New York*, No. 12 Civ. 2274, 2013 WL
628534 (S.D.N.Y. Feb. 14, 2013).

    [2]    *See Davis II*, 2013 WL 1288176, at *3 (granting in part and denying
in part the parties' motions for summary judgment based on defendants' policies
and practices); *Davis v. City of New York*, No. 10 Civ. 0699, 2013 WL 145584
(S.D.N.Y. Jan. 14, 2013) (denying NYCHA's motion for summary judgment on
two individual plaintiffs' section 1981 claims); *Davis v. City of New York* ("*Davis
I*"), 902 F. Supp. 2d 405, 410 (S.D.N.Y. 2012) (granting in part and denying in part
the parties' motions for summary judgment based on the individual circumstances
of plaintiffs' arrests and tenancies).

    [3]    5/3/13 Memorandum of Law in Support of Plaintiffs' Motion for
Class Certification ("Pl. Mem.") at 2.

below.

## II.    FACTUAL BACKGROUND

At the class certification stage, district courts must engage in a

rigorous analysis of the underlying facts in order to determine whether the

plaintiffs have satisfied the requirements of Rule 23. The following factual

findings, based on a preponderance of the evidence, are made only for the purpose

of adjudicating this motion and will not be binding on the jury at trial.[4]

### A.    Evidence of Unlawful Trespass Enforcement Policies and Practices

The City provides policing services to NYCHA under a 1994

Memorandum of Understanding.  As part of these services, NYPD officers conduct

vertical patrols in NYCHA buildings.  The procedures for conducting vertical

patrols are described in the NYPD's Interim Order 23 of 2010 ("IO 23 of 2010")

and associated training materials.  These materials direct officers to approach and

question individuals in NYCHA buildings without reasonable suspicion of

trespass, and to arrest for trespass those who fail to leave or affirmatively establish

their right to be in a NYCHA residence.[5]

---

[4]      *See In re Initial Pub. Offerings Sec. Litig.* ("*IPO*"), 471 F.3d 24, 41 (2d Cir. 2006).

[5]      *See Davis II*, 2013 WL 1288176, at *7, *20 (discussing Memorandum of Understanding).  For the purposes of class certification, the City "proceeds on

The procedures for conducting trespass enforcement in and around

NYCHA buildings are chosen and implemented through the NYPD's centralized

and hierarchical institutional structure, which regulates officer activity through

_____

the assumption (except where otherwise stated) that the Court's two most-recent summary judgment decisions sufficiently and accurately state and summarize the evidence and law relating to this case." 6/7/13 Defendant City of New York's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Def. Mem.") at 2. The primary factual issue that the City contests in its submission is plaintiffs' characterization of certain anecdotal evidence. *See id.* Because the City for the most part does not contest plaintiffs' characterization of the evidence for the purposes of class certification, this Opinion's summary of the evidence is brief.

I note that New York's Appellate Division, First Department recently clarified the standard under *De Bour* for approaching and questioning an individual in a NYCHA building regarding trespass. *See State v. Johnson*, 2013 NY Slip Op. 05723 (1st Dep't Aug. 27, 2013) (holding that "an individual's desire to avoid contact with police" — as expressed by stopping on the stairs at the sight of officers — does not constitute an objective credible reason to approach and question under *De Bour* Level 1, even in a high-crime or drug-prone location such as the NYCHA building where defendant was stopped). When the officer was asked why he had engaged Johnson in conversation, the officer began to testify: "It is a NYCHA building and we're allowed to ask anybody inside the building—" As the court sustained an objection, the officer interjected, "It is a prone drug [*sic*] location." *Id.*

In another case whose dismissal was recently reversed by the Second Circuit on procedural grounds, the plaintiff alleged that he entered a NYCHA building to visit a friend, eased himself out of his wheelchair, and began to pull his way up a small flight of stairs. Two officers stopped him on suspicion of trespass, allegedly without reasonable suspicion, and then searched his wheelchair, also allegedly without legal basis. He was then arrested in part for trespass, although all charges were later dismissed. *See Askins v. City of New York*, No. 10 Civ. 2230, Slip Op. at 1–4, 8 (S.D.N.Y. Feb. 14, 2012), *rev'd sub nom. Askins v. Doe No. 1*, No. 12 Civ. 0877, 2013 WL 4488698 (2d Cir. Aug. 23, 2013).

4

training, supervision, monitoring, and discipline.[6]  The record evidence at this stage shows that the NYPD's trespass enforcement policies and practices have resulted in thousands of trespass stops that apparently lacked reasonable suspicion,[7] as well as large numbers of apparently unjustified trespass arrests.[8]  Anecdotal evidence suggests that the apparently unlawful stops and arrests display factual similarities resulting from common features of officers' training and supervision.[9]

In addition, individual testimony and the testimony of community leaders confirm that the NYPD's trespass enforcement activities in NYCHA buildings have resulted in a large number of NYCHA residents being impeded in coming and going freely from their homes and having guests.[10]  Finally, plaintiffs'

---

[6]       *See* Pl. Mem. at 4–5 (collecting sources); *Floyd Liability Opin.*, 2013 WL 4046209, at *24–47 (describing institutional evidence of deliberate indifference regarding unconstitutional stops in general); *Floyd v. City of New York* ("*Floyd Class Cert.*"), 283 F.R.D. 153, 162–66 (S.D.N.Y. 2012) (describing centralized and hierarchical structure of NYPD in general).

[7]       *See* Pl. Mem. at 6–7 (collecting statistical evidence).

[8]       *See id.* at 7–8 (collecting evidence from prosecution declinations).

[9]       *See, e.g.*, *Davis v. City of New York*, No. 10 Civ. 0699, 2013 WL 2298165, at *2–3 (S.D.N.Y. May 24, 2013) (quoting decline-to-prosecute forms that appear to describe trespass stops based merely on entering and/or exiting NYCHA buildings); *Davis I*, 902 F. Supp. 2d at 412–13 (description of Raymond Osorio's trespass stop, which appears to have been based merely on his exiting a NYCHA building).

[10]      *See* Pl. Mem. at 8–11 (collecting sources).

5

statistical and anecdotal evidence of racial disparities in enforcement is sufficient for the purposes of class certification.[11]

## III. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 23(a)

Rule 23(a) permits individuals to sue as representatives of an aggrieved class. To be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a), generally referred to as numerosity, commonality, typicality, and adequacy.[12] District courts have broad discretion in deciding whether to certify a proposed class under Rule 23.[13]

---

[11]     *See id.* at 9–10 (collecting statistical evidence); *Davis II*, 2013 WL 1288176, at *16–20 (discussing evidence of racial disparities in NYCHA trespass enforcement); *Davis I*, 902 F. Supp. 2d at 435 (anecdotal evidence); *Floyd Liability Opin.*, 2013 WL 4046209, at *72–75 (concluding that the NYPD's policy of targeting "the right people" for stops in general constitutes a form of indirect racial profiling in violation of the Fourteenth Amendment).

[12]     *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201–02 (2d Cir. 2008). In full, Rule 23(a) reads:

> Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

[13]     *See Parker v. Time Warner Entm't Co. L.P.*, 331 F.3d 13, 28 (2d Cir. 2003).

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate [its] compliance with the Rule — that is, [it] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."[14]  Plaintiffs seeking class certification bear the burden of demonstrating by a preponderance of the evidence that the proposed class meets each of the requirements set forth in Rule 23(a).[15]  When assessing whether plaintiffs have met this burden, courts must take into account "all of the relevant evidence admitted at the class certification stage."[16]  A court may certify a class only after determining that "whatever underlying facts are relevant to a particular Rule 23 requirement have been established."[17]  This rigorous analysis requires examining the facts of the dispute, not merely the pleadings, and it will frequently "entail some overlap with the merits of the plaintiff's underlying claim."[18]

---

[14]     *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original).

[15]     *See Teamsters*, 546 F.3d at 202.

[16]     *IPO*, 471 F.3d at 42.

[17]     *Id.* at 41.

[18]     *Wal-Mart*, 131 S. Ct. at 2551.  "Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g.*, jurisdiction and venue, is a familiar feature of litigation."  *Id.* at 2552.

At the class certification stage, "a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement."[19]  The court's "determination as to a Rule 23 requirement is made only for purposes of class certification and is not binding on the trier of facts, even if that trier is the class certification judge."[20]

### 1.    Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  In the Second Circuit, sufficient numerosity can be presumed at a level of forty members or more.[21]  "The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible — only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."[22]  Courts do not require "evidence of exact class size

---

[19]    *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (quotation marks and citation omitted).  Courts must ensure "that a class certification motion does not become a pretext for a partial trial of the merits." *IPO*, 471 F.3d at 41.

[20]    *IPO*, 471 F.3d at 41.

[21]    *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (holding that "numerosity is presumed at a level of 40 members").

[22]    *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244–45 (2d Cir. 2007).

or identity of class members to satisfy the numerosity requirement."[23]

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality thus requires plaintiffs "to demonstrate that the class members 'have suffered the same injury.'"[24] Commonality further requires that the claims asserted "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[25]

### 3. Typicality

"Typicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events[] and each class member makes similar legal arguments to prove the defendant's liability.'"[26] The typicality requirement may be

---

[23]     *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

[24]     *Wal-Mart*, 131 S. Ct. at 2551 (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

[25]     *Id.*

[26]     *Central States*, 504 F.3d at 245 (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).

satisfied where "injuries derive from a unitary course of conduct by a single system."[27]

The purpose of typicality is to ensure that class representatives "have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions."[28]  A lack of typicality may be found in cases where the named plaintiff "was not harmed by the [conduct] he alleges to have injured the class"[29] or the named plaintiff's claim is subject to "specific factual defenses" atypical of the class.[30]

### 4.    Adequacy

"Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members."[31]  Thus, the question of adequacy "entails inquiry as to whether: 1) plaintiffs' interests are antagonistic to

---

[27]    *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

[28]    *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 510 (S.D.N.Y. 1996).

[29]    *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 64 (S.D.N.Y. 2006).

[30]    *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006).

[31]    *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

the interest of other members of the class and 2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation."[32]  In order to defeat a motion for certification, any conflicts between the class representative and members of the putative class must be "fundamental."[33]

### 5.    Implied Requirement of Ascertainability

Some courts have added an "implied requirement of ascertainability"[34] to the express requirements of Rule 23(a).  These courts have refused to certify a class "unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."[35]  However, where the primary relief sought is injunctive rather than compensatory, as here, "it is not clear that the implied requirement of definiteness should apply to Rule 23(b)(2) class actions at all."[36]

### B.    Federal Rule of Civil Procedure 23(b)(2)

---

[32]    *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

[33]    *In re Flag Telecom Holdings*, *Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

[34]    *IPO*, 471 F.3d at 30.

[35]    *Casale v. Kelly*, 257 F.R.D. 396, 406 (S.D.N.Y. 2009).

[36]    WILLIAM B. RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS § 3:7 at 1-172 (2011).

If the requirements of Rule 23(a) are met, the court "must next determine whether the class can be maintained under any one of the three subdivisions of Rule 23(b)."[37]  Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(2) ("Rule 23(b)(2)").  To certify a class under Rule 23(b)(2), plaintiffs must show that defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  As the Supreme Court explained in *Wal-Mart*, Rule 23(b)(2) is intended to cover cases such as this one:

> When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident.[38]

"[C]laims for individualized monetary damages preclude class certification under Rule 23(b)(2)" unless the claims are "merely 'incidental' to the requested declaratory or injunctive relief."[39]

---

[37]   *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008).

[38]   131 S. Ct. at 2558.  *Accord Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of Rule 23(b)(2) class actions).

[39]   *Nationwide Life Ins. Co. v. Haddock*, 460 Fed. App'x 26, 29 (2d Cir. 2012) (quoting *Wal-Mart*, 131 S. Ct. at 2557–60).

C.   **The *Galvan* Doctrine**

Under the doctrine established by the Second Circuit's decision in *Galvan v. Levine*, certification of a Rule 23(b)(2) class is unnecessary when "prospective relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment."[40]

IV.   **DISCUSSION**

A.   **Claims Against the City**

1.   **Plaintiffs Satisfy the Four Prerequisites of Rule 23(a)**

The City's argument against class certification focuses almost entirely on the issue of commonality.[41]  I address that issue first, then turn to the remaining three prerequisites for class certification under Rule 23(a).

a.   **Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  This requires plaintiffs "to demonstrate that the class members 'have

---

[40]   *Berger v. Heckler*, 771 F.2d 1556, 1566 (2d Cir. 1985) (citing *Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973) (Friendly, J.) (affirming denial of certification of a 23(b)(2) class after the government "withdrew the challenged policy" and "stated it did not intend to reinstate the policy")).

[41]   *See* Pl. Mem. at 8–19.

suffered the same injury.'"[42]  In *Wal-Mart*, plaintiffs sought to certify a class of approximately 1.5 million female employees of the retail giant, alleging that "the discretion exercised by their local supervisors over pay and promotion violates Title VII by discriminating against women."[43]  The Supreme Court found that the plaintiffs had failed to satisfy commonality because the putative class members were subjected to an enormous array of *different* employment practices:  "Other than the bare existence of delegated discretion, respondents have identified no 'specific employment practice' — much less one that ties all their 1.5 million claims together."[44]

In granting certification to the putative class in *Floyd*, I emphasized the contrasts between the legal issues and evidence in that case and in *Wal-Mart*. Plaintiffs in *Floyd* were stopped and frisked pursuant to policies and practices that were generated from a centralized source and implemented through a hierarchical supervisory structure:

> Precinct commanders are not given leeway to conduct stops and frisks if, when, and how they choose; instead, they are required to use the tactic as a central part of the Department's pro-active policing strategy.  They are required to monitor, document, and

---

[42]    *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157).

[43]    *Id.* at 2547.

[44]    *Id.* at 2555.

report their stop and frisk activity to headquarters using a uniform system; all officers are subject to centralized stop and frisk training; performance standards are obligatory and a recognized part of productivity evaluations in all precincts.[45]

In addition, I noted that plaintiffs' documentary and testimonial evidence of unconstitutional stops and frisks was far more extensive than the proof of discrimination rejected in *Wal-Mart*.[46]

      The analysis that led to class certification in *Floyd* applies even more strongly here. Because *Floyd* dealt with stops, frisks, and searches of pedestrians in general, it involved a broader range of factual scenarios, policies, and customs than are at issue in this case, which is solely concerned with the NYPD's trespass enforcement activities in and around NYCHA buildings. While the City in *Floyd* resisted the notion that stop and frisk could be described as a "program,"[47] the City does not and could not dispute that the NYPD has a specific, uniform program of trespass enforcement in and around NYCHA buildings. The NYPD has a written policy, IO 23 of 2010, that specifies how officers are to conduct patrols in NYCHA

---

[45]    *Floyd Class Cert.*, 283 F.R.D. at 173–74.

[46]    *See id.* at 174 n.137.

[47]    *See, e.g.*, 12/20/11 Defendant City of New York's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, *Floyd v. City of New York*, No. 08 Civ. 1034, at 24 (stating that the NYPD's use of stop and frisk is not "a specific police interdiction program with rules and procedures").

buildings, with particular emphasis on the procedures for stopping and arresting trespassers.[48]  This policy is embedded in a web of other policies and practices for training, supervising, monitoring, and disciplining officers who conduct trespass enforcement in and around NYCHA buildings.[49]  Unlike the delegation of discretion in *Wal-Mart*, these policies and practices are promulgated by senior officials and determine the specific ways in which officers perform NYCHA trespass enforcement.

Moreover, because plaintiffs' putative class is limited to residents or authorized visitors who have been unlawfully subject to enforcement activities *for trespassing* in or around NYCHA residences, the class is not overly broad.  If plaintiffs succeed in establishing they suffered unlawful enforcement for trespassing, their legal injuries will have resulted from the NYPD's centralized, hierarchical program of trespass enforcement in and around NYCHA buildings.

---

[48]     *See* IO 23 of 2010, Ex. O to 12/4/12 Declaration of Brenda E. Cooke, Attorney for the City, in Support of the City's Motion for Summary Judgment on Plaintiffs' Claims Against the City.

[49]     These policies and practices provide more than enough "glue" to hold together the individual decisions by officers and supervisors that led directly to plaintiffs' alleged legal injuries.  *See Wal-Mart*, 131 S. Ct. at 2552 (requiring that there be "some glue" holding together the millions of employment decisions, so that it will be possible "to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*").

As plaintiffs note, the claims of the putative Class and Resident Subclass are united by several common questions of law and fact that are susceptible to common proof.[50]  In the terminology of *Wal-Mart*, a class-wide proceeding here will "generate common answers" to these questions that are "apt to drive the resolution of the litigation."[51]

### b.    Numerosity, Typicality, Adequacy

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  Plaintiffs have presented statistical evidence of thousands of apparently unjustified trespass stops in and around NYCHA buildings between 2009 and 2011, which is only a portion of the class period.[52]  Plaintiffs have also presented sufficient testimonial and anecdotal evidence to support the inference that far more than forty of NYCHA's over 360,000 African-American or Latino residents have been impeded in coming and going freely from their homes

---

[50]    These questions include, for example:  "Do NYPD officers stop . . . individuals for criminal trespass in and around NYCHA residences in the absence of reasonable, articulable suspicion . . . ?"  "Do NYPD officers stop . . . individuals for criminal trespass in and around NYCHA residences at least in part because of race and/or ethnicity?"  "Has the City failed to adequately train, supervise, and/or discipline officers in connection with trespass enforcement in and around NYCHA residences, and have such acts and omissions caused . . . the constitutional violations against Class members?"  Pl. Mem. at 17.

[51]    131 S. Ct. at 2551.

[52]    *See* Pl. Mem. at 6, 15.

17

and having guests.[53]

The City offers no arguments specifically directed at typicality or adequacy.[54]  In practice, the "'commonality and typicality requirements of Rule 23(a) tend to merge,'" and "'[t]hose requirements . . . also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.'"[55]  The City does not dispute the competence of plaintiffs' attorneys to represent the interests of the class.[56]

### 2.    Class Certification Is Proper Under Rule 23(b)(2)

Like the plaintiffs in *Floyd*, plaintiffs in this case have established that they are entitled to class certification under Rule 23(b)(2).[57]  The City's trespass

---

[53]    *See id.* at 16; 6/21/13 Plaintiffs' Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Class Certification ("Pl. Reply") at 6.

[54]    *See* Def. Mem. at 19, 21.  *See also* Pl. Mem. at 21–23 (addressing typicality); *id.* at 23–24 (addressing adequacy).

[55]    *Wal-Mart*, 131 S. Ct. at 2551 n.5 (quoting *Falcon*, 457 U.S. at 157–58 & n.13).  *Accord Marisol A.*, 126 F.3d at 376  (stating that commonality and typicality "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)").

[56]    *See* Def. Mem. at 21.  I also note that the class definition, as amended below, is clear enough to make proposed class members sufficiently ascertainable for the purposes of Rule 23(b)(2).

[57]    *See Floyd Class Cert.*, 283 F.R.D. at 177–78.  Indeed, the City's opposition to plaintiffs' motion does not explicitly challenge the appropriateness of

18

enforcement activities in and around NYCHA buildings have affected the class

generally, "so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole."[58]  If plaintiffs establish that the City's

NYCHA trespass enforcement policies and practices caused their injuries, a

uniform injunctive remedy involving reforms to the City's policies and practices

will provide appropriate relief.

### 3.    Class and Subclass Definitions

Finally, the City is correct that plaintiffs' proposed Class and Resident

Subclass differ from the class structure proposed in the Amended Complaint.[59]  In

particular, the class in the Amended Complaint included not only residents and

visitors who have been or will be subject to unlawful trespass enforcement, but

also residents "whose family members, guests, and/or authorized visitors have been

or will be unlawfully stopped, seized, questioned, searched and/or arrested for

trespass by NYPD officers when visiting NYCHA residents."[60]  The class that

plaintiffs now move to certify omits the latter category.  As the City observes, this

---

class certification under Rule 23(b)(2).  *See* Def. Mem. at i, 8–9, 11, 13–14 & n.19.

[58]    Rule 23(b)(2).

[59]    *See* Def. Mem. at 20–21.  *Compare* Pl. Mem. at 2, *with Davis II*, 2013
WL 1288176, at *3 (citing Amended Complaint ("Am. Compl.") ¶¶ 21–23).

[60]    Am. Compl. ¶ 21.

omission is problematic, because plaintiffs include in the Resident Subclass residents of NYCHA buildings who have never been stopped or arrested, such as Eleanor Britt — with the result that the Resident *Subclass* contains individuals who are not members of the *Class*.[61]

There are a number of ways to resolve the confusion in plaintiffs' proposed class structure, which is ultimately more a problem of phrasing than of substance. Rather than certifying plaintiffs' proposed Class and Resident Subclass, I am amending the proposed class definition into two overlapping classes, as follows:

> *Stopped Class:* All African-American and Latino NYCHA residents and/or family members, authorized guests or visitors of NYCHA residents, who, since January 28, 2007, have been or will be unlawfully stopped, seized, questioned, frisked, searched, and/or arrested for trespass by New York City Police Department ("NYPD") officers in or around NYCHA residences, including on the basis of race and/or ethnicity.

> *Resident Class:* All authorized NYCHA residents who belong to the Stopped Class or whose family members, authorized guests or visitors, since January 28, 2007, have been or will be unlawfully stopped, seized, questioned, frisked, searched, and/or arrested for trespass by NYPD officers in or around NYCHA residences, including on the basis of race and/or ethnicity.

**B.    Claim Against NYCHA**

NYCHA does not dispute that for the purposes of plaintiffs' USHA

---

[61]    *See* Def. Mem. at 21 n.29.

claims against NYCHA, resident plaintiffs satisfy the requirements for a class under Rule 23(a) and Rule 23(b)(2).[62]  Instead, NYCHA argues that class certification is unnecessary under the *Galvan* doctrine, which permits courts to decline class certification when "prospective relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment."[63]  As plaintiffs note, however, NYCHA's refusal to withdraw, amend, or clarify the challenged House Rules argues against the application of *Galvan*.[64]  This is not a case where "'withdrawal of the challenged action or non-enforcement of the challenged statute'" renders class certification unnecessary.[65]

## V.   CONCLUSION

---

[62]     *See* 6/7/13 Memorandum of Law of Defendant New York City [Housing] Authority in Opposition to Plaintiffs' Motion for Class Certification at 2–5.  For plaintiffs' USHA claims against NYCHA, see generally *Davis II*, 2013 WL 1288176, at *24–26.  Of course, NYCHA directs its arguments against plaintiffs' proposed Resident Subclass rather than the Court's amended Resident Class as defined in the previous section.  But for the purposes of plaintiffs' USHA claims, the difference between the two classes is immaterial.

[63]     *Berger*, 771 F.2d at 1566 (citing *Galvan*, 490 F.2d at 1261).

[64]     *See* Pl. Reply at 8.

[65]     *Casale*, 257 F.R.D. at 406 (quoting *Blecher v. Department of Hous. Pres. & Dev.*, No. 92 Civ. 8760, 1994 WL 144376, at *4–5 (S.D.N.Y. Apr. 19, 1994)).

For the foregoing reasons, the Stopped Class and Resident Class are certified under Rule 23(b)(2).

SO ORDERED:

Dated:        New York, New York
              August 29, 2013

SHIRA A. SCHEINDLIN
U.S.D.J.

22

## Appearances

**For Plaintiffs:**

Matthew Moses, Esq.
Daniel J. Leffell, Esq.
Katharine E. Brooker, Esq.
Jason L. Meizlish, Esq.
James E. Stanley, Esq.
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

Christina Swarns, Esq.
Johanna B. Steinberg, Esq.
Jin Hee Lee, Esq.
Johnathan J. Smith, Esq.
Ria Tabacco Mar, Esq.
NAACP Legal Defense &
Educational Fund, Inc.
99 Hudson Street, 1600
New York, New York 10013
(212) 965-2200

Steven Banks, Esq.
William Gibney, Esq.
Steven Wasserman, Esq.
Nancy Rosenbloom, Esq.
Marlen S. Bodden, Esq.
The Legal Aid Society
199 Water Street, 6th Floor
New York, New York 10038
(212) 577-3300

**For Defendant City of New York:**

Brenda E. Cooke
Judson Vickers
Wesley Bauman
Lisa Richardson
Pernell Telfort
Assistant Corporation Counsel
New York City Law Department
100 Church Street, 3-174
New York, New York 10007
(212) 513-0462

**For Defendant NYCHA:**

Steven J. Rappaport, Esq.
New York City Housing Authority
250 Broadway, 9th Floor
New York, New York 10007
(212) 776-5152

23