# ARNOLD & PORTER LLP

Peter L. Zimroth
Peter.Zimroth@aporter.com

+1 212.715.1010
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

March 23, 2016

**VIA ECF**

Honorable Analisa Torres
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:
> DATE FILED: 3/25/16

Re:  *Floyd, et al. v. City of New York*, 08-CV-1034 (AT),
*Ligon, et al. v. City of New York, et al.*, 12-CV-2274 (AT),
*Davis, et al. v. City of New York, et al.,* 10-CV-0699 (AT),
Recommendation regarding Stop Report Form

Dear Judge Torres,

I am pleased to submit my recommendation regarding (1) a revised stop report form (PD 383-151) and accompanying instructions (PD 383-151A) and (2) a draft NYPD Interim Order that reconciles the NYPD stop and frisk procedures, P.G. 212-11, with the new stop report form.  I believe these documents meet the requirements of the court orders and the parties' agreements.  The parties have informed me that they agree that this recommendation should be approved.

As required, the proposed form documents stops when they occur and any related frisk or search.  It has a narrative section in which the officer describes in his or her own words the reasons for the stop and a separate narrative section for describing the reasons for the frisk and the search, if conducted.  The court found that without narrative sections, the current version of

# ARNOLD & PORTER LLP

Honorable Analisa Torres
March 23, 2016
Page 2

the stop form, which has only checkboxes for the factors leading to the stop, did not provide

sufficient information to assess the officer's reasons for a stop, frisk or search.  Although these

narrative sections are a change from the current stop report form, space for a narrative was

included in earlier stop report forms used by the NYPD; and officers are currently required to

write similar narratives describing stops, frisks and searches in their activity logs.  The proposed

form also simplifies the checkboxes currently in use and eliminates ones that led to rote

justifications, such as "furtive movement."  Once the new form is in use, officers will be required

to provide descriptions of the movements that contributed to the officer's suspicions and not

merely to check a box.  The proposed form also has a section in which supervisors document the

review currently required by NYPD policy (P.G. 212-11) and any follow-up action if called for

by that review.

The proposed form is the product of substantial work.  A new form was piloted for 90

days in five precincts, one transit district and one housing police service area.  Two versions of

the stop report form were used for the pilot: one version fit into an officer's memo book, with

instructions on a separate sheet, and a second, larger version was on 8½ x 14 paper, with

instructions on the back of the form.  The two stop report forms differed in size and format

only—the content was identical.  The NYPD determined that officers preferred a form that

would fit into their memo books.

# ARNOLD & PORTER LLP

Honorable Analisa Torres
March 23, 2016
Page 3

During and after the pilot program, there was substantial discussion among the NYPD, the other parties and the monitor team about the content of the form:  specifically, what information to collect and how the instructions should be phrased.  Everyone understood that designing this form involved trade-offs necessary largely because of the limited space on the form and because the form will be used by busy officers on the street.  I believe the proposed form balances well the several goals of such a form—documenting stop, question, frisk and search activity, providing some guidance about when these interventions are permissible, and facilitating their review by supervisors and others in the Department.  And, as stated, the proposed form meets the requirements of the court orders and the parties' agreements.

For your information, after a new stop report form is approved, there are other related steps planned.  The Department will publish the enclosed draft NYPD Interim Order, which revokes the existing stop report form, directs members of the service to use the new form, and makes conforming changes to the Department's stop and frisk policy.  The Department will requisition and distribute approximately 50,000 new forms, which will take from four to six weeks.  The Department also will need to change its SQF (stop, question and frisk) database to conform to the new form, provide in-service training on the new form, and make changes to other training materials as needed.  Finally, the NYPD is developing a new online records management system that will incorporate the new stop report form.  It is my hope that the Department will make this a priority, because when the new form is included in the online

# ARNOLD & PORTER LLP

Honorable Analisa Torres
March 23, 2016
Page 4

records management system, officers will find it easier to use the new form; they will be able to

access and prepare the approved stop report form on their smartphones and tablets.

Respectfully submitted,

*/s/ Peter L. Zimroth*

Peter L. Zimroth
Monitor

Attachments:
    (1) Revised Stop Report Form (PD 383-151);
    (2) Accompanying Instructions (PD 383-151A); and
    (3) NYPD Draft Interim Order Regarding P.G. 212-11 and P.G. 204-09.

APPROVED.

SO ORDERED.

Dated: March 25, 2016
      New York, New York

_____
      **ANALISA TORRES**
   **United States District Judge**

# Attachment 1

**(COMPLETE ALL CAPTIONS)**

**STOP REPORT**
PD 383-151 (03-16)

| Pct. Serial No. | ICAD No. |
| --- | --- |
| Date of Occ. | Pct. Of Occ. |

| Time Of Stop | Period Of Observation Prior To Stop | Duration Of Stop |
| --- | --- | --- |

Address/Intersection Or Cross Streets Of Stop

☐ Inside   ☐ Transit   ☐ Housing
☐ Outside  ☐ Trespass Affidavit Program   | Type of Location *(Describe:)*

Stop Was:  ☐ Self-Initiated   ☐ Based on Radio Run   ☐ Based on C/W on Scene

Officer in Uniform?   | If no, how Identified?   ☐ Shield   ☐ I.D. Card
☐ Yes   ☐ No   | ☐ Verbal

Crime Suspected *(e.g., Robbery, Burglary, Criminal Trespass, etc.)*

**Check All Factors That Led to Stop and Explain in the Narrative Section**

☐ Concealing or Possessing a Weapon   ☐ Casing Victim or Location
☐ Engaging in a Drug Transaction   ☐ Matches a Specific Suspect Description
☐ Acting as a Lookout   ☐ Proximity to the Scene of a Crime
☐ Identified Crime Pattern *(Pattern No.____)*   ☐ Other *(Describe in "Narrative" Section)*

| Name Of Person Stopped | Nickname/Alias/Preferred Name | Date Of Birth |
| --- | --- | --- |
| Address | Apt. No. | Tel. No. |

Identification:   ☐ Verbal   ☐ Photo I.D.   ☐ Refused
☐ Other *(Describe)*

Sex: ☐ Male   Race: ☐ White   ☐ Black   ☐ Hispanic White   ☐ Hispanic Black
☐ Female   ☐ Asian/Pacific Islander   ☐ American Indian/Alaskan Native
☐ Middle Eastern/Southwest Asian

| Age | Height | Weight | Hair | Eyes | Build |
| --- | --- | --- | --- | --- | --- |

Other *(Scars, Tattoos, Outer Garments, Etc.)*

| Did Officer Explain Reason For Stop? | Information Card Given to Person Stopped? |
| --- | --- |
| ☐ Yes   ☐ No | ☐ Yes   ☐ No |

If You Answered No to Either of the Previous Two Questions, Explain the Reasons in the Narrative Section on the Rear Side.

Were Other Persons Stopped/ ☐ Yes   | Total No. Stopped | Pct. Serial Nos.
Questioned/Frisked?   ☐ No

Did a Body-Worn Camera (BWC) Capture ☐ Yes   | Body-Worn Camera was Worn by:
the Event in Whole or in Part   ☐ No   | ☐ Reporting Officer   ☐ Another MOS

Body-Worn Camera Serial Number

Actions Taken to Stop and/or Detain Prior to Arrest  ☐ Verbal Command/Instruction
☐ Impact Weapon   ☐ Drawing/Pointing Firearm   ☐ Physical Force/Restraint
☐ Handcuff Suspect   ☐ O.C. Spray   ☐ CEW   ☐ Other *(Describe)*

| Was Suspect Arrested?   Offense | Arrest No. |
| --- | --- |
| ☐ Yes   ☐ No | |
| Was Summons Issued?   Offense | Summons No. |
| ☐ Yes   ☐ No | |
| Demeanor of Person After Being Stopped | Remarks Made by Person Stopped |



Narrative *(Describe the Circumstances That Led to the Stop):*

---

Was Person Frisked?  ☐ Yes  ☐ No  **IF YES, INDICATE BASIS FOR FRISK:**  ☐ Object Observed Suspected of Being a Weapon
☐ Statement by Suspect  ☐ Violent Crime  ☐ Suspect Known to Carry Weapons  ☐ Other *(Describe Below)*
Was Person Searched?  ☐ Yes  ☐ No  **IF YES, INDICATE BASIS FOR SEARCH:**  ☐ Hard Object Resembling Weapon  ☐ Consent to Search
☐ Admission Of Weapons Possession  ☐ Outline of Weapon  ☐ Search Incident to an Arrest  ☐ Other *(Describe Below)*
Was Weapon Found?  If Yes, Specify:  ☐ Firearm  ☐ Knife/Cutting Instrument  | Was Other Contraband Found?  If Yes, Describe Contraband and Location
☐ Yes  ☐ No  ☐ Other *(Describe)*  | ☐ Yes  ☐ No
Narrative *(Describe the Circumstances That Led to the Frisk and/or Search, If Conducted. Include Area Searched):*

---

| Reporting MOS *(Rank, Name Printed)* | Signature | Tax No. | Command | Date |
|---|---|---|---|---|

**Supervisory Action** *(Must Complete):*  Supervisor on Scene During Stop? . . . . . ☐ Yes  ☐ No  | **Follow-Up Action** *(If Appropriate):*
Encounter Reviewed With Officer? . . . . ☐ Yes  ☐ No  Sufficient Basis for Stop?  ☐ Yes  ☐ No  | Report Corrected. . . ☐  Training. . . . . . . . . ☐
Report Accurate and Complete? . . . . . ☐ Yes  ☐ No  Sufficient Basis for Frisk?  ☐ Yes  ☐ No  ☐ N/A  | Instruction . . . . . . . ☐  Disciplinary Action . ☐
Corresponding Activity Log Entry Reviewed?  ☐ Yes  ☐ No  Sufficient Basis for Search?  ☐ Yes  ☐ No  ☐ N/A
Reviewing Supervisor *(Rank, Name Printed)*  |  Tax No.  |  Command

| Signature | Pct. Serial No. | Date | Time |
|---|---|---|---|

# Attachment 2

**SUPPLEMENTAL INSTRUCTIONS FOR PREPARATION OF STOP REPORT**
PD 383-151A (03-16)

The information fields on the STOP REPORT are generally self-explanatory. Supplemental instruction for certain sections are provided below. Additional guidance may be found in Patrol Guide section 212-11.

The STOP REPORT is prepared whenever a Uniformed Member of the Service stops a person. A stop occurs anytime, during an encounter with the police, that a reasonable person would not feel free to disregard the officer and leave. Prepare a separate STOP REPORT for each person stopped.

The STOP REPORT is not prepared for Level 1 "Request for Information" and Level 2 "Common Law Right of Inquiry" encounters unless the encounter escalates to a stop/level 3 encounter. Similarly, the STOP REPORT is not prepared when an officer makes a summary arrest for an offense/crime or issues a summons for an observed violation unless the suspect was initially stopped for investigation based upon reasonable suspicion that the person had committed, was committing or was about to commit a felony or Penal Law misdemeanor.

Include police action related to the stop on the STOP REPORT: There may be situations in which more than one Member of the Service participates in the stop of an individual. Document actions taken by or against the individual stopped even though another member on the scene may have taken the action (e.g., the reporting officer was not wearing a body-worn camera but another member of the service on the scene was and recorded the encounter – the reporting officer would check "yes" in the body-worn camera caption and list the camera serial number).

*Transit/Housing/Trespass Affidavit Program* checkboxes: In addition to checking the appropriate box for a stop occurring inside one of these locations, also check the appropriate box if the crime suspected occurred within one of these locations even though the person was stopped outside of the location (for example, if a person is stopped on the street on suspicion of Criminal Trespass that occurred inside a public housing building, check the "outside" box and the "Housing" box).

*"Crime Suspected"* caption – Describe the relevant crime suspected in plain language (e.g., "Robbery," "Burglary," etc.). Do not use statutory section numbers.

○ *"Narrative (Describe the Circumstances That Led to the Stop)" section* – Describe in your own words the facts and information relied upon to conclude that there was a reasonable suspicion that the person stopped had committed, was committing or was about to commit a felony or Penal Law misdemeanor. This includes a detailed explanation for each box checked in the *"Check All Factors That Led to Stop and Explain in the Narrative Section"* section (do not merely repeat the check box caption(s)). There are many facts and circumstances that may lead a police officer to establish reasonable suspicion. Such factors may include information received from victims/witnesses, identified 911/311 callers, and informants as well as the actions of the suspect, the suspect's physical and temporal proximity to the scene of a crime, the suspect's resemblance to the description of a perpetrator of a crime and information known to the officer about the suspect or particular location, among other factors. If based upon a suspect description, include the description provided as well as the description of the person stopped on the STOP REPORT and in your ACTIVITY LOG. Each situation is unique and it is important to accurately describe the information known to the officer at the time of the stop.

○ *"Describe the Circumstances That Led to the Frisk and/or Search, If Conducted. Include Area(s) Searched." section* – Describe in your own words the facts and information relied upon to conclude that there was reasonable suspicion that the person stopped was armed and dangerous. In addition, if a search was conducted, describe the basis for the search, the specific area searched, and whether a weapon or other contraband was recovered.

○ *"Supervisory Action" section* – The Patrol/Unit Supervisor (or Desk Officer if Patrol/Unit Supervisor is not available) must review the completed STOP REPORT and related ACTIVITY LOG entry and discuss the basis for the encounter with the Member of the Service completing the STOP REPORT. Consider the facts and information as conveyed by the member and recorded on the STOP REPORT and, based upon training and experience, determine whether the stop was based upon reasonable suspicion of a felony or Penal Law misdemeanor. If the person was frisked, determine whether the frisk was supported by a reasonable suspicion that the person was armed and dangerous. If the person was searched, determine whether there was an adequate basis for the search, including whether consent was freely given if it was a consent search. If any follow-up action is taken, indicate such by selecting the appropriate caption in the *"Follow-Up Action (If Appropriate)"* section.

Reporting Officer: Submit the completed STOP REPORT and your ACTIVITY LOG containing a detailed entry describing the stop encounter to the Patrol/Unit Supervisor for review. Upon completion of the review, submit the original STOP REPORT and a photocopy of your ACTIVITY LOG entry to the Desk Officer.

# Attachment 3



# DRAFT INTERIM ORDER

| SUBJECT: | REVISION TO PATROL GUIDE 212-11, "INVESTIGATIVE ENCOUNTERS: REQUESTS FOR INFORMATION, COMMON LAW RIGHT TO INQUIRY AND LEVEL 3 STOPS" AND PATROL GUIDE 204-09, "REQUIRED FIREARMS/EQUIPMENT" | | |
|---|---|---|---|
| DATE ISSUED: | REFERENCE: | | NUMBER: |
| **03-14-16** | ***P.G. 212-11 AND P.G. 204-09** | | **DRAFT 3** |

1.       In order to enhance the documentation of investigative encounters conducted by uniformed members, a new Department form entitled, "**STOP REPORT (PD383-151)**" has been created.  In addition, two **ACTIVITY LOG (PD112-145)** inserts entitled, "**SUPPLEMENTAL INSTRUCTIONS FOR PREPARATION OF STOP REPORT (PD383-151A)**" and "**INVESTIGATIVE ENCOUNTERS (PD383-090)**" have been established. The **SUPPLEMENTAL INSTRUCTIONS FOR PREPARATION OF STOP REPORT** insert provides direction to uniformed members of the service regarding the proper completion of the new **STOP REPORT** and also provides direction to supervisors tasked with reviewing the **STOP REPORT**.  The **INVESTIGATIVE ENCOUNTERS** insert provides uniformed members of the service with detailed information as to the types of investigative encounters, level of knowledge required, permissible questioning, authority to search, and the amount of force and detention that is permissible during the encounter.

2.       Therefore, effective immediately, Patrol Guide 212-11, "Investigative Encounters: Requests for Information, Common Law Right of Inquiry and Level 3 Stops," has been **SUSPENDED** and the following procedure will be complied with:

**PURPOSE**            To describe the types of encounters a uniformed member of the service may initiate with a member of the public during the course of his or her official duties, the level of knowledge required for each type of encounter, the scope of a police officer's authority for each type of encounter, the measures that are permissible to protect uniformed members of the service from injury while engaged in such encounters, and the procedures to be followed by a member of the service during these encounters.

**SCOPE**              In accordance with their oath to uphold the law, uniformed members of the service must conduct investigative encounters in a lawful and respectful manner; however, nothing in this section is intended to deter an officer from initiating appropriate inquiries and investigative encounters, including stops, or using any lawful and appropriate tactics to ensure the officer's safety during such investigative encounters.  Moreover, this procedure should not be interpreted to discourage an officer from engaging in voluntary consensual conversations with members of the public.  Members of the service are encouraged to develop positive relationships in the communities they serve.  Such positive interactions with the community foster trust and understanding that will in turn enhance public safety and officer safety.

**DEFINITIONS**    INVESTIGATIVE ENCOUNTERS – In the context of this procedure, an investigative encounter is a police interaction with a member of the public/civilian for a law enforcement or investigative purpose.   The U.S. Supreme Court in the case of *Terry v. Ohio*, established the authority of the police to stop and possibly frisk a person, under certain circumstances, based upon reasonable suspicion.  The New York State Court of Appeals in the case of *People v. DeBour* established the types or levels of investigative encounters and the authority of the police at each level, consistent with federal constitutional standards.  These encounter levels and the authority of the police at each level are outlined in the definitions that follow.

REQUEST FOR INFORMATION (LEVEL 1 ENCOUNTER) – A request for information is an encounter between a civilian and a uniformed member of the service conducted for the purpose of requesting information from the civilian. The uniformed member of the service must have an objective credible reason to approach the civilian.  This type of encounter does not require any suspicion of criminal activity.  The objective is to gather information and not to focus on the person as a potential suspect.  A police officer may seek information related to the reason(s) the person was approached, such as the person's name, address and destination if those questions are related to the objective credible reason for the approach.  The officer may not ask accusatory questions. The person may refuse to answer questions and/or walk or even run away. Refusal to answer questions and/or walking or running away does not escalate the encounter. At this level, the officer may not seek consent to search, and may not use force, and may not create a situation (either by words or actions) where a reasonable person would not feel free to leave.

OBJECTIVE CREDIBLE REASON - A reason is objectively credible if it is based on more than a hunch or a whim.  The reason to gather more information may relate to a public safety/service function or a law enforcement function, but need not be based on any indication of criminality.

COMMON-LAW RIGHT OF INQUIRY (LEVEL 2 ENCOUNTER) – A common-law right of inquiry is an encounter between a civilian and a uniformed member of the service conducted for the purpose of asking the civilian pointed or accusatory questions because the police officer has a "founded suspicion" that criminal activity is afoot. "Founded suspicion" is a lower level of suspicion than the "reasonable suspicion" required to conduct a "stop" or Level 3 encounter. Upon a founded suspicion of criminality, the officer may approach a person to ask accusatory questions and may seek consent to search; however, consent must be voluntarily given. During a "Request For Information/Level 1 Encounter," giving innocuous answers does not escalate the encounter, but providing false information may give rise to founded suspicion.  During a Level 2 encounter, force may not be used, the person is free to refuse to answer questions, and is free to leave.  Refusal to answer questions or walking away does not raise the level of suspicion.  The officer may not create a situation (either by words or actions) where a reasonable person would not feel free to walk away.

**INTERIM ORDER NO.   DRAFT 3**

**DEFINITIONS**
**(continued)**

FOUNDED SUSPICION – Founded suspicion of criminal activity arises when there is some present indication of criminality based on observable conduct or reliable hearsay information.

TERRY STOP (LEVEL 3 ENCOUNTER) – A Terry Stop/level 3 encounter is any encounter between a civilian and a uniformed member of the service in which a reasonable person would not feel free to disregard the officer and walk away.  A Level 3 encounter may take place even without the threat or use of physical force by the officer; whether an encounter amounts to a stop will be judged by the facts and circumstances of the encounter. A stop may be conducted only when a police officer has an individualized reasonable suspicion that the person stopped has committed, is committing, or is about to commit a felony or Penal Law misdemeanor.  The police officer may ask questions and detain the person while an expeditious investigation is conducted to determine if there is probable cause to arrest the person.  The police officer may seek consent to search.  The consent must be voluntarily given. Reasonable force may be used to stop a person. The type and amount of force used must be objectively reasonable under the circumstances.

REASONABLE SUSPICION - Reasonable suspicion exists when the information known to the member of the service would make an ordinarily prudent and cautious police officer under the circumstances believe criminal activity is at hand.  The officer must have a particularized and objective basis for suspecting the person stopped of the criminal conduct.  The officer must be able to articulate specific facts establishing justification for the stop; hunches or gut feelings are not sufficient.

FRISK - A carefully limited running of the hands over the outside of a person's clothing feeling for a deadly weapon or any instrument, article or substance readily capable of causing serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons. A frisk is authorized when the member of the service reasonably suspects the person is armed and dangerous. This includes situations in which the officer reasonably suspects that the person has committed, is committing, or is about to commit a violent crime or when the officer observes something on the person that she/he reasonably suspects is a weapon.  A frisk may not be conducted to discover evidence or the proceeds or instrumentalities of a crime.  A police officer cannot "frisk" a bag or item of personal property unless the officer has a reasonable suspicion that the person is armed and dangerous and the bag or item could contain a weapon and is within the person's reach.

SEARCH AFTER FRISK - In the context of the investigative encounters described in this section, a search occurs when the officer places his/her hands inside a pocket or other interior portions of a person's clothing or personal property to remove an object that the member felt during a frisk and reasonably suspects is a weapon or dangerous instrument.

**INTERIM ORDER NO.   DRAFT 3**

**PROCEDURE**    When a uniformed member of the service engages in an investigative encounter with a civilian:

CONDUCTING   A   LEVEL   1   ENCOUNTER   –   A   REQUEST   FOR INFORMATION:

**UNIFORMED**    1.    Approach the person if there is an objective credible reason to do so.
**MEMBER OF**    2.    If not in uniform, identify yourself as a police officer verbally and by
**THE SERVICE**         displaying your shield in a conspicuous manner, if practicable.
3.    You may seek information and ask general, non-threatening questions related to the reason for the approach.  However, accusatory questions are not permitted.
4.    The person may refuse to answer questions and is free to leave.
5.    You may inform the person that she/he is free to leave, but you are not required to do so unless she/he specifically asks.
6.    When feasible and consistent with personal safety, provide the individual with an explanation for the encounter.
7.    DO NOT detain the person, use or threaten the use of force, or request consent to search.

CONDUCTING A LEVEL 2 ENCOUNTER – THE COMMON LAW RIGHT OF INQUIRY:

**UNIFORMED**    8.    Approach the person if you have a founded suspicion of criminality.
**MEMBER OF**    9.    If not in uniform, identify yourself as a police officer verbally and by
**THE SERVICE**         displaying your shield in a conspicuous manner, if practicable.

10.    You may seek information and ask questions, including pointed and accusatory questions.
11.    The person may refuse to answer questions and is free to leave.
12.    You may request consent to search; the consent must be voluntarily given.
13.    You may inform the person that she/he is free to leave, but you are not required to do so unless she/he specifically asks.
14.    When feasible and consistent with personal safety, provide the individual with an explanation for the encounter.
15.    DO NOT detain the person or use or threaten the use of force.

**NOTE**    *During a Level 1 or Level 2 encounter, an officer may not create a situation (either by words or actions) where a reasonable person would not feel free to walk away.  A person may be detained only if a properly conducted Level 1 or Level 2 encounter yields information to support a reasonable suspicion that the person committed, was committing, or was about to commit a felony or Penal Law misdemeanor.*

**INTERIM ORDER NO.  DRAFT 3**

CONDUCTING A LEVEL 3 ENCOUNTER - A TERRY STOP:

**UNIFORMED**
**MEMBER OF**
**THE SERVICE**

16. Upon reasonable suspicion that the person has committed, is committing, or is about to commit a felony or Penal Law misdemeanor, stop and detain the person for the purpose of conducting a criminal investigation.
   a. Notify the radio dispatcher and include the location, number of persons being stopped and whether additional units are needed.
   b. If not in uniform, identify yourself as a police officer verbally and by displaying your shield in a conspicuous manner, if practicable.
   c. Question the suspect to the extent necessary to determine whether there is probable cause to make an arrest.
   d. You may ask pointed and accusatory questions related to the reason for the stop.   Refusal to answer questions or produce identification does not establish probable cause.
   e. You may seek consent to search. Consent must be voluntarily given.
   f. Reasonable force may be used to stop a person.
   g. If you have a reasonable suspicion at any point before or during the stop, that the person is armed and dangerous, you may conduct a "frisk." [See "Conducting a Frisk" below.]
   h. The suspect may be detained only as long as necessary to confirm or dispel your suspicion that she/he was committing, committed, or was about to commit a felony or Penal Law misdemeanor. Authority to detain the suspect ends when the tasks tied to the reason for the stop are completed or reasonably should have been completed.
   i. When feasible and consistent with personal safety, provide the individual with an explanation for the encounter.
   j. Obtain the suspect's name, address, and any additional information that will be required to complete the **STOP REPORT (PD383-151)**.
   k. Do not transport or otherwise move the suspect from the location where she/he is stopped unless she/he voluntarily consents or there is an exigency necessitating relocation (e.g., hostile crowd, threat to safety, hospital show-up, etc.).

17. Release the person immediately after completing the investigation if probable cause to arrest does not exist.
   a. Provide the person stopped with an explanation for the stop, question and or frisk encounter, absent exigent circumstances.
   b. Offer the person stopped a **WHAT IS A STOP? (PD383-153)** tear-off information card, absent exigent circumstances.

CONDUCTING A FRISK, AND WHEN APPROPRIATE, A SEARCH:

**UNIFORMED**
**MEMBER OF**
**THE SERVICE**

18. If a police officer develops a reasonable suspicion that a person is armed and dangerous, the officer may frisk the person for a deadly weapon or any instrument, article or substance readily capable of causing serious

INTERIM ORDER NO.  **DRAFT 3**

**UNIFORMED MEMBER OF THE SERVICE (continued)**

physical injury and of a sort not ordinarily carried in public places by law-abiding persons. Reasonable suspicion that a person is armed and dangerous may arise from the officer's observations or the facts and circumstances of the encounter including:

    a.    Reasonable suspicion that the suspect has committed, is committing or is about to commit, a violent crime (e.g., assault with a deadly weapon, burglary, rape, robbery, etc.)

    b.    Observation of something on the person that the officer reasonably suspects is a weapon

    c.    A statement by the suspect stopped that she/he is armed

    d.    Information known by the officer that the suspect may be carrying a weapon, such as statements from a victim or witness.

19.    The purpose of the frisk is to ensure the safety of the officer and not to locate evidence of a crime, such as drugs.

20.    There is no requirement to question a suspect prior to conducting a lawful frisk.

21.    Conduct the frisk by carefully running your hands down the outside of the person's clothing.

22.    Where the frisk reveals an object that the member of the service reasonably suspects may be a weapon, the member of the service may search only those interior portions of the stopped person's clothing to remove the weapon.

23.    An officer may not frisk a person's bag or other item of personal property unless the officer has reasonable suspicion that the person is armed and dangerous and that the bag or item of personal property could contain a weapon and is within the person's reach. If the bag/item is soft, the officer should run her/his hands down the outside of the bag/item and open it only if she/he feels the contours of what she/he believes is a weapon. If the bag/item is rigid and unlocked, the officer may open it to ensure it does not contain a weapon.

**NOTE**

*The guidelines in step "23" do not apply to mass transit system checkpoint type inspections of backpacks, containers and other carry-on items that are capable of containing explosive devices.*

*Protective measures: Even if an officer does not have reasonable suspicion that a person is armed and dangerous, there are tactics for officer safety that an officer may use short of a frisk when the officer perceives her/his safety is at risk. These include ordering the individual to take her/his hands out of her/his pockets, put down or step away from an otherwise lawful object that could be used as a weapon, grabbing the person's hands if the circumstances suggest the person may be grabbing a weapon, or forcibly removing the person's hands from her/his pockets if the individual refuses to remove them from her/his pockets. Any lawfully possessed article that is removed/safeguarded by a member of the service during an investigative encounter should be returned to the individual at the conclusion of the encounter (unless probable cause is developed and the individual is arrested).*

**INTERIM ORDER NO.   DRAFT 3**

**NOTE**
**(continued)**

*Requesting identification documents:  At any level, an officer may ask an individual to verbally identify herself/himself or present an identification document to verify that person's identity and/or address.  During Level 1 or 2 encounters, when performing this task, the officer must not create a situation where the person does not feel free to leave.  Other than the operator of a motor vehicle/motorcycle, members of the public are not required to possess identification documents or present identification documents to police officers when requested.  Refusal or inability to produce identification alone will not elevate the level of the encounter.  Absent probable cause that the person committed an offense, she/he may not be arrested or removed to a Department facility for further investigation merely because she/he refused to produce identification.*

<u>REQUIRED DOCUMENTATION:</u>

**UNIFORMED**
**MEMBER OF**
**THE SERVICE**

24.    For all Terry Stops/Level 3 encounters, prepare a **STOP REPORT** for EACH person stopped.

    a.    Complete all applicable captions and follow the directions printed on the form.

    b.    Check "REFUSED" in the appropriate space if the person stopped refused to identify herself/himself.

        (1)    Request the patrol supervisor to respond to verify refusal.

        (2)    Do not detain the person, however, if the investigation is complete and there is no probable cause to make an arrest.

    c.    Select all relevant factors that led to the stop if more than one descriptive term applies.

    d.    Describe in plain language (rather than numeric Penal Law section) the specific felony or Penal Law misdemeanor you suspected the person had committed, was committing or was about to commit.

    e.    Describe in your own words, under the "Narrative (Describe the Circumstances That Led to the Stop)" caption, all of the facts and information relied upon to conclude that there was reasonable suspicion that the person stopped had committed, was committing or was about to commit a felony or Penal Law misdemeanor.

    f.    Describe in your own words, under the "Narrative (Describe the Circumstances That Led to the Frisk and/or Search, if Conducted. Include Area Searched)" caption, all of the facts and information relied upon to conclude that there was reasonable suspicion that the person stopped was armed and dangerous.  In addition, if a search was conducted, describe the basis for the search, the specific area searched, and whether a weapon or other contraband was recovered.

**NOTE**

*The **STOP REPORT** is <u>not</u> prepared for Level 1 and Level 2 encounters unless the encounter escalates to a Level 3 Terry Stop.  Similarly, the **STOP REPORT** is <u>not</u> prepared when an officer makes a summary arrest for an offense/crime or issues a summons for an observed violation <u>unless</u> the suspect was initially detained for investigation in a Level 3 Terry Stop.*

**INTERIM ORDER NO.  DRAFT 3**

| | | |
|---|---|---|
| **UNIFORMED MEMBER OF THE SERVICE (continued)** | 25. | Enter details in **ACTIVITY LOG (PD112-145)** and include the following information in the entry: |

  a.  Date, time and location of stop
  b.  Pedigree information, unless refused, and detailed description of the person stopped
  c.  Identify in plain language, the suspected felony or Penal Law misdemeanor
  d.  ICAD number, if applicable
  e.  Disposition including the time the encounter was concluded
  f.  Precinct serial number assigned to **STOP REPORT**, if available
  g.  Describe in your own words all of the facts and information relied upon to conclude that there was reasonable suspicion that the person stopped had committed, was committing or was about to commit a felony or Penal Law misdemeanor
  h.  If the person is subsequently frisked, describe in your own words all of the facts and information relied upon to conclude that there was reasonable suspicion that the person stopped was armed and dangerous
  i.  If a search is conducted, describe the basis for the search, the specific area searched, what was felt and whether a weapon or other contraband was recovered.
  j.  Any additional information not included on the **STOP REPORT**.

26. Prior to the end of your tour, submit the **STOP REPORT** and **ACTIVITY LOG** to the patrol supervisor/unit supervisor for review.

  a.  The reviewing supervisor must be at least one rank higher than the member submitting the **STOP REPORT**.

27. Inform the patrol supervisor/unit supervisor of facts of the stop and, if conducted, frisk, and/or search.

SUPERVISORY AND ADMINISTRATIVE FUNCTIONS:

| | | |
|---|---|---|
| **PATROL SUPERVISOR/ UNIT SUPERVISOR** | 28. | Respond to the scene of stops when feasible. |
| | 29. | Discuss the circumstances of the stop with the member of the service and review the **STOP REPORT**. |

  a.  Determine whether all captions are completed and all relevant check boxes are checked
  b.  Confirm that the **STOP REPORT** states in plain language a specific suspected felony or Penal Law misdemeanor
  c.  Determine whether the officer's description in the "Narrative (Describe the Circumstances That Led to the Stop)" section includes the facts and circumstances relied upon by the officer to conclude that there was reasonable suspicion that the person stopped had committed, was committing, or was about to commit a felony or Penal Law misdemeanor
  d.  If the person was frisked, determine whether the officer's description in the "Narrative (Describe the Circumstances That Led to the Frisk and/or Search, if Conducted. Include Area Searched)" section includes the facts and circumstances relied

**INTERIM ORDER NO.  DRAFT 3**

**PATROL
SUPERVISOR/
UNIT
SUPERVISOR
(continued)**

upon by the officer to conclude that there was reasonable suspicion that the person was armed and dangerous and, if a search was conducted, the facts and circumstances that provided the basis for the search, the area searched and whether a weapon or other contraband was recovered

e.   Complete the "Supervisory Action (Must Complete)" section. Consider the facts and information as conveyed by the member and recorded on the **STOP REPORT** and in the member's **ACTIVITY LOG** and determine whether:

    (1)   The stop was based upon reasonable suspicion of a felony or Penal Law misdemeanor

    (2)   If the person was frisked, whether the frisk was supported by a reasonable suspicion that the person was armed and dangerous; and

    (3)   If the person was searched, whether there was a sufficient basis for the search.

f.   If appropriate, instruct member of the service and/or refer for additional training and/or other remedial action, including, disciplinary action and indicate such in the "Follow-Up Action (If appropriate)" section

g.   Direct the member to make necessary corrections to the **STOP REPORT** if the report is inaccurate or incomplete

h.   Complete and sign the **STOP REPORT.**

30.   Review the member's **ACTIVITY LOG** to determine whether the entry is complete and describes the facts and circumstances that provided the bases for the stop as well as any frisk and/or search if conducted.

31.   If force was used, determine whether the use of force was reasonable under the circumstances of the encounter.

32.   Prior to the end of tour, return signed **STOP REPORT** and **ACTIVITY LOG** back to member upon completion of the review.

*NOTE*

*If the patrol supervisor/unit supervisor is unavailable, the uniformed member of the service will submit the **STOP REPORT** and **ACTIVITY LOG** to the desk officer/designee. The desk officer/designee will comply with steps "29" through "32."*

**UNIFORMED
MEMBER OF
THE SERVICE**

33.   Make a photocopy of the **ACTIVITY LOG** entry for the stop.

34.   Submit the original **STOP REPORT** and the photocopy of the **ACTIVITY LOG** entry to the desk officer/designee.

**DESK
OFFICER/
DESIGNEE**

35.   Ensure that the **STOP REPORT** is entered into the Department's Automated Stop Report System for generation of the next sequential precinct serial number within forty-eight hours from the time of occurrence.

a.   Ensure that the next sequential serial number is entered in the appropriate caption on the **STOP REPORT.**

**INTERIM ORDER NO.   DRAFT 3**

| | | |
|---|---|---|
| **DESK OFFICER/ DESIGNEE (continued)** | 36. | Electronically "sign-off" and administer any necessary supervisory functions of the Department's Automated Stop Report System for those **STOP REPORTS** that are awaiting sign off in the queue. |

      a.    Ensure that the **STOP REPORTS** are electronically "signed–off" within forty-eight hours from the time of occurrence.

      b.    Ensure that a separate precinct serial number is assigned to each **STOP REPORT**.

37.    Have the **STOP REPORT**, with the sequential serial number entered in the appropriate caption, photocopied.

      a.    Attach the photocopy of the member's **ACTIVITY LOG** to the photocopy of the **STOP REPORT** and file in the command's **STOP REPORT** binder.

      b.    Submit the original **STOP REPORT** to the command clerk/designated member.

**COMMAND CLERK/ DESIGNATED MEMBER**

38.    Print out copy of the **Stop Report Index** <u>daily</u> during the first platoon, utilizing the Department's Automated Stop Report System.

      a.    Ensure **Stop Report Index** is filed with photocopies of original **STOP REPORT** in command binder.

39.    Forward original **STOP REPORT** to the Criminal Records Section on a daily basis.

***NOTE***    *Commanding officer/designee will designate a member to perform the command clerk duties listed above, if the command clerk is not available.*

**INTEGRITY CONTROL OFFICER**

40.    Personally conduct, in conformance with the Quality Assurance Division self-inspection program, the command self-inspection of **STOP REPORTS**.

41.    Ensure that the patrol supervisor/unit supervisor reviews the **STOP REPORTS** and **ACTIVITY LOGS** and that appropriate actions are taken where necessary.

      a.    In assessing the patrol/unit supervisor's review of officers' Level 3 encounters, determine whether the supervisor appropriately reviewed the stop and, if conducted, the frisk and search, and any force used. In making these determinations, consider whether the supervisor examined the information recorded on the **STOP REPORT** and **ACTIVITY LOG** and appropriately evaluated whether the information reasonably supports the conclusion that the member's actions were based upon reasonable suspicion.

      b.    Take appropriate remedial action if warranted, including discipline if appropriate.

      c.    Inform commanding officer and training sergeant of any matters of importance including deficiencies or patterns of deficiencies in regards to the bases of stops and/or frisks conducted or in the preparation of **STOP REPORTS** and **ACTIVITY LOGS**.

**INTERIM ORDER NO.  DRAFT 3**

**EXECUTIVE OFFICER**

42. Personally conduct, in conformance with the Quality Assurance Division self-inspection program, the command self-inspection of "POLICE INITIATED ENFORCEMENT."

**COMMANDING OFFICER**

43. Assume responsibility for the integrity of the administration of this procedure.
44. Consult with the executive officer, integrity control officer, platoon commanders, special operations lieutenant, training sergeant, patrol supervisors/unit supervisors to ensure the constitutionality and effectiveness of stops.
   a. Identify training needs and necessary remedial or disciplinary actions required.
   b. Prepare a report on **Typed Letterhead** addressed to the Commanding Officer, Legal Bureau requesting remedial training for any members of the service identified as having a deficient understanding of the law pertaining to street encounters.

**NOTE**

*Minor or inadvertent mistakes in documentation or isolated cases of erroneous but good-faith stops or frisks by members of the service should ordinarily be addressed through instruction and training. In most instances, instruction and training should be accomplished at the command level. The application of the law in this area can be complicated, and investigative encounters are fluid situations in which one event or observation can alter the level of suspicion or danger. A single erroneous judgment will not generally warrant referral to the Legal Bureau for retraining. However, members of the service who evince a lack of comprehension of the core concepts of the law governing this procedure should be referred to the Legal Bureau.*

**TRAINING SERGEANT**

45. Conduct command level training to help ensure compliance with the Department's policy regarding investigative encounters.
   a. Periodically review and identify command-wide and individual training needs and necessary remedial actions.
   b. Record training sessions in the command training log indicating the subject of the training as well as the identities of the participating members of the service.
   c. Identify members who have been referred for training in **STOP REPORTS** and ensure that the training is conducted.
      (1) Track, record and report such training to the commanding officer on a quarterly basis.

**ADDITIONAL DATA**

*There are many facts and circumstances that may lead a police officer to conclude that there is reasonable suspicion that a person has committed, is committing or is about to commit a felony or Penal Law misdemeanor. Such factors may include information received from third parties as well as the actions of the suspect, the suspect's physical and temporal proximity to the scene of a crime, the suspect's resemblance to the specific description of a perpetrator of a crime (based on more than just race, age and gender) and information known to the officer about the suspect or particular location, among other factors. Each situation is unique and the information available to members of the service will vary.*

*"Furtive movements" or mere presence in a "high crime area," standing alone, are insufficient bases for a stop or frisk. Moreover, even when used in combination with other stop factors, the stopping officer must be able to specifically describe the suspicious nature of the "furtive*

**INTERIM ORDER NO. DRAFT 3**

**ADDITIONAL
DATA
(continued)**

*movements" which she/he observed, and she/he must not define the "high crime area" too broadly, such as encompassing an entire precinct or borough. In addition, a person may not be stopped merely because he or she matches a generalized description of a crime suspect, such as an 18-25 year old male of a particular race. If a physical description is the only factor relied on by the stopping officer, it must be more specific to form the basis for a stop. Individuals may not be targeted for stops and frisks because they are members of a racial or ethnic group that appears more frequently in local crime suspect data. Race may only be considered where the stop is based upon a specific and reliable suspect description that includes not just race, age and gender, but other identifying characteristics and information. When a police officer carries out a stop based on reasonable suspicion that a person fits such a description, the officer may consider the race of the suspect, just as the officer may consider the suspect's height or hair color.*

*Commanding officers of commands other than patrol precincts, PSAs and transit districts (e.g., Detective Bureau, Strategic Response Group, etc.) will designate a supervisor to perform the desk officer duties listed above. The desk officer/designee in commands other than a patrol precinct, PSA or transit district who has received a completed **STOP REPORT**, will ensure that the data is entered into the Department's Automated Stop Report System for generation of the next precinct of occurrence serial number within <u>forty-eight hours from the time of occurrence</u>. The desk officer/designee in commands other than a patrol precinct, PSA or transit district will ensure that the **STOP REPORTS** are forwarded to the Criminal Records Section on a daily basis. Photocopies of the **STOP REPORTS** will be sent via Department mail to the precinct of occurrence daily. The precinct of occurrence will then place the photocopies in sequential order in their **STOP REPORT** command binder. In addition, the desk officer/designee will utilize the Department's Automated Stop Report System and ensure those **STOP REPORTS** completed by members of their command are signed off within <u>forty-eight hours from the time of occurrence</u>.*

*Desk officers/designees in commands other than patrol precincts, PSAs or transit districts will maintain a standardized **STOP REPORT** command binder with photocopies of **STOP REPORTS** prepared by their respective command. Additionally, a corresponding **Stop Report Index** for the command will be printed out daily and will likewise be maintained in the command binder.*

*Commanding officers will ensure that photocopied **STOP REPORTS** maintained in the command binder are removed and filed in the command by year of occurrence every January 1st and quarterly thereafter (April 1st, July 1st and October 1st).*

*All uniformed members of the service below the rank of Captain are required to carry **ACTIVITY LOG** inserts **INVESTIGATIVE ENCOUNTERS (PD383-090)** and **SUPPLEMENTAL INSTRUCTIONS FOR PREPARATION OF STOP REPORT (PD383-151A)** when performing patrol duties in uniform.*

**RELATED
PROCEDURES**

*Activity Logs (P.G. 212-08)
Department Policy Prohibiting Racial Profiling and Bias-Based Policing (P.G. 203-25)
Executive Officer (P.G. 202-10)
Interior Patrol (P.G. 212-59)
Interior Patrol of Housing Authority Buildings (P.G. 212-60)*

**INTERIM ORDER NO.   DRAFT 3**

| | |
|---|---|
| *FORMS AND*<br>*REPORTS* | *ACTIVITY LOG (PD112-145)*<br>*STOP REPORT (PD383-151)*<br>*INVESTIGATIVE ENCOUNTERS (PD383-090)*<br>*SUPPLEMENTAL INSTRUCTIONS FOR PREPARATION OF STOP REPORT*<br>*(PD383-151A)*<br>*WHAT IS A STOP? (PD383-153)*<br>*Stop Report Index* |

3.   Patrol Guide 204-09, "Required Equipment" is amended as follows:

   a.   **REVISE** step "**12**" opposite "REQUIRED EQUIPMENT," on page "**3**" to read:

| "**REQUIRED**<br>**EQUIPMENT** | **12.** | **ACTIVITY LOG (PD112-145) with following inserts:** |
|---|---|---|
| | **a.** | **AUTO IDENTIFICATION (PD371-090)** |
| | **b.** | **INSTRUCTIONS FOR HANDLING MENTALLY ILL OR EMOTIONALLY DISTURBED PERSONS (PD104-110)** |
| | **c.** | **DOMESTIC VIOLENCE/VICTIMS OF CRIME (PD154-110)** |
| | **d.** | **INVESTIGATIVE ENCOUNTERS (PD383-090)** |
| | **e.** | **POSSIBLE INDICATORS OF TERRORIST ACTIVITY (PD378-111)** |
| | **f.** | **WHAT IS A STOP? (PD383-153)** |
| | **g.** | **PRIMARY LANGUAGE IDENTIFIER (PD312-091)** |
| | **h.** | **I SPEAK… (PD112-121)** |
| | **i.** | **ACTIVE SHOOTER RESPONSE PROTOCOL REFERENCE CARD (PD624-112)** |
| | **j.** | **SUPPLEMENTAL INSTRUCTIONS FOR PREPARATION OF STOP REPORT (PD383-151A)** |
| | **k.** | **Any other insert, as required.**" |

4.   Department form "**STREET ENCOUNTERS – LEGAL ISSUES (PD344-153)**" is hereby **REVOKED**.

5.   All existing copies of the "**STREET ENCOUNTERS – LEGAL ISSUES (PD344-153)**" should be destroyed.

6.   **REVISE** references to Department form "**STREET ENCOUNTERS – LEGAL ISSUES (PD344-153)**" in Administrative Guide 325-18, "Command Reference Library" and wherever else it appears in the Department Manual to now read:

   "**INVESTIGATIVE ENCOUNTERS (PD383-090)**"

7.   Department form "**STOP, QUESTION AND FRISK REPORT WORKSHEET (PD344-151A)**" is hereby **REVOKED**.

**INTERIM ORDER NO.  DRAFT 3**

8.      All existing copies of the "**STOP, QUESTION AND FRISK REPORT WORKSHEET (PD344-151A)**" should be <u>destroyed</u>.

9.      <u>**REVISE**</u> references to Department form "**STOP, QUESTION AND FRISK REPORT WORKSHEET (PD344-151A)**" in Patrol Guide procedures 202-10, 202-41, 205-57, 212-59, 212-60, 212-110, Administrative Guide 316-29, Detective Guide 502-01 and wherever else it appears in the Department Manual to now read:

"**STOP REPORT (PD383-151)**"

10.     Department form "**STOP, QUESTION AND FRISK INDEX COVERSHEET (PD344-152)** is hereby **REVOKED**.

11.     Commands will requisition the new Department form and **ACTIVITY LOG** inserts through the Quartermaster Section using the following information:

| INDEX NUMBER | PD NUMBER | TITLE |
|---|---|---|
| XXXX | 383-151 | STOP REPORT |
| XXXX | 383-151A | SUPPLEMENTAL INSTRUCTIONS FOR PREPARATION OF STOP REPORT |
| XXXX | 383-090 | INVESTIGATIVE ENCOUNTERS |

12.     Commanding officers will ensure that all uniformed members of the service assigned to their commands are provided with the aforementioned inserts.

13.     Upon publication, this Interim Order has been incorporated into the On-Line Patrol Guide, On-Line Administrative Guide and the On-Line Detective Guide.

14.     Any provisions of the Department Manual or any other Department directive in conflict with the contents of this Order are suspended.

**BY DIRECTION OF THE POLICE COMMISSIONER**

**DISTRIBUTION**
**All Commands**

**INTERIM ORDER NO.   DRAFT 3**