

Peter L. Zimroth
+1 212.836.7316 Direct
Peter.Zimroth@arnoldporter.com

October 19, 2018

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/26/2018
```

**VIA ECF**

Honorable Analisa Torres
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007-1312

Re: *Floyd, et al. v. City of New York*, 08-CV-1034 (AT),
*Ligon, et al. v. City of New York, et al.*, 12-CV-2274 (AT),
*Davis, et al. v. City of New York, et al.*, 10-CV-0699 (AT),
Recommendation Regarding Stop and Frisk Procedures and Stop Report

Dear Judge Torres,

With this letter, I am attaching the following three documents:

1. Patrol Guide (P.G.) Section 212-11, Investigative Encounters: Requests for Information, Common Law Right of Inquiry and Level 3 Stops;

2. Stop Report Form; and

3. NYPD Business Card.

As explained below, there is only one change in P.G. 212-11 being submitted for your review and approval; the other changes are being submitted for your information only. In order for the changes to be seen in context, I am enclosing the new NYPD business card for your information. There are also some changes to the Stop Report form that I am submitting for your review and approval.

**Patrol Guide Section 212-11**

This court first approved the NYPD's procedures on stop and frisk in August 2015. The revised policies are included in P.G. 212-11, *Investigative Encounters: Requests for Information,*

*Common Law Right of Inquiry and Level 3 Stops*.  The Department is now proposing three different types of changes to the Patrol Guide,  The first set of changes is being made to comply with the recently enacted Right to Know Law (Local Law 54 of 2018 and Local Law 56 of 2018).  These laws require officers in certain non-emergency encounters to identify themselves by name, rank, and command, explain the reason for the stop, and hand out business cards if no one is arrested or issued a summons.  The Right to Know Law also requires officers to inform people of their right not to consent to a search if consent would be necessary to perform the search.  Officers must also document any consent to a search, either through a body camera or by writing, or both.

Because these changes to the Patrol Guide are being made to comply with the Right to Know Law and not because of a requirement of the remedial order, I do not believe that they require court approval.  The court has already ruled in its November 22, 2016 opinion that the remedial order did not require changes in the way the Department deals with consent searches, and therefore that the changes in P.G. 212-11 relating to consent searches based on an agreement between the City Council and the NYPD did not require court approval.  ECF Dkt. 537.  Changes to P.G. 212-11 on consent searches due to the newly enacted Right to Know Law similarly would not require court approval.  As discussed below, however, the revisions being proposed also change a requirement of the remedial order, and for that reason should be reviewed and approved by the court.

### The New Business Card

To meet the requirements of the Right to Know Law, the Department has designed a business card that officers will offer to individuals at the end of most Level 2 and 3 encounters, as well as following other specified interactions.  These pre-printed business cards will contain

the officer's name, rank, and shield number and a place for the officer to write his or her command.  The back of the card lists a new website (www1.nyc.gov/police-encounter) that provides information on how to obtain body-worn camera footage, how to request a copy of a stop report, and how to make a complaint or comment regarding the encounter.  This website has a link to an electronic form that allows an individual to request a copy of a stop report by providing the date, time, and location of the stop.  The NYPD has changed its procedures under the Freedom of Information Law (FOIL) so that it can respond to requests for stop reports within ten business days.

Two cards are currently in use.  The first is the "What Is a Stop?" tear-off information card, which is required by the court order to be offered to persons who are stopped but not arrested or summonsed, and which was provided to the court as part of the submission of P.G. 212-11 in August 2015.  Because this card will no longer be used, this change is being submitted for the court's approval.  The parties agree that the new business card is sufficient to meet the court's requirements, as do I.  The second card now in use is the Contact Card, which has been required to be provided to persons who consented to a search after a Level 2 encounter.  The new business card that will be used instead of the Contact Card includes all the information on the Contact Card (and more).  Elimination of the Contact Card does not change any requirement of the court orders and thus is not submitted for court approval.

**Changes to Patrol Guide Section 212-11**

Changes are being proposed to conform the Patrol Guide to the stop and frisk in-service training that this court has approved.  For example, the Department has added the definition of "protective measures" that an officer can take, short of a frisk, when he or she does not have reasonable suspicion that the person is armed and dangerous.  Other changes provide additional

explanations of the legal standards of *DeBour*, but do not change the policies of what an officer may or may not do in an investigative encounter. For this reason, we do not believe these are material changes that require court approval.

There are also changes relating to additional instructions on how to use the Department's records management system (FORMS). FORMS is used by officers to complete electronic stop report and by supervisors to review and approve the stop reports. These revisions also are not material changes that would require court approval.

**Stop Report Form**

In March 2016, the court approved the NYPD's stop report form, and in January 2017, the Department began using an electronic form that officers can fill out on their phones, on tablets, or on a computer at the command. The Department has proposed several changes to the stop report. To comply with the Right to Know Law, the stop report will now ask if the officer asked for consent to search and whether consent was given. This change would not require court approval. The stop report also has two other changes: (1) the officer will identify if the stop was based on a crime victim or witness report; and (2) if the stop was based on a radio run, the officer will identify whether or not the radio run was anonymous. That information can determine the level of authority an officer is legally allowed to exercise. The latter two changes are being submitted for court review and approval.

The attachments highlight all the proposed changes to the Patrol Guide and stop report form. On the Patrol Guide document, there are different highlights for the different types of revisions being proposed. Highlighted in red are changes related to the business card that officers are required to offer to persons who have been stopped but not arrested or summonsed. These requirements are being submitted for court review and approval. Highlighted in yellow

are changes that have been made to conform the Patrol Guide to the stop and frisk in-service training that the court has previously approved. These changes are submitted for your information. Highlighted in grey are changes relating to how officers and supervisors are to use the records management system to document stops and review stop reports, respectively. These changes are submitted for your information.

Highlighted in light blue are changes related to the implementation of the Right to Know Law. These changes are submitted for your information. The parties disagree whether P.G. 212-11 adequately implements the Right to Know Law, and the monitor takes no position on this issue. However, all the parties agree that implementation of the Right to Know Law is not within the scope of the monitorship. The plaintiffs have informed the monitor that they are not objecting to the recommendations that are being submitted for your approval.

        Respectfully submitted,

        /s/ Peter L. Zimroth
        Peter L. Zimroth
        Monitor

With respect only to matters that are subject to the Court's approval, the Monitor's request is GRANTED. The Court does not address issues arising under the Right to Know Act, as they are not within the scope of the monitorship.

SO ORDERED.

Dated: October 26, 2018
      New York, New York

ANALISA TORRES
United States District Judge

5