# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------- X

DAVID FLOYD, *et al.*,

                Plaintiffs,

-against-                                      No. 08 Civ. 1034 (AT)

CITY OF NEW YORK,

                Defendant.

------------------------------------------------------------------- X

## DECLARATION OF KESI FOSTER

I, Kesi Foster, state the following is true and correct:

1. I submit this declaration in support of Plaintiffs' motion to amend the remedial order. I am not a party to the above-captioned case.

2. I am the Co-Director of the Youth Power Project with Make the Road New York ("MtR"), a New York-based community organization building the power of immigrant and working class communities in New York City to achieve dignity and justice.

3. I have been in this role since 2016.

### About MtR

1. Make the Road New York builds the power of immigrant and working class communities of color to achieve dignity and respect.

2. Since our inception, we have served and organized within Black and Latinx communities in New York City, Long Island, and Westchester around issues including civil rights and criminal legal system reform.

3. We are a founding member of Communities for Police Reform ("CPR"), a coalition of community organizations concerned with ending police brutality and abuse in low-income

Black and brown New York communities.

4. We have hosted the Youth Power Project for over a decade. The Project is led by young people ages fourteen to twenty-four who comprise one of the populations most vulnerable to police abuse and with the highest historical and present rates of forced interaction with police in their schools, neighborhoods, and communities.

## MtR Experience with Police Reform

5. We have been heavily involved through advocacy and organizing in the campaigns to pass the 2013 Community Safety Act, a landmark legislative package aimed at strengthening and expanding the ban on racial and other discriminatory profiling and establishing independent oversight of the NYPD, and the 2018 Right to Know Act, which requires NYPD officers to obtain voluntary, knowing, and intelligent consent for unjustified searches, and, under certain situations, to identify themselves and give stopped individuals a business card containing information on how to file a complaint about the encounter, in the New York City Council.

6. We were heavily involved in the successful campaign to repeal New York Civil Rights Law §50-a in the New York State legislature last summer.

7. We continue to work closely with the families of New Yorkers who have been killed and brutalized by NYPD officers, community members who face police harassment and abuse, and New Yorkers forced into the criminal legal system.

## MtR Involvement in the *Floyd* and *Davis* Litigations

8. MtR members are part of the plaintiff classes in the *Floyd* and *Davis* litigations.

9. MtR participated in "pack the courtroom" efforts during the *Floyd* trial to call attention to the stakes of the litigation for its members.

10. MtR members participated in several of the focus groups conducted by the Facilitation Team during the Floyd-Davis Joint Remedial Process.

11. MtR also served on the Court-appointed Facilitator's JRP Advisory Committee.

12. In addition, in December 2016, we brought together youth-led organizations and young people to organize a town hall to get their concerns addressed through the *Floyd-Davis* Joint Remedial Process. The town hall offered young people a forum to address how they experience policing, how they are or are not seeing accountability, and to address the ongoing lack of accountability and transparency by the NYPD. The results of this town hall were presented to Judge Belen and the rest of the JRP Facilitation team. *See* JRP Final Report and Recommendations (ECF No. 597) at 196 (listing MtR as co-sponsor of the December 6, 2016 Community Forum for youth).

13. Near the conclusion of the JRP, the Court granted a confidentiality order requested by the NYPD, which has since dramatically limited the ability of MtR to inform its members and community about the JRP. The confidentiality order restricts MtR staff who are able to review certain Monitorship documents from informing its members about what potential reforms are being considered—reforms that are of the utmost personal importance to the community—providing input and additional context to the development of the reforms, and understanding the attitudes and perceptions of all the parties, the Monitor, and the NYPD are toward those reforms.

14. The confidentiality order further hampered and will continue to hamper the exchange of information between MtR and *Floyd* and *Davis* Plaintiffs' counsel, preventing MtR from contributing crucial expertise and community perspective to the monitorship.

**MtR Experience Since *Floyd* Litigation**

15. Since the end of the *Floyd* Joint Remedial Process, MtR members have had limited interaction with the monitorship and the Court and have not felt authentically engaged in our role as a community organization whose members were most affected by the years of unconstitutional policing.

16. Our members' impression of the monitorship has been one of a process in which the Monitor makes decisions with the NYPD and then presents those decisions to us, the community, without opportunity for input or shaping solutions. We feel we have been essentially excluded from this process.

17. Our impression of the reforms has been influenced by this feeling of exclusion from the process. Our members feel the lack of transparency suggests that the recent NYPD reforms are not about accountability, but rather about building a façade of accountability to hide behind.

18. Our members further feel the current Body-Worn Camera ("BWC") policy and program lacks transparency. The exclusion of the community from the development and implementation of BWC policy means our members do not have faith in the process, and instead feel the NYPD is in control of the narrative whenever BWC footage is utilized or released.

19. Furthermore, our members have serious privacy and surveillance concerns about the BWC program that have not been addressed by the NYPD or Monitor.

20. We have not received regular updates or information from the Monitor or the Court about the status of the stop-and-frisk or trespass enforcement reforms.

21. Our members have limited knowledge of the monitorship, including of its continued existence, its semi-annual reports, or the precise developments that have originated from the

monitorship.

22. While our members have seen a decrease in the number of SQF interactions, they continue to experience often unfair and unjustified SQF interactions at the hands of the NYPD. We had hoped these unfair and unjustified interactions would stop completely.

23. Our members experience these SQF interactions as racially biased, unconstitutional, and intimidating. Our members experience constant fear as young Black and brown men that they may have such an encounter at school, on the way to work, or while walking through their neighborhoods.

24. Our members have expressed feelings of not being permitted to live and exist in their communities without the constant threat of such violations of their privacy and autonomy by the NYPD.

25. Our members cannot have faith in the outcomes of the monitorship unless they are given the opportunity and information needed to engage directly with the monitorship and the Court and lend the process their voices as those most impacted by the reforms it is intended to oversee.

I declare under the penalty of perjury that the foregoing information is true and correct to the best of my knowledge.

Dated:   New York, New York
         July 27, 2021

*Kesi Foster*
Kesi Foster