

666 Broadway, 7th Floor
New York, New York 10012
212-614-6464
ccrjustice.org

**VIA ECF**
Hon. Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:   *Floyd, et al. v. City of New York, et al.*, 08-cv-1034 (AT)
             *Davis, et al. v. City of New York, et al.*, 10-cv-0699 (AT)

Dear Judge Torres:

      On behalf of Plaintiffs in both of the above-referenced matters, we write in response to Your Honor's September 9, 2022 Order, *Floyd* Dkt. No. 889, to file a supplemental brief discussing whether the Monitor's Community Liaison proposal, *Floyd* Dkt. Nos. 888, 888-1, 888-2 (the "Proposal"), addresses Plaintiffs' concerns regarding community engagement and whether it leads Plaintiffs to alter the relief requested in Plaintiffs' Motion to Modify the *Floyd* Remedial Order, *Floyd* Dkt. Nos. 840-843 ("Plaintiffs' Motion" or "Motion").

      For the reasons explained below, Plaintiffs believe the Proposal, as currently contemplated, does not fully resolve the substantial concerns raised in Plaintiffs' Motion about the need for more robust community engagement. Certainly, Plaintiffs and their community partners are currently, and will continue to be, engaged meaningfully with the Community Liaison process and will use that process to implement some of the additional, important measures requested in the Motion. Given the present uncertainty of the outcome of that process, Plaintiffs respectfully request that the Court hold Plaintiffs' motion in abeyance for a period of sixty days following the finalization of the Community Liaison's Plan, in order for Plaintiffs to assess whether the forthcoming plan sufficiently addresses the issues raised in Plaintiffs' Motion. Should the Court deny this request for an abeyance and further deny the Motion, Plaintiffs respectfully request that any such denial be without prejudice to move for similar relief at some future date. *See Floyd* Dkt. No. 888-1 at 3.

      In addition, Plaintiffs respectfully reiterate their request for regularly scheduled public status conferences with the Court, *see Floyd* Dkt. No. 841 at 31, which are outside the authority of the Community Liaison or the Monitor and thus not dependent on the finalization of the Community Liaison's Plan.

I.  **The Liaison's Forthcoming Community Engagement Plan May Significantly Impact Relief Sought by Plaintiffs**

Plaintiffs filed their Motion due to the Monitorship's insufficient consideration of the informed demands of community members most impacted by the NYPD's stop-question-and-frisk and trespass enforcement practices, in conflict with the *Floyd* remedial order. As set forth in the Motion, rigorous community engagement is considered a best practice in other police monitorships and was specifically recommended for *this* Monitorship by the Court-appointed Facilitator, Hon. Judge Ariel Belen, at the conclusion of the Joint Remedial Process in 2018. *See Floyd* Dkt. Nos. 841 at 9–10, 24–29; 864 at 8–10. At the time Plaintiffs filed the Motion, the Monitorship had not implemented any new mechanisms for community engagement nor had it announced any plans to do so.

We appreciate the Monitorship's recent recognition of the serious need for increased community engagement and its Proposal to hire a Community Liaison. While the Proposal takes an important step toward soliciting community participation and investment in this Monitorship, the Community Liaison's role and specific activities are presently unknown and will be fleshed out in a plan that the Community Liaison is tasked with drafting. *See Floyd* Dkt. No. 888-1 at 3 ("The Community Liaison will develop a plan for community engagement to be shared with the Parties and the Monitor."). The development of this plan presents an opportunity for Plaintiffs to *potentially* achieve the goals of their Motion through collaboration with the Community Liaison, without the need for the Court's intervention. Until the Community Liaison—who has not yet been hired—finalizes their plan, however, Plaintiffs cannot determine whether the Proposal will obviate the requests for relief in Plaintiffs' Motion.

For this reason, Plaintiffs seek to hold their motion in abeyance in order to assess the Community Liaison's plan and its prospects for addressing the fundamental concerns raised in the Motion. After no more than sixty days following the finalization of the Community Liaison's Plan, Plaintiffs will be in a better position to know whether the Proposal eliminates the need for all additional measures contemplated by the Motion to ensure meaningful community participation and compliance assessment. Those additional measures, listed below, remain critically important to impacted community members, and the Court's intervention will remain necessary should the Community Liaison process fail to achieve the goals contemplated by these measures.

A.  **Community Collaborative Board**

One of the requests made in Plaintiffs' Motion is the adoption of Judge Ariel Belen's recommendation for a Community Collaborative Board ("CCB"), albeit in a modified form. *See Floyd* Dkt. No. 841 at 34. The CCB would consist of seven representatives from the communities most heavily impacted by NYPD stop-question-and-frisk and trespass enforcement practices, including two members of Communities United for Police Reform, two members of the New York City Housing Authority ("NYCHA") tenant community, and three people from other organizations that serve directly impacted communities. The CCB would be tasked with advising and providing community input to the Court and the Monitor on the NYPD's implementation of Court-ordered reforms. *See Floyd* Dkt. No. 841 at 34–35. In addition, Plaintiffs' Motion requests that the Monitor's disciplinary reform proposals be developed in consultation with the CCB, using a notice and public comment process. The CCB would also provide feedback to the Court on final proposals

regarding disciplinary reforms following their submission to the Court. *See Floyd* Dkt. No. 841 at 35-36; *Floyd* Dkt. No. 843 at 4. As Plaintiffs' Motion referenced, similar bodies have been used in recent police monitorships that also focused on racially discriminatory police practices, including the monitorships in Seattle and Cleveland. *See Floyd* Dkt. No. 841 at 35-36.

The Community Liaison, which is contemplated by the Proposal to be a single individual, will not be performing the same job as the CCB, which was designed specifically to represent a diverse group of directly impacted communities. As Plaintiffs have conveyed to the Monitor, community partners have expressed doubts that any single individual will be able to reach and gain trust among a truly expansive and diverse cross-section of New York City residents impacted by NYPD stop-question-and-frisk and trespass enforcement practices. The Proposal does, however, offer the Community Liaison wide latitude to implement varying modes of community engagement and feedback to the Monitor. It remains to be seen whether the Community Liaison's Plan will incorporate the type of meaningful community involvement and oversight contemplated in the Motion's request for the CCB. For this reason, Plaintiffs seek to hold their request for the CCB in abeyance while we focus on collaborating with the Monitorship and the Community Liaison towards what will hopefully be the same goal.

### B. Surveys and Field Audits

Plaintiffs' Motion also requested that the Court require the Monitor to conduct community surveys and field audits. *See Floyd* Dkt. No. 841 at 33–34, 36–37. This request arose out of the need to develop ways of accurately assessing whether NYPD officers are implementing the Court-ordered stop-question-and-frisk and trespass enforcement policy changes in the field, beyond the flaws and inaccuracies of currently available NYPD data due to problems such as officer underreporting. *Floyd* Dkt. No. 841 at 32–33; *see also* Monitor's Sixteenth Report, *Floyd* Dkt. No. 885-1 at 42–51.

As Plaintiffs' Motion explains, community surveys are a particularly crucial and common tool. *Floyd* Dkt. No. 841 at 33. Community surveys have been used in monitorships across the country to help determine whether police departments have achieved improvements in constitutional policing. *Id.* at 33. Even in monitorships with community liaisons, including the monitorships in Baltimore, Chicago, Seattle, and Ferguson, those liaisons are not seen as a replacement for community surveys, but instead exist alongside annual or biennial surveys. Field audits, too, have been used to study discrimination in other contexts and, as the Plaintiffs' Motion explains, can be instrumental to perform an accurate and comprehensive analysis of police behavior in the field. *Id*. at 36.

The Proposal allows, but does not require, the Community Liaison to conduct either of these activities. It thus remains to be seen whether the Community Liaison nonetheless will incorporate these activities into their plan. Should the Community Liaison agree to use sufficiently rigorous community surveys and field audits as part of their work, include these measures in their plan, and ensure that these measures would be funded, this portion of Plaintiffs' Motion will no longer be needed. Thus, Plaintiffs seek to hold the request for mandatory community surveys and field audits in abeyance, to focus on collaborating with the Monitor team and Community Liaison on the inclusion of robust surveys and field audits in the Community Engagement Plan.

### II. Plaintiffs Reiterate Their Request for Public Status Conferences, Which Are Appropriate and Necessary in These Cases

Finally, Plaintiffs' Motion requests regularly scheduled public status conferences before the Court with the Monitor and the Parties. *See Floyd* Dkt. Nos. 841 at 31; 864 at 12–15. Recognizing the Court's discretion in convening such conferences, Plaintiffs reiterate the importance of public status conferences to our community partners (as set forth in their affidavits in support of Plaintiffs' Motion, *see Floyd* Dkt. Nos. 842-1, 842-2, 842-3, 842-4) and underscore that such conferences are typical in other police monitorships. *See Floyd* Dkt. Nos. 841 at 31; 864 at 19 n. 13. The purpose of public status conferences is to allow community stakeholders an opportunity to hear not only from the Monitor, but also from the Plaintiffs, the NYPD, and most importantly the Court itself. *Id*. This request is not addressed by the Community Liaison Proposal, which also provides no opportunity for direct communication between members of the community and the Court, as is permitted by courts in other monitorships. *See Floyd* Dkt. No. 841 at 32 n. 34. As public status conferences would be ordered at Your Honor's discretion, the Proposal does not, and cannot, resolve this issue. Therefore, Plaintiffs maintain their request for public status conferences and respectfully request that the Court resolve this issue.

\*   \*   \*

Accordingly, Plaintiffs respectfully request that the court hold Plaintiffs' Motion in abeyance for a period of sixty days following the finalization of the Community Liaison's Plan, excepting the request for regularly scheduled status conferences, as to which Plaintiffs respectfully request the Court's decision at this time. Plaintiffs will engage with the Community Liaison as they draft their plan and will endeavor to ensure that the above-discussed concerns about the CCB, field audits, and surveys will be adequately addressed in the plan. Plaintiffs' experience with the Community Liaison process will provide a better understanding of its successes and potential limitations and a basis for re-submitting, revising, or possibly even foregoing the demands in the Motion within sixty days of the finalization of the Community Liaison's Plan. Should the Court choose to deny this request, Plaintiffs request that any dismissal be without prejudice to refiling our Motion should Plaintiffs' concerns about the absence of meaningful community engagement remain unaddressed.

Sincerely,

_____/s/_____
Samah Sisay
Baher Azmy
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012

Jonathan C. Moore
Katherine "Q" Adams
Marc Arena

4

Beldock Levine Hoffman LLP
99 Park Avenue
New York, NY 10016

*Counsel for* Floyd *Plaintiffs*


_____/s/_____
Corey Stoughton
Molly Griffard
The Legal Aid Society
199 Water Street
New York, NY 10038

_____/s/_____
Jin Hee Lee
Kevin Jason
Ashok Chandran
NAACP Legal Defense &
  Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006

*Counsel for* Davis *Plaintiffs*

5